I hereby attest and certify on 7/21/05 that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

FILED JUL 29 2005

| | |
|---|---|
| Case No. | CV 04-9233 PA (PLAx) |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. |

CASE NUMBER 1:05CV01548
JUDGE: Royce C. Lamberth
DECK TYPE: General Civil
DATE STAMP: 7/29/2005

Present: The Honorable  PERCY ANDERSON, UNITED STATES DISTRICT [JUDGE]

| C. Kevin Reddick | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:
                None                                None

ENTERED CLERK, U.S. DISTRICT COURT
JUL 18 2005
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**Proceedings:**     IN CHAMBERS — COURT ORDER

Before the Court is a Motion to Dismiss filed by defendants Russian Federation, Russian Ministry of Culture and Mass Communication, Russian State Library ("RSL"), and Russian State Military Archive ("RSMA") (collectively "Defendants") (Docket No. 13). Defendants contend that this Court lacks subject matter jurisdiction, personal jurisdiction, and proper venue to adjudicate the expropriation claim asserted against them by plaintiff Agudas Chasidei Chabad of United States ("Plaintiff"). Defendants' Motion additionally asserts that the Complaint fails to state a claim upon which relief can be granted and that the Complaint should be dismissed for forum non conveniens. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter is appropriate for decision without oral argument. The hearing calendared for July 11, 2005 is vacated, and the matter taken off calendar.

I.     Factual Background

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

Plaintiff is a non-profit religious organization which began in Eastern Europe in 1775 and was then incorporated in New York in 1940. Since its founding, it has been led by seven Lubavitcher Rebbes, the last of whom died in 1994. Over time, these Rebbes collected an extensive library of approximately 12,000 books and 381 manuscripts on Chabad Chassidic philosophy and Jewish law and tradition (the "Library") and created an archive of the Rebbes' handwritten personal records, teachings, and correspondence (the "Archive").

When the German Army invaded Russia during World War I and forced the Fifth Rebbe to flee his home in 1915, he left the Library in Moscow for safekeeping. The Bolshevik Revolution and subsequent civil wars prevented the Fifth Rebbe from recovering the property. Around February 1920, the Soviet Department of Scientific Libraries mandated that the Library be sealed in boxes and transferred to a storage facility at the State Rumyantsev Museum.[1] In 1921, the Soviet Department

---

[1]  The State Rumyantsev Museum is the predecessor of RSL. During the existence of the Soviet Union, RSL was named the Lenin State Library.

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-9233 PA (PLAx) | Date | July 14, 2005 |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. | | |

approved the return of the Library to the Sixth Rebbe but he did not take possession of the Library at that time because he could not afford to pay for the transfer. Around February 25, 1925, the Sixth Rebbe wrote to the Soviet Department again, this time to confirm that the Library had not simply been abandoned. Plaintiff alleges that the Soviets responded by arresting and torturing the Sixth Rebbe, forcing him out of the country, and requiring him to leave the Library behind in RSL, where it remains today.

The Sixth Rebbe began collecting a new library ("New Library") in 1925 and brought the New Library and the Archive with him when he fled first to Latvia and then to Poland. Following Nazi Germany's invasion of Poland on September 1, 1939, the Sixth Rebbe left the New Library and the Archive behind when he escaped from Poland and arrived in the United States on March 19, 1940. The Sixth Rebbe became a United States citizen and incorporated Plaintiff in New York in 1940. Today, Plaintiff's cental library and worldwide headquarters are located in New York.

When World War II ended, the Red Army seized a portion of the Archive in Poland and delivered it to RSMA, where it remains today. About 90 boxes of the Archive were returned to Plaintiff in 1941 and 25 crates of the Archive were returned to Plaintiff by the Polish government in 1974. That portion of the Archive remains with Plaintiff in New York. The New Library was delivered to the United States in 1946 and is part of the collection housed at Plaintiff's central library.

Around December 1990, the Seventh Rebbe appointed a five-member delegation to retrieve the Library and Archive. In September 1991, Soviet President Mikhail Gorbachev ordered that the Lenin State Library return the Library to Plaintiff. Plaintiff then filed a suit in <u>Gosarbitrazh</u>, the state arbitration court, for recovery of the Library. On October 8, 1991, the court apparently held that Plaintiff owned the Library and ordered that it be returned to Plaintiff within one month. The Chief State Arbiter confirmed this decision on November 18, 1991. When the Soviet Union collapsed just a few months later, Plaintiff alleges that the state arbitration court lost the power to enforce its decisions. On December 25, 1991, Gorbachev resigned as President and defendant Russian Federation replaced the Soviet Union. According to Plaintiff, the Deputy Chief Arbiter of defendant Russian Federation unilaterally nullified the court's October 8 and November 18 decisions on February 14, 1992.

