UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



**FILED**

**JUL 3 0 2010**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |  |
|---|---|---|
| AGUDAS CHASIDEI CHABAD OF | § | |
| UNITED STATES, | § | |
| Plaintiff, | § | |
|  | § | |
|  | § | |
| v. | § | Civil Action No. 05-1548 (RCL) |
|  | § | |
| RUSSIAN FEDERATION, *et al.*, | § | |
| Defendants. | § | |
|  | § | |
|  | § | |
|  | § | |

## MEMORANDUM OPINION

Before the Court is plaintiff Agudas Chasidei Chabad of United States' Motion for Entry of Default Judgment Against All Defendants [79-1]. Upon consideration of the motion, the default posture of the case, the entire record, and applicable law, the Court will grant the motion for the reasons set forth below.

### I. Procedural History

The complete factual history of this case is set forth in the Court's prior opinion in *Agudas Chasidei Chabad of United States v. Russian Federation*. 466 F. Supp. 2d 6, 10-14 (D.D.C. 2006) (Lamberth, J.). Plaintiff Agudas Chasidei Chabad of United States is a New York non-profit religious corporation that commenced this action on November 9, 2004, in the United States District Court for the Central District of California against defendants the Russian Federation, the Russian Ministry of Culture and Mass Communication ("Ministry"), the Russian State Library ("RSL"), and the Russian State Military Archive ("RSMA"). (Plaintiff's Brief in Support of Motion for Entry of Default Against All Defendants ("Pl.'s Brief") [79-2] at 4.) Plaintiff's Complaint alleged that defendants possessed and obtained, in violation of international

law, a collection of invaluable religious books and manuscripts ("Collection") of which plaintiff

is and always has been the rightful owner. (*Id.*) Plaintiff sought return of the Collection under the

"expropriation" exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §

1605(a)(3), and asked for both declaratory and injunctive relief. (*Id.*) This Collection held by

defendants consists of two separate groups of religious writings: 12,000 books and manuscripts

seized during the Bolshevik Revolution and Russian Civil War between 1917 and 1925 (the

"Library"), and 25,000 pages of handwritten teachings and other writings of the Rebbes (the

Chabad religious leaders) which were seized by Nazi Germany during the 1941 invasion of

Poland and subsequently transferred by the Soviet Red Army to defendant RSMA as "trophy

documents" and "war booty" and are still held in Russia (the "Archive"). *See Agudas Chasidei*

*Chabad*, 466 F. Supp. 2d at 13.

On May 2, 2005, defendants filed a motion in the United States District Court for the

Central District of California to dismiss plaintiff's claims as to both the Library and Archive on

grounds of lack of jurisdiction under the FSIA, improper venue, failure to state a claim under the

act of state doctrine, and *forum non conveniens*. (Case No. 2:04-cv-09233-PA-PLA ("CA")

[13].) Before a resolution on the merits occurred, the case was transferred on July 14, 2005,

pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the District of Columbia.

(CA [56].) Regarding defendants' motions to dismiss for lack of jurisdiction, after full briefing

and oral argument, this Court on December 4, 2006, granted defendants' dismissal motion as to

the Library but denied the motion as to the Archive. *Agudas Chasidei Chabad*, 466 F. Supp. 2d

at 31. Both sides appealed to the U.S. Court of Appeals for the District of Columbia Circuit. (*See*

Notice of Appeal [57]; Order Granting Entry of Final Judgment [58].) On June 13, 2008,

following briefing and oral argument, the Court of Appeals found that this Court properly

possessed jurisdiction over plaintiff's claims concerning both the Library and Archive and found

that these claims were not barred by sovereign immunity under the FSIA or by defendants'

*forum non conveniens* or act of state defenses. *Agudas Chasidei Chabad of United States v.*

*Russian Fed'n*, 528 F.3d 934 (D.C. Cir. 2008). Defendants' petition for rehearing *en banc* was

denied on October 6, 2008, and no petition for *writ of certiorari* was filed with the United States

Supreme Court. (Pl.'s Brief [79-2] at 9.)

On remand to this Court, defendants filed an Answer on December 11, 2008 ("Defs.'

Answer" [37]) and subsequently filed an Amended Answer on March 13, 2009 ("Defs.'

