UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AGUDAS CHASIDEI CHABAD<br>OF THE UNITED STATES,<br><br>*Plaintiff*,<br><br>vs.<br><br>RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION; RUSSIAN STATE LIBRARY; and RUSSIAN STATE MILITARY ARCHIVE,<br><br>*Defendants*. | CASE NO. 1:05-CV-01548-RCL |

**PLAINTIFF'S MOTION FOR CIVIL CONTEMPT SANCTIONS AGAINST DEFENDANTS RUSSIAN FEDERATION, RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION, RUSSIAN STATE LIBRARY, AND RUSSIAN STATE MILITARY ARCHIVE**

Pursuant to this Court's inherent contempt power, *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, --- F.3d ---, 2011 WL 871174 (D.C. Cir. March 15, 2011), on the basis of the record in this case and the Affirmation of Alyza D. Lewin, plaintiff Agudas Chasidei Chabad of the United States ("Chabad") hereby moves for the entry of civil contempt sanctions against defendants Russian Federation, Russian Ministry of Culture and Mass Communication, Russian State Library ("RSL"), and Russian State Military Archive ("RSMA") to compel compliance with this Court's July 30, 2010, Order Granting Plaintiff's Motion For Entry Of Default Judgment Against All Defendants [80] and Memorandum Opinion [81] (collectively, the "Default Judgment" or "Order"), which ordered the defendants to return the entire "Library" and "Archive" to its rightful owner, Chabad.

## I.     <u>INTRODUCTION</u>

International law condemns the seizure of religious and cultural property in times of upheaval and war.[1] Chabad, an international non-profit Orthodox Jewish organization, has invoked this well-established principle to recover 12,000 sacred books and manuscripts seized from it during the Bolshevik Revolution and Russian Civil War (the "Library") and 25,000 pages of handwritten manuscripts and books seized by Nazi Germany and then looted as "trophy documents" in Poland in 1945 by the Soviet Red Army (the "Archive"). (Memorandum Opinion [81].) The complete factual history of this case is set forth in the Court's prior opinion in *Agudas Chasidei Chabad v. Russian Federation*, 466 F. Supp. 2d 6, 10-14 (D.D.C. 2006) (Lamberth, J.).

The defendants initially sought to challenge Chabad's claims in the courts of the United States under American law. When their threshold defenses were rejected by the United States Court of Appeals and by this Court, they determined, after filing an Answer, to withdraw from the litigation and re-assert their previously-rejected jurisdictional challenge to the authority of a United States court to proceed. They have, since that time, failed to safeguard and protect the sacred books and manuscripts that are the subject of this litigation. This Court has, following the defendants' withdrawal, entered a default and a default judgment directing the defendants to return the Library and the Archive. The defendants have, however, made clear by submissions to this Court and public statements that they intend deliberately to flout the directive of this Court and have shown no intention to comply with the Court's Default Judgment. As a result, Chabad

---

[1] *See* Hague Convention No. IV Respecting the Laws and Customs of War on Land, Oct. 18, 1907, Annex, art. 56, 36. Stat. 2277, T.S. No. 539. Russia, as a signatory to the 1907 Hague Convention, was therefore bound by the Hague Convention of 1907 when it subsequently seized the Archive and the Library. *See* State Parties to the 1907 Hague Convention (IV), International Committee to the Red Cross, http://www.icrc.org/ihl.nsf/WebSign?ReadForm&id=195&ps=P (last visited Mar. 16, 2011). Moreover, "[a]n expropriation is a violation of international law if the taking is not for a public purpose, is discriminatory, or does not provide for just compensation." (Memorandum Opinion [81] at 6, citing *Crist v. Republic of Turkey*, 995 F. Supp. 5 (D.D.C. 1998) (Lamberth, J.).) This Court has found in this case that Russia's takings of the Library and the Archive were discriminatory, not for a public purpose, and no compensation was provided to Chabad. ([81], at 6-7.)

has no choice other than to seek compliance with the judgment by the traditional and well-accepted procedure of seeking the entry of a monetary penalty for every day that the defendants continue to disobey this Court's Order.

