## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AGUDAS CHASIDEI CHABAD    )
OF THE UNITED STATES,    )
    )
       Plaintiff,    )
    )
      v.    )    Civil Action No. 1:05-cv-01548-RCL
    )
RUSSIAN FEDERATION, *et al.*,    )
    )
      Defendants.    )
_____ )

### STATEMENT OF INTEREST OF THE UNITED STATES

Pursuant to 28 U.S.C. § 517,[1] the United States submits this Statement of Interest in response to this Court's order of May 23, 2012 (ECF 107), in which the Court invited the views of the United States with respect to the plaintiff's pending motion for civil contempt sanctions (ECF 92).

As an initial matter, the United States wishes to reiterate its strong support for the claim of the plaintiff, Agudas Chasidei Chabad of the United States ("Chabad"), to gain possession of the collection of books, manuscripts, and other cultural artifacts at issue in this litigation (the "Collection"). The United States has maintained a consistent position that the Collection should be transferred to Chabad. In this regard, since the early 1990s, the Executive Branch has made extensive diplomatic efforts to help Chabad gain possession of the Collection. The United States has raised the issue at the Presidential level under several administrations, and in cabinet, Ambassadorial, and working-level diplomatic discussions throughout this period. The United

---

[1] Section 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

States is currently pursuing diplomatic efforts toward this objective, and it intends to continue to do so.

The United States believes, however, that the relief requested from the Court by Chabad in its pending motion is not appropriate and would not be an effective means to achieve this goal. The entry of an order of civil contempt sanctions in this case would not be consistent with the Foreign Sovereign Immunities Act ("FSIA," or the "Act").   The Act does not permit a court to compel compliance with a specific performance order regarding property held by a foreign sovereign within the sovereign's own territory.   In addition, the United States believes that the provision of such relief would be contrary to the foreign policy interests of the United States, including its interest in promoting the transfer of the Collection to Chabad.   Therefore, even if the relief that Chabad seeks were available as a matter of law under the FSIA, the Court should exercise its discretion not to enter the sanctions order requested by Chabad.

## Background

This suit concerns Chabad's efforts to obtain the Collection from the defendants, the Russian Federation, the Russian Ministry of Culture and Mass Communication, the Russian State Library, and the Russian State Military Archive (collectively, except where otherwise noted, "Russia").   The Collection consists of two sets of materials: (1) a set of books and manuscripts seized at the time of the Bolshevik Revolution and now held at the Russian State Library; and (2) a set of manuscripts of religious teachings seized by Nazi Germany during the 1941 invasion of Poland, which was subsequently taken by the Soviet Red Army, and is now held at the Russian State Military Archive.

Russia initially defended this suit.   However, after the D.C. Circuit held that this Court

had jurisdiction over Chabad's claim under the expropriation exception to the FSIA, 28 U.S.C. § 1605(a)(3), *see Agudas Chasidei Chabad of United States v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008), Russia withdrew from further participation in the litigation. (ECF 71.)[2] This Court then entered a default against Russia. (ECF 77.) This Court subsequently granted Chabad's motion for the entry of a default judgment against Russia, finding that Chabad had established sufficiently that the Collection had been taken in violation of international law. (ECF 80.) In addition, this Court issued an order directing Russia

> to surrender to the United States Embassy in Moscow or to the duly appointed representatives of [Chabad] the complete collection of religious books, manuscripts, documents and things that comprise the [Collection] presently being held by the Defendants at the Russian State Library and the Russian State Military Archive or elsewhere, and Defendants are further directed to assist and authorize the transfer of the [Collection] to the United States Embassy in Moscow or to [Chabad's] appointed representatives and to provide whatever security and authorization is needed to insure prompt and safe transportation of the [Collection] to a destination of [Chabad's] choosing.

(*Id.* at 2.)

