## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**AGUDAS CHASIDEI CHABAD**
**OF THE UNITED STATES,**

*Plaintiff,*

vs.

**RUSSIAN FEDERATION; RUSSIAN**
**MINISTRY OF CULTURE AND MASS**
**COMMUNICATION; RUSSIAN STATE**
**LIBRARY; and RUSSIAN STATE**
**MILITARY ARCHIVE,**

*Defendants.*

**CASE NO. 1:05-CV-01548-RCL**

## PLAINTIFF'S RESPONSE TO STATEMENT OF
## INTEREST OF THE UNITED STATES

### INTRODUCTION

In their "Statement of Interest" the Departments of Justice and State seek to have this

Court reconsider the consequences of this Court's finding that "plaintiff has demonstrated

defendants' non-compliance 'to a reasonable certainty,' as required to warrant the entry of civil

contempt sanctions."  In a detailed opinion issued on July 26, 2011 (*Agudas Chasidei Chabad of*

*United States v. Russian Federation*, 798 F. Supp. 2d 260 (D.D.C. 2011)), this Court held that

the defendants in this case were properly served pursuant to 28 U.S.C. § 1608(e) with "notice of

the exposure of their property and other interests to attachment and execution" and that sufficient

time had elapsed, as required by 28 U.S.C. § 1610(c), to enter an order permitting plaintiff

("Chabad") to enforce the default judgment under 28 U.S.C. §§ 1610(a)(3), (b)(2) that had been

issued pursuant to this Court's decision of July 30, 2010. *Agudas Chasidei Chabad of United*

*States v. Russian Federation*, 729 F. Supp. 2d 141 (D.D.C. 2010).  The Court concluded that

entry of the Section 1610(c) order created no risk that did not otherwise exist to Russian art or

artifacts on loan to American institutions.  The Court also noted Chabad's "commendable

attempts to minimize any interference with the exchange of art and cultural artifacts between the

United States and Russia" and acknowledged that Chabad made "several concessions in an

attempt to resolve imagined problems."  *Id.* at 265, 271.

With respect to Chabad's request for sanctions, this Court held, in the same opinion, that

the "record provides no hint that defendants have taken any steps necessary towards compliance

with the Court's order" and that the defendants' statements "make clear that they have no

intention of complying with the Court's prior order."  *Id.* at 273.  Accordingly, the Court found

"that plaintiff has demonstrated defendants' non-compliance 'to a reasonable certainty,' as

required to warrant the entry of civil contempt sanctions."  *Id.*

The July 2011 ruling was entered after the United States had filed a Statement of Interest

on June 15, 2011.  In that Statement the United States did not "object to the imposition of

sanctions or otherwise suggest that negotiations for the return of the Library and Archive have

made any progress, or are even ongoing."  *Id.*  Nonetheless, in order to ensure that the defendants

have notice that failure to comply with the Court's order "may subject them to additional

monetary penalties," the Court directed the plaintiff to serve copies of its motion for sanctions

and the Court's order on the defendants.  The plaintiff did so.  (ECF 103.)

With the approval of the Department of State – although not with its participation –

plaintiff's attorneys met twice with representatives of the defendants at the Russian Embassy in

efforts to secure compliance with the Court's order in a manner that the defendants would find

acceptable.  (ECF 104, 105.)  No progress was made in either meeting, and, to plaintiff's

knowledge, the Department of State has taken no actionable steps to obtain compliance with the Court's order.  The defendants categorically refused to return any portion of the Archive or Library.

Consequently, the plaintiff renewed its request for contempt sanctions.  (ECF 106.)  On May 23, 2012, this Court entered an order inviting the views of the United States on whether the entry of a contempt sanction would have a "serious impact . . . on the foreign policy interests of the United States."  (ECF 107.)  *See FG Hemisphere Associates v. Democratic Republic of Congo*, 637 F.3d 373, 380 (D.D.C. 2011) ("We do recognize that there could be circumstances in which particular pressing foreign policy concerns involving a defendant country could affect a court's decision.").  After obtaining an extension of time, the United States filed its Statement of Interest on August 29, 2012.

The United States' Statement of Interest is erroneous and defective for several reasons:

*First*, rather than addressing the specific inquiry made by the Court at this juncture in this extended proceeding – *i.e.*, whether any serious impact to American foreign-policy interests would result from the imposition of contempt sanctions that this Court has already held to be justified – the Statement of Interest challenges the legal holding that the Court made in July 2011, after the United States had filed a Statement of Interest that did not object to the imposition of sanctions.  Contrary to what it acknowledged in the Statement filed in June 2011, the United States now argues that a contempt sanction in this case "would be inconsistent with the Foreign Sovereign Immunities Act."  This Court squarely held to the contrary in July 2011, and it has not requested the United States to revisit that legal issue.

*Second*, in making this new legal argument, the United States invokes a legal principle that has no application to this case.  The United States asserts that the Foreign Sovereign

Immunities Act does not permit execution of a judgment against "tangible property possessed by Russia in Russian territory."  Chabad is not seeking to execute its judgment against property in Russia.  It is seeking to enforce a court order pursuant to 28 U.S.C. §§ 1610(a)(3), (b)(2) *and* with a contempt sanction that would be executed entirely *within the United States*.

