**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 05-1548 (RCL) |
| RUSSIAN FEDERATION, *et al.* | ) ) | |
| Defendants. | ) ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Agudas Chasidei Chabad of the United States ("Chabad") has moved for civil contempt sanctions against defendants the Russian Federation ("Russia"), the Russian Ministry of Culture and Mass Communication (the "Ministry"), the Russian State Library ("RSL"), and the Russian State Military Archive ("RSMA") based on their failure to comply with this Court's July 30, 2010 Order, ECF No. 80. *See* Pl.'s Mot., Apr. 4, 2011, ECF No. 92. After considering plaintiff's motion, the United States' Statement of Interest ("U.S. Statement"), ECF No. 111, plaintiff's response, ECF No. 112, applicable law, and for reasons given below, the Court will GRANT the motion and will hold defendants in contempt of Court. The Court will enter civil contempt sanctions against defendants in the amount of $50,000 per day until defendants comply with this Court's Order.

I.      **BACKGROUND**[1]

Chabad brought this action in 2004 seeking return of religious books, artifacts and other materials concerning the cultural heritage of its forebearers, which fell into defendants' hands in the early 20th century.  *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n* (*Chabad III*), 798 F. Supp. 2d 260, 263 (D.D.C. 2011).   In 2009, after losing on jurisdictional arguments, defendants' lawyers informed the Court that they would no longer be participating in the case as they believed the Court lacked "authority to adjudicate rights in property that in most cases always has been located in the Russian Federation . . . ."   Statement of Defs., June 26, 2009, ECF No. 71.  A year later, this Court entered a default judgment in favor of Chabad, *see Agudas Chasidei Chabad of U.S. v. Russian Fed'n* (*Chabad II*), 729 F. Supp. 2d 141 (D.D.C. 2010), and ordered defendants to "surrender to the United States Embassy in Moscow or to the duly appointed representatives of . . . Chabad . . . the complete collection."  *See* Order, July 30, 2010, ECF No. 80.

Defendants failed to comply.  Nearly a year after the order was issued Chabad moved for civil contempt sanctions, seeking "the entry of a monetary penalty for every day that the defendants continue to disobey this Court's Order." Pl.'s Mot. 3, Apr. 4, 2011, ECF No 92.  The Court noted that it possessed the authority to issue the requested sanctions in the FSIA context. *See Chabad III*, 798 F. Supp. 2d at 272 (citing *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo,* 637 F.3d 373, 377-78 (D.C. Cir. 2011)).  Further, because  defendants had failed to take "any steps necessary towards compliance with the Court's order," *id.* at 273, and had actually made affirmative statements to the Court that made it "clear that they have no

---

[1] As the history of this case is set out elsewhere in detail, this opinion provides only a brief summary of the relevant background. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n* (*Chabad I*), 466 F. Supp. 2d 6, 10-14 (D.D.C. 2006) (providing full factual history) *rev'd in part on other grounds*, 528 F.3d 934 (D.C. Cir. 2008).

intention of complying with the Court's prior order," *Id.* (citing Statement of Defs.),  the Court concluded that "plaintiff has demonstrated defendants' non-compliance 'to a reasonable certainty,' as required to warrant the entry of civil contempt sanctions." *Id.*  (quoting *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C. 2009)).  However, before issuing such sanctions, the Court directed Chabad to serve copies of its motion along with the Court's Order to Show Cause, July 26, 2012, ECF No. 102, on defendants via mail service and provided that defendants would have 60 days to respond.  *Id.*  Chabad effectuated service of these documents, *see* Affidavit of Seth M. Gerber, Aug. 19, 2011, ECF No. 103, and defendants failed to respond within 60 days.

Chabad subsequently twice requested temporary stays of its motion in order "to facilitate [its] attempts to commence negotiations with the Russian Government, and to encourage the Russian Government to rethink its position of refusing to comply with the Court's judgment." Pl.'s Request, Oct. 19, 2011, ECF No. 104; *see also* Pl.'s Second Request, Dec. 16, 2011, ECF No. 105.  But despite "multiple meetings at the Russian Embassy in Washington, D.C.," the parties were unable to reach a settlement, and Chabad renewed its motion for sanctions in early 2012.  Pl.'s Statement, Mar. 5, 2012, ECF No. 106.

