UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                         )
AGUDAS CHASIDEI CHABAD                  )
OF THE UNITED STATES,                         )
                                                         )
                          *Plaintiff*,                 )
                                                         )
            v.                                          )    Case No. 1:05-cv-01548-RCL
                                                         )
RUSSIAN FEDERATION; RUSSIAN      )
MINISTRY OF CULTURE AND MASS    )
COMMUNICATION; RUSSIAN STATE   )
LIBRARY; and RUSSIAN STATE         )
MILITARY ARCHIVE,                           )
                                                         )
                          *Defendants.*,             )
                                                         )
_____)

## PLAINTIFF'S RESPONSE TO THE STATEMENT
## OF INTEREST OF THE UNITED STATES

Plaintiff Agudas Chasidei Chabad of the United States ("Chabad") respectfully submits this response to the Statement of Interest ("Statement II") filed by the United States (the "Government") on February 21, 2014 (Dkt.134). Statement II sets out the Government's objections to Chabad's motion (Dkt. 127) for entry of an interim judgment in the amount of the civil contempt sanctions that have accrued as a result of Defendants' (collectively, "Russia's") refusal to comply with the Court's earlier judgment and orders. *See Agudas Chasidei Chabad of United States v. Russian Federation*, 915 F. Supp. 2d 148, 151 (D.D.C. 2013) (Lamberth, J.) (finding Russia in contempt and imposing sanctions of $50,000 per day) ("Sanctions Order").

As explained below, the arguments the Government sets out in Statement II are the same as those the Government previously presented to this Court in opposition to Chabad's April 4, 2011 motion to hold Russia in contempt — arguments that this Court has already considered,

addressed, and rejected in the Sanctions Order. Statement II offers no new authority or policy rationale for refusing Chabad's pending request that the accrued sanctions be reduced to an interim monetary judgment. Accordingly, there is no legal or practical impediment to the entry of the interim judgment Chabad has requested. Moreover, as Chabad explained in its motion and explains further below, entry of the judgment will encourage Russia to resolve this matter in accordance with this Court's prior rulings.

## BACKGROUND

Chabad filed this lawsuit ten years ago to recover the Library and Archive stolen from Chabad by the Soviet and Nazi regimes. The documents are in Russia's possession, custody, and control. Russia initially appeared in this lawsuit and objected to this Court's jurisdiction, citing the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"). Following proceedings on Russia's motion to dismiss, including an appeal to the D.C. Circuit in which Chabad prevailed and Russia's assertion of sovereign immunity was rejected, Russia announced that it would no longer participate in this case. After Chabad submitted evidence to support its claims pursuant to the FSIA, this Court entered a default judgment in Chabad's favor. Specifically, this Court ordered that Russia return the Library and Archive to the duly appointed representatives of Plaintiff Agudas Chasidei Chabad of United States or to the United States embassy in Moscow. Russia has refused to comply. Extra-judicial efforts to resolve the situation failed, and Chabad then asked this Court to find Russia in civil contempt. When this Court expressed its intention to grant the motion, the Government filed a Statement of Interest (Dkt. 111) ("Statement I") in response to the Court's solicitation of its views. After due consideration, including a hearing at which the Government was present and argued its case, this

Court issued the Sanctions Order. Following another, year-long round of extra-judicial efforts to resolve this matter, which also failed, Chabad filed the present motion.

The arguments the Government raises in opposition to Chabad's present motion (in Statement II) are virtually identical to the arguments the Government raised in opposition to Chabad's motion for sanctions (in Statement I). In Statement I, the Government's primary argument was that the FSIA did "not authorize this Court to enforce an expropriation finding through an order threatening sanctions against Russia for failure to surrender property that Russia holds on its own territory." Statement I at 7. The Government also asserted that, even if sanctions were legally permissible, the Court should decline to impose sanctions in deference to perceived United States foreign affairs concerns. *Id.* at 12. The Government concluded that sanctions would be "counter-productive" to the "high-level diplomatic efforts with Russia to secure the transfer of the collection." *Id.* at 13; *see also* Tr. of Hrg. on Contempt, Jan. 9, 2013, at 16 ("The United States respectfully requests that the Court should deny the motion for sanctions for two reasons: First, the relief that the plaintiff requests is inconsistent with the Foreign Sovereign Immunities Act, and; [sic] second, that relief w[ould] harm the foreign policy interests of the United States.").

In its January 16, 2013 decision granting Chabad's motion to hold Russia in contempt, this Court rejected both of the Government's points. Consistent with the D.C. Circuit's decision in *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373 (D.C. Cir. 2011), this Court concluded that it had the authority to impose sanctions on Russia for non-compliance with the Court's earlier judgment and orders. *Agudas Chasidei Chabad of United States,* 915 F. Supp. 2d at 151-52. Addressing the Government's policy arguments, this Court was "not convinced" that sanctions would be "counter-productive." *Id.* at 153. Moreover, this

Court found that the Government had failed to provide "reason to believe that its new [diplomatic] efforts w[ould] be more likely to succeed than past failures." *Id.* Accordingly, this Court exercised its inherent contempt power and imposed sanctions of $50,000 a day on Defendants. (Dkt. 115).

