UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> RUSSIAN FEDERATION, *et al.* <br><br> Defendants. | Case No 1:05-cv-01548-RCL |

## MEMORANDUM OPINION

Plaintiff Agudas Chasidei Chabad of the United States ("plaintiff") moves for interim judgment of accrued sanctions in the amount of $43,700,000[1] against defendants the Russian Federation ("Russia"), the Russian Ministry of Culture and Mass Communication (the "Ministry"), the Russian State Library ("RSL"), and the Russian State Military Archive ("RSMA") (collectively, "defendants") reflecting sanctions that have accrued under the Court's January 16, 2013 Order, ECF No. 115. *See* Plaintiff's Motion for Interim Judgment of Accrued Sanctions, January 28, 2014, ECF No. 127. After considering plaintiff's motion, the United States' second Statement of Interest ("U.S. Statement") in this matter, ECF No. 134; plaintiff's response, ECF No. 135; oral argument held on August 20, 2015; Statement of Defendants with Respect to Further Participation[2], ECF No. 71; and applicable law, and for reasons given below, the Court will GRANT the motion and award plaintiff interim judgment of accrued sanctions. The Court will

---

[1] Plaintiff's Motion for Interim Judgment of Accrued Sanctions requests the court to enter judgment in the amount of $14,750,000, which amount reflects fines accrued over 365 days (from January 16, 2013 until January 16, 2014) less a 70-day hiatus. *See* Plaintiff's Motion for Interim Judgment of Accrued Sanctions, January 28, 2014, ECF No. 127 at 2. This amount was amended by plaintiff during the August 20, 2015 hearing to $43,700,000, which amount was reduced to writing in plaintiff's proposed order and interim judgment. ECF No. 141-1.

[2] Including defendant's subsequent refusal to accept service of the Court's Default Judgment through diplomatic channels. *See* ECF No. 87 and ECF No. 90-1.

further ORDER plaintiff to provide notice of certain actions to the United States as described in separate order.

I. BACKGROUND[3]

Plaintiff brought this action in 2004 seeking return of religious books, artifacts and other materials concerning the cultural heritage of its forbearers, which fell into defendants' hands in the early 20th century. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n (Chabad III)*, 798 F.Supp.2d 260, 263 (D.D.C. 2011). In 2009, after losing on jurisdictional arguments, defendants' lawyers informed the Court that they would no longer be participating in the case as defendants believed the Court lacked "authority to adjudicate rights in property that in most cases always has been located in the Russian Federation . . . ." Statement of Defendants, June 26, 2009, ECF No. 71. A year later, this Court entered default judgment in favor of Chabad, *see Agudas Chasidei Chabad of U.S. v. Russian Fed'n (Chabad II)*, 729 F.Supp.2d 141 (D.D.C. 2010), and ordered defendants to "surrender to the United States Embassy in Moscow or to the duly appointed representatives of . . . Chabad . . . the complete collection." *Id.* Defendants failed to comply with this order and on January 16, 2013, the Court granted plaintiff's motion for civil contempt sanctions, ordering monetary sanctions of $50,000 per day, payable to plaintiff. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n (Chabad IV)*, 915 F.Supp.2d 148 (D.D.C. 2013).

Defendants continue to disregard the Court's Order and have entered no further appearance since declaring their unwillingness to participate further. Plaintiff requests "entry of an interim

---

[3] As the history of this case is set out elsewhere in detail, this opinion provides only a brief summary of the relevant background. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n (Chabad I)*, 466 F. Supp. 2d 6, 10-14 (D.D.C. 2006) (providing full factual history) *rev'd in part on other grounds*, 528 F.3d 934 (D.C. Cir. 2008).

2

monetary judgment in the amount accrued under" the Court's Sanctions Order of January 16, 2013. *See Chabad IV*.

## II. ANALYSIS

The Court remains deprived of defendants' participation and can only consider the statement of interest of the United States and plaintiff's motion. *See* ECF Nos. 87 and 90-1. The United States objects to the requested interim judgment of accrued sanctions on two grounds. First, the United States restates its legal argument against imposition of sanctions that the Court previously rejected. *See Chabad IV* (finding the United States' argument unpersuasive and sanctions appropriate) and ECF No. 134. Second, the United States argues that interim judgment of accrued sanctions would further damage the United States' foreign policy interests, including its diplomatic efforts to reach a settlement with defendants on plaintiff's behalf. ECF No. 134 at 6-9. The Court agrees with plaintiff's analysis that this is not an enforcement action, and questions related to enforcement are not ripe for adjudication. ECF No 135 at 6. Nonetheless, the Court notes that the mechanism that bridges the action requested by plaintiff today and enforcement remains uncomplicated. Under the provisions of 28 U.S.C. §1610(c), "no attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." As the Court noted in its July 26, 2011 opinion, there are two requirements therein required for a plaintiff seeking to enforce judgment against a foreign state. *Chabad III*, 798 F.Supp.2d. at 266. Specifically, notice that judgment has been entered and adequate opportunity to respond. *Id.* That analysis dealt with default judgment ordering specific performance requested by plaintiff. The enforcement question implicated in this instance is attachment and execution of

