**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AGUDAS CHASIDEI CHABAD** | ) | |
| **OF UNITED STATES**, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05-cv-01548-RCL |
| | ) | |
| **RUSSIAN FEDERATION** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**SUPPLEMENTAL STATEMENT OF INTEREST OF THE UNITED STATES**

Pursuant to 28 U.S.C. § 517,[1] the United States submits this Supplemental

Statement of Interest in response to the motion filed by Plaintiff, Aguda Chasidei Chabad

of the United States ("Chabad") to strike the Statement of Interest filed by the United

States on February 3, 2016 and to rescind the provision in the Court's order of September

10, 2015 requiring Chabad to provide the United States with notice of Chabad's

discovery efforts.  *See* Pl.'s Mot. to Strike the Statement of Interest of the United States

and to Rescind-in-Part the Court's Sept. 10, 2015 Order Requiring Notice to the

Government ("Pl.'s Mot. to Strike"), ECF No. 152.  The United States greatly appreciates

the Court's consideration of its views in this matter.

The United States writes to make three points in response to Chabad's Motion to

Strike.  First, contrary to Chabad's assertion, the issues raised in the Statement of Interest

---

[1] Section 517 provides that "[t]he Solicitor General, or any officer of the Department of
Justice, may be sent by the Attorney General to any State or district in the United States
to attend to the interests of the United States in a suit pending in a court of the United
States, or in a court of a State, or to attend to any other interest of the United States."

are neither premature in light of prior orders of this Court nor foreclosed by case law.  To

the contrary, the Court has not previously addressed the issue of whether Chabad's

subpoenas seeking information about Russian assets for purposes of enforcing monetary

contempt sanctions are improper or inconsistent with the requirement that discovery

requests seek only relevant information.  Second, the Court should make clear that

Chabad is required to comply with the Foreign Sovereign Immunities Act ("FSIA") by

seeking prior judicial review of any enforcement steps that would restrain, attach, or

execute upon property in connection with enforcing the sanctions.  *See* 28 U.S.C.

§§ 1609–10.  These issues are ripe for the Court's consideration.  Third, should the Court

be inclined to allow discovery to proceed, the Court should decline Chabad's request to

rescind the requirement that Chabad provide the United States with notice of Chabad's

discovery efforts, given the weighty foreign policy interests the United States has in this

litigation and the importance of that provision to the United States' ability to stay

apprised of developments in the case.

## BACKGROUND

A complete summary of the relevant background was set forth in the Statement of

Interest filed by the United States on February 3, 2016.  *See* Statement of Interest of the

United States ("Statement of Interest"), ECF No. 151, at 2–6.  For the Court's

convenience, the United States now summarizes only those events that have transpired

since February 3.

The Statement of Interest informed the Court of the United States' view that

Chabad's requested discovery is not "relevant" under Federal Rule of Civil Procedure

26(b)(1) because no assets of the Defendants, the Russian Federation, the Russian

2

Ministry of Culture and Mass Communication, the Russian State Library, and the Russian State Military Archive (collectively "Russia"), are legally available to satisfy the sanctions that have accrued. *Id.* at 6–7. As discussed therein, Chabad cannot execute against any Russian assets located in the United States to satisfy the sanctions order[2] and judgment[3] because the FSIA precludes the enforcement of monetary contempt sanctions against a foreign state. *Id.* at 7–11. Chabad, moreover, cannot collect the sanctions by executing against Russian assets held abroad because the Court's sanctions order cannot be enforced outside of the United States. *Id.* at 11–14. The United States further informed the Court of the Department of State's view that enforcement of the sanctions, including discovery efforts, could cause significant harm to U.S. foreign policy interests. *Id.* at 14–20. The United States accordingly requested that the Court foreclose Chabad's recent efforts to obtain information about Russian assets via subpoena. *Id.* at 20.

