**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

)

AGUDAS CHASIDEI CHABAD )
OF UNITED STATES, )

)

*Plaintiff*, )

)

v. )   Case No. 1:05-cv-01548-RCL

)

RUSSIAN FEDERATION; RUSSIAN )
MINISTRY OF CULTURE AND MASS )
COMMUNICATION; RUSSIAN STATE )
LIBRARY; and RUSSIAN STATE )
MILITARY ARCHIVE, )

)

*Defendants.* )
_____)

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE STATEMENT
OF INTEREST OF THE UNITED STATES (DKT. NO. 151) AND
TO RESCIND-IN-PART THE COURT'S SEPTEMBER 10, 2015 ORDER REQUIRING
NOTICE TO THE GOVERNMENT (DKT. NO. 145)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

      I.      THE GOVERNMENT'S MOTION IS PREMATURE ........................................2

      II.     THE GOVERNMENT HAS NO BASIS FOR CONTENDING THAT
            ALL DISCOVERY IS PROHIBITED.....................................................................4

      III.    THE GOVERNMENT CAN ADEQUATELY PROTECT ITS
            INTERESTS AT THE ATTACHMENT AND EXECUTION STAGE ................6

CONCLUSION.................................................................................................................... 8

**INTRODUCTION**

Plaintiff Agudas Chasidei Chabad of the United States ("Chabad") respectfully submits this Reply in Support of its Motion to Strike the Statement of Interest ("Statement") filed by the United States (the "Government"). In this submission, Chabad responds to what the Government has titled a "Supplemental Statement of Interest" ("Opposition").

First and foremost, as cases the Government's cites in its Opposition confirm, Opposition at 8, questions regarding Russia's entitlement to execution immunity in this case are premature. As this Court has already stated, "concerns related to [] enforcement are premature until such time as plaintiff has identified property to attach and execute." Opposition at 8 (quoting Opinion (Dkt. 143) at 4). Moreover, the Government's attempt to create a justiciable controversy where none exists is built upon its speculation that Chabad *may* choose to avoid compliance with the FSIA at some future date. But this question is irrelevant – not only because it is hypothetical, but also because Chabad has repeatedly stated its intention to comply with the FSIA (and it does so again now).

Putting aside the premature and incorrect premise behind the Government's Statement, it is also incorrect as a matter of law. The Government's ultimate position is that Chabad has drafted subpoenas that are directed to the identification of assets (in the United States and abroad) that could never be subject to execution. This is not correct. As explained below, the question of whether there are Russian assets that are subject to execution immunity can only be determined at a later date, if (and hopefully when) Chabad locates such assets.

Finally, the Government opposes Chabad's request that this Court rescind the requirement that Chabad provide the Government with notice of third party subpoenas and other discovery efforts Chabad may take prior to seeking judicial permission to attach or execute property. As the present briefing demonstrates, the Government (a non-party to these

proceedings), has used this advance notice to raise premature objections, knowing that the mere

interposition of such objections, as a practical matter, cause third parties to decline to produce

documents in response to Chabad's subpoenas.  To the extent that the Government wishes to

state its interests in the future, it should do so at the appropriate time—when this Court is faced

with the question of whether specific identified assets are subject to execution immunity.

## ARGUMENT

### I.      THE GOVERNMENT'S MOTION IS PREMATURE

The Government acknowledges, as it must, that this Court has held that "concerns related

to [] enforcement are premature until such time as plaintiff has identified property to attach and

execute."  Opposition ("Opp.") at 8 (quoting Opinion at 4).  Nonetheless, the Government argues

that although Chabad has not yet 'identified' any property it seeks to attach, its "Statement" is

not premature because if Chabad is allowed to move forward with discovery, "then there is a *risk*

that it *could* attempt to restrain Russian assets without further judicial consideration, thereby

reaching, of its own accord, what the Court has described as the enforcement stage."  Opp. at 9

(emphasis added).  The Government's position rests on the hypothetical possibility that Chabad

in the future will choose to proceed outside the bounds of the FSIA—contrary to Chabad's

repeated assurances to the contrary.  This scenario does not present a justiciable controversy.