In 1992, Leon Fuerth, then an aide to Senator Al Gore for national security affairs, met with one of Plaintiff's Russian representatives. Plaintiff's representative informed Fuerth that President Boris Yeltsin had promised that the Library would be returned to Plaintiff. Fuerth confirmed this fact through conversations with the State Department. When Senator Gore became Vice President, he raised the issue of the return of the Library with both Prime Minister Chernomyrdin and President Yeltsin. United States Ambassadors to Russia also pursued the issue. As a result of these efforts, and President Clinton's assistance, seven books were indefinitely loaned to the Library of Congress and then to Plaintiff. One more book was given to Vice President Gore, who then gave it to Plaintiff.

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 04-9233 PA (PLAx) | Date | July 14, 2005 |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. | | |

On December 16, 1993, Fuerth, by then an Assistant to Vice President Gore for National Security Affairs, and Evgeny Sidorov, the Minister of Culture of Russia, signed a Memorandum of Understanding asserting that the Library would be transferred to a new facility by March 31, 1994. RSL pledged to create a Center for Oriental Literature that would house, among other things, the Library and a room dedicated to Chassidic prayers and rituals. RSL estimated that it would finish and transfer the Library to the Center by the end of 2005. Plaintiff was not a party to the Memorandum, and Plaintiff contends that Defendants have not fulfilled their obligations under the Memorandum.

II.   Discussion

Plaintiff filed this action against Defendants on November 9, 2004 alleging claims for the violation of international law, declaratory relief, and injunctive relief compelling the return of the Library and the Archive to Plaintiff's central library in New York. Plaintiff has brought this suit under the Foreign Sovereign Immunities Act ("FSIA"). The FSIA offers jurisdictional immunity to foreign states except in certain limited circumstances. Those circumstances include expropriation claims against foreign governmental entities which also engage in commercial activities in the United States. 28 U.S.C. § 1605(a)(3).

   A.   Venue in the Central District of California

Although courts typically decide subject matter jurisdiction before personal jurisdiction, and personal jurisdiction before venue, the Supreme Court has ruled that courts possess the discretion to address questions of venue before resolving jurisdictional issues. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588, 119 S. Ct. 1563, 1572, 143 L. Ed. 2d 760 (1999) (holding that when an "alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction"); Leroy v. Great Western United Corp., 443 U.S. 173, 180, 99 S. Ct. 2710, 2715, 67 L. Ed. 2d 464 (1979) (holding that "when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue"). Because of the significant venue issues raised by Defendants' Motion, the Court will address venue before considering the other issues raised by the Motion.

The venue statute, 28 U.S.C § 1391, includes a provision dealing specifically with FSIA cases. Actions against foreign states may be brought:

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
>
> (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of

SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. CV 04-9233 PA (PLAx) | Date July 14, 2005 |
| Title Agudas Chasidei Chabad v. Russian Federation, et al. | |

this title;

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f). Both parties agree that only §§ 1391(f)(3) and (f)(4) are potentially implicated by this case. The Ninth Circuit has discussed the relationship between §§ 1391(f)(3) and (f)(4):

> Section 1391(f)(3) authorizes venue in any judicial district in which an agency or instrumentality of a foreign state is "doing business" if the agency or instrumentality is sued, and § 1391(f)(4) authorizes venue in the federal district court for the District of Columbia if the foreign state itself is sued. We do not read the statute to require that (f)(3) be the exclusive basis on which venue is available when an agency or instrumentality of the foreign state is sued, or that (f)(4) be the exclusive basis when a foreign state is sued. Sections (f)(3) and (f)(4) are alternative venue provisions, separated by the word "or." Where, as here, both the foreign state and its instrumentality are sued in the same suit, both venue provisions are potentially available.

Altmann v. Republic of Austria, 317 F.3d 954, 972 (9th Cir. 2002). Although both parties admit that venue would be appropriate in the District of Columbia pursuant to § 1391(f)(4), this case is only properly venued here if Plaintiff can establish that Defendants are doing business in this District pursuant to § 1391(f)(3). See Defendants' Reply, p. 18, ll. 21-22 ("In sum, venue can be proper in this case only in the District of Columbia."); Plaintiff's Opposition, p. 33, ll. 21-24 ("Should this [C]ourt determine that venue is improper, the Court should, in the interests of justice, transfer the case to the United States District Court for the District of Columbia.").