Amended Answer" [63]). Soon thereafter, rather than respond to plaintiff's discovery requests,

defendants on June 26, 2009, filed a Statement with Respect to Further Participation [71] which

informed this Court that defendants "decline[d] to participate further in this litigation" and

"believe[d] this Court has no authority to enter Orders with respect to the property owned by the

Russian Federation and in its possession, and the Russian Federation will not consider any such

Orders to be binding on it." On the same day, per defendants' previous instructions, defendants'

counsel Squire, Sanders & Dempsey, LLP, filed a Motion to Withdraw Appearance as Counsel

of Record [72] which this Court granted by an Order [76] dated October 26, 2009. On October

27, 2009, in response to plaintiff's Motion for Entry of Default Against All Named Defendants

[73] filed on July 28, 2009, this Court ordered entry of default against the defendants due to their

refusal to continue in the litigation. (Order [77].) This Court also ordered that plaintiff should

"move for judgment on the default with proof satisfactory to the Court," pursuant to the FSIA.

(*Id.*; Order [78] (stating that plaintiff must file the motion within 30 days of April 7, 2010, or the

case will be dismissed for failure to prosecute).) Plaintiff so moved on May 5, 2010, in its

Motion for Entry of Default Judgment Against All Defendants [79-1], which is now before the Court.

## II. Legal Standard for FSIA Default Judgment

Under the Foreign Sovereign Immunities Act (FSIA), no judgment by default shall be entered by a court unless the claimant establishes his right to relief or claim by evidence satisfactory to the court. 28 U.S.C. § 1608(e); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003). To prevail in a FSIA default proceeding, a plaintiff "must present a legally sufficient *prima facie* case, *i.e.*, a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff." *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008). In FSIA default judgment proceedings, a plaintiff may establish proof by affidavit. *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 268 (D.D.C. 2003). Upon evaluation, the court may accept plaintiff's uncontroverted evidence as true. (*Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 255 (D.D.C. 2006) (Lamberth, J.) (citing *Campuzano*, 281 F. Supp. 2d at 268).

## III. Discussion

The FSIA provides the sole basis for jurisdiction over foreign sovereigns by courts of the United States. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-35 (1989). The general rule is that, under the FSIA, a district court has jurisdiction over a civil action against a foreign sovereign when the sovereign is not entitled to immunity. 28 U.S.C. § 1330 (a); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 (D.C. Cir. 2002). However, this general immunity is abrogated under the FSIA if one of its statutory exceptions applies. 28 U.S.C. §§ 1605, 1607; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

4

Plaintiff maintains that the FSIA's "expropriation" exception supplies the necessary jurisdiction. (Pl.'s Brief [79-2] at 31.) Under this exception, a foreign sovereign is not entitled to immunity in any case:

> [(1)] in which [at issue are] rights in property [(2)] taken in violation of international law . . . and . . . [(3)] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and [(4)] that agency or instrumentality is engaged in a commercial activity in the United States[.]

28 U.S.C. § 1605(a)(3). The plaintiff seeking relief has the burden of bringing forth·evidence to prove that an exception to the FSIA applies. *Crist v. Republic of Turkey*, 995 F. Supp. 5, 10 (D.D.C. 1998) (Lamberth, J.). As set forth below, this Court finds that plaintiff has met its evidentiary burden in this case, and thus entry of default on the judgment is appropriate.

### 1.   *Plaintiff Has Shown that Rights in Property Are at Issue.*

In order for the FSIA's "expropriations" exception to apply, plaintiff must bring forth evidence that rights in property are at issue. 28 U.S.C. § 1605(a)(3). Defendants initially conceded this issue in their motion to dismiss when they said that the rights in property were "not disputed inasmuch as Plaintiff's claim of right to the Library and the Archive are placed in issue by Plaintiff's complaint." (CA [13].)

Even absent this concession, plaintiff has demonstrated its right to the property at issue in this case, which was held in trust by plaintiff for the benefit of the worldwide Agudas Chabad religious organization. (CA [1]; Levine Aff. ¶ 8, Ex. D; *Agudas Chasidei Chabad of United States v. Gourary*, 833 F.2d 431, 434 (2d Cir. 1987); Lewin Aff., Ex. E (Gourary Trial Tr. at 2515-16, 2439) (stating that the religious leaders of Chabad do not approve of the accumulation of wealth or personal property).) In fact, the Soviet Union's own Arbitration Tribunal determined that the Library was "the communal property of the entire Agudas Chasidei Chabad movement." (CA [40].) In addition, even though the taking of the Library and Archive occurred before

plaintiff was incorporated in 1940, New York Corporations law allows for the automatic transfer

to the new corporation of interests in property that were possessed by the predecessor

unincorporated religious society. NY Relig. Corp. § 4. This is the case regardless of the physical

location of the property at the time of incorporation. *Id.* Thus, plaintiff has sufficiently

established its claim to the Library and Archive that defendants unlawfully possess and refuse to

relinquish.