## II. HISTORY OF THE LITIGATION

**A. The Complaint. --** Chabad filed its claims to recover the Library and Archive in the United States District Court for the Central District of California on November 9, 2004. *Agudas Chasidei Chabad*, 466 F. Supp. 2d at 10. On May 2, 2005, defendants filed a motion to dismiss Chabad's claims as to both the Library and the Archive on grounds of lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), improper venue, failure to state a claim under the act of state doctrine, and *forum non conveniens*. (Case No. 2:04-cv-09233-PA-PLA ("CA") [13].) On May 18, 2005, after the parties filed a stipulation concerning jurisdictional discovery, the Court issued an Order: "Any counsel or party which the Court finds has unnecessarily delayed these proceedings or taken an unreasonable position with respect to a discovery issue faces the imposition of sanctions." (Order, CA [31].)

**B. Transfer to This Court --** The case was transferred pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the District of Columbia (CA [56]), and this Court, on December 4, 2006, granted defendants' dismissal motion as to the Library but denied the motion as to the Archive.[2] *Agudas Chasidei Chabad*, 466 F. Supp. 2d at 31.

**C. Ruling of the Court of Appeals --** Both sides appealed to the United States Court of Appeals for the District of Columbia Circuit. (Notice of Appeal [57]; Order Granting Entry of Final Judgment [58].) On June 13, 2008, following briefing and oral argument, the Court of

---

[2] During oral argument on the motion to dismiss, Russia's counsel conceded, in response to this Court's questioning, that the "Russian Federation has entered into agreements with respect to the repatriation of property taken, acquired from the Germans during the war, conventions and other agreements." (8/29/06 Hrg. Tr. at 18.) This Court then asked: "Then why wasn't this repatriated, the archives?" (*Id.*) Russia's counsel responded, "It only became an issue in June of 2004, and we're now in court litigating it. And we're litigating the issue of jurisdiction, in the first instance. And so I suppose we haven't gotten to it yet, is the only answer that I can give you, because we are responding to this Court's process, this Court's power." (*Id.*)

Appeals found that this Court had jurisdiction over Chabad's claims concerning both the Library and Archive. The Court of Appeals determined that these claims were not barred by sovereign immunity under the FSIA or by defendants' *forum non conveniens* or act-of- state defenses. *See Agudas Chasidei Chabad of United States v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008). Defendants' petition for rehearing *en banc* was denied on October 6, 2008, and defendants did not seek review by the United States Supreme Court. (Pl.'s Brief [79-2] at 9.)

      **D. Post-Appeal Pleadings and Events --** Following remand to this Court, defendants filed an Answer on December 11, 2008 [37].  Chabad thereafter discovered that twelve original pages of religious manuscripts that are the subject of this litigation and are part of the Archive were being offered for sale outside Russia.  On January 7, 2009, Chabad filed a Motion for Preliminary Injunction [38] to secure the integrity of the Archive and the Library pending a final judgment of this Court.  On January 27, 2009, this Court entered a Preliminary Injunction Order [54-2] and made findings of fact, including (1) that "pages of the 'Archive' appear to have been surreptitiously removed from their repository in the Russian State Military Archive in Moscow and transported to Israel for possible sale to private parties"; (2) that the "contents of the 'Archive' and of the 'Library' are unique and irreplaceable"; and (3) that the "absence of even a single page of the 'Archive' or a single volume of the 'Library' would substantially and irreparably harm the plaintiff because each of these items is of great religious value to Chabad and its followers."  (Preliminary Injunction Order [54-2].)  This Court concluded from unrebutted evidence that "the present conditions under which the 'Archive' and the 'Library' are maintained by the defendants appears not to have adequately preserved the integrity and security of the 'Archive' and of the 'Library' and, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, relief is needed to maintain the *status quo* and to preserve the jurisdiction of this Court."  ([54-2].) Accordingly, this Court preliminarily enjoined and restrained defendants, pending final judgment in these proceedings, from taking any steps that would compromise or injure the existence of the integrity of the "Library" and "Archive" collections, and further

ordered that they take all necessary measures to secure, protect, and preserve the property at issue in this litigation.  ([54-2].)

On March 13, 2009, the defendants, represented by Squire, Sanders & Dempsey, their attorneys since the inception of the litigation, filed an Amended Answer which admitted that "the writings at issue consist in part of a collection of rabbinic books, archives and manuscripts on Chassidic philosophy, Jewish religious law, prayer, and tradition," and "that materials Plaintiff alleges to be a part of what Plaintiff defines as the Archive were included with materials transported by the Soviet Union after World War II and were and remain stored at the RSMA."  (Amended Answer [63], at ¶¶ 9, 19.)  Chabad then served discovery as to the merits of the claims and affirmative defenses.