Russia has not complied with the Court's order. Chabad has asked this Court to find Russia in contempt and, further, to impose monetary civil contempt sanctions against Russia in the form of a weekly "fine payable to the Plaintiff" until the Collection is transferred to Chabad. (ECF 92-2 at 2.) In response, this Court issued an order directing Russia to show cause why Chabad's motion should not be granted. (ECF 102.) In accordance with its earlier notice of withdrawal, however, Russia did not respond to this Court's order. Chabad then twice asked the

---

[2]  Russia notified the Court at that time that it "decline[d] to participate further in this litigation" because it "believe[d] this Court has no authority to enter Orders with respect to the property owned by the Russian Federation and in its possession, and the Russian Federation will not consider any such Orders to be binding on it." (ECF 71 at 2.) In so doing, Russia indicated that its withdrawal was "in no way out of lack of respect for this Honorable Court, but is for the affirmative reason that the Russian Federation needs to safeguard its own sovereignty." (*Id.*)

Court to defer its consideration of the civil sanctions motion to "facilitate Chabad's attempts" to negotiate with Russia (ECF 104 at 1; *see also* ECF 105), but renewed its motion in March 2012. (ECF 106.)   On May 23, 2012, the Court entered an order inviting the views of the United States with respect to the motion, noting "the serious impact such an order could have on the foreign policy interests of the United States."   (ECF 107 at 2.)   The United States now respectfully responds to this Court's invitation.

## Discussion

I.    **The Imposition of Civil Contempt Sanctions for Failure to Comply with an Order to Transfer Tangible Property in the Possession of a Foreign State within that State's Own Territory Would Be Inconsistent with the Foreign Sovereign Immunities Act**

This Court's default judgment finding an expropriation of Chabad's property in violation of international law included an order directing Russia to surrender tangible property that is in Russia's possession and that is located within Russia's own borders.   Chabad now seeks the imposition of continuing monetary contempt sanctions for Russia's failure to implement that order.   The Foreign Sovereign Immunities Act does not authorize the Court to award relief in this form.   This Court, like the D.C. Circuit, has held that, pursuant to 28 U.S.C. § 1605(a)(3), Russia is not immune from this suit.   (ECF 80; *see Chabad*, 528 F.3d at 943-48.)   It does not necessarily follow, however, that the FSIA permits the Court to provide the enforcement remedy that Chabad has requested.   "The FSIA sets forth 'the sole and exclusive standards to be used' to resolve all sovereign immunity issues raised in federal and state courts."   *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532 (5th Cir. 1992) (quoting H.R. Rep. No. 94-1487, 94th Cong. 2d Sess. 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610).   Moreover, "the FSIA's provisions governing jurisdictional immunity, on the one hand, and execution immunity, on the other, operate

independently." *Walters v. Indus. & Comm'l Bank of China*, 651 F.3d 280, 288 (2nd Cir. 2011). In other words, "a waiver of immunity from suit does not imply a waiver of immunity from attachment of property, and a waiver of immunity from attachment of property does not imply a waiver of immunity from suit." *Id.* (internal quotation omitted).

The FSIA affords execution immunity for property held by a sovereign that sweeps more broadly than the jurisdictional immunity that the Act affords to the sovereign on the underlying claim itself. This is the result of a deliberate policy choice on the part of Congress. Congress recognized that, "at the time the FSIA was passed, the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action." *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 255-56 (5th Cir. 2002). "Prior to the enactment of the FSIA, the United States gave absolute immunity to foreign sovereigns from the execution of judgments. This rule required plaintiffs who successfully obtained a judgment against a foreign sovereign to rely on voluntary repayment by that State." *Autotech Technologies LP v. Integral Res. & Dev. Corp.*, 499 F.3d 737, 749 (7th Cir. 2007); *see also De Letelier v. Republic of Chile*, 748 F.2d 790, 799 (2d Cir. 1984) (noting that pre-FSIA practice "left the availability of execution totally up to the debtor state"). The FSIA "codified this practice by establishing a general principle of immunity for foreign sovereigns from execution of judgments," subject to certain limited exceptions. *Autotech*, 499 F.3d at 749. The result is a statute "that explicitly contemplates that a court may have jurisdiction over an action against a foreign state and yet be unable to enforce its judgment unless the foreign state holds certain kinds of property subject to execution." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377 (D.C. Cir. 2011).

The FSIA's exceptions from execution immunity apply only to a foreign state's "property in the United States," and even that property is subject to execution only in carefully circumscribed and extremely limited circumstances. 28 U.S.C. § 1610(a).[3]   Accordingly, "the FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world. We would need some hint from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction." *Autotech*, 499 F.3d at 750.  *See also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010); *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004).