*Third*, in a vain effort to distinguish this case from the ruling of the Court of Appeals in *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377 (D.C. Cir. 2011), the United States contends that the Court of Appeals' decision in the *Republic of Congo* case concerned "non-compliance with a discovery order."  Statement, p. 9.  The United States has apparently overlooked the fact that the defendants' pattern of contempt in this case began with false interrogatory responses and ended with a refusal on June 26, 2009, to "respond to plaintiff's discovery requests", followed by a withdrawal of the case after noting that defendants would not recognize any orders of the Court.  729 F. Supp. 2d at 144.  (ECF 71, 92-1.)  Hence this case also concerns "non-compliance with a discovery order."

*Fourth*, the United States' Statement totally fails to specify any serious impact to American foreign-policy interests that would result from the entry of a civil contempt order *in this case*.  The Statement invokes only a general concern regarding reciprocity and retaliation, and that concern rests on a misstatement of the relief that Chabad is seeking in this case.  It also asserts – contrary to ample historical evidence – that entry of a contempt order will hinder "amicable resolution of the dispute between Chabad and Russia concerning the Collection." Statement, p. 13.  History has proved that many years of diplomatic effort at the highest levels of the United States and Russian governments failed to reach such an "amicable resolution."  And the Department of State has been singularly passive and unsuccessful in convincing the Russian Federation to comply with this Court's judgment and international law.

**ARGUMENT**

**I.**

**THE STATEMENT OF INTEREST DISPUTES
THE COURT'S EARLIER HOLDING RATHER
THAN RESPONDING TO THE COURT'S INVITATION**

The Court invited the United States to advise the Court whether the entry of civil

contempt sanctions in favor of Chabad against these defendants would create some "serious

impact" to "policy interests of the United States" vis-à-vis Russia. Instead, the Court has

received from the United States an erroneous and misguided treatise on judicial authority under

the Foreign Sovereign Immunities Act.

Pages 4-10 of the Statement – more than half its substance – purport to instruct the Court

that the Foreign Sovereign Immunities Act confers "execution immunity" on a foreign

sovereign's property within that foreign sovereign's borders.  That legal proposition – even if

accurate – is totally beside the point in this case.

**II.**

**CHABAD IS NOT SEEKING TO EXECUTE
THE DEFAULT JUDGMENT AGAINST RUSSIAN PROPERTY
LOCATED WITHIN RUSSIA'S BORDERS**

The United States argues forcefully in its Statement that Chabad may not ask the Court to

exercise "extraterritorial jurisdiction over tangible property possessed by Russia in Russian

territory."  Statement, p. 6.  But Chabad has never sought to execute a judgment by

"extraterritorial jurisdiction."  It obtained jurisdiction properly and validly over the Russian

Federation and the other Russian entities under the expropriation provision of the Foreign

Sovereign Immunities Act.  *Agudas Chasidei Chabad of United States v. Russian Federation*,

528 F.3d 934 (D.C. Cir. 2008).  By its very nature, that provision relates to property unlawfully

expropriated by a foreign sovereign and held in the custody of the foreign sovereign –
presumably within its borders.  There can be no question that federal law authorizes jurisdiction
in such cases, even though their reach is "extraterritorial."

In addition to enforcement proceedings under 28 U.S.C. §§ 1610(a)(3), (b)(2), a
prevailing party in such a lawsuit may, pursuant to the holding of the Court of Appeals in *FG
Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377 (D.C. Cir.
2011), invoke "a federal court's inherent contempt power."  That "inherent contempt power"
includes the issuance of a civil contempt sanction against a  defendant that deliberately disobeys
or ignores a court order so that the defendant will  comply with that order.  *SEC v. Bilzerian*, 729
F. Supp. 2d 1, 4 (D.D.C. 2010); *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C. 2009), *aff'd*,
410 Fed. Appx. 346 (D.C. Cir. 2010); see *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C.
Cir. 2006); *Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003).

None of the cases cited in the United States' Statement of Interest discussion of
"execution immunity" under the Foreign Sovereign Immunities Act concerned a contempt
sanction by a United States court enforceable by execution on property ***within the United States***.
In *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117 (9th Cir. 2010), for example, the Ninth
Circuit held that a debt obligation owed to Iran by a French corporation was "located in France"
and was not "property in the United States."  On that ground it was held by the Ninth Circuit to
be immune from execution in the United States.  The property on which the plaintiff was seeking
to execute a money judgment was, in the *Peterson* case, not within the United States.

Chabad is not seeking to execute the enforceable default judgment it holds against
property located in Russia.  It has an enforceable judgment that ***concerns*** property located in
Russia, but it has made it crystal-clear that it is not seeking "extraterritorial execution."  To be

sure, courts have observed that enforcement of an order imposing civil contempt penalties against a foreign sovereign presents unique difficulties. But the United States confuses a court's authority to impose sanctions with a plaintiff's ability to enforce such sanctions.