Noting "the serious impact such an order could have on the foreign policy interests of the United States," the Court solicited the views of the United States, *See* Order Soliciting the Views of the United States, May 23, 2012, ECF No. 107, who submitted a statement urging the Court not to enter sanctions. U.S. Statement, ECF No. 111.  Chabad responded, Pl.'s Response, Sept. 28, 2012, ECF No. 112, and a hearing was conducted before the undersigned judge on January 9, 2013.

## II.    ANALYSIS

The United States objects to the requested sanctions on both legal and pragmatic grounds. First, the United States argues that civil contempt sanctions are unavailable to enforce judgments issued against foreign states under the FSIA.  U.S. Statement 4-10.  Second, the United States argues sanctions would damage the United States' foreign policy interests, including its diplomatic efforts to reach a settlement with defendants on Chabad's behalf.  U.S. Statement 10-13.  As discussed below, the Court rejects both arguments and will issue civil contempt sanctions against defendants.

### A.    The Court Has Authority to Issue Sanctions

As this Court noted in *Chabad III*, "[f]ederal courts enjoy inherent contempt power . . . ." 798 F. Supp. 2d at 272 (citing *FG Hemisphere*, 637 F.3d at 377-78).  "Civil contempt . . . is designed to coerce compliance with a court order . . . ." *Id.* (quoting *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 70 (D.D.C. 2009) (citing *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009))). To determine whether civil contempt is appropriate, the Court must evaluate whether "the putative contemnor has violated an order that is clear and unambiguous," and whether such a violation has been "proved by clear and convincing evidence." *Id.* (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006)).

The Court already concluded that defendants' non-compliance with this Court's July 30, 2010 Order has been "demonstrated . . . 'to a reasonable certainty,' as required to warrant the entry of civil contempt sanctions."  *Id.* (quoting *Bilzerian*, 613 F. Supp. 2d at 70).  And, it already concluded that these sanctions were available in this case based on *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, in which the D.C. Circuit affirmed a district

court's issuance of sanctions against a foreign state for refusing to comply with a Court's discovery orders.  *Id.* (citing *FG Hemisphere*, 637 F.3d at 377-78).

While the United States concedes that "Russia has not complied with the Court's order," it now insists that the FSIA "does not authorize the Court to award relief" in the form of contempt sanctions for this non-compliance—notwithstanding this Court's earlier statement to the contrary.  U.S. Statement 3-4; *cf. Chabad III*, 798 F. Supp. 2d at 272.  Because the Court did not have the U.S. Statement when it issued its opinion in *Chabad III*, it will now inquire as to whether anything in that Statement requires it to reconsider any of the conclusions it reached in that earlier opinion.

As this Court noted in *Chabad III*, the authority of district courts to issue civil contempt sanctions against foreign states under the FSIA was recently confirmed by the D.C. Circuit.  *Id.* In *FG Hemisphere*, the circuit affirmed a district court's order imposing civil contempt sanctions against defendant, the Democratic Republic of Congo (DRC), for failing to comply with discovery orders. 637 F.3d 373.  The court squarely rejected the argument advanced by the United States in that case as Amicus Curiae that FSIA's "carefully crafted execution scheme" precluded these sanctions, finding "not a smidgen of indication in the text [or legislative history] of the FSIA that Congress intended to limit a federal court's inherent contempt power."  *Id.* at 378 (citing *Autotech Techs. V. Integral Research & Dev.*, 499 F.3d 737, 744 (7th Cir. 2007)); *cf.* Brief of the United States as Amicus Curiae in Support of Appellant, *FG Hemisphere*, 2010 WL 4569107 (D.C. Cir. 2011).

The United States now attempts to distinguish *FG Hemisphere*, which involved a foreign state's non-compliance with a *discovery* order, from the present case, which involves a foreign state's non-compliance with a final order compelling defendants to return the collection of

expropriated materials to Chabad's representatives.  U.S. Statement 9-10.  The distinction based

on the subject of the underlying order matters, the United States insists, because of the FSIA's

distinct treatment of "jurisdictional immunity, on the one hand, and execution immunity, on the

other." *Id.* at 4-5 (quoting *Walters v. Indus. & Comm'l Bank of China*, 651 F.3d 280, 288 (2d Cir.