The issue now before the Court is Chabad's motion for an interim judgment for the sanctions that have accrued over the year following the Sanctions Order, during which time further efforts to resolve this issue by Chabad, by the State Department, and by others have continued to be unsuccessful.

## ARGUMENT

**I.  THIS COURT HAS REJECTED THE GOVERNMENT'S ARGUMENT THAT THE FSIA BARS THE IMPOSITION OF CONTEMPT SANCTIONS ON RUSSIA**

This Court has already concluded that the FSIA imposes no barrier to the imposition of civil contempt sanctions on Russia. As it did in Statement I, however, the Government in Statement II argues otherwise, asserting, once again, that the "FSIA does not authorize enforcement of the Court's specific performance order regarding property in Russia through an order sanctioning Russia for its non-compliance with that order." Statement II at 6. Rejecting this argument in its earlier decision, however, this Court held that the Government "mistakenly conflates the *entering* of a sanction with its *enforcement*." *Agudas Chasidei Chabad of United States*, 915 F. Supp. 2d at 152. The Government does not address this Court's earlier ruling on this point, nor does the Government offer any argument to disturb the Court's reliance on the D.C. Circuit's decision in *FG Hemisphere* as support for its authority to impose sanctions. The Government's reprise of its arguments from Statement I in Statement II is no basis to reject Chabad's request.

The Government's summary of its FSIA argument in Statement II reads as follows: "As the United States discussed in its previous Statement of Interest [*i.e.,* Statement I], the FSIA does not authorize the imposition of contempt sanctions as a means of enforcing the Court's order directing Russia to surrender tangible property that is within Russia's possession and located within Russia's borders." Statement II at 3.  As this Court previously held, the Government's argument is incorrect.  Chabad's response to Statement I pointed out that Chabad is not seeking to seize property located in Russia in order to induce compliance with this Court's order.  *See* Plaintiff's Response to Statement of Interest of the United States at 6-7 (Dkt. 112).  Enforcement of a money judgment would take place in the United States or in some jurisdiction other than Russia. The fact that the Court's order concerns the return of property presently held by Russia within its borders does not preclude enforcement of a contempt sanction in the United States or in some location outside Russia.

Nonetheless, the Government's premise is that, under the FSIA, "any exception from execution immunity applies only where a foreign state possesses 'property in the United States,' and even that property is subject to execution in an extremely limited number of circumstances. 28 U.S.C. § 1610(a)." *Id.* at 5 (citing *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007)).  According to the Government, these principles reflect "careful limitations on enforcing judgments on a foreign state's property – including an absolute prohibition on a foreign state's property located outside of the United States . . . ." *Id.*  If the Government's contention that enforcement of an order directing the return of property located within the borders of a foreign country were correct, the provision of the FSIA that grants United States courts jurisdiction to hear cases involving takings that violate international law would

5

become a dead letter.  Under the principle of law urged by Government in Statement II, an order directing the return of such property would be unenforceable.

Prior proceedings in this case have resulted in a judgment declaring that the Library and Archive at issue in this lawsuit belong to Chabad and not to Russia.  Russia fought the FSIA battle and lost in the D.C. Circuit, which held that this Court has jurisdiction under the FSIA to address Chabad's claim for return of its property, and Russia then refused to present any evidence that might support a claim of ownership.   The FSIA arguments the Government offers are simply not relevant in these circumstances.

## II.  CHABAD WILL COMPLY WITH THE FSIA IN ENFORCING THIS COURT'S CONTEMPT ORDER

The Government's concern is not, apparently, that Chabad contends that it owns property being held in Russia but that Chabad may, in the future, seek to enforce an interim judgment reflecting the accrued sanctions by seeking to "attach a foreign state's property located outside of the United States."  There is, however, no issue presently before this Court regarding particular enforcement mechanisms, including the attachment of property.  Chabad has repeatedly made clear its intention to continue to abide by the FSIA (28 U.S.C. §§ 1610, 1611) as it seeks to enforce the Court's judgment and orders.  Tr. of Hrg. on Contempt at 10.  Identification and attachment of suitable Russian property in the United States (subject, of course, to FSIA exceptions regarding works of art and other specific types of property) is legally permissible, and the Government does not appear to contend otherwise.[1]

---

[1] Insofar as enforcement of a judgment against a foreign state is concerned, the FSIA specifies that "No attachment or execution . . . shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of notice required under section 1608(e) of this chapter."  28 U.S.C. § 1610(c).  The Government's concerns are therefore not only misplaced, but premature.