defendants' property that may be identified within the United States. Therefore, the Court notes that as stipulated by plaintiff, concerns related to such enforcement are premature until such time as plaintiff has identified property to attach and execute, provided notice to defendants of such attachment and execution, and given defendants "reasonable time" to respond. *Id.* Given that defendants have had notice of plaintiff's efforts to liquidate monetary sanctions for more than a year, it is likely that plaintiff will be able to pursue attachment and execution[4].

### A.   The Court's Authority to Issue Interim Judgment of Accrued Sanctions

The Court has authority to issue sanctions. *See Chabad III*, 798 F.Supp.2d. at 272-3, and again in *Chabad IV*. The Court has been asked to issue interim judgment, reducing accrued sanctions to a sum certain as of a specific date. Recalling that the Foreign Sovereign Immunities Act of 1976's ("FISA"), Pub.L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. §§ 1330, 1332(a), 1391(f), 1441 (d), 1602-1611) "provisions governing jurisdictional immunity, on the one hand, and execution immunity, on the other, operate independently," *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d. 280 (2d. Cir. 2011), the Court here examines a predicate to execution immunity analysis[5]. The Court is not persuaded that the law should be applied differently now than when it ordered sanctions under the authority of the FSIA, as applied in *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373 (D.C. Cir. 2011).

The United States argues that the Court has reached the limit of the Court's authority under the FSIA. The United States offers no additional persuasive law, facts, or argument to show that the issue of enforcement is specifically ripe. ECF No. 134 at 7. The Court may be more proximal

---

[4] Such attachment and execution being subject to the provisions of 22 U.S.C. § 2459, granting immunity from attachment or execution to property or interest that constitutes art, artifacts, or other cultural objects. *See* also ECF No. 101.

[5] The predicate being interim judgment of accrued sanctions.

to the question of enforcement than when it ordered sanctions, and while it has not yet reached the question of enforcement, the Court notes the implications of this decision with regard to such.

The United States argues further that plaintiff intends to pursue enforcement action and suggests that the Court should consider such intentions in ruling on this matter. The United States further admonishes "[t]he Court should be aware that these further enforcement actions would cause even greater harm to the United States' foreign policy interests, including the United States' interest in promoting a resolution of [this] dispute." ECF No. 134 at 7. The Court takes notice of the United States' concerns of foreign policy interests and discusses them more fully below.

It is noteworthy that the United States does not address defendants' willful withdrawal from this matter and continued failure to either appear or comply with the Court's orders. Conversely, in every case cited by the United States in its statement of interest, defendants (or the party invoking protections under the FSIA) participated in litigation. *See Argentine Republic v. Amerada Hess Shipping Corp*, 488 U.S. 428, 109 S.Ct. 683 (1989); *FG Hemispheres Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373 (D.C. Cir. 2011); *Autotech Technologies LP v. Integral Research and Development Corp.*, 499 F.3d 737 (7th Cir. 2007); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir. 2002) (The Democratic Republic of the Congo did not appear in an initial action, but then subsequently appeared and took part in litigation); *S&S Machinery Co., v. Masinexportimport*, 706 F.2d 411 (2d Cir. 1983); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 128 S.Ct. 2180 (2008); *Pere v. Nuovo Pignone, Inc.*, 150 F.3d 477 (5th Cir. 1998).

### B. Foreign Policy Interests of the United States

Next, the United States urges that the Court consider certain foreign policy interests. In fact, the United States offers similar and slightly more specific concerns as in *FG Hemisphere*

*Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373 (D.C.Cir.2011). As in *FG Hemisphere*, the United States suggests the threat of vague foreign policy interests and of reciprocal treatment of the United States in Russian courts. 637 F.3d 373 at 379. In examining this issue, the Court first examines defendant's history of participation in and reaction to litigation herein, then turns to concerns raised by the United States in a letter submitted from the Department of States, and finally turns to specific foreign policy concerns enumerated in the statement of interest. ECF No. 134.