Two days later, on February 5, JPMorgan Chase filed a Motion to Stay Compliance with Subpoena in the Southern District of New York ("S.D.N.Y."), arguing that compliance with the subpoena issued by Chabad should be stayed until after the issues raised in the Statement of Interest are resolved. *Agudas Chasidei Chabad v. Russian Federation et al.*, No. 16-mc-00040-P1 (S.D.N.Y. filed Jan. 27, 2016), Mem. in Supp. of Mot. to Stay Compliance with Subpoena, ECF No. 3. The bank filed its motion in the miscellaneous proceeding that was created when Chabad registered the sanctions

---

[2] The "sanctions order" refers to the order entered by the Court on January 13, 2013, requiring Russia to pay $50,000 per day for its non-compliance with the default judgment entered in this case. *See* Statement of Interest, ECF No. 151, at 3.

[3] The "sanctions judgment" refers to the Interim Judgment entered by the Court on September 10, 2015, following the Court's finding that $43.7 million in daily fines had accrued since the sanctions order was entered. *See* Statement of Interest, ECF No. 151, at 4.

judgment in S.D.N.Y. in January 2016.  *See id.*  Citigroup joined JPMorgan's motion on

February 9.  *See id.*, Mem. in Supp. Mot. to Stay Compliance with Subpoena, ECF No.

12.  On March 9, Chabad filed an opposition to the banks' Motion to Stay.  *See id.*,

Opp'n to Mot. to Stay Compliance with Subpoena, ECF No. 16.  On March 24, the

S.D.N.Y. court entered a stipulation between Chabad, JPMorgan Chase, and Citigroup

stating that, in the event this Court determines that Chabad is prohibited from pursuing

discovery via the subpoenas, the banks will have no obligation to comply with them.  *See

id.*, Stipulation and Order Regarding Resp. to Non-Party Subpoenas, ECF No. 22.  The

stipulation further states that, if this Court permits the subpoenas to move forward, the

banks will produce responsive material, subject to other objections the banks have made.

*Id*.

Also on March 9, Chabad filed in this Court a Motion to Strike the United States'

February 3 Statement of Interest.  Pl.'s Mot. to Strike.  Chabad contends in its motion that

the United States lacks standing to seek to preclude Chabad's discovery efforts and that

the Court previously has rejected similar arguments as being premature.  *Id.*  Chabad

further requests that the Court rescind the provision of its order from September 2015

requiring Chabad to give the United States same-day notice of its discovery efforts.  *Id.*

## DISCUSSION

For the reasons that follow, the Court should reject Chabad's request for the two

types of relief it seeks in its motion.  The issues presented in the Statement of Interest are

ripe for the Court's consideration and should not be stricken; moreover, the issues raised

in the Statement of Interest provide a basis for foreclosing Chabad's discovery efforts.  In

addition, the Court should make clear that Chabad must comply with the FSIA by

obtaining prior judicial authorization before it attempts to restrain, attach, or execute on any property in connection with the sanctions order, including by issuing restraining notices as to particular accounts in its effort to enforce the sanctions judgment.  Finally, should the Court decide to authorize discovery to proceed, the Court should reject Chabad's motion to rescind its prior order requiring Chabad to give the United States notice of its discovery efforts.

A.     **The United States' concerns raised in the Statement of Interest are neither foreclosed by the Court's prior orders nor barred by case law**

Chabad contends that the issues raised by the United States in its Statement of Interest are foreclosed by this Court's prior rulings.  It further claims that the United States' arguments run counter to the Supreme Court's ruling in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014).  Neither contention is accurate.[4]

To begin, contrary to Chabad's assertion that the Court has already "authorized Chabad to move forward with discovery," this Court's prior rulings did not resolve questions related to discovery.  While the Court has noted its intention to "give plaintiff some of the tools to which it is entitled under law," that statement was made in the context of its decision to issue the sanctions judgment.  Mem. Op. in Supp. of Order

---

[4] Chabad's contention that the United States lacks standing to challenge the subpoenas is similarly without merit.  Pursuant to 28 U.S.C. § 517, the United States is authorized to participate in pending litigation in either a U.S. district court or state court so as to "attend to the interests of the United States."  The United States' interests with respect to Chabad's subpoenas have previously been set forth at length.  *See* Statement of Interest, ECF No. 151, at 14-20.  More generally, the United States clearly has "standing" to address the foreign policy interests of the United States.  Indeed, the Court has recognized the importance of the United States' interest in this litigation, including by soliciting the views of the United States, *see* Order Soliciting Views of United States, ECF No. 107, and by noting that that it "is sensitive to the[] foreign policy interests" of the United States, *see* Mem. Op. in Supp. of Order Granting Mot. For Interim J., ECF No. 143, at 11.