As the Government's Opposition explains, before a judgment creditor can execute on

property protected by the FSIA, the creditor "bears the burden of identifying *the particular*

*property* to be executed against and demonstrating that it falls within a statutory exception to

immunity from execution."  Opp. at 10 (emphasis added).  Chabad is therefore not required to

establish that specific (unknown) property is subject to execution immunity before it seeks

discovery as to whether that specific (unknown) property exists.  Nor could it.  In *Walters v.*

*Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011), on which the

Government relies, the United States Court of Appeals for the Second Circuit held that a judgment creditor could not seek a pre-execution order because the ability to execute against property is based on whether "the property at issue falls within one of the exceptions to immunity," and the creditor there had not yet "*identified the specific accounts or funds* held by the Banks upon which they seek to execute judgment." *Id.* (emphasis added). In other words, the Court cannot determine whether Chabad has the right to execute against property before Chabad identifies the property against which it seeks to execute. Hence, as this Court has already stated, "[C]oncerns related to [] enforcement are premature until such time as plaintiff has identified property to attach and execute." Opp. at 8 (quoting Opinion at 4).

While the law forecloses the Government's position, it is also important to note that this position is based on a false premise. The Government has returned to its often repeated argument that "[w]hile the United States appreciates that Chabad has declared its intent to comply generally with the FSIA," Opp. at 12, Chabad has not, in the Government's view, sufficiently spelled out how it will comply with each sub-section of the statute. This argument is raised in the context of the Government's explanation that, although New York state law allows for a restraining order in the ordinary course without prior judicial notice, several district court opinions in the Southern District of New York have held that a federal court must first enter a pre-execution order pursuant to Section 1610(c) before a creditor can utilize the restraining notice on assets subject to the FSIA. Opp. at 9, 11. Chabad is, of course, not required to provide the Government (and, of course, the Defendants—who are no doubt carefully reviewing the pleadings filed in this action) with either advance notice regarding Chabad's legal strategies, or with a disquisition on how Chabad expects this case will run its course (except that Chabad expects that the Russian Government will, in the end, return the property it stole). Nonetheless,

Chabad again represents that it intends to comply with the FSIA, and it will not temporarily restrain assets under New York law without first seeking an order pursuant to Section 1610(c).

## II.     THE GOVERNMENT HAS NO BASIS FOR CONTENDING THAT ALL DISCOVERY IS PROHIBITED

The Government's position is that its Statement of Interest provides "a basis for foreclosing Chabad's discovery efforts." Opp. at 4. Any discovery efforts. Because, according to the Government, no matter what assets Chabad locates, it cannot execute against any of them. Opp. at 7. In the Government's view, Chabad's case is at an end. In addition to being improper under the framework of the FSIA, the Government's Statement of Interest conflicts with this Court's prior Order and Supreme Court precedent.

The Government tries to distinguish this case from *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014), arguing that the Supreme Court's decision concerned the "scope" of a subpoena under the FSIA, while Chabad's subpoena is improper in its entirety. Opp. at 7. The Government ignores the fact that the Supreme Court in *NML* rejected the same arguments the Government raises here. The question presented in that case was whether the FSIA "imposes a limit on a United States court's authority to order blanket post-judgment execution discovery on the assets of a foreign state used for any activity anywhere in the world." 134 S. Ct. at 2255. The Court answered that it did not. Argentina contended that "if a judgment creditor *could not ultimately execute a judgment against certain property*, then it has no business pursuing discovery of information pertaining to that property." *Id.* at 2257 (emphasis added). The Supreme Court explained in response:

> [T]he reason for these subpoenas is that NML *does not yet know* what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law. If, bizarrely, NML's subpoenas had sought only 'information that could not lead to executable assets in the United States or abroad,' then Argentina likely would be correct to say that the subpoenas were unenforceable[.]

*Id.* (emphasis in original).  The Court concluded that although Argentina would likely contend that certain assets were immune from execution, its "self-serving legal assertion will not automatically prevail; the District Court will have to settle the matter."  *Id.* at 2258.  So too here.