Relying on cases involving co-conspirators, Plaintiff contends that venue is proper in this District as to all Defendants as long as venue is appropriate here over at least one of them. See Plaintiff's Opposition, p. 33, ll. 8-11 ("Where venue is appropriate for one defendant, it is also appropriate for the related co-defendants.") (citing Southmark Prime Plus, L.P. v. Falzone, 768 F. Supp. 487 (D. Del. 1991)). While some cases involving conspiracies among multiple defendants have allowed for venue in one district even when venue might not be proper as to all defendants, the general rule is that venue must

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 04-9233 PA (PLAx) | Date | July 14, 2005 |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. | | |

be proper as to each defendant. Hoover Group, Inc. v. Custom Metalcraft, Inc., 84 F. 3d 1408, 1410 (Fed. Cir. 1996). Contrary to Plaintiff's contention, the statutory framework of § 1391(f) supports the conclusion that venue is proper under § 1391(f)(3) only if each defendant has engaged in commercial activity in this District. Specifically, in reading §§ 1391(f)(3) and (f)(4) together, as the Ninth Circuit did in Altman, § 1391(f)(4) acts as a residual venue provision to allow for venue in the District of Columbia when venue is not proper in any other district under §§ 1391(f)(1)-(3).[2/]

Neither Plaintiff nor Defendants dispute the fact that defendant Russian Federation and defendant Russian Ministry of Culture and Mass Communications conduct business in this District. Accordingly, for venue to be proper in this District, RSL and RSMA must have engaged in commercial activity in this District.

1. **RSL's Commercial Activity**

Plaintiff attempts to establish venue in this District based on various commercial activities engaged in by RSL, including website hosting, publishing, copyrighting, loaning of books, and selling research and information.

Plaintiff alleges that RSL's website constitutes commercial activity in this District. In determining when a defendant's website constitutes a presence sufficient to allow a court to exercise jurisdiction over the defendant, the Ninth Circuit has distinguished between passive and interactive websites:

> Unlike passive sites . . . , users can exchange information with the host computer when the site is interactive. Courts that have addressed interactive sites have looked to the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine if sufficient contacts exist to warrant the exercise of jurisdiction.

Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Where a defendant's only contacts with a district are through a passive website, those contacts are insufficient to allow for the exercise of jurisdiction over the defendant. Id.

Here, RSL maintains an English-language website. The website contains lists of books, their prices, and their dates of publication. No products can be purchased directly from the website but the site includes a telephone number, fax number, and e-mail address. Because of the passive nature of the

---

[2/] In this way, § 1391(f)(4) serves a similar purpose to the residual venue provisions in §§ 1391(a)(3) and (b)(3).

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-9233 PA (PLAx) | Date | July 14, 2005 |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. | | |

website, the Court concludes that Plaintiff has not satisfied its evidentiary burden to establish that RSL is doing business in this District through its website.

Plaintiff further alleges that RSL and Pashkov Dom, its internal publishing house, are engaged in commercial activity in this District. Plaintiff has submitted evidence that some RSL and Pashkov Dom materials can be found or are available for purchase in the United States. Some of these materials are available through Norman Ross Publishing, Inc. and ProQuest Information & Learning Company. Norman Ross possesses rights to publish certain items from RSL's collection. As part of its arrangement with Norman Ross, RSL filed applications for two copyrights with the United States Copyright Office for books they jointly published. ProQuest acquired Norman Ross in 2002. ProQuest has rights to market and distribute microfilm copies of newspapers from RSL's collection. Additional items from RSL can be purchased through East View Information Services. Plaintiff has submitted no evidence of any relationship between RSL and East View. Although Norman Ross, ProQuest, and East View may have sold RSL and Pashkov Dom materials to customers located in this District, there is no evidence that RSL or Pashkov Dom were directly involved in these transactions. As a result, the purchases of these materials through Norman Ross, ProQuest, and East View are not evidence that RSL is doing business in this District. Additionally, because Norman Ross, ProQuest, and East View are not headquartered or incorporated in this District, the contacts between RSL and these third-parties do not support venue here.[3]

RSL also allegedly has a relationship with Russian Courier, a service which offers a fee-based supply of documents, information, and research to institutions, organizations, and private parties. Russian Courier is located at RSL but its bylaws clearly indicate that it is an "autonomous, non-profit organization." Declaration of Lan T. Quach, Ex. F, p. 43-44. Plaintiff has submitted no evidence that Russian Courier's activities should be attributed or binding upon RSL. At most, the evidence suggests that Russian Courier could be considered akin to an independent subsidiary of RSL. The general rule is that "the 'doing business' test of the venue statute must be met not by the activities of the subsidiary distributing company but solely by the activities of the parent corporation itself." Papercraft Corp. v. Proctor and Gamble Co., 439 F. Supp. 1060, 1062-63 (W.D. Pa. 1977) (holding that the "separation between a parent corporation and a subsidiary is real" and that the subsidiary's activities are not a sufficient basis for subjecting the non-resident parent to venue in the same district). Accordingly, whatever commercial activities Russian Courier may engage in, including its passive website, Plaintiff's evidence is insufficient to establish that those activities support venue for RSL in this District.