### 2. *Defendant Took Plaintiff's Property in Violation of International Law.*

Second, for FSIA's expropriation exception to apply, plaintiff must prove that defendant

took plaintiff's property in violation of international law. 28 U.S.C. § 1605(a)(3). An

expropriation is a violation of international law if the taking is not for a public purpose, is

discriminatory, or does not provide for just compensation. *Crist*, 995 F. Supp. at 10. Plaintiff has

demonstrated that the takings of the Library and the Archive by defendants and their predecessor

regimes were not for a public purpose, were discriminatory, and occurred without just

compensation to plaintiff. This Court already found that the seizure of the Archive "was

discriminatory, not for a public purpose and did not result in payment of just compensation," and

this finding was not challenged or disturbed on appeal. *Agudas Chasidei Chabad*, 466 F. Supp.

2d at 19, *aff'd, Agudas Chasidei Chabad of United States v. Russian Fed'n*, 528 F.3d 934 (D.C.

Cir. 2008).

In addition, it is evident that the taking of the Library was discriminatory. (Lewin Aff.

Ex. G (stating that the Soviet government arrested and sentenced the Chabad religious leader the

Sixth Rebbe to death for practicing and spreading Jewish teachings).) Also, no compensation for

the Library was provided or offered to plaintiff. (CA [34] (defendant RSL's response to

plaintiff's interrogatory: "[RSL] does not contend that monetary compensation was paid.").

Regarding the Library, there are three distinct "takings" at issue. First, the Court of Appeals noted that defendants did not substantively refute plaintiff's assertions of the illegality of the initial seizure of the Library during the Bolshevik Revolution and Russian Civil War between 1917 and 1925. *Agudas Chasidei Chabad*, 528 F.3d at 943. Second, the Court of Appeals found that the unfulfilled promises by the newly constituted Soviet government to return the Library to plaintiff could properly constitute a separate "taking" in violation of international law. *Id.* at 945-46. A third "taking" of the Library occurred in 1992 when the Russian Federation was faced with an order transferring the Library back to plaintiff, and it decided by official decree to close to plaintiff all executive and judicial avenues of possible retrieval of the Library, thus ensuring no viable prospect of recover whatsoever. (CA [35] ¶ 11; CA [40] ¶ 15, Ex. J.) Defendants acted in contradiction to an explicit assurance from newly named Russian President Boris Yeltsin to President George H. W. Bush's emissary, Secretary of State Baker, that defendants would return the Library to plaintiff. (Pl.'s Brief [79-2] at 45.) In short, plaintiff has satisfactorily shown that defendants expropriated both the Archive and Library from plaintiff in violation of international law.

### 3.  *Plaintiff's Property Is Owned or Operated by Agencies or Instrumentalities of the Russian Federation, a Foreign State.*

Third, for FSIA's "expropriation" exception to apply, plaintiff must prove that agencies or instrumentalities of the Russian Federation are in possession of plaintiff's unlawfully expropriated property. 28 U.S.C. § 1605(a)(3). Whether the RSL or RSMA are agencies or instrumentalities under the "expropriation" exception to FSIA is a question of law. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 152-53 (D.C. Cir. 1994). The determining factor is whether the core function of the entity is governmental or commercial: if

the core function is commercial rather than governmental, the entity is an agency or instrumentality of the foreign state. *Id.* at 153; *Jacobson v. Oliver*, 451 F. Supp. 2d 181, 196 (D.D.C. 2006). The Court finds that plaintiff has met its burden of showing that the Archive and Library are possessed by the RSMA and RSL, which are agencies or instrumentalities of the Russian Federation.

To start, defendants in their motion to dismiss did not dispute that the RSMA and the RSL were agencies and instrumentalities of a foreign state, and they openly conceded the issue in their argument on appeal. *See Agudas Chasidei Chabad*, 528 F.3d at 947; (Russia Reply Br. at 38 n.8). Defendants never raised this issue during the five years of litigation in this Court and in the Court of Appeals. (Pl.'s Brief [79-2] at 48.) It was only after the Court of Appeals found that this Court properly possessed jurisdiction over both of plaintiff's claims that defendants first asserted that the RSL and RSMA were not agencies or instrumentalities of the Russian Federation. (*See* Amended Answer [63] ¶¶ 4-5.)

In the Amended Answer, defendants claimed that the RSMA and RSL were not agencies or instrumentalities of the Russian Federation and that their core functions were governmental. (*Id.*) However, plaintiff offered adequate evidence to refute this claim and to meet its *prima facie* burden. First, plaintiff has offered sworn declarations of both the Director of the RSMA and the Deputy Minister of the Russian Ministry of Culture and Mass Communication indicating that the RSMA is a "federal state institution" that is subject to the oversight and jurisdiction of the Russian Federation, and that federal agencies of the Russian Federation directly oversee the RSMA's administration of any property in the RSMA's possession. (Kouzelenkov Decl. (CA [17]) ¶ 2; Nadirov Decl. (CA [16]) ¶ 3.) Second, the General Director of the RSL submitted a sworn declaration that the RSL is a "federal state institution," was created under and is subject to

the laws of the Russian Federation, is a public library owned by the government, and is overseen by a Russian federal agency, as is the RSMA. (Federov Decl. (CA [14]) ¶¶ 2-3.) The Deputy Minister of the Russian Ministry of Culture and Mass Communication confirmed that federal agencies oversee the RSL's administration of any property it possesses. (Nadirov Decl. (CA [16]) ¶ 3.) Third, the commercial functions of the RSMA and the RSL are well-documented in the record. *See infra* Section III. 4. Accordingly, plaintiff has successfully demonstrated that the RSMA and RSL are agencies or instrumentalities of the Russian Federation.

In addition, there is not any real dispute that the Archive is possessed by the RSMA or that the Library has long been possessed by the RSL. Defendants acknowledged in their Supplemental Brief that the RSL and RSMA "own or operate" the Collection for FSIA purposes. (Pl.'s Suppl. Br. at 15 n.2; Defs.' Suppl. Br. at 20.) Furthermore, possession is sufficient to satisfy the "owned or operated" requirement of 28 U.S.C. § 1605(a)(3). *See Nemarian v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 370, 480-81 (D.C. Cir. 2007) (to "own" is to "have or hold as property or appurtenance"). Defendants conceded in their Amended Answer that the Archive has been possessed by the RSMA since after World War II. (Amended Answer [63] ¶ 19.) Also, the General Director of the RSL stated in his sworn declaration that the Library "has been continuously housed in the RSL (or its predecessors) since its seizure and expropriation by the Bolshevik government of the USSR during the years 1919-1920." (Federov Decl. (CA [14]) ¶ 4; *see also* Defs.' Answer [37] ¶ 11(a) (admitting that the Library is "presently in [the] physical possession of the RSL").) Thus, plaintiff has shown that the property at issue is owned or operated by agencies or instrumentalities of a foreign state, namely the Russian Federation.

#### 4. *Defendants Are Engaged in a Commercial Activity in the United States.*

Lastly, for FSIA's "expropriation" exception to apply, the agency or instrumentality in possession of the illegally expropriated property must be "engaged in commercial activity in the United States." 28 U.S.C. § 1605(a)(3). FSIA's definition of "commercial activity" asks whether the agency or instrumentality was engaged "in either a regular course of commercial activity or a particular commercial transaction or act." 28 U.S.C. § 1603(d). This Court and the Court of Appeals both found that the RSMA and RSL met this definition.

Regarding the RSMA, its Executive Director specifically acknowledged that the RSMA sometimes "execute[s] jobs for money." (Lewin Aff. ¶ 7, Ex. J (Kouzenlenkov Depo. 70:7-14).) In addition, the Court of Appeals found that as of the time that this suit was initially filed in November 2004, the RSMA had entered into contracts with two American corporations for the reproduction and worldwide sale of RSMA materials, including sale in the United States. *Agudas Chasidei Chabad*, 528 F.3d at 948. One set of these contracts included provisions waiving sovereign immunity and specified that the activities described in the contract were "commercial in nature." *Id.* This same set of contracts allowed the RSMA to receive $60,000 in advance royalties by the year 2000, while another contract with Yale University Press allowed the RSMA to receive a $10,000 royalty advance in one year. *Id.*

Similarly, the Court of Appeals determined that the RSL was engaged in commercial contracts for profit in the United States. Some of these contracts were with Norman Ross Publishing (now ProQuest) to produce and distribute copies of RSL materials in exchange for a 10% royalty payment to the RSL. *Id.* One of these contracts "has already yielded RSL over $20,000 and another over $5,000." *Id.* Thus, plaintiff has shown that the RSMA and RSL are both engaged in a commercial activity in the United States.

**IV. Conclusion**

Plaintiff has met its burden of proving a *prima facie* case against defendants and has established its right to relief by evidence satisfactory to the court. For the foregoing reasons, plaintiff Agudas Chasidei Chabad of United States' Motion for Entry of Default Judgment Against All Defendants [79-1] shall be GRANTED.

A separate order shall issue this date.


_7/30/10_
Date

ROYCE C. LAMBERTH
Chief Judge
United States District Court