**E. Defendants' Withdrawal and Default --** "Soon thereafter, rather than respond to plaintiff's discovery requests, defendants on June 26, 2009, filed a Statement with Respect to Further Participation [71] which informed this Court that defendants 'decline[d] to participate further in this litigation' and 'believe[d] this Court has no authority to enter Orders with respect to the property owned by the Russian Federation and in its possession, and the Russian Federation will not consider any such Orders to be binding on it.'"  (Memorandum Opinion [81].)  On October 27, 2009, in response to Plaintiff's Motion for Entry of Default Against All Named Defendants [73] filed on July 28, 2009, this Court ordered entry of default against the defendants due to their refusal to continue in the litigation.  (Order [77].)  Chabad then moved on May 5, 2010 for judgment on the default with proof satisfactory to the Court pursuant to the FSIA.  (Motion for Entry of Default Judgment [79-1].)

**F. Entry of the Default Judgment --** On July 30, 2010, this Court granted Chabad's Motion for Entry of Default Judgment Against All Defendants [79-1].  (Memorandum Opinion [81].)  This Court concluded that "plaintiff has demonstrated its right to the property at issue in this case, which was held in trust by plaintiff for the benefit of the worldwide Agudas Chabad religious organization."  ([81] at 5.)  This Court further concluded that "[p]laintiff has demonstrated that the takings of the Library and the Archive by defendants and their predecessor

regimes were not for a public purpose, were discriminatory, and occurred without just compensation" and, thus, "plaintiff has satisfactorily shown that defendants expropriated both the Archive and Library from plaintiff in violation of international law." ([81] at 6-7.) The Court also found that "plaintiff has met its burden of showing that the Archive and Library are possessed by the RSMA and RSL, which are agencies or instrumentalities of the Russian Federation." ([81] at 8.) And this Court concluded that "plaintiff has shown that the RSMA and RSL are both engaged in a commercial activity in the United States." ([81] at 10.)

Accordingly, this Court concluded that "[p]laintiff has met its burden of proving a *prima facie* case against defendants and has established its right to relief by evidence satisfactory to the court." ([81] at 11.) On the above basis this Court ordered defendants to "surrender to the United States Embassy in Moscow or to the duly appointed representatives of Plaintiff Agudas Chasidei Chabad of United States the complete collection of religious books, manuscripts, documents and things that comprise the 'Library' and the 'Archive' presently being held by the Defendants at the Russian State Library . . . ." (Order [80].)

**G. Defendants' Notice and Rejection --** Defendants received notice of the Order [80] no later than December 17, 2010, when the U.S. Department of State served them with copies of the Default Judgment pursuant to the requirements of the FSIA, 28 U.S.C. § 1608. ([75, 84, 84-1, 85, 86, 87].) Yet both Chabad and the Court continue to wait empty-handed for delivery of the Library and Archive. On August 12, 2010, it was reported in the media that the Russian Foreign Ministry issued the following statement: "Unfortunately, the U.S. judge made an unlawful decision, which cannot be enforced in Russia, as a matter of fact. There is no agreement between Russia and the U.S. on mutual recognition and enforcement of civil judgments."[3] And in a letter

---

[3] See *Russia won't give Schneerson library to American Hasids*, Interfax, Aug. 12, 2010, located at http://www.interfax-religion.com/print.php?act=news&id=7580; *Russia refusing to return rebbe's library*, Jewish Telegraph Agency, Aug. 12, 2010, located at http://www.jta.org/news/article/2010/08/12/2740454/russia-refuses-to-return-rebbes-library (reporting that the Russian Foreign Ministry called the Court's Default Judgment a "rude violation" of international law); *Russia dismisses US court ruling to hand over Hasidic Jewish library to NY group*, Fox News, Aug. 12, 2010, located at http://www.foxnews.com/world/2010/08/12/russia-dismisses-court-ruling-hand-hasidic-jewish-

dated November 16, 2010, sent to the Court by the Ministry of Justice of the Russian Federation and received by the Court on January 21, 2011, the Russian Ministry of Justice returned "without judicial review" the Default Judgment papers "due to the nonexistence of an international treaty between the United States and Russia which would regulate legal provisions pertaining to civil, family and trade matters." ([88, 90, 90-1].)

      **H. Pattern of Contempt --** Defendants repeatedly exhibited contempt for this Court throughout the years of these legal proceedings. The more notable instances of bad behavior include providing false interrogatories[4] and filing a motion to dismiss based on false affidavits

---

library-ny-group/; Carol Vogel and Clifford J. Levy, *Dispute Over Jewish Archive Derails Russian Art Loans to U.S.*, N.Y. Times, Feb. 2, 2011, http://www.nytimes.com/2011/02/03/arts/design/03museum.html?_r=2&pagewanted=all; *Russia orders immediate return of artworks from icon museum in Clinton,* Culture Desk From The Boston Globe Arts & Entertainment Staff, March 17, 2011, located at http://www.boston.com/ae/specials/culturedesk/2011/03/russia_orders_immediate_return.html; *Russian icons ordered home from U.S. in obscure legal dispute*, RIANOVOSTI, March 19, 2011, located at http://en.rian.ru/art_living/20110319/163095191.htmlhttp:/en.rian.ru/art_living/20110319/163095191.html*; Russia Orders Immediate Return of Artworks*, Yiddish Nayes, March 22, 2011, located at http://yiddishnayes.com/index.php?event=detail&blog_id=4957.

[4] In response to an interrogatory during jurisdictional discovery asking the RSMA to state all facts to support any contention that the Archive was nationalized, the RSMA responded, "due to the passage of time and the change in government, RSMA is presently unable to determine the circumstances under which the Archive was acquired and consequently whether the Archive has been nationalized." (CA [34] at Ex. 57, p. 735.) Vladimir Korotaev, the deputy director of the RSMA, verified these (false) interrogatory responses on June 8, 2005. (CA [34] at ex. 57, p. 738.) Notably, the prior year, on July 23, 2004, Mr. Korotaev had sent a memorandum to Col. S. Kamenichenko, acting director of the armed forces of the Russian Federation's archive service, which explained exactly how the RSMA acquired the Archive. Mr. Korotaev's memorandum states that the Archive was received "in 1945 as part of German trophy documents." (CA [68] at Ex. B, p. 22.) Russia waited until *after* Chabad filed its opposition to the motion to dismiss on June 17, 2005 before it belatedly produced this "smoking gun" document on July 6, 2005 -- thereby forcing Chabad to file an *ex parte* application for permission to file belatedly produced documents in connection with Chabad's opposition papers. (*Ex Parte* Application, CA [68].) See also defendants' Amended Answer wherein they eventually conceded (after jurisdictional discovery proved the falsity of their interrogatory responses) that the Archive was transported by the Soviet Union to Moscow after World War II. ([63] at ¶ 19.)

asserting that the RSL and RSMA had absolutely no commercial contacts in the United States.[5] Such evasive, incomplete interrogatory responses and false declarations in support of defendants' motion to dismiss "unnecessarily delayed" these proceedings by years, and therefore violated the Court's Order [31] of May 18, 2005. *See* Fed. R. Civ. P. 37(a)(4), (b)(2)(A). And in an episode of exceptional candor, to support its motion to dismiss on the grounds of *forum non conveniens*, defendants expressly stated that Russia is the more appropriate forum as the Russian Federation "may refuse to abide by [this Court's] judgment." *See Agudas Chasidei Chabad*, 466 F. Supp. 2d at 29. This Court has properly observed that such actions constitute an "affront" to this Court. *See id.* And defendants now continue to assert that they "will not consider any such Orders to be binding on it." ([71].)

The Russian Government has also taken steps to thwart this Court's jurisdiction and the enforcement of the Default Judgment. While it has had exclusive possession of the Library and the Archive, the defendants have allowed certain valuable manuscripts from the collections to find their way to the "black market." (Preliminary Injunction Order [54-2].) At best this constitutes negligence on the defendants' part, and at worst, it may have resulted from intentional removal of documents known to be sacred to Chabad. Irrespective of defendants' specific culpability, it is apparent that the Russian Federation is not taking its responsibilities to this Court and to international law seriously.

Most recently, in a puerile retaliatory gesture, the Russian Federation has announced publicly that it is demanding the return of artwork from American museums and will withhold future loans of artworks for fear that they may be attached to obtain compliance with the Default

---

[5] In support of its lack of commercial activity argument, the RSL and RSMA submitted (false) declarations on May 2, 2005 stating, respectively, that (1) the "RSL does not engage in any commercial activity in the United States" and (2) the "RSMA does not engage in any commercial activities in the United States." (Declaration of Vladimir Kouzelenkov, CA [17]; Declaration of Victor Fedorov, CA [14].) Contrary to Russia's claims, the Court of Appeals found that both the RSMA and the RSL were engaged in commercial activity in the United States sufficient to satisfy that element of 28 U.S.C. § 1605(a)(3). *See Agudas Chasidei Chabad of United States*, 528 F.3d at 946.

Judgment.[6]  Not content with simple refusal or failure to produce the Library or Archive, the defendants have made public pronouncements that they will continue to violate the Court's Order and are threatening consequences if efforts are made to secure compliance.

### III. CIVIL CONTEMPT SANCTIONS ARE WARRANTED.

**A. Authority Under the FSIA --** To protect its "essential ability to enforce judgments and orders," the Court should utilize its inherent power to punish defendants, and each of them, through significant civil contempt sanctions.  See *S.E.C. v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C. 2009) (Lamberth, C.J.) (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006).

On March 15, 2011, the Court of Appeals for the District of Columbia Circuit held that "contempt sanctions against a foreign sovereign are available under the FSIA." See *FG Hemisphere Associates v. Democratic Republic of Congo*, --- F.3d ---, 2011 WL 871174, at *4 (D.C. Cir. 2011); see also *Autotech Techs. V. Integral Research & Dev.,* 499 F.3d 737, 744 (7th Cir. 2007).  "As the Seventh Circuit has recognized, there is not a smidgen of indication in the text of the FSIA that Congress intended to limit a federal court's inherent contempt power." *FG Hemisphere Associates*, 2011 WL 871174, at *3 (citing *Autotech Techs.,* 499 F.3d at 744).  "Nor is there any legislative history supporting such a claim." *FG Hemisphere Associates,* 2011 WL 871174, at *3.

The majority of circuits have found that the court's inherent power to issue contempt sanctions is retained under the FSIA.[7] See *Autotech Techs.,* 499 F.3d at 740-45 (finding contempt

---

[6] See Carol Vogel and Clifford J. Levy, *Dispute Over Jewish Archive Derails Russian Art Loans to U.S.*, N.Y. Times, Feb. 2, 2011, http://www.nytimes.com/2011/02/03/arts/design/03museum.html?_r=2&pagewanted=all; *Russia orders immediate return of artworks from icon museum in Clinton,* Culture Desk From The Boston Globe Arts & Entertainment Staff, March 17, 2011, located at http://www.boston.com/ae/specials/culturedesk/2011/03/russia_orders_immediate_return.html

[7] Only the Fifth Circuit, in *Af-Cap, Inc v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006), has held that the FSIA does not provide authority for contempt sanctions against a foreign sovereign. In that dispute, the Republic of Congo defaulted on a loan and then refused to comply with the United States District Court for the Western District of Texas' "turnover order." *Id.* at 421-23 (a turnover order is a method of attachment). The Fifth Circuit held that the "contempt

sanctions against a company wholly owned by the Belarusian government appropriate after it failed to comply with the court's "Agreed Order"); *First City, Texas-Houston, N.A. v. Rafidain Bank,* 281 F.3d 48, 52-54 (2d Cir. 2002) (finding that contempt sanctions against a bank deemed an instrumentality of Iraq was appropriate after the bank refused to comply with discovery orders); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477-78 (9th Cir. 1992) (finding that contempt sanctions against a company organized under the laws of the People's Republic of China and an arm of the government was appropriate after the company refused to comply with discovery orders).

Indeed, "[i]t is incontrovertible that federal courts enjoy inherent contempt power" and that "power runs with a court's jurisdiction." *FG Hemisphere Associates,* 2011 WL 871174 at *3 (citing *Spallone v. United States,* 493 U.S. 265, 276 (1990); *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 795 (1987); *Shillitani v. United* States, 384 U.S. 364, 370 (1966); 11 A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2960 (2d ed. 2010)).  The Court's inherent power to punish parties is "essential to its ability to enforce judgments and orders." *S.E.C. v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C. 2009) (Lamberth, C.J.) (citing *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006)); *see also Cobell v. Babbitt*, 37 F. Supp. 2d 6, 9 (D.D.C. 1999) (Lamberth, J.) (the "court has the 'inherent power to protect [its] integrity and prevent abuses of the judicial process' by holding parties in contempt and ordering sanctions for violations of the court's orders") (quoting *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998)); *Landmark Legal Found. v. E.P.A.*, 272 F. Supp.

---

order, as written, does not fall within the provisions of the FSIA." *Id.* at 428. The court explained that because § 1610 and § 1611 of the FSIA, which describe the available methods of attachment and execution against property of foreign states, do not include monetary sanctions, the FSIA did not authorize contempt sanctions in that instance. *Id.* at 1428-29. The Seventh Circuit interpreted *Af-Cap*'s holding to be limited to monetary contempt sanctions "as an 'available method[] of attachment and execution against property of foreign states." *Autotech Techs.,* 499 F.3d at 745 ("[I]t is plain that nothing in the [*Af-Cap*] opinion suggests that the Fifth Circuit thought that the flaw was a jurisdictional one.").  Moreover, the D.C. Circuit recently found that *Af-Cap* is not persuasive because it fails to distinguish between the power to impose a contempt sanction and the authority to enforce it.  *See HG Hemisphere Associates*, 2011 WL 871174, at *4.

2d 70, 79 (D.D.C. 2003) (Lamberth, J.) (it is "appropriate to use the contempt power to identify wrongdoing and to prevent the recurrence of contumacious behavior in the future").

**B. The Burden of Proof --** Civil contempt "will lie only if the putative contemnor has violated an order that is clear and unambiguous" and the violation is "proved by clear and convincing evidence." *Broderick*, 437 F.3d at 1234. To satisfy the "clear and convincing" standard, "a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred" is required. *S.E.C. v. Bilzerian,* 729 F. Supp. 2d 1, 4 (D.D.C. 2010) (Lamberth, C.J.) (citing *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)). Here, the Court's Order [80, 81] could not be clearer -- defendants were ordered to return the entire "Library" and "Archive' to Chabad. They have not done so. Instead, defendants are taking steps to thwart enforcement of the Default Judgment.

**C. The Clarity of the Court's Order --** The Default Judgment [80, 81] was issued by this Court on July 30, 2010. The Default Judgment orders the defendants to return to Chabad both the Library and Archive [80, 81]. Specifically, the Order provides:

> Defendants are Ordered to surrender to the United States Embassy in Moscow or to the duly appointed representatives of Plaintiff Agudas Chasidei Chabad of United States the complete collection of religious books, manuscripts, documents and things that comprise the 'Library' and the 'Archive' presently being held by the Defendants at the Russian State Library and the Russian State Military Archive or elsewhere, and Defendants are further directed to assist and authorize the transfer of the 'Library' and the 'Archive' to the United States Embassy in Moscow or to Plaintiffs appointed representatives and to provide whatever security and authorization is needed to insure prompt and safe transportation of the 'Library' and the 'Archive' to a destination of Chabad's choosing.

([80].) Footnote one of the Order clearly identifies the contents of the "Library" and the "Archive."[8] ([80].) Indeed, the clarity of the Order is incontestable.

---

[8] Defendants surely understand which books, manuscripts and items comprise the "Library" and the "Archive." The Declaration of Victor V. Fedorov, the General Director of the RSL, filed

The Court's Order dated May 18, 2005 was also crystal clear: "Any counsel or party which the Court finds has unnecessarily delayed these proceedings or taken an unreasonable position with respect to a discovery issue faces the imposition of sanctions." (Order, CA [31].)

**D. Overwhelming Evidence of Non-Compliance --** Defendants' violation of the 2005 Order and Default Judgment is clear, convincing and absolute. Defendants unnecessarily delayed these proceedings for years by providing false interrogatory responses and false declarations under penalty of perjury. Defendants refused to respond to Chabad's post-appeal discovery as to the merits of the claims. *See* Fed. R. Civ. P. 37. And in total disregard of the decision of the Court of Appeals for the District of Columbia Circuit, *Agudas Chasidei Chabad of United States v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008), which affirmed this Court has jurisdiction over Chabad's claims concerning the "Library" and the "Archive" and rejecting Russia's *forum non conveniens* and act-of-state defenses, defendants continue to maintain that "this Court has no authority to enter Orders with respect to" the Library and Archive [71]. Defendants also contend that the "Russian Federation will not consider any such Orders to be binding on it." ([71].) Given defendants' refusal to provide merit-based discovery, refusal to continue in this litigation,

---

May 2, 2005, states: "Among the collections held by the RSL is the so-called Schneersohn Library. The Schneersohn Library consists of books and manuscripts accumulated in Russia by the Schneersohn rabbinical family . . . . The Schneersohn Library has been continuously housed in the RSL (or its predecessors) since its seizure and expropriation by the Bolshevik government of the USSR during the years 1919-1920." (CA [14], at ¶ 4.) Additionally, the report by Mr. Korotaev identifies the contents of the "Archive." The report states, "Please be advised that RGVA [Russian abbreviation for RSMA] houses Fund No. 706/k 'Schneerson Iossel Itzka - Ancient Jewish Philosophy Researcher, Chief Rabbi of Riga, 1928-1932'. The Fund contains 98 units dating back to 1907-1935, all totaling 10530 pages. The documents are in Hebrew, Yiddish, Russian, Latvian, ancient Hebrew and English languages." The report continues, "Fund's documents were received … in 1945 as part of the German trophy documents." [CA [68] at Ex. B, p. 22.) Based on defendants' own declarations and reports, it's clear they know which documents Chabad seeks to recover through this action.

and refusal to abide by this Court's orders, any post-judgment discovery to locate assets of the defendants in the United States for attachment pursuant to the FSIA would likely be futile.

True to their word, defendants have refused to comply with the Court's Order. Six months have elapsed since the Court issued its Default Judgment on July 30, 2010. ([80, 81].) On August 12, 2010, the Russian Foreign Ministry reportedly issued a statement calling the Default Judgment an "unlawful decision" that "cannot be enforced." See footnote 3, *supra*. Defendants were served with the Default Judgment on or before December 17, 2010, when the U.S. Department of State served the papers on each of the defendants through diplomatic channels pursuant to 28 U.S.C. § 1608. ([75, 84, 84-1, 85, 86, 87].) Nonetheless, defendants have not returned Chabad's Collection of sacred books and manuscripts. Nor have defendants provided any indication that they intend to comply with the Court's Order, let alone with international law, which clearly condemns the looting of religious and cultural property in time of upheaval and war. On these facts alone, defendants' actions (and inactions) constitute "clear and convincing" evidence of a violation of the Default Judgment. *See S.E.C.*, 729 F. Supp. 2d at 4.

Not only is the Russian Federation in violation of the Default Judgment, but it is actively making the return of Chabad's property more difficult. In response to this Court's Order, the Russian Government has halted any artwork loans to museums in the United States so as to arouse public opinion to prevent the Court from attaching such property in aid of execution of the Default Judgment.[9] Litigants have been sanctioned by this Court for much less. *See S.E.C.*, 729

---

[9] *See* Carol Vogel and Clifford J. Levy, *Dispute Over Jewish Archive Derails Russian Art Loans to U.S.*, N.Y. Times, Feb. 2, 2011, http://www.nytimes.com/2011/02/03/arts/design/03museum.html?_r=2&pagewanted=all. Russia is therefore aware of the Court's Order, yet simply remains steadfast in its opposition to complying with it.

F. Supp. 2d at 5 (parties were sanctioned for failure to dismiss their case, as required by court order, in a timely manner after an appeal). The Russian Federation is quite frank in its intentions: by "declin[ing] to participate further in this litigation," and by withholding property that this Court has determined to be owned by Chabad and should be returned immediately, defendants are now violating and will continue to violate the Court's Order.  ([71, 80, 81].)

Defendants' contempt is aggravated by their initial appearances in court and their efforts to have Chabad's complaint dismissed by this Court or by the Court of Appeals.  Time and resources of the Courts and of counsel were expended over a number of years to resolve their challenge to this Court's jurisdiction and other baseless defenses.  After losing the battle over jurisdiction, defendants avoided acknowledging that they had no defense on the merits.  Instead, they chose to refuse to respond to Chabad's post-appeal discovery.  (Memorandum Opinion [81], at 3.)  This Court observed that "rather than respond to plaintiff's discovery request," defendants have withdrawn from this litigation.  ([81].) Although civil contempt sanctions may be justified even without proof of bad faith (*Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997)), bad faith exists in abundance here.  This Court has already concluded that defendants and their predecessor regimes violated international law by seizing the Library and Archive for reasons other than a public purpose, with discriminatory conduct, and without just compensation to Chabad. ([81], at 6.)  Defendants' refusal to return such property in violation of the Court's Order is more than an affront. It is a slap in the face to American justice.  The Court should assert its inherent power to issue contempt sanctions against the defendants.

### IV. THE CIVIL CONTEMPT SANCTION SHOULD BE SUBSTANTIAL

Civil contempt sanctions, unlike discovery sanctions, are not punitive.  *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009). Contempt sanctions are employed to "coerce the

defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947); *see also Walker v. Center for Food Safety*, 667 F. Supp. 2d 133, 136 (D.D.C. 2009). The Archive and Library consist of thousands of books and religious documents held sacred to the Chabad branch of Judaism. Money will not remedy their seizure. ([54-2].) Only the return of these sacred texts will provide relief. Chabad therefore requests that the Court impose monetary sanctions sufficiently substantial to compel defendants to return the withheld books and manuscripts to Chabad.

When the purpose of contempt sanctions is to make the defendant comply with the order, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers*, 330 U.S. at 304. Russia is one of the world's largest economies, with a gross domestic product ("GDP") estimated at 1.477 trillion.[10] Russian Prime Minister Vladimir Putin recently praised the country's strong 3.8% growth in GDP in 2010, as well as its 8.3% growth in industrial output.[11] Considering the country's substantial economic resources, the Court should sanction defendants to a degree that will make them heed the orders of this Court. In *United States v. Philip Morris, USA*, 287 F. Supp. 2d 5, 15 (D.D.C. 2003), this Court took into account the financial resources of British American Tobacco, a large tobacco company, in issuing contempt sanctions in the amount of $25,000 per day until the company complied with the court order. In *American Rivers v. United States Army Corps of Engineers*, t274 F. Supp. 2d 62, 70 (D.D.C. 2003), this Court sanctioned the Army Corps of Engineers $500,000 per day unless it complied with a court order to reduce water flow levels. Holding the much less

---

[10] Data and Statistics 2010, Russia, International Monetary Fund, http://www.imf.org/external/pubs/ft/weo/2010/02/weodata/weorept.aspx?sy=2010&ey=2010&scsm=1&ssd=1&sort=country&ds=.&br=1&pr1.x=25&pr1.y=11&c=922&s=NGDPD%2CNGDPDPC%2CPPPGDP%2CPPPPC%2CPPPSH&grp=0&a= (last visited Mar. 16, 2011).

[11] Working Day Release, Government of the Russian Federation, Prime Minister Vladimir Putin Addresses the 7th Congress of the Federation of Independent Trade Unions of Russia (Jan. 12, 2011), http://premier.gov.ru/eng/events/news/13844/ (last visited Mar. 16, 2011).

economically robust Democratic Republic of Congo in contempt of its discovery orders, Judge Leon issued sanctions up to $80,000 per week until it satisfied its discovery obligations. *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1, 2 (D.D.C. 2009); *aff'd*, 2011 WL 871174, at *2 (D.C. Cir. 2011).  Sanctions at least equal to what this Court determined were necessary to force compliance by a large tobacco company are justified, particularly given the defendants' false statements under oath, refusal to provide discovery, and refusal to participate in this litigation.

## V.     CONCLUSION

For the foregoing reasons, Chabad respectfully requests that its Motion for an Order Imposing Civil Contempt sanctions be GRANTED.

DATED:     April 4, 2011                                              Respectfully submitted,

BINGHAM MCCUTCHEN, LLP                                    LEWIN & LEWIN, LLP

By /s/ Seth M. Gerber                                                     By /s/ Nathan Lewin
Marshall B. Grossman (*Pro Hac Vice*)                         Nathan Lewin (D.C. Bar No. 38299)
Seth M. Gerber (*Pro Hac Vice*)                                   Alyza D. Lewin (D.C. Bar No. 445506)
David Salmons (D.C. Bar No. 476299)                         1775 Eye Street, NW,
The Water Garden, 1620 26th Street                            Suite 850
   Fourth Floor, North Tower                                         Washington, DC 20006
   Santa Monica, CA 90404                                           Telephone:  (202) 828-1000
   Telephone:  (310) 907-1000

*Attorneys for Plaintiff Agudas Chasidei Chabad of United States*[12]

---

[12] Because of his new law-firm association, W. Bradford Reynolds, Esq., is unable to continue as co-counsel for Plaintiff."