The relief that Chabad has requested would require the Court to assert just such extraterritorial jurisdiction over tangible property possessed by Russia in Russian territory. Rather than following the carefully crafted enforcement scheme set forth in the FSIA, *see* 28 U.S.C. §§ 1609-1611, Chabad is urging an alternative framework in which the Court would first issue a specific performance order for property overseas and then enforce that order through contempt proceedings.  Such an approach is not consistent with the limited provisions for execution on property set forth in the FSIA.  Congress took great care in the drafting of these provisions, recognizing that "enforcement [of] judgments against foreign state property remains a somewhat controversial subject in international law," H.R. Rep. No. 94-1487, at 27, and that the judicial seizure of the property of a foreign state may well "be regarded as an affront to its dignity

---

[3]   The FSIA limits the immunity for property held by an agency or instrumentality of a foreign sovereign to a greater extent than it does for property held by the foreign sovereign itself.  *See* 28 U.S.C. § 1610(a), (b); *see generally Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Elahi*, 546 U.S. 450 (2006).  This distinction, however, is immaterial here, as property held by either kind of entity must be "property in the United States" to be subject to execution or attachment under the FSIA.  28 U.S.C. § 1610(a), (b).

and may affect our relations with it." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008) (internal quotation and ellipses omitted).

The FSIA, thus, does not authorize this Court to enforce an expropriation finding through an order threatening sanctions against Russia for failure to surrender property that Russia holds on its own territory.   To be sure, neither this Court's order directing the entry of a default judgment nor the proposed order for contempt sanctions is denominated as an order of attachment or execution on property.   But the substance of the order, not its form, controls here.   Under the FSIA, courts "may not grant, by injunction, relief which they may not provide by attachment," for the obvious reason that "[t]he FSIA would become meaningless" if the denomination of an order controlled over its substance.   *S&S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983).   In substance, the relief that Chabad seeks would have the Court direct Russia, under penalty of contempt sanctions, to surrender to Chabad property that Russia holds on its own territory.   Other courts faced with similar efforts to evade the FSIA's carefully delineated enforcement scheme have declined to do so.   *See Peterson,* 627 F.3d at 1130-32 (9th Cir. 2010) (finding foreign sovereign's assets held abroad to be immune from execution, despite creditor's argument that *in personam* jurisdiction over the sovereign provided the court authority to order sovereign to assign its assets abroad to the creditor); *Philippine Export & Foreign L. Guar. Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 1094, 1099 (Cal. Ct. App. 1990) (rejecting argument that assignment order applying to assets worldwide would be "a valid exercise of the court's personal jurisdiction" over state instrumentality, because it would "ignore a long-standing immunity of international law and under the FSIA").   This Court, likewise, should decline the invitation to depart from the FSIA's scheme for attachment immunity specified in Sections 1609 through

1611.[4]

The United States acknowledges that this Court's task has been made more difficult as a result of Russia's withdrawal from this litigation, as well as Russia's failure to respond to this Court's show cause order.[5]   However, a foreign sovereign does not waive the legal protections for its property under the FSIA by failing to appear in litigation at the enforcement stage, whether or not it has participated with respect to issue of jurisdiction.   As noted above, the exceptions to immunity for attachment of foreign state property operate independently of the exceptions to jurisdictional immunity.   *See, e.g.*, *Mangattu v M/V Ibn Hayyan,* 35 F.3d 205, 209 (5th Cir. 1994).

Consistent with the foregoing, the FSIA specifies that property in the possession of a foreign sovereign "*shall* be immune" from execution absent an exception to immunity specified in the Act itself.   28 U.S.C.   § 1609 (emphasis added).   "It follows from this language that the immunity does not depend on the foreign state's appearance in the case. The immunity inheres in the property itself, and the court must address it regardless of whether the foreign state appears and asserts it."   *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011).   This result is confirmed by 28 U.S.C.   § 1610(c), which requires that a defaulting foreign state be provided adequate notice before an attachment order under either Section 1610(a) or (b) may take effect. "This provision makes it clear that even when the foreign state fails to appear in the execution proceeding, the court must determine that the property sought to be attached is excepted from

---

[4]   This case involves tangible property that is, without question, in the possession of a foreign sovereign outside the United States.   Other cases involving intangible rights in property present additional complexities, which need not be resolved here.   *See, e.g.*, *FG Hemisphere Assocs., LLC v. République du Congo*, 455 F.3d 575, 585 (5th Cir. 2006).

[5]   Moreover, Russia failed, at a time when it was participating in the litigation, to present any argument to the Court under the FSIA in response to Chabad's earlier motion for a preliminary injunction.   (ECF 48.)

immunity under § 1610(a) or (b) before it can order attachment or execution." *Rubin*, 637 F.3d at 800.   Moreover, 28 U.S.C. § 1610(a)(1) describes the circumstances in which a foreign sovereign may waive the immunity from execution of its "property in the United States"; the statute, however, "does not recognize a sovereign's failure to appear as a waiver of sovereign immunity." *Walters*, 651 F.3d at 292.[6]   Even where a foreign sovereign completely waives its immunity from execution, moreover, a United States court still may only execute against property of the foreign sovereign that is in the United States.   *See Conn. Bank of Commerce*, 309 F.3d at 247.

The FSIA, then, does not authorize this Court to issue contempt sanctions for a foreign sovereign's failure to comply with an order to surrender tangible property that the sovereign holds in its own territory.   The D.C. Circuit's decision in *FG Hemisphere Associates* does not counsel otherwise.   To be sure, the D.C. Circuit held in that case that a district court has the authority under the FSIA to issue a contempt sanction against a foreign sovereign.   *See FG Hemisphere Assocs.*, 637 F.3d at 379.   That case dealt with non-compliance with a discovery order, and did not hold that contempt sanctions are mandatory, or permissible, in every case arising under the FSIA. Rather, it dealt with the limited question whether the inherent authority of a federal court to impose contempt sanctions had been entirely displaced by the FSIA.   The court of appeals answered that question in the negative, but emphasized the narrowness of its holding.   *See id.* at 380 ("We hold today only that the FSIA does not abrogate a court's inherent power to impose contempt sanctions

---

[6]   This result is consistent with the pre-FSIA practice of United States courts, in which "the attachment immunity of foreign-state property, like the jurisdictional immunity of foreign states, was historically determined without regard to the foreign state's appearance in the case.   The court either deferred to the State Department's suggestion of immunity or made the immunity determination itself, by reference to the State Department's established policy regarding foreign-sovereign immunity."   *Rubin*, 637 F.3d at 800-01 (7th Cir. 2011) (citing *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35-36 (1945)).

on a foreign sovereign, and that the district court did not abuse its discretion in doing so here.").

In this case, by contrast, Chabad asks the Court not simply to utilize its contempt power, but to

create an alternative enforcement scheme that conflicts with the carefully defined, and limited,

system of remedies authorized under the FSIA.   Because Russia is not subject to such remedies

under the FSIA, the Court should not award the sanctions that Chabad requests.   *See id.* at 379

(noting "serious[]" concern that would arise from a contempt sanction for violation of an order that

would be overbroad under the FSIA, but declining to consider issue for the first time in the court of

appeals).

II.    **Even if the Proposed Order of Civil Contempt Sanctions Were Lawfully
       Available, the Court Should Exercise Its Discretion Not to Issue Such an
       Order, so as to Avoid Damage to the Foreign Policy Interests of the United
       States**

The United States believes that this Court was correct to exercise caution before issuing an

order of civil contempt sanctions, in light of "the serious impact such an order could have on the

foreign policy interests of the United States."   (ECF 107 at 2.)   The United States believes that

such an order would risk damage to significant foreign policy interests, without achieving its

intended purpose.   Of course, the imposition of civil contempt sanctions is a matter of equitable

discretion for the district court, where such sanctions are lawfully available, *see, e.g., Broderick v.

Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006), and a court should consider the public interest

in deciding whether to award equitable relief, *see, e.g.*, *Sottera, Inc. v. FDA*, 627 F.3d 891, 893

(D.C. Cir. 2010).   In this case, even if the court had the authority to impose the proposed

sanctions, it nonetheless should exercise its discretion to refrain from doing so in order to avoid

damage to foreign policy interests of the United States, including the United States' interest in

promoting resolution of the dispute between Chabad and Russia over the Collection.

10

As previously noted, Congress took care when it enacted the FSIA to adhere to international norms regarding the scope of a court's authority to execute judgments against foreign sovereigns. *See* H.R. Rep. No. 94-1487, at 27. Those international norms also counsel against the imposition of civil contempt sanctions here. Although there is a growing acceptance in modern international law that a foreign state's immunity from a forum state's enforcement jurisdiction is no longer absolute, it remains clear that, absent the consent of the defendant state, the limitations on that immunity do not extend to property outside the territory of the forum state. *See* Hazel Fox, The Law of State Immunity 600-601, 626-627 (2d ed. 2008). Indeed, to the United States' knowledge, judicial efforts by one state to enforce an expropriation judgment directly against property held by another state within the latter state's territory would be entirely without precedent internationally.

An order by one state's courts that purports to dispose of tangible property held by another state in the latter state's territory is particularly problematic. Such an order would likely be viewed as a departure from accepted rules of public international law, even by those countries that do recognize some limitations on a sovereign's otherwise absolute immunity from execution.[7] Indeed, prevailing international practice generally excludes orders of specific performance against a sovereign altogether, as well as sanctions for refusal to comply with such orders.[8] The

---

[7]   For example, the United Nations Convention on Jurisdictional Immunities of States and Their Property ("UN Convention") only permits enforcement measures against property located "in the territory of the State of the forum," and even then only within certain limited circumstances, absent consent or other specified affirmative acts by that state. UN Convention, art. 19. Although the UN Convention is not in force, it reflects the effort by the Member States of the United Nations to codify accepted principles of sovereign immunity.

[8]   *See* Canada State Immunity Act, § 11(1); Pakistan State Immunity Ordinance, 1981, § 14(2)(a); Singapore State Immunity Act 1979, § 15(2)(a); South African Foreign States Immunities Act 1981, § 14(1)(a); UK State Immunity Act 1978, § 13(2)(a). *See also* Australia Foreign State

imposition of civil contempt sanctions against Russia for its failure to comply with a United States court's order to take specific actions regarding tangible property within Russia's own territory would be so far removed from these international norms that any foreign government would oppose it.   Such an order would risk significant criticism from the international community, and would likely be resisted in this or other cases involving foreign sovereigns.

Moreover, to the extent that the imposition of sanctions might be relied upon as a precedent elsewhere, such an order would undermine the United States' own interest in avoiding similar measures being imposed against it.   For example, "some foreign states base their sovereign immunity decisions on reciprocity," and accordingly a United States court's decision to compel a foreign sovereign to surrender property that that sovereign holds in its own territory could "subject the United States to suits abroad" in like circumstances.   *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984).   The United States has a strong interest in ensuring that foreign courts do not assume the power to compel specific performance as to property held by the United States, particularly as to property that the United States holds within its own territory.   In the limited circumstances in which any party has attempted to seek a specific performance order against the United States in a foreign court, the United States has consistently relied on its sovereign immunity to resist those efforts.

---

Immunities Act 1985, § 34 (providing that a foreign state may not be sanctioned for failure to comply with a specific performance order); Israel Foreign States Immunity Law 5769-2008, § 15(b) (foreign state may not be fined for noncompliance with any type of judgment or order); Act on the Civil Jurisdiction of Japan with Respect to a Foreign State, § 22 (same).   The UN Convention similarly provides: "Any failure or refusal by a State to comply with an order of another State enjoining it to perform or refrain from performing a specific act . . . shall entail no consequence other than those which may result from such conduct in relation to the merits of the case.   In particular, no fine or penalty shall be imposed on the State by reason of such failure or refusal."   UN Convention, art. 24(1).

In addition, the United States holds an interest in the amicable resolution of the dispute between Chabad and Russia concerning the Collection.   As we have noted, the United States has engaged in high-level diplomatic efforts with Russia to secure the transfer of the Collection.   It remains committed to continuing these efforts which, as is often the case with diplomacy, require perseverance and consistency.   It is the United States' judgment that the imposition of the requested civil contempt sanctions against Russia would be counter-productive to these efforts, as well as for related issues such as the continuing Russian embargo on art loans to the United States.[9] The inevitable accumulation of monetary contempt sanctions would also only serve to create an enduring new obstacle to resolving the dispute.

These "sensitive diplomatic considerations" counsel against the imposition of civil contempt sanctions here.   *FG Hemisphere Assocs.*, 637 F.3d at 380 (noting that deference would be provided to the United States' views of its foreign policy concerns where those views are "reasonably and specifically explained" to a district court).   Accordingly, the United States requests that the Court exercise its discretion so as not to impose civil contempt sanctions against Russia under the circumstances presented here.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court consider its interests in evaluating Chabad's motion for civil contempt sanctions, and that the Court deny that motion.

---

[9]   As the United States informed the Court in its previous Statement of Interest in this case, Russia has imposed a moratorium on all loans of Russian cultural treasures to exhibitors in the United States, in response to what Russia perceived to be threats from Chabad to seek attachment of the loaned items.   (ECF 97 at 5-6.)

Dated: August 29, 2012

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

  /s/ Joel McElvain
JOEL McELVAIN
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
(202) 514-2988
Joel.McElvain@usdoj.gov