### III.

### CHABAD'S JUDGMENT MAY BE ENFORCED WITH A CIVIL CONTEMPT SANCTION UNDER THE *REPUBLIC OF CONGO* CASE

The United States makes the curious argument that the Court of Appeals' ruling in *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377 (D.C. Cir. 2011), is not authority for the issuance of a civil contempt order in this case because "[t]hat case dealt with non-compliance with a discovery order." Statement, p. 9.

The United States has apparently overlooked the fact that in this case, as well, Russia's contempt began on June 26, 2009, with its refusal to comply with discovery and its Rule 26 obligations, and occurred again when Russia refused to respond to discovery and withdrew from the case after noting that it would not comply with any Court orders. (ECF 71, 92-1, Affidavit ¶¶ 4-7.) Moreover, it would be curious indeed if the Foreign Sovereign Immunities Act were held to authorize courts to threaten monetary civil contempt sanctions for refusal to comply with their discovery orders but disabled courts from enforcing their final judgments with similar sanctions. Should a sovereign be encouraged to engage in discovery with confidence that if the ultimate outcome of its litigation is an adverse judgment, the court will be powerless to secure enforcement of that judgment?

**IV.**

**THE STATEMENT DESCRIBES NO FOREIGN-POLICY
INTEREST THAT JUSTIFIES DENIAL OF CHABAD'S REQUESTED RELIEF**

We turn finally to the subject that, we believe, prompted the Court to invite the United States to express its view. Would entry of the civil-contempt sanction that Chabad requests have a serious adverse impact on American foreign-policy interests?

The Statement is strikingly deficient in this regard. Although it generally declares that there would be "damage to foreign policy interests of the United States," it specifies only three claimed foreign-policy interests.

First is the "United States' interest in promoting resolution of the dispute between Chabad and Russia over the Collection." Statement, p. 10. The Statement does, to be sure, acknowledge the United States' support of Chabad's claim to return of its expropriated property. Statement, pp. 1-2. But recent history has shown that the State Department has taken no actionable steps to enforce the Court's order in this case. Neither Chabad nor the Court is told how or why the dispute will be "amicably resolved" if the Court's coercive power is withheld. Indeed, the record demonstrates that it is only because the Court has indicated it may impose a civil contempt order that the defendants were even willing to speak face-to-face with Chabad's attorneys.

Second is the United States' asserted fear that foreign governments may reciprocate with judgments against the United States. The Statement acknowledges that "there is a growing acceptance in modern international law that a foreign state's immunity from a forum state's enforcement jurisdiction is no longer absolute." Statement, p. 11. That "acceptance" includes, of course, claims against the United States in foreign forums for the kinds of conduct enumerated in the Foreign Sovereign Immunities Act. Hence reciprocity and retaliation is not a reason for

refusing to enforce rights against foreign sovereigns conferred by the Foreign Sovereign Immunities Act.  In enacting the Foreign Sovereign Immunities Act, Congress found that "[u]nder international law, states are not immune from the jurisdiction of foreign courts" and declared that property in the United States of a foreign state may be attached in aid of execution of a judgment.  See 28 U.S.C. §§ 1602, 1610(a)(3), (b)(2).  And nothing in the Foreign Sovereign Immunities Act precludes the imposition of contempt sanctions against a foreign sovereign that disobeys a court's judgment.  *FG Hemisphere Associates, LLC*, 637 F.3d at 380.

Since Chabad is not seeking execution of its judgment against property located in Russia, the alleged concern that foreign judgments against the United States will be enforced in foreign courts against property in the United States has no bearing on the relief requested by Chabad. It is surely not a foreign-policy interest that will be seriously impacted by an entry of the order sought by Chabad.

Finally, the Statement glancingly mentions the patent pre-textual "Russian embargo on art loans to the United States."  Statement, p. 13. That chimera has been amply discussed and disposed of in prior filings and in this Court's July 26, 2011, opinion. The Department of State should be embarrassed if, at this late date, given the protections afforded to Russian art loans (1) by American law, (2) by Chabad's repeated assurances in filings with the Court, and (3) by this Court's rulings, it still gives any credence whatever to this empty Russian charade.

## CONCLUSION

For the foregoing reasons, this Court should reject the grounds stated in the United

States' Statement of Interest and should enter the civil contempt order requested by Chabad.


Dated:   September 28, 2012                    Respectfully submitted,

BINGHAM MCCUTCHEN, LLP                  LEWIN & LEWIN, LLP


By:  /s/ Seth M. Gerber                     By:  /s/ Nathan Lewin
Marshall B. Grossman (*Pro Hac Vice*)          Nathan Lewin (DC Bar No. 38299)
Seth M. Gerber (*Pro Hac Vice*)                Alyza D. Lewin (DC Bar No. 445506)
 The Water Garden, 1620 26th Street            1775 Eye Street NW, Suite 850
Santa Monica, CA 90404                         Washington, DC 20006
(310) 907-1000  *phone*                        (202) 828-1000 *phone*
                                               nat@lewinlewin.com