2011)).  The United States points out that "[t]he FSIA affords execution immunity for property

held by a sovereign that sweeps more broadly than the jurisdictional immunity that the Act

affords to the sovereign on the underlying claim itself."  *Id.* at 5 (citing cases).  And, FSIA's

exceptions from execution immunity apply only to a foreign state's "property in the United

States," and "even that property is subject to execution only in carefully circumscribed and

extremely limited circumstances."  *Id.* at 6 (citing 28 U.S.C. § 1610(a)).  Accordingly, the United

States concludes, contempt sanctions may be available for non-compliance with a *discovery*

order (as in *FG Hemisphere*) pursuant to FSIA's broader waiver of jurisdictional immunity, but

such sanctions are not available for non-compliance with an order compelling transfer of

property held in a foreign state (as in the present case), because the latter would, in effect,

unlawfully expand FSIA's restricted waiver of execution immunity.  *Id.* at 7-10.  In the United

States' words: "Chabad asks the Court not simply to utilize its contempt power, but to create an

alternative enforcement scheme that conflicts with the carefully defined, and limited, system of

remedies authorized under the FSIA."  *Id.* at 10.

  This argument fails because it mistakenly conflates the *entering* of a sanction with its

*enforcement*.  "The government's position is quite confusing, conflating a contempt order

imposing monetary sanctions with an order enforcing such an award through execution." *FG

Hemisphere*, 637 F.3d at 377.  But though the latter is carefully restricted by the FSIA, this

restriction is irrelevant here because present matter concerns only the former. As the Court of

Appeals explained in *FG Hemisphere,* where the United States had similarly argued that "the FSIA does not permit a court to *enforce* a contempt sanction," this was simply "not the issue" before the court, which concerned only the district court's authority to *issue* a contempt sanction. 637 F.3d at 379 n.2; *see also id.* at 375 (noting "there has been as yet no attempt to *enforce* the sanction" (emphasis added)). Because the present matter concerns only the court's authority to *issue* sanctions, not *enforce* them, the United States' argument fails and *FG Hemisphere* governs.[2]

Accordingly, the Court reaffirms its prior holding that it possesses authority to issue contempt sanctions in this context.  *See Chabad III*, 798 F. Supp. 2d at 272-73.

## B. Sanctions Are Appropriate

The Court next returns to the general principles, outlined above, governing the issuance of civil contempt sanctions in order to determine whether such sanctions are appropriate in the present case.

As to the requirement that "the putative contemnor [must have] violated an order that is clear and unambiguous," *see Broderick*, 437 F.3d at 1234, the Court previously concluded that defendants' non-compliance with this Court's 2010 Order has been "demonstrated . . . 'to a reasonable certainty,' as required to warrant the entry of civil contempt sanctions."  *Chabad III*, 798 F. Supp. 2d at 272 (quoting *Bilzerian*, 613 F. Supp. 2d at 70).  Because the United States conceded this point, noting that "Russia has not complied with the Court's order," *see* U.S. Statement 3, the Court now reconfirms its earlier finding.

---

[2] As the Court rejects defendants' attempt to distinguish *FG Hemisphere* because it is based on an erroneous conflation of *issuing* a sanction and *enforcing* it, it need not consider Chabad's further arguments on this point. *See, e.g.*, Pl.'s Response 7 ("[I]t would be curious indeed if the [FSIA] were held to authorize courts to threaten monetary civil contempt sanctions for refusal to comply with their discovery orders but disabled courts from enforcing their final judgments with similar sanctions.").

As to whether sanctions would be likely to "coerce compliance" with this Court's 2010 order, *see Bilzerian*, 613 F. Supp. 2d at 70, the Court notes that the initial threat of contempt sanctions apparently prompted defendants' lawyers to meet face-to-face with Chabad's lawyers to negotiate for the first time since dropping out of the case. *See* Pl.'s Response 8.

The United States protests that any such award would not only fail to "achiev[e] its intended purpose," but would also "damage" its efforts towards "promoting resolution of the dispute between Chabad and Russia over the Collection." U.S. Statement 10. Noting that "the United States has engaged in high-level diplomatic efforts with Russia to secure the transfer of the Collection," and insisting that it is "committed to continuing these efforts which . . . require perseverance and consistency," the United States complains that sanctions would be "counter-productive." U.S. Statement 13.

The Court is not convinced. "Although [courts] often give consideration to the government's assertion that a legal action involves sensitive diplomatic considerations, [courts] only defer to these views if reasonably and specifically explained." *FG Hemisphere*, 637 F.3d at 380 (citing *Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004)). The United States fails to meet this standard. Defendants have steadily resisted all legal and diplomatic efforts to compel them to return the collection for at least two decades, *see Chabad I*, 466 F. Supp. 2d at 13-14 (detailing a history of diplomatic and legal efforts dating to 1991), and though the United States may indeed be "committed to continuing these efforts," it provides neither any information regarding its future plans, nor any other reason to believe that its new efforts will be more likely to succeed than past failures.

The United States' claim that sanctions would "risk damage to significant foreign policy interests" is similarly unconvincing. It states that an order "that purports to dispose of tangible

property held by another state in the latter state's territory" constitutes "a departure from accepted rules of public international law," and therefore "would risk significant criticism from the international community," as well as "undermine the United States' own interests in avoiding similar measures being imposed against it."  U.S. Statement 11-12.  But, here again, the United States has conflated a court's *issuing* of contempt sanctions with *execution* or *enforcement* of an award by, for instance, attaching tangible property.  *See FG Hemisphere*, 637 F.3d at 377.  In issuing contempt sanctions against a foreign sovereign in favor of a plaintiff, this Court does not "purport[] to dispose of tangible property held by [that] state in the latter state's territory" and so such an award cannot damage the United States' asserted interest in adhering to "accepted rules of public international law."

The United States also alludes to its interest in reversing Russia's moratorium on "all loans of Russian cultural treasures to exhibitors in the United States" which, it states, was begun "in response to what Russia perceived to be threats from Chabad to seek attachment of the loaned items."  U.S. Statement 13 n.9.  But, as the Court explained previously, the fears purportedly motivating Russia's moratorium were legally unfounded, as such items would be immune under federal law from attachment.  *Chabad III*, 798 F. Supp. 2d at 270-71 (citing 22 U.S.C. § 2459).  Moreover, any lingering Russian anxieties about Chabad's ability to attach these items should have been put to rest by this Court's July 26, 2011 Order which, at Chabad's request, incorporated an express prohibition on the attachment of such cultural treasures.  ECF No. 101.  That the moratorium on art loans remained in effect even after this order was issued undermines the United States' characterization and suggests that other motives are at play.  The Court finds that the United States fails to "reasonably and specifically explain[]" the connection

between the proposed sanctions and its ability to negotiate a resolution to the moratorium. *FG Hemisphere*, 637 F.3d at 380.

Accordingly, the Court concludes that contempt sanctions are appropriate.

## C.    Amount

It remains to be decided what size award would be best calibrated to "coerce compliance" with the 2010 Order.  *See Bilzerian*, 613 F. Supp. 2d at 70.  Defendant Russia is one of the world's largest economies.[3]  The sanction imposed on the Democratic Republic of Congo, a much smaller and weaker economy,[4] and upheld in *FG Hemisphere* was "$5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week."  *FG Hemisphere*, 637 F.3d at 376.  In *United States v. Philip Morris USA Inc.*, the court found that civil contempt sanctions in the amount of $25,000 per day against a tobacco company with annual profits of approximately $190,000,000 were warranted.  287 F. Supp. 2d 5, 15 (D.D.C. 2003).

Guided by these precedents, the Court will issue civil contempt sanctions in the amount of $50,000 per day until defendants comply with this Court's July 30, 2010 Order.  ECF No. 80.

## III.    CONCLUSION

Chabad's motion for civil contempt sanctions will be GRANTED, and the Court will issue an Order with this Opinion, entering contempt sanctions against all defendants in the amount of $50,000 per day until defendant complies with the July 30, 2010 Order.

Signed by Royce C. Lamberth, Chief Judge, on January 16, 2013.

---

[3] The CIA World Factbook lists Russia as having the seventh largest gross domestic product in the world, calculated at purchasing power parity, after only the European Union, the United States, China, Japan, India and Germany. *See* Central Intelligence Agency, The World Factbook, *Country Comparison: GDP (Purchasing Power Parity)*, https://www.cia.gov/library/publications/the-world-factbook/rankorder/2001rank.html?countryName=Russia&countryCode=rs&regionCode=cas&rank=7#rs (last visited Jan. 10, 2013).

[4] Ranked number 116, according to the Factbook.  *Id.*