The Government's effort to have a second bite at the FSIA apple with its erroneous and misguided legal argument should be rejected.  This Court should grant Chabad's request for an interim judgment in the amount of the first year's accrued sanction.  Chabad should be permitted to proceed with further efforts, consistent with the FSIA and other requirements, to obtain Russia's compliance with this Court's judgment and orders regarding the return of Chabad's property.

### III. AS IT DID IN ITS SANCTIONS ORDER, THE COURT SHOULD REJECT THE GOVERNMENT'S ARGUMENTS BASED ON VAGUE FOREIGN POLICY CONCERNS

The Government also argues that entry of an interim judgment of accrued sanctions would implicate this country's foreign policy interests, and asks that this Court, on this account, deny Chabad's request.  Statement II at 7.  More specifically, the Government contends that "further enforcement actions" would impede this country's "interest in promoting a resolution of the dispute between Chabad and Russia over the Collection." *Id.* at 7.  While Chabad appreciates the Government's efforts to promote an out-of-court resolution of this dispute, these are (a) the same concerns that the Government raised in Statement I, (b) that this Court considered in the Sanctions Order, and (c) that this Court found wanting.  *See* Statement I at 13; *Agudas Chasidei Chabad of United States*, 915 F. Supp. 2d at 153.  Nor is there a cogent reason for revisiting these assertions.

The crux of the Government's policy argument is set out in a letter dated February 20, 2014, from Mary E. McLeod, Principal Deputy Legal Advisor of the State Department, to Stuart Delery, Assistant Attorney General for the Civil Division, U.S. Department of Justice ("McLeod Ltr.").  *See* Statement II, Attachment A.  Ms. McLeod's letter does not say that entry of the interim judgment Chabad seeks will interfere with negotiations on subjects more pressing than

7

the return of Chabad's property.  Nor is there any mention of any realistic threat by Russia on a matter of political, economic, or strategic concern to the United States.

The Government alleges that two Russian government agencies filed a counter-lawsuit asking for the return of "seven Schneerson Library books" on loan to the Library of Congress. McLeod Ltr. at 2.  The Government also hypothesizes that this Court's order "could threaten the United States' own legal position in litigation in foreign courts." *Id.* at 3.  As to the first point, it has already been adjudicated that the books in question belong to Chabad, not Russia[2]; Russia's cynical, retaliatory lawsuit should not forestall, much less foreclose, Chabad's effort to secure enforcement of this Court's judgment and the return of the remainder of its property still unlawfully in Russia's hands.  As to Ms. McLeod's second point, Congress addressed that issue, and balanced the competing concerns, when it passed the FSIA.  So long as Chabad complies with the FSIA – as it has thus far, and will continue to do in the future – the Government's litigation concerns are misplaced.

Ms. McLeod's letter principally addresses litigation strategy.  "We continue to believe that an out-of-court dialogue presents the best means toward an ultimate resolution, and we have emphasized to Chabad the [State] Department's belief that further steps in the litigation will not be productive."  McLeod Ltr. at 2.  This Court previously observed that there is reason to doubt that "new [diplomatic] efforts will be more likely to succeed than past failures."  *Agudas Chasidei Chabad of United States*, 915 F. Supp. 2d at 153.  Chabad will continue to seek a diplomatic or other extra-judicial resolution of this dispute, but as detailed in Chabad's Motion for Interim Judgment, Russia has remained intransigent.

---

[2]   This Court's judgment expressly states that the "seven books provided to William J. Clinton and Vice President Al Gore" are part of the "Library" belonging to Chabad.  Order Granting Default Judgment at 2 n.1 (Dkt. 80).

The record will reflect that this Court's Sanctions Order secured the direct attention of Russian President Vladimir Putin. Affirmation of Seth M. Gerber in Response to the Statement of Interest of the United States ¶¶ 2-6 (attached hereto as Exhibit A) ("Gerber Aff."). In February 2013, one month following the Sanctions Order, Chabad's representatives were invited to meet in Moscow with Mr. Yuri Ushakov, a former Ambassador of the Russian Federation to the United States, to discuss a potential resolution. Gerber Aff., ¶¶ 2-4. The very next day, Russian President Vladimir Putin decided not to accept the proposal discussed with Mr. Ushakov and announced instead that the Library portion of the collection would be transferred to a special department of the Russian State Library at the Jewish Museum and Tolerance Center in Moscow. Sophia Kishkovsky, *Russia Aims to Defuse Conflict Over Schneerson*, The New York Times, February 19, 2013, http://artsbeat.blogs.nytimes.com/2013/02/19/russia-aims-to-defuse-conflict-over-schneerson-collection/?_php=true&_type=blogs&_r=0.[3]

Indeed, Ms. McLeod's letter itself refers to the onset of (and some progress in) direct, government-to-government negotiations on this matter following the issuance of the Sanctions Order. McLeod Ltr. at 2. Any progress reflected in Ms. McLeod's account of the ongoing negotiations occurred after this Court's Sanctions Order (and, indeed, after Chabad informed the State Department of its intention to file the pending motion). *See id.* ("[A]s recently as three weeks ago, Department officials met with Russian officials in Moscow to discuss possible options for making progress"). In sum, while the State Department's views regarding litigation strategy are appreciated and worthy of respect, they should carry little weight in the Court's deliberations, particularly where (as here) those views are contrary to experience. *Agudas*

---

[3] As Chabad explained in its pending motion, President Putin only partially complied with this promise. In any event, the proposal to house the Library in a facility controlled by an arm of the Russian government is unacceptable, and there has been no announcement regarding the Archive and other materials at issue in this lawsuit.

*Chasidei Chabad of United States*, 915 F. Supp. 2d at 153 ("[T]he Court notes that the initial threat of contempt sanctions prompted defendants' lawyers to meet face-to-face with Chabad's lawyers to negotiate for the first time since dropping out of this case.").

## IV. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR SPECIAL NOTICE

Finally, the Government requests that,

> should the Court grant Chabad's motion, the Court should direct Chabad to provide the Court and the United States with advance notice of any efforts to take any additional steps to enforce the Court's interim judgment or specific performance order, in the manner described in Chabad's motion or otherwise.

Statement II at 9. This request is misplaced. First, as explained above, the FSIA sets out the requirements regarding notice to the Court prior to the attachment or execution of a foreign state's property. 28 U.S.C. § 1610(c); *see also Agudas Chasidei Chabad of United States v. Russian Federation*, 798 F. Supp. 2d 260, 271 (D.D.C. 2011) (Lamberth, J.) (noting that prior to attachment, this Court would have to "evaluate a proposed attachment of specific property in this case by reviewing the jurisdictional provisions of § 1610(a)-(b), as well as any other immunities that might apply"). No further order or conditions regarding notice are required. Second, the Government's request is vague, calling for "advanced notice" before "any additional steps to enforce" the judgment. Chabad may take certain preliminary steps to further enforcement efforts, including research, investigation, and issuance of subpoenas to third parties. As none of these steps would directly implicate Russia's interests in any property subject to attachment or execution, such actions would not touch on any of the policy interests the Government has identified. Hence, the Government's request should be denied.

And of course Russia could avoid the risk of attachment altogether by complying with this Courts' judgment and returning the Library and the Archive to Chabad. On that point,

Chabad and the Government share common ground. As the record to date reflects, however, there is a strong, positive correlation between Chabad's efforts to enforce this Court's judgment and Sanctions Order, and the movement toward resolution of this matter in diplomatic and other extra-judicial negotiations.

## **CONCLUSION**

For the foregoing reasons, the Government's arguments and concerns regarding Chabad's pending motion do not preclude entry of the interim judgment of accrued sanctions Chabad requests. Accordingly, Chabad's motion should be GRANTED. Finally, if the Court would find oral argument on Chabad's motion useful, counsel for Chabad would be pleased to participate and address further the points raised by Chabad's motion and the Government's Statement of Interest and this response.

Date:  February 28, 2014                                  Respectfully submitted,

| By: *Seth Gerber* | By: *Nathan Lewin* | By: *Robert Parker* |
|---|---|---|
| Seth Gerber | Nathan Lewin | Steven Lieberman |
| (*Pro Hac Vice*) | (D.C. Bar No. 38299) | (D.C. Bar No. 439783) |
| BINGHAM MCCUTCHEN LLP | Alyza D. Lewin | Robert Parker |
| The Water Garden | (D.C. Bar No. 445506) | (D.C. Bar No. 404066) |
| 1620 26th Street | LEWIN & LEWIN, LLP | ROTHWELL, FIGG, ERNST & |
| Fourth Floor, North Tower | 1775 Eye Street, N.W., Suite 850 | MANBECK |
| Santa Monica, CA 90404 | Washington, D.C. 20006 | 607 14th St., N.W., Suite 800 |
| Tel: (310) 907-1000 | Tel: (202) 828-1000 | Washington, D.C. 20005 |
| Fax: (310) 907-2000 | Fax: (202) 828-0909 | Tel: (202) 783-6040 |
| E-mail: | E-mail: nat@lewinlewin.com | Fax: (202) 783-6031 |
| seth.gerber@bingham.com | alyza@lewinlewin.com | E-mail: |
|  |  | slieberman@rothwellfigg.com |
|  |  | rparker@rothwellfigg.com |

*Attorneys for Plaintiff Agudas Chasidei Chabad of United States*