### i. Defendant's Participation in and Reaction to Litigation

The original complaint in this case was filed nearly eleven years ago[6]. It was transferred to this Court several months later and has been pending in this Court for nearly ten years[7]. Defendants participated in litigation for four and a half years, filing numerous documents and pleadings until filing a Statement With Respect to Further Participation on June 26, 2009. ECF No. 71. Accordingly, the Court ordered default judgment generally on October 27, 2009, and upon motion by plaintiff, ordered specific performance as default judgment on July 30, 2010. ECF Nos. 77 and 80. The Clerk entered default judgment on August 30, 2010. ECF No. 82. Plaintiff endeavored to serve defendant notice of the default judgment through diplomatic channels, but was rebuffed. ECF No. 87. The Court then granted plaintiff's motion to Enforce Judgment and Permit Attachment, while holding in abeyance plaintiff's motion for Sanctions on July 26, 2011 and still, defendants did not respond. ECF No. 101. After soliciting and considering views of the United States, and considering plaintiff's motion for sanctions, the Court granted such motion and ordered sanctions on January 16, 2013. ECF Nos. 107, 111, and 115. Still, defendants did not respond in or to the Court, however, defendants did respond more publicly. Plaintiff notes that its

---

[6] Plaintiff filed in in the Central District of California on November 9, 2004. ECF No. 1 at 3.
[7] *See* Order from United States District Court for the Central District of California, July 14, 2005. ECF No. 1 at 8.

representatives were invited to a meeting in Moscow with a former Ambassador of the Russian Federation to the United States in February 2013[8]. ECF No. 135 at 9. Russian President Vladimir Putin then clearly decided not to accept the proposed resolution the next day, instead transferring the Library portion of the collections involved in this case to "a special department of the Russian State Library at the Jewish Museum and Tolerance Center in Moscow." *Id.* Finally, plaintiff filed this motion for Interim Judgment of Accrued Sanctions on January 28, 2014, more than three years after the Clerk entered default judgment and more than four years after defendants absconded from litigation. The only additional responses of which the Court is aware are the bellicose statements of the Russian President, Vladimir Putin, and tit-for-tat litigation instituted in Russian courts. Defendants have given clear indication that they do not intend to comply with this Court's orders. The time has come to give plaintiff some of the tools to which it is entitled under law.

### ii. Concerns raised by United States Department of State

In Exhibit A to its Statement of Interest, the United States submits a letter from Principal Deputy Legal Adviser Mary E. McLeod from the United States Department of State. Ms. McLeod raises several concerns that merit the Court's analysis. While conceding that defendants have not participated in litigation, the letter urges the Court that "an out-of-court dialogue presents the best means towards an ultimate resolution." ECF No. 134-1 at 2. The record does not reflect this point of view, and the Court rejects this argument.

The Department of State contends that litigation in this case has both had an adverse impact on relations between the United States and Russia and discouraged resolution of this dispute. ECF No. 134-1. Specifically, the Department of State contends that "[i]f Chabad pursues the additional steps it has outlined in its recent motion, those measures will cause significant harm to the foreign

---

[8] The occurrence of this meeting further underscores plaintiff's argument that the Court's sanctions order at least brought defendants to the bargaining table in some form.

policy interests of the United States." ECF No. 134-1 at 2. There is simply no evidence on the record that this case has any impact on relations between the United States and Russia outside of this case, particularly in light of defendants' reaction and participation as discussed above.

The Department further suggests that this court cannot enforce sanctions against a foreign state. Unfortunately, the Department does not provide any analysis of the provisions of the FSIA that it invokes. The Court underwent such analysis when it originally ordered default judgment and again when it ordered sanctions. *See Chabad III* and *Chabad IV*. The Court is satisfied that its analysis is sound on this point.

Finally, the Department suggests "that entry of a money judgment for accrued sanctions in this case would set another troubling precedent for foreign governments, which could threaten the United States' own position in litigation in foreign courts." ECF No. 134-1 at 3. To the contrary, such a judgment is entirely consistent with the FSIA. As discussed below, the Court is not persuaded that retaliatory or "tit-for-tat" litigation against the United States should be the basis for shirking its responsibility to make rulings consistent with law. It would be a troubling precedent, indeed, to disregard the law and rule as the Department prays.

### iii. Specific Foreign Policy Concerns

The Court examines three such concerns starting with the vague and moving to the specific and concludes, in agreement with plaintiffs, that the United States "does not say that entry of interim judgment Chabad seeks will interfere with negotiations on subjects more pressing than the return of Chabad's property. Nor is there any mention of any realistic threat by Russia on a matter of political, economic, or strategic concern to the United States." ECF No. 135 at 7-8. Rather than a vague assertion of foreign policy interests, the Executive (by and through its representatives

appearing before the Court from the Departments of Justice and State) has taken no action on this matter contrary to plaintiff's position.

First, the United States argues that interim judgment implicates vague, but serious foreign policy interests. Given the United States' current sanctions against Russia and Russian interests based upon various geopolitical events, the Court is unpersuaded by such a vague concern in this case. Additionally, the Court notes that the Russian minister of culture has reportedly indicated, "[t]he problem does not lie in relations between Russia and the United States. It lies in relations between Russia and a Jewish community registered in the United States,[9]" further undercutting the United States' warning of grave foreign policy concerns. The Court notes that the United States expresses no opinion on the foreign policy interests of simply allowing a foreign litigant to withdraw from litigation when convenient to its interests, as defendants have done in this case[10]. In asking the court to exercise its "equitable and remedial authority and discretion," the United States mischaracterizes this motion as "another order seeking to compel disposition of property possessed by a foreign state within its own borders." ECF No. 134 at 6-7. The United States again asks the court to consider a question not yet ripe. The Court again declines to do so. *See Licea v. Curacao Drydock Co., Inc.*, 794 F.Supp.2d 1299 (S.D.Fla. 2011) for additional analysis of the threshold between FSIA's jurisdictional immunity (which the Court has already considered) and FSIA's execution immunity (not yet before the Court).

Second, the United States argues that such an order would further impede the "ongoing diplomatic efforts to resolve the dispute." ECF No. 134 at 7. In fact, the only evidence that the

---

[9] "Schneerson Library display at Jewish center will depoliticize problem," February 25, 2013, http://www.interfax-religion.com/?act=news&div=10292

[10] It is not lost on the Court that the United States simultaneously urges the Court (and the plaintiff) to allow for diplomatic resolution, while implying that diplomatic relations with the Russian Federation are fraught so as to make progress on this matter unlikely. This demonstrates relative diplomatic apathy to this specific matter.

United States has provided in support is the letter of the Principal Deputy Legal Adviser, United States Department of State. ECF No. 134 at Exhibit A. In this letter, she reiterates the United States' position without additional specific facts or argument. The Court is persuaded by plaintiff's argument that "those views are contrary to experience." Plaintiff's Response to the Statement of Interest of the United States, ECF No. 135 (citation omitted). The Court reached this conclusion previously, noting in the January 16, 2013 Order that, "though the United States may indeed be 'committed to continuing these efforts,' it provides neither any information regarding its future plans, nor any other reason to believe that its new efforts will be more likely to succeed than past failures." *Chabad IV*, 915 F.Supp.2d at 153.

Lastly, the United States notes ongoing litigation in Russian courts involving seven books from the same collection here at issue. ECF No. 134-1 at 2. The United States explained during oral argument that this litigation "appears to be tit for tat retaliatory measures taken in response to what happens in this case," to include the Russian court apparently issuing a sanctions order of $50,000 per day against the United States. The Court is not persuaded this Russian litigation should have any bearing on the Court's decision today.

### C. The Court is Not in Conflict with the Executive's Foreign Relations Powers

Judicial review is not prevented by implications of foreign affairs, especially to a Court reviewing an action falling under specific legislation, as here with the FSIA. See generally *Baker v. Carr*, 369 U.S. 186, 211 (1962) ("... it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance...") and *Zweibon v. Mitchell*, 516 F.2d 594, 623 (D.C. Cir. 1975) ("Similarly, we see no reason to take the Waterman dicta as a Supreme Court statement that any issue that touches foreign affairs is to be immunized from judicial

review..." citing *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103 (1948)).

Having resolved the Court's authority to issues sanctions in this matter, the court is satisfied that its decision grants required and appropriate deference to the Executive's, "delicate, plenary, and exclusive power of the President as the sole organ of the federal government in the field of international relations." *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) and acknowledges the Executive's " 'vast share of responsibility for the conduct of our foreign relations.' " *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952). The Court grants some measure of deference to the "considered judgment of the Executive on a particular question of foreign policy." *Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004). As such, under 28 U.S.C. §517 and consistent with the application of FSIA, the Court solicited and has considered the United States' position that granting this motion will have possible, if not vague, consequences on foreign policy interests. The Court is sensitive to these foreign policy interests. Nonetheless, the Court reaffirms its position that the current posture of this case places is squarely under the FSIA, not yet an enforcement action, and without Executive action to the contrary. The Court is satisfied that this decision is consistent with the Court's authority and the role of the Judiciary herein.

**D.  Amount**

The Court issued civil contempt sanctions in the amount of $50,000 per day until defendants comply with its July 30, 2010 Order. ECF No. 80. As of August 20, 2015, and less 70 days as stipulated by plaintiff, the amount accrued is $43,700,000. ECF No. 127. Such amount will increase by $4,500,000 every 90 days starting on August 21, 2015.

## III. CONCLUSION

Plaintiff's motion for interim judgment of accrued sanctions will be GRANTED, and the Court will issue an Order with this Opinion, entering judgment against all defendants in the amount of $43,700,000 for monetary sanctions accrued through August 20, 2015. The plaintiff may petition the clerk for additional judgment every 90 days until defendants comply with this Court's July 30, 2010 Order. The Court further orders plaintiff to provide the United States with notice of certain actions as described in an additional Order issued with this Opinion.

DATED: September 10, 2015

Royce C. Lamberth
United States District Judge