Granting Mot. for Civil Contempt Sanction, ECF No. 116, at 7.  That decision did not

address questions relating to the propriety of Chabad's discovery efforts; indeed, that

same day, the Court decided to solicit the United States' views before ruling on

Sberbabnk USA's pending motion for a protective order, recognizing "the serious impact

which the outcome of this case could have on the foreign policy interests of the United

States."  Order Soliciting Views of the United States, Case No. 1:15-mc-1153, ECF No.

27.[5]

        Chabad's contention that the subpoenas fall within the purview of permitted

discovery under *Argentina v. NML Capital, Ltd.* is inaccurate.  In *NML Capital*, a

bondholder (NML) obtained a monetary judgment against Argentina after that country

defaulted on its external debt.  *NML Capital*, 134 S. Ct. at 2253.  NML then served

subpoenas on two banks in an effort to locate Argentinian assets, including assets held

abroad.  *Id.*  Argentina moved to quash the subpoenas, contending that discovery into a

foreign state's extraterritorial assets was not permitted under the FSIA, because such

assets do not meet one of the exceptions to execution immunity delineated in § 1610.  *Id.*

at 2257.  The Court rejected this argument, holding that the FSIA does not "specif[y] a

different rule" for post-judgment discovery when the judgment debtor is a foreign state.

---

[5] Contrary to Chabad's assertion, the law-of-the-case doctrine does not confine the Court
in any way.  For the reasons discussed above, the current posture of this case is
sufficiently distinct from the status of the case when the Court made its prior rulings that
those prior rulings do not apply in the present circumstances.  But even if the Court's
prior rulings were somehow to apply to Chabad's subpoenas, the Court is still free to
reach a result different from that it reached previously.  *See Filebark v. U.S. Dep't of
Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (observing that the law-of-the-case
doctrine does not apply to interim rulings made by district courts); *Peralta v. Dillard*, 744
F.3d 1076, 1088 (9th Cir. 2014) (en banc) (rejecting argument that "if a district court
realizes an earlier ruling was mistaken, it can't correct it, but must instead wait to be
reversed on appeal."), *cert. denied*, 135 S. Ct. 946 (2015).

*Id*. at 2256; *see also id.* n. 6 (noting that "[a]lthough this appeal concerns only the meaning of the [FSIA], we have no reason to doubt that, as NML concedes, 'other sources of law' ordinarily will bear on the propriety of discovery requests of this nature and scope.").

Contrary to Chabad's assertions, *NML Capital* does not control the analysis of the propriety of Chabad's subpoenas. Unlike in the present case, there was no contention that asset discovery was categorically improper; rather, the question was whether the FSIA limits the *scope* of such discovery to assets as to which there is a reasonable basis to believe a statutory exception to immunity applies. *See id*. at 2256. By contrast, in this case it is clear that the sanctions judgment itself is unenforceable against any assets, and the contention is that no discovery is proper. In particular, none of the exceptions to execution immunity applies to the sanctions order Chabad is seeking to enforce, and thus the FSIA does not authorize attachment of any foreign state assets in the United States for purposes of satisfying that judgment. *See* Statement of Interest, ECF No. 151, at 7-11. Nor would enforcement of the sanctions order be permitted in any other country. *Id*. at 11-14. Consequently, because Chabad's subpoenas seek "only information that could not lead to executable assets in the United States or abroad," the subpoenas here concern information that is not relevant to execution and they are not relevant under Federal Rule of Civil Procedure 26(a) as a result. *See NML Capital,* 134 S. Ct. at 2258.

Chabad erroneously claims that even if it were seeking only information that could not lead to executable assets, in that event, the United States should have no foreign policy concerns. Pl.'s Mot. to Strike at 11. To the contrary, a fishing expedition into a foreign state's assets as well as those of its officials and affiliated entities, in and of

itself, can be expected to damage the United States' foreign policy interests, and such

concerns are further heightened where the underlying judgment (here, for monetary

contempt sanctions) is unenforceable.  *See* Statement of Interest at 14 ("Permitting

Chabad to proceed with its present discovery efforts . . . would also result in other more

specific harms" to U.S. foreign policy.).  As between these competing views of the

United States' foreign policy interests, it is only those of the United States to which the

Court owes deference.  *See, e.g.*, *Republic of Austria v. Altmann*, 541 U.S. 677, 702

(2004).

**B.**      **The United States' concerns are not premature and Chabad should be required to seek prior judicial review of any enforcement steps that would restrain, attach, or execute upon property in connection with enforcement of the sanctions order, including issuance of a restraining notice**

The Court's prior decisions also do not fully address the United States' immediate

concerns that any assets identified by the subpoenas not be restrained or attached without

compliance with the advance judicial approval requirements of the FSIA.  To be sure, the

Court previously has stressed the difference it sees between issuing a sanctions order and

enforcing such an order, noting that the latter is "carefully restricted by the FSIA."  Mem.

Op. in Supp. of Order Granting Mot. for Civil Contempt Sanction, ECF No. 116, at 6.

The Court has also drawn a line demarcating where it views the enforcement stage of the

case as commencing, stating that "concerns related to [] enforcement are premature until

such time as plaintiff has identified property to attach and execute, provided notice to

defendants of such attachment and execution, and given defendants 'reasonable time' to

respond."  Mem. Op. in Supp. of Order Granting Mot. for Interim J., ECF No. 143, at 4

(citing 28 U.S.C. § 1610(c)).

As set forth in the Statement of Interest, however, if Chabad is permitted to obtain

8

the information it seeks via subpoena, then there is a risk that it could attempt to restrain

Russian assets without further judicial consideration, thereby reaching, of its own accord,

what the Court has described as the enforcement stage.  This issue is properly considered

now, before any discovery proceeds, as it may be the last opportunity to address the

matter before an actual attempt to restrain assets.  Under New York law, a judgment

creditor (such as Chabad) is ordinarily able to issue—without a prior court ruling—a

restraining notice to a judgment debtor that itself prevents the debtor from transferring

funds up to twice the judgment amount for as long as one year.  *See* N.Y. Civ. Practice

Law and R. § 5222(a)–(b).  Thus, if Chabad is able to obtain information about accounts

held in the United States by the Russian entities or individuals listed in the subpoenas, it

could invoke this provision of New York law in an attempt to freeze Russian accounts—

including accounts belonging to Russian government instrumentalities, individuals, and

non-governmental entities that have no involvement in this litigation—with no

opportunity to challenge the hold until after the restraint is in place.  Chabad

acknowledges in its Motion to Strike the availability of restraining notices and avers

generally that it intends to comply with the FSIA, but it does not specifically represent

that it would refrain from availing itself of the restraining notice procedure without first

obtaining court approval.  This may therefore be the last opportunity for the Court to

address the issues raised in the Statement of Interest, including the validity of the

subpoenas, before Chabad seeks to place restraints on Russian property or on property

that is held by a person or entity associated with the Russian government.

Under the FSIA, the Court is obliged to make a determination—*sua sponte,* if

necessary—that foreign state property is not immune before any attachment or

enforcement can take place.  *See* 28 U.S.C. §§ 1609, 1610(a), (c) (creating a presumption

of immunity for foreign state property and requiring judicial review before permitting an

order of attachment or execution); H.R. Rep. No. 94-1487, at 8, 27, 30 (1976), *reprinted

in* U.S.C.C.A.N. 6604, 6606, 6626, 6629 (explaining that allowing a judgment creditor to

attach or execute on a foreign state's property simply by applying to the clerk or local

sheriff "would not afford sufficient protection to a foreign state"); *see also Rubin v. The

Islamic Republic of Iran*, 637 F.3d 783, 785–86 (7th Cir. 2011) ("The presumption of

[execution] immunity also requires the court to determine—*sua sponte* if necessary—

whether an exception to immunity applies; the court must make this determination

regardless of whether the foreign state appears."); *Peterson v. Islamic Republic Of Iran*,

627 F.3d 1117, 1128 (9th Cir. 2010) ("In light of the special sensitivities implicated by

executing against foreign state property, courts should proceed carefully in enforcement

actions against foreign states and consider the issue of immunity from execution *sua

sponte*.").

     In a proceeding to obtain the requisite pre-execution court order under § 1610(c)

of the FSIA, the judgment creditor bears the burden of identifying the particular property

to be executed against and demonstrating that it falls within a statutory exception to

immunity from execution.  *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651

F.3d 280, 297 (2d Cir. 2011).  Consequently, any attachment of property belonging to the

Russian government, or to its agencies or instrumentalities, would be improper absent a

prior judicial determination that Chabad has met its burden of demonstrating that such

assets are not immune.  *See, e.g., Avelar v. J. Cotoia Constr., Inc.*, No. 11-CV-2172 RRM

MDG, 2011 WL 5245206, at *5 n.8 (E.D.N.Y. Nov. 2, 2011) ("[T]he FSIA requires that

any steps taken by a judgment creditor to enforce the judgment must be pursuant to a

court order authorizing the enforcement, independent of the judgment itself, and not

merely the result of the judgment creditor's unilateral delivery of a writ . . . .").

Particularly relevant to the circumstances of this case, courts have extended the

prior-determination requirement to cover the issuance of restraining notices under New

York law.  *See First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256

(S.D.N.Y. 2000) (vacating restraining notice issued to foreign sovereign where judgment

creditor failed first to obtain a § 1610(c) order), *aff'd*, 281 F.3d 48 (2d Cir. 2002);

*Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987)

("The *ex parte* restraining notices served [by the judgment creditor pursuant to N.Y. Civ.

Practice Law and R. § 5222] are just the type of restraining notices against which

§ 1610(c) of the [FSIA] protects foreign states."); *Trans Commodities, Inc. v. Kazakstan

Trading House*, No. 96 CIV. 9782 (BSJ), 1997 WL 811474, at *3 (S.D.N.Y. May 28,

1997) (vacating restraining notice for lack of court order "specifically pass[ing] upon the

propriety of the New York Restraining Notice," even though a state court had issued an

order permitting the judgment creditor to generally undertake attachment or execution

against the foreign judgment debtor).

Moreover, this Court previously has insisted that "no attachment or execution . . .

shall be permitted until the court has ordered such attachment and execution after having

determined that a reasonable period of time has elapsed following the entry of judgment

and the giving of any notice required . . . ."  *See* Mem. Op. Granting Mot. for Interim J. of

Accrued Sanctions, ECF No. 143, at 3 (quoting 28 U.S.C. § 1610(c)).  Thus, the law is

clear that Chabad cannot restrain any assets even temporarily without advance judicial

approval.

While the United States appreciates that Chabad has declared its intent to comply generally with the FSIA, *see* Mot. to Strike at 8-9, Chabad has not expressly indicated that it will seek a pre-enforcement order pursuant to § 1610(c) as to the propriety of issuing a restraining notice under New York law to restrain particular accounts in its effort to enforce the sanctions judgment.  As the United States previously has explained, even a short-term freeze of Russian accounts could have serious repercussions for U.S. foreign policy interests, *see* Statement of Interest of the United States at 14–20, and there would be no opportunity to challenge the propriety of a restraining notice until after it is already in place.  The Court therefore should now address and make clear that Chabad is required to seek judicial authorization in advance of any enforcement steps that restrain, attach, or execute upon Russian property, including the issuance of a restraining notice as to particular accounts.

**C.      Chabad should continue to be required to provide the United States with same-day notice of its discovery efforts**

Chabad's motion not only seeks to have the United States' Statement of Interest stricken, but further requests that the Court rescind its order from September 10, 2015 requiring Chabad to provide the United States with same-day notice of its discovery efforts in connection with this Court's judgments in this case.  *See* Order, ECF No. 145, at 1–2.  Should the Court be inclined to allow any discovery to proceed, this request should be denied.

The notice requirement is a crucial component of the United States' ability to stay informed of developments in this case.  As the United States previously has informed the Court, discovery into the assets of Russian entities and individuals could significantly

hinder the ability of the United States to facilitate a transfer of the Collection to Chabad.

*See* Statement of Interest at 17.  In addition, if Chabad were to prevail in its quest for

discovery, including by obtaining information about Russian assets in the United States,

it would likely prompt Russia to take reciprocal measures against U.S. property held in

Russia.  *Id.* at 18–19.  More broadly, authorizing sweeping discovery such as the

subpoenas issued by Chabad here could cause friction with foreign nations other than

Russia and could open the door to reciprocal orders being entered against the United

States in foreign courts.  *Id.* at 19.  Notice of Chabad's discovery efforts is a key

mechanism by which the United States is able to stay abreast of any developments and

take appropriate steps to seek to prevent or mitigate any harms.[6]

The Court previously has stated that it "is sensitive to the[] foreign policy

interests" of the United States in this case.  *See* Mem. Op. in Supp. of Order Granting

Mot. For Interim J., ECF No. 143, at 11.  Indeed, even prior to the notice requirement

being in place, the Court sought to ensure that the United States was aware of all related

proceedings and had the opportunity to assert any interest it may have.  *See* Mots. Hr'g

Tr., Aug. 20, 2015, ECF No. 151-3, at 11:3–7 (directing Chabad to provide the United

States with copies of a subpoena served on Sberbank CIB USA and a motion for a

---

[6] Chabad notes that counsel for JPMorgan Chase and Citigroup and counsel for the
United States have communicated about this case and the recent subpoenas.  *See* Pl.'s
Mot. to Strike at 5–6.  To the extent Chabad is implying that any such communications
are inappropriate, such a suggestion is plainly meritless.  As noted above, 28 U.S.C.
§ 517 authorizes the Department of Justice to attend to the interests of the United States
not only in any suit pending in a court of the United States or a State, but "to attend to
any other interest of the United States," and this section does not limit such participation
to any particular course of action.  Moreover, the United States has the right to seek
information and discuss any matter with any of the parties, as well as any other interested
party.  In fact, one of the parties with which the United States communicates about this
case is Chabad itself.  *See* Pl.'s Mot. to Strike at 5 (noting that the United States provided
Chabad with notice of the United States' intent to file a Statement of Interest).

protective order filed by Sberbank CIB because the United States "may want to assert their interest in that as well"). If anything, the importance of notice of discovery efforts in this matter has only increased now that Chabad clearly has begun to move into the execution phase of the proceeding. For these reasons, the Court should retain the requirement of notice to the United States.

## CONCLUSION

For the foregoing reasons, and for the reasons previously set forth in its Statement of Interest, the United States respectfully requests that the Court preclude Chabad's recent efforts to obtain discovery about Russian assets via subpoena. The Court should make clear that Chabad is required to obtain judicial approval before it takes any steps to restrain, attach, or execute upon Russian property by any means, including the issuance of a restraining notice as to particular accounts. The Court should further deny Chabad's motion to strike the Statement of Interest and to rescind the notice requirement.


Dated: March 28, 2016                     Respectfully submitted,

                                          BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General

                                          ANTHONY J. COPPOLINO
                                          Deputy Branch Director
                                          Federal Programs Branch

                                           s/ Nathan M. Swinton
                                          NATHAN M. SWINTON (NY Bar)
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, N.W.
                                          Washington, D.C. 20530
                                          Telephone: (202) 305-7667
                                          Fax: (202) 616-8470

Email: Nathan.M.Swinton@usdoj.gov

*Counsel for the United States*