Like Argentina in *NML*, the Government here contends that Chabad has no business seeking assets it cannot ultimately execute against, stating "it is clear that the sanctions judgment itself is unenforceable against any assets," and therefore "no discovery is proper."  Opp. at 7.  Despite the certainty with which it is stated, the Government's "self-serving legal assertion will not automatically prevail."  Whether Chabad may ultimately attach and execute upon specific property will depend upon Chabad's ability to satisfy the requirements of Section 1610 (or perhaps the laws of a foreign jurisdiction).  But the FSIA does not preclude Chabad from even *attempting to identify* property that may be subject to execution.  Rather, "the District Court will have to settle" whether any property that is located is subject to attachment and execution—but not before.

Ultimately, the Government's argument boils down to the proposition that it does not believe this Court had the authority to enter its sanctions order, or has the authority to enforce that order.  *See*, *e.g.,* Opp. at 7 ("By contrast in this case, it is clear that the sanctions judgment itself is unenforceable against any assets, and the contention is that no discovery is proper").  As to the former question, the district court resolved that issue in favor of Chabad when it imposed sanctions on the Defendants.  As to the second

question,  the Government has cited no U.S. case law on point, further confirming that its

position is conjectural at best, and in any event not ripe for consideration.[1]

Finally, the Government argues that when this Court stated it was time to "give plaintiff

some of the tools to which it is entitled under law" (Opp. at 5 (quoting Opinion at 7)), it was not

the Court's intention to permit Chabad to move forward with discovery.  Chabad respectfully

suggests that the Government is wrong, and that subpoenas to third parties were precisely the

sort of "tools" that this Court anticipated Chabad would use to discover potentially executable

assets.[2]

### III.    THE GOVERNMENT CAN ADEQUATELY PROTECT ITS INTERESTS AT THE ATTACHMENT AND EXECUTION STAGE

Finally, the Government takes issue with Chabad's request to rescind the Court's order

requiring Chabad to provide same day notice of "any discovery" it serves on third parties.  The

purpose of that Order was to allow the Government to "state its interests, if any, before plaintiffs

---

[1]  In its initial Statement of Interest, the Government cited one Fifth Circuit decision, *Af-Cap Inc. v. Republic of Congo,* 462 F.3d 417 (5th Cir. 2008).  In  that case, however, the court of appeals held that the district court erred in granting a Texas state-law remedy, known as a "turnover order," requiring the Government of the Congo to accept cash instead of oil in a transaction involving oil extracted from Congo territory, and requiring Congo to deposit the cash with the court.  When Congo refused, the district court imposed sanctions.  The court of appeals reversed on the ground that the district court did not have personal jurisdiction over the Congo.  The court of appeals vacated the district court's contempt order on the ground that the FSIA provided "the available methods of attachment and execution against property of foreign states. Monetary sanctions are not included." *Id.* at 428.  The question before the court, however, was whether the court had jurisdiction under the FSIA to issue the sanctions order when there was no jurisdiction for the finding leading to the contempt order in the first place – hence, the court framed the question as whether "[t]he contempt order, *as written*," falls within the scope of the FSIA. *Id.*  In this case, however, this Court has jurisdiction over the Defendants and the sanctions are based on a judgment against Defendants over which the Court has personal jurisdiction in a lawsuit over which the Court had authority to proceed under the FSIA.

[2] The Government also argues that the 'law of the case' doctrine is inapplicable to this Court's prior ruling, citing a Ninth Circuit case for a proposition that a district court can correct an earlier ruling when it realizes it was "mistaken."  Opp. at 6.  The Government is wrong because, *inter alia*, this Court did not err in its prior ruling.

are finally awarded possession of the assets of any defendant." Order at 2 (Dkt. 145). As noted

above, because Chabad must and will seek Court approval before it attempts to execute upon any

assets, the Government will have the opportunity to "state its interests, if any," at that time.

Chabad did not originally oppose providing the Government with notice of discovery, but this

dispute demonstrates that the Government has unfortunately used that notice to interject

objections (1) at a point in the proceedings at which we believe the Court did not contemplate;

and (2) in a manner that predictably led to third parties making a decision to delay their

compliance with this court's subpoenas.

Because the Government is not a party to this case, there is no reason to provide the

Government with advance notice of every procedural step Chabad may take. The Defendants

chose their path when they decided to flout this Court's order, and the third parties from which

Chabad has and may seek discovery are fully capable of representing themselves. The

Government will be apprised before this Court takes action that may, in the Government's view,

implicate its interest. To the extent the Government contends that allowing discovery in and of

itself will interfere with foreign relations, this argument was addressed, and directly rejected, by

the Supreme Court in *NML Capital*, 134 S. Ct. at 2258 (stating that concerns related to

"discovery orders as sweeping as this one" are "better directed to that branch of government with

authority to amend the Act"). There is therefore no reason for Chabad to be required to continue

to provide notice to the Government before this case reaches the enforcement stage.[3] In the

event that this Court decides not to rescind its Notice Order, Chabad requests, in the alternative

---

[3] The Government contends that it has the right to "seek information and discuss any matter with
. . . any [] interested party." Opp. at 13 n.6. While, as a general matter, this is true, the
Government may not take steps to obstruct discovery.

that, to allow for the orderly flow of discovery, the Court require the Government to seek a pre-

filing conference with Chabad and the Court before filing any additional statements of interest.

## **CONCLUSION**

For the foregoing reasons, this Court should strike the Government's Statement of

Interest, allow Chabad to continue its effort to locate potentially attachable assets, and rescind its

Notice Order.

Respectfully submitted,

Dated: April 14, 2016          By:  */s/ Robert P. Parker*

Steven Lieberman (D.C. Bar No. 439783)
Robert Parker (D.C. Bar No. 404066)
Daniel McCallum (D.C. Bar No. 1006938)
Rothwell, Figg, Ernst & Manbeck, P.C.
607 14th St., N.W., Suite 800
Washington, DC 20005
Phone: 202-783-6040
Facsimile: 202-783-6031
E-mails: slieberman@rfem.com
          rparker@rfem.com
          dmccallum@rfem.com


Nathan Lewin (D.C. Bar No. 38299)
Alyza Lewin (D.C. Bar No. 445506)
LEWIN & LEWIN, LLP
888 17th St., N.W., 4th Floor
Washington, DC  20006
Phone: 202-828-1000
Facsimile: 202-828-0909
E-mails: nat@lewinlewin.com
          alyza@lewinlewin.com

*Counsel for Agudas Chasidei Chabad of United
States*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2016, a true and correct copy of the foregoing PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE STATEMENT OF INTEREST OF THE UNITED STATES (DKT. NO. 151) AND TO RESCIND-IN-PART THE COURT'S SEPTEMBER 10, 2015 ORDER REQUIRING NOTICE TO THE GOVERNMENT (DKT. NO. 145) were served by electronic mail on the following counsel of record for the United States:

Nathan Michael Swinton
U.S. Department Of Justice
Civil Division
20 Massachusetts Avenue, N.W.
Room 7218
Washington, DC 20530
Email: nathan.m.swinton@usdoj.gov

I hereby certify that on this 14th day of April, 2016, a true and correct copy of the foregoing PLAINTIFF'S REPLY MOTION TO STRIKE THE STATEMENT OF INTEREST OF THE UNITED STATES (DKT. NO. 151) AND TO RESCIND-IN-PART THE COURT'S SEPTEMBER 10, 2015 ORDER REQUIRING NOTICE TO THE GOVERNMENT (DKT. NO. 145) were served by First-Class International Mail, through the U.S. Postal Service, on each of the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Alexander Konovalov, Minister
14 Zhitnaya
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Kirill Rybak, Director
7/6 Bldg. 1/2, Maly Gnezdnikovsky Perelok
Moscow, Russia 125009

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Victor V. Federov, General Director
3/5, Vozdivhenka Street
Moscow, Russia 119019


*/s/ Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Coordinator
Rothwell, Figg, Ernst & Manbeck, P.C.

10