Plaintiff argues that a loan made by RSL to the Library of Congress constitutes commercial activity in the United States because a loan may occur with the expectation of a potential sale. Malewicz

---

[3] Norman Ross was located in New York. Its agreements with RSL were entered into and were to be governed in accordance with the laws of New York. See Declaration of Scott S. Widitor, Ex. I, p. 123. ProQuest is incorporated in Delaware and East View is a Minnesota corporation.

SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 04-9233 PA (PLAx) | Date | July 14, 2005 |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. | | |

v. City of Amsterdam, 362 F. Supp. 2d 298, 314 n.5 (D.D.C. 2005) (holding that "loaning artworks . . . exactly resembles conduct in which private museums and persons engage when they desire visibility and potential sales for the art, a clearly commercial, for-profit purpose"). Regardless of whether this loan constituted commercial activity, no part of the exchange took place in this District. As a result, RSL's loan of the seven books to the Library of Congress does not establish venue for RSL in this District.

Finally, following the completion of briefing on the Motion to Dismiss, Plaintiff filed an Ex Parte Application for an Order Permitting Submission of Belatedly Produced Documents. Among these documents is a 1997 agreement between RSL and New York's Museum of Modern Art ("MOMA") allowing MOMA to exhibit artwork from RSL's collection as part of an exhibition. That exhibition of movie posters created by Georgy and Vladimir Stenberg did not involve the Library or Archive. The exhibition did, however, appear at the Armand Hammer Art Museum and Cultural Center in Los Angeles from May 31, 1999 to August 12, 1999. Even if the exhibition could be considered a commercial activity in this District, § 1391(f)(3) requires that the agency or instrumentality "is doing business" in this District. Because that activity occurred six years ago, RSL's involvement in the Stenberg Brothers' exhibition is not evidence that RSL is currently doing business in this District. Accordingly, this additional evidence does not support venue here.

  2. RSMA's Commercial Activity

As with RSL, Plaintiff attempts to establish venue in this District for RSMA based on the availability of certain RSMA publications in the United States and a publishing agreement between RSMA and Yale University. Similar to RSL's relationship with Norman Ross, RSMA's relationship with Yale does not justify venue in this District. Plaintiff submits no evidence or argument that RSMA's relationship with Connecticut-based Yale amounts to RSMA's "doing business" in this District. RSMA has also apparently entered into royalty agreements with Primary Source Media which allow Primary Source to publish and market microfilm copies of portions of RSMA's collection.[4/] Although Primary Source has sold copies of the RSMA microfilm within this District, there is no evidence that RSMA was directly involved in the transactions. See Plaintiff's Opposition, p. 25, ll. 25-27 ("Pursuant to these royalty contracts, RSMA microfilm has been sold and distributed by Primary Source Media to customers in the United States and this District . . . ."). Accordingly, there is no evidence that RSMA is doing business in this District. This Court therefore lacks venue over RSMA.

  B. Dismissal or Transfer for Improper Venue

Plaintiff has requested that this Court transfer this action to the District Court for the District of Columbia should it find venue improper in this District. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

---

[4/] Florida-based Primary Source is a division of Thomas Gale, a Delaware corporation.

SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 04-9233 PA (PLAx) | Date | July 14, 2005 |
| Title | Agudas Chasidei Chabad v. Russian Federation, et al. | | |

transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Transfers are therefore only appropriate when two criteria are satisfied: (1) the action could have been brought in the transferee venue; and (2) the transfer is in the interest of justice.

As both parties admit, this action could have been brought in the District of Columbia. See 28 U.S.C. § 1391(f)(4) ("[A civil action against a foreign state . . . may be brought] in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."). Each of the named defendants is a "foreign state" under the terms of the FSIA. See 28 U.S.C. § 1603(a) ("A 'foreign state', . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state."). This action therefore could have been originally filed in the District of Columbia.

The "interest of justice" is served by transfers which avoid "time-consuming and justice-defeating technicalities" Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S. Ct. 913, 916, 8 L. Ed. 2d 39 (1962). In this instance, dismissal would require Plaintiff to engage in the costly and time-consuming process of re-serving Defendants in Russia. Additionally, the District of Columbia provides a more convenient location for many of both sides' witnesses. The Court therefore concludes that transfer is in the interest of justice.

### III.   Conclusion

For all of the foregoing reasons, the Court finds that venue is not proper in this District. Because venue is not proper here, the Court declines to rule on the remaining issues raised by Defendants' Motion to Dismiss. Given that this action could have originally been brought in the District of Columbia, and the interest of justice favor transfer in this instance, the Court exercises its discretion to transfer this action to the District Court for the District of Columbia.

IT IS SO ORDERED.

Initials of Preparer _____

cc: