

**ROTHWELL FIGG**
IP Professionals

607 14th Street, N.W.
Suite 800
Washington, DC 20005

Telephone (202) 783-6040
Facsimile (202) 783-6031
www.rfem.com
info@rfem.com

G Franklin Rothwell
(1928-2011)

E Anthony Figg
George R Repper
Steven Lieberman
Joseph A Hynds
Martin M Zoltick
R Danny Huntington
Joo Mee Kim
Richard Wydeven
Sharon L Davis
Jeffrey L Ihnen
Brian S Rosenbloom
Brian A. Tollefson
Sharon E Crane, Ph.D.
Lisa N Phillips
Steven P. Weihrouch
Robert P Parker
Jenny L Colgate
Leo M Loughlin
Derek F Dahlgren
Michael V Battaglia

Seth E Cockrum, Ph.D
Monica Chin Kitts
Michael H Jones
Jennifer P Nock
Rachel M Echols
Brett A Postal
Jennifer B Maisel
Soumya P Panda
Aydin H. Harston, Ph D
Daniel R. McCallum
Mark T Rawls
Nechama E Potasnick
Spencer J Johnson
John D Higgins
Douglas Choi
Eric D Blatt*
Benjamin R Holt*
Nicole M DeAbrantes*
Davide F Schiavetti*

Of Counsel
Harry F Manbeck, Jr

*Not a member of the D C
Bar. Practice limited to patent,
trademark and copyright
matters and cases in federal
courts

October 19, 2017

**By Hand Delivery**

Honorable Royce C. Lamberth
Senior United States District Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

*let this be filed.*
*Royce C. Lamberth*
*U.S.D.J. 10/23/17*

Re:   *Agudas Chasidei Chabad of the United States v. Russian Federation, et al.,*
      *Civ. Case No. 1:05-cv-01548-RCL*

Dear Judge Lamberth:

        We are writing to bring to the Court's attention recent developments in the ongoing litigation between Agudas Chasidei Chabad of the United States ("Chabad") and the Russian Federation ("Russia") regarding the return of Chabad's treasured and irreplaceable library and archives. Most importantly, we want to bring to the Court's attention an exigent circumstance that contradicts both the Russian Government's representations that Chabad's property is secure, and the State Department's position that Chabad (and the Court) should rely exclusively on the U.S. Government's diplomatic efforts to arrange the return of Chabad's property.

        In light of the present circumstances, we request that the Court strike the Statement of Interest filed by the State Department pursuant to Chabad's motion currently pending before the Court. (*See* Dkt. Nos. 150-153, 155-157). We also ask that the Court grant the motion seeking the issuance of a time-sensitive request for judicial assistance that we filed today. If the Court would like to conduct a hearing on these issues, we would be pleased to participate at a time convenient to the Court.

 ROTHWELL FIGG

## A.  Background

Pursuant to this Court's orders and judgments regarding the Russian Federation's unlawful detention of Chabad's library and archive, Chabad initiated discovery in an effort to identify attachable Russian assets in the United States.  Chabad served third-party subpoenas on banks and other financial institutions in the United States, and was in the process of collecting documents and scheduling depositions.  Initially, the subpoena recipients were cooperative, and in some cases indicated that they had important information to produce.

In February 2016, while that discovery was underway, the United States, at the behest of the State Department, filed a Statement of Interest in this Court objecting to the discovery.  The State Department argued that discovery in support of a contempt judgment is a violation of international norms.  The Government's intervention in the matter understandably chilled the banks' interest in cooperating with Chabad, leading to their filing a motion for a protective order filed in the Southern District of New York.  All discovery ground to a halt at that time.  Chabad agreed to a stipulated order staying discovery pending this Court's resolution of the issues raised in the Statement of Interest.  (*See* Enclosure A).

In order to put the issue before the Court for resolution, Chabad filed a motion to strike the Statement of Interest, which has been fully briefed.  The Statement of Interest and the resulting stay have hampered Chabad's efforts to secure the return of the library and the archive using the means made available by applicable statutes and rules.

## B.  Recent Developments

### 1.  <u>The United States Senate Has Renewed Its Effort to Secure the Return of Chabad's Property</u>

Immediately following the 2016 election, all 100 United States Senators signed a letter on February 27, 2017 to Russian President Vladimir Putin renewing its longstanding, bipartisan demand for the return of the Chabad property at issue in this case. Specifically, the Senators "reaffirm[ed] [their] support and request for the return of the Schneerson collection of sacred texts from the Russian State Library and the Russian State Military Archive to its rightful owners, Agudas Chasidei Chabad of the United States." They also requested President Putin's "assistance in seeing the return of the entire collection." The letter reflected the Senators' unanimous concern regarding the unlawful detention of the Chabad property "confiscated" at the time of the Bolshevik Revolution (*i.e.,* the library") and documents taken "from the Nazis" in 1945 (*i.e.,* the "archive"). (See Enclosure B.)

Senator Orrin Hatch, in his capacity as President *pro tempore* of the Senate, forwarded the letter to Secretary of State Rex Tillerson and asked for his assistance "in securing the return of this collection of religious works to Chabad, its rightful owners." (See Enclosure C.)

ROTHWELL FIGG

On April 4, 2017, Russian Ambassador Sergey Kislyak responded to the United States Senate in a letter to Senator Schumer. Asserting that Chabad's claims are "groundless" and that the "Chabad representatives have never owned the Schneerson collection and have no property rights over it," Ambassador Kislyak asserted that the "Chabad religious community for more than 20 years has been pursuing a senseless dispute with Russia in order to alienate Russian State Property." (See Enclosure D.) Ambassador Kislyak's response is an affront to the tragic history of Soviet and Nazi oppression connected to the Schneerson texts, and directly contradicts Russia's own factual evidence submitted to the Court in this case. Moreover, the letter ignores Russia's active participation in this litigation before this Court and the Court of Appeals, and the fact that Russia did not abandon this case until after its position was rejected on the merits.

To be sure, the United States Senate does not conduct the nation's diplomacy. But it is relevant to the progress of this case that *every* United States Senator supported Chabad's demand that its property be returned. The Senate's unanimous call for the return of Chabad's property speaks to this country's support for the principles of religious freedom and respect for private property in international affairs. Chabad has also received overwhelming support from members of the U.S. House of Representatives and other government officials in its ongoing effort to secure the return of the library and archive.

The United States Department of State publicly supports this outcome, but its Statement of Interest challenges Chabad's pursuit of its legal rights in this Court.[1] The State Department's objection to Chabad's efforts to identify Russian property in the United States has imposed a barrier to progress that Chabad has been unable to overcome. As to the proper course, the State Department argues that "out-of-court dialogue with Russia, rather than litigation, presents the best opportunity for ultimate resolution." (Statement of Interest of the United States, p. 17). According to the Department's assertion in connection with its Statement of Interest of February 2016, its representatives have raised this issue with Russian officials, but they have never reported to Chabad the slightest interest from their Russian counterparts in any "out-of-court dialogue" on this matter. Russian Ambassador Kislyak's letter to Senator Schumer indicates that Russia's position, if anything, has hardened since the State Department has filed its Statement of Interest.

Chabad has been unable to make progress on the enforcement of the Court's orders and judgments – or, more critically, the return of its property – while the Statement of Interest is operative and discovery has been stayed. We therefore ask that the Court rule on Chabad's motion to strike the Statement of Interest, thus allowing Chabad to continue with its discovery with the ultimate objective of securing the return of the library and archive.

---

[1]     *See* Statement of Interests of the United States ("Gov't Statement") [Dkt. 151, Feb. 3, 2016]; Plaintiff's Motion to Strike the Statement of Interest of the United States ("Chabad Mot.") [152, Mar. 9, 2016]; Supplemental Statement of Interest of the United States ("Supp. Statement") [155, Mar. 28, 2016]; and Plaintiff's Reply in Support of Its Motion to Strike the Statement of Interest of the United States ("Chabad Reply") [157, Apr. 14, 2016].

 ROTHWELL FIGG

### 2.   A Volume from the Chabad Library Has Been Placed for Auction in Israel

The urgency of Chabad's efforts has increased dramatically in recent days as one of the volumes previously identified as part of the Chabad's library in Russia has been placed for auction in Israel. *See* https://www.kedem-auctions.com/content/babylonian-talmud-tractate-yevamot-zhitomir-copy-rebbe-maharash-lubavitch-fourth-chabad. The auction house describes the volume as part of an 1862 edition of the Talmud,[2] and notes that "the second title page bears the stamp of 'Shmuel Schneerson of Lubavitch'." Rabbi Shmuel Schneerson was the Chabad leader (or "Rebbe") during the period 1834-1882. The auction house's description of the volume also states that "[s]hort handwritten notations [appear] on three leaves . . . in a handwriting resembling the handwriting of Chabad Rebbes." The opening price has been set at $10,000, and the auction is set to take place on October 30, 2017.

The volume that is now up for auction appeared in a catalogue prepared by Rabbi Shalom Dovber Levine and submitted as evidence before the Court in this case and is subject to the Court's ruling. Rabbi Levine's catalogue and declaration were submitted to this Court in the early phases of this lawsuit, and his catalogue has never been challenged. Following the appearance of the volume on the auction website, Rabbi Levine re-confirmed that this volume was previously in Russia's possession. It is therefore subject to this Court's order regarding the return of the library to Chabad.

The fact that the book has been made available for sale has additional implications for this lawsuit. As an initial matter, it puts paid to the Russian Government's position that the library is in good hands and will be preserved for the benefit of scholars and others with an interest in the materials. The presence of a volume from the library on the action block, whether through neglect, mistake, or outright theft, is confirmation that Russia is not a responsible custodian of the books, even *pendente lite.*

Likewise, the volume's emergence further raises questions regarding the State Department's position that this matter can be exclusively resolved through diplomatic means. Even assuming that the Department's position was correct as a general proposition, diplomacy will not restore to the collection the books that have been lost, that have decayed, or that have been illegally diverted – either to private collections or (as in this case) for sale on the market for Jewish antiquities. As these circumstances confirm, the time required to resolve this matter through diplomacy as the State Department suggests will undermine the Court's orders and judgments as well as Chabad's efforts to secure the return of its sacred property.

---

[2]      The Talmud is a sacred and fundamental compendium of Jewish law, practice, and history. Originally compiled orally, it was set into written form between the second and fifth centuries of the Common Era. It is considered the most authoritative source for the interpretation and application of the Hebrew Bible.

 ROTHWELL FIGG

In addition, in an effort to determine how the events leading to the proposed auction transpired, Chabad has filed today an emergency motion asking this Court to issue a Letter of Request for judicial assistance from Israeli authorities. The proposed request asks the Israeli authorities to collect documents and testimony regarding the circumstances surrounding the appearance of the volume at an Israeli auction house, including the individuals responsible. This request does not run afoul of any argument or position the State Department has raised in the Statement of Interest, and it would support this Court's previous orders and judgments – either by obtaining information regarding the disposition of Chabad property subject to the Court's order, or (hopefully) leading to the return of this one volume (as well as other books covered by the Court's judgment that may be in the possession of the auction house or others in Israel).

## C. Chabad's Motion to Strike the Statement of Interest Should Now Be Granted

Chabad's pending Motion to Strike the Statement of Interest of the United States has been fully briefed since April 2016. The motion should be granted.

Striking the State Department's Statement of Interest is a necessary step in Chabad's efforts to obtain discovery from banks and other financial institutions in the United States. Under the stipulated order entered in the Southern District of New York (Exhibit A), the banks would "proceed with the production of documents" called for by Chabad's subpoenas if the motion were granted and the stay were lifted. The discovery Chabad seeks from the banks is not random: Chabad has reason to believe that JP Morgan, Citibank, and other U.S. financial institutions, hold assets belonging to the Russian Federation, including accounts that the U.S. Government itself froze as part of the sanctions imposed following Russia's invasion of eastern Ukraine.

The State Department's opposition to Chabad's motion is unsound. The Government's argument that discovery is barred by the Foreign Sovereign Immunities Act has no basis in the statute or precedent. The law expressly strips foreign sovereigns of immunity from attachment and execution of property where *"the execution relates to a judgment establishing rights in property which has been taken in violation of international law* [.]" 28 U.S.C. § 1610(a)(3) (emphasis added). This Court and the Court of Appeals have already ~~both~~ addressed the Russian Federation's challenges to Chabad's claims that Russia and the other defendants seized and currently hold Chabad's property in violation of international law. The authorization to proceed with discovery in these circumstances could not be plainer. Moreover, Chabad has committed, and recommits now, to comply with relevant statutory provisions, as well as this Court's order to the effect that no execution on or attachment of property should take place without prior notification to the Court.

Moreover, the Supreme Court rejected the Government's cribbed reading of the statute just three years ago in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2256-58 (2014). The Court held that neither principles of sovereign immunity nor concerns of international comity bar discovery into a foreign sovereign's holdings in this country, and that



discovery into a foreign sovereign's assets may be had to the maximum extent the Federal Rules of Civil Procedure allow:

> There is no . . . provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets. Argentina concedes that no part of the Act "expressly address[es] [postjudgment] discovery." [Citation omitted.]  Quite right. . . . Far from containing the "plain statement" necessary to preclude application of federal discovery rules, [citation omitted], the Act says not a word on the subject.

> \*\*\*

> If, bizarrely, NML's subpoenas had sought only "information that could not lead to executable assets in the United States or abroad," then Argentina likely would be correct to say that the subpoenas were unenforceable — *not* because information about nonexecutable assets enjoys a penumbral "discovery immunity" under the Act, but because information that could not possibly lead to executable assets is simply not "relevant" to execution in the first place, Fed. Rule Civ. Pro. 26(b)[.]

*Id.*

Chabad's proposed discovery does not "bizarrely" fall outside the scope of discovery permitted by the Federal Rules.  The principle upheld in *NML Capital* is that, by overriding sovereign immunity and comity concerns when property has been taken in violation of international law, the Foreign Sovereign Immunities Act authorizes discovery seeking assets that can be attached to enforce a judgment.  To the extent that the State Department raises other legal objections to Chabad's discovery, they were either addressed in *NML* or reiterate points raised, addressed, and found lacking in this Court's previous rulings.

Like its legal arguments, the State Department's practical concerns are misplaced.  The Statement of Interest raises the specter that this Court's entry of a $50,000-per-day contempt sanction will result in foreign courts imposing similar sanctions on the United States.  The Statement of Interest rests this point on the premise that, "[a]fter an initial appearance to contest the Court's jurisdiction, Russia withdrew from further participation in this litigation." (Statement of Interest of the United States, p. 3.)  On this basis, the State Department argues that "enforcement of monetary contempt sanctions against a foreign state" (*id.,* p. 7) is contrary to United States law, would not be permitted under international standards, and would harm United States interests because comparable actions might then be taken against the United States in foreign courts.

In fact, Russia did much more than simply enter an "initial appearance" in which it noted for the record that it contested this Court's jurisdiction. Russia actively participated in the discovery of evidence in this case, produced witnesses who testifies under oath as to the

 ROTHWELL FIGG

Honorable Royce C. Lamberth
October 19, 2017
Page 7

historical origin and whereabouts of Chabad's sacred texts, and challenged in this Court and in the Court of Appeals the fundamental grounds on which Chabad claimed it had a right to proceed. Only after it lost in highly contested proceedings did it announce that it was abandoning the lawsuit. The State Department's concern that foreign courts will enter "reciprocal orders" enforcing sanctions against the United States (Statement of Interest of the United States, p. 19), is not a legitimate issue because, to our knowledge, the United States does not litigate extensively in a foreign court and then unilaterally abandon the playing field when it receives an adverse ruling on a fundamental point and faces the prospect of a loss on the merits.

Finally, the State Department raises the concern that Chabad has sought discovery into the assets that Russia holds outside of the United States. Without agreeing with the State Department's position on this point, Chabad expressly disavows any intention to identify Russian assets held outside of the United States.

### D. Request for Relief

The United States Senate has unanimously called for the return of Chabad's property, while Russia has flouted this Court's authority as well as the legal and humanitarian principles on which this Court's decisions have been based. The fact that a volume previously catalogued as part of the Chabad collection in Russia's possession now appears in an auction house undermines any notion that the Russians are reliable custodians of Chabad's property, or that patience is called for as diplomacy takes its course. Chabad therefore requests that the Court rule on its pending motion and strike the Statement of Interest of the State Department as resting on unsound legal and factual premises, and grant Chabad's emergency motion for issuance of a request for assistance to Israeli authorities, and otherwise permit Chabad to continue with its efforts to enforce the Court's orders.

Respectfully submitted,

*for* Steven Lieberman
Counsel to Chabad

Enclosures: as indicated

cc:     Nathan Swinton, Esq.
        U.S. Department of Justice
        (by e-mail, w/enclosures)

# ENCLOSURE A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/24/2016

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

AGUDAS CHASIDEI CHABAD OF UNITED
STATES,

                Plaintiff,

    v.

RUSSIAN FEDERATION, et al.,

                Defendants.

Misc. Case No. 16-040 Part 1

---

**STIPULATION AND ORDER REGARDING**
**RESPONSES TO NON-PARTY SUBPOENAS**

    WHEREAS, as part of Chabad's effort to enforce its judgments in the action entitled *Agudas Chasidei Chabad of United States v. Russian Federation, et al.*, Case No. 05-cv-1548 (the "D.C. Action"), pending in the United States District Court for the District of Columbia ("the D.C. Court"), plaintiff served a non-party subpoena dated December 4, 2015 (the "JPMC Subpoena") on JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, the "JPMC Entities"); and

    WHEREAS, plaintiff also served non-party subpoenas dated December 5, 2015 and January 15, 2016 (collectively, the "Citi Entities Subpoenas" and, together with the JPMC Subpoena, the "Subpoenas") on Citigroup Inc. and Citibank, N.A. (collectively, the "Citi Entities" and, together with the JPMC Entities, the "Non-Party Banks"); and

    WHEREAS, on February 3, 2016, the United States filed a Statement of Interest of that date (the "Statement of Interest") in the D.C. Action; and

1

WHEREAS, on February 5, 2016, the JPMC Entities filed a motion in this Court to stay compliance with the JPMC Subpoena (the "Stay Motion") pending a decision by the D.C. Court on the issues raised by the Statement of Interest; and

WHEREAS, on February 5, 2016, the JPMC Entities served on plaintiff written objections and responses dated February 5, 2016 (the "JPMC Objections") to the JPMC Subpoena; and

WHEREAS, on February 5, 2016, the Citi Entities served on plaintiff written objections and responses dated February 5, 2016, of both Citigroup Inc. (the "Citigroup Objections") and Citibank, N.A. (the "Citibank Objections" and, collectively with the Citigroup Objections, the "Citi Entities Objections"), to the Citi Entities Subpoenas; and

WHEREAS, on February 9, 2016, the Citi Entities joined in the Stay Motion and similarly sought a stay in this Court of compliance with the Citi Entities Subpoenas pending a decision on the issues raised by the Statement of Interest; and

WHEREAS, on March 9, 2016, plaintiff filed a motion in the D.C. Court to strike the Government's Statement of Interest (the "Motion to Strike"); and

WHEREAS, on March 9, 2016, plaintiff filed its opposition to the Stay Motions in this Court, requesting in the alternative to transfer the Stay Motions to the D.C. Court;

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED AND ORDERED as follows:

1.      In the event the D.C. Court, in connection with the Statement of Interest and the Motion to Strike, orders or otherwise rules that Chabad is prohibited from pursuing discovery of

2

the Non-Party Banks, then the Non-Party Banks shall have no obligation to comply with the Subpoenas.

2.      In the event the D.C. Court, in connection with the Statement of Interest and the Motion to Strike, allows discovery of the Non-Party Banks to proceed, then the Non-Party Banks shall proceed with the productions of documents, while reserving the objections articulated in the JPMC Objections and the Citi Entities Objections.

3.      Following the Non-Party Banks' production of documents (if authorized by the D.C. Court), to the extent any discovery-related disputes remain as between plaintiff and either the JPMC Entities, the Citi Entities or both, then all parties retain and reserve the right to seek further relief.

4.      Pending the entry of an order by the D.C. Court resolving plaintiff's Motion to Strike and the issues raised in the Statement of Interest, the Non-Party Banks' compliance with the Subpoenas shall continue to be held in abeyance.

5.      Upon the signing of this stipulation, the Non-Party Banks' respective Stay Motions shall be deemed withdrawn, obviating the need for the hearing scheduled for March 29, 2016, and plaintiff's opposition to the Stay Motions, including its request to transfer the Stay Motions to the D.C. Court, shall likewise be deemed withdrawn.

6.      This Stipulation and Order may be executed by email and in counterparts.

Dated:   March 24, 2016

AGUDAS CHASIDEI CHABAD OF UNITED
STATES

By:_____
        Steven Lieberman (SL 8687)
Daniel McCallum (*pro hac vice*)
Rothwell, Figg, Ernst & Manbeck, P.C.
607 14th St., N.W., Suite 800
Washington, DC 20005
202-783-6040
202-783-6031 (facsimile)
slieberman@rfem.com
*Attorneys for Agudas Chasidei Chabad of United*
*States*


JPMORGAN CHASE & CO. and JPMORGAN
CHASE BANK, N.A.

By:_____
        Steven B. Feigenbaum
Levi Lubarsky Feigenbaum & Weiss LLP
655 Third Avenue, 27th Floor
New York, NY 10017
(212) 308-6100
(212) 308-8830 (facsimile)
sfeigenbaum@llfwlaw.com
*Attorneys for Non-Parties JPMorgan Chase & Co.*
*and JPMorgan Chase Bank, N.A.*


CITIGROUP INC. and CITIBANK, N.A.

By:_____
        Barry J. Glickman
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 223-0400
(212) 753-0396 (facsimile)
bglickman@zeklaw.com
*Attorneys for Non-Parties Citigroup Inc. and*
*Citibank, N.A.*

SO ORDERED:

_____
United States District Judge

4

AGUDAS CHASIDEI CHABAD OF UNITED
STATES

By:_____
     Steven Lieberman (SL 8687)
Daniel McCallum (*pro hac vice*)
Rothwell, Figg, Ernst & Manbeck, P.C.
607 14th St., N.W., Suite 800
Washington, DC 20005
202-783-6040
202-783-6031 (facsimile)
slieberman@rfem.com
*Attorneys for Agudas Chasidei Chabad of United
States*


JPMORGAN CHASE & CO. and JPMORGAN
CHASE BANK, N.A.

By:_____
     Steven B. Feigenbaum
Levi Lubarsky Feigenbaum & Weiss LLP
655 Third Avenue, 27th Floor
New York, NY 10017
(212) 308-6100
(212) 308-8830 (facsimile)
sfeigenbaum@llfwlaw.com
*Attorneys for Non-Parties JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*


CITIGROUP INC. and CITIBANK, N.A.

By:_____
     Barry J. Glickman
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 223-0400
(212) 753-0396 (facsimile)
bglickman@zeklaw.com
*Attorneys for Non-Parties Citigroup Inc. and
Citibank, N.A.*

SO ORDERED:

_____
United States District Judge

4

AGUDAS CHASIDEI CHABAD OF UNITED
STATES

By:_____
        Steven Lieberman (SL 8687)
Daniel McCallum (*pro hac vice*)
Rothwell, Figg, Ernst & Manbeck, P.C.
607 14th St., N.W., Suite 800
Washington, DC 20005
202-783-6040
202-783-6031 (facsimile)
slieberman@rfem.com
*Attorneys for Agudas Chasidei Chabad of United
States*


JPMORGAN CHASE & CO. and JPMORGAN
CHASE BANK, N.A.

By:_____
        Steven B. Feigenbaum
Levi Lubarsky Feigenbaum & Weiss LLP
655 Third Avenue, 27th Floor
New York, NY 10017
(212) 308-6100
(212) 308-8830 (facsimile)
sfeigenbaum@llfwlaw.com
*Attorneys for Non-Parties JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*


CITIGROUP INC. and CITIBANK, N.A.

By:_____
        Barry J. Glickman
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 223-0400
(212) 753-0396 (facsimile)
bglickman@zeklaw.com
*Attorneys for Non-Parties Citigroup Inc. and
Citibank, N.A.*

SO ORDERED:

_____
United States District Judge

Dated: March 24, 2016
New York, New York

4

# ENCLOSURE B

# United States Senate
WASHINGTON DC 20510

February 27, 2017

President Vladimir Putin
Russian Federation
Moscow, Russia

Dear Mr. President:

We are writing respectfully to reaffirm our support and request for the return of the Schneerson collection of sacred texts from the Russian State Library and the Russian State Military Archive to its rightful owners, Agudas Chasidei Chabad of United States ("Chabad").

On May 31, 1992, all one hundred members of the United States Senate appealed to then-President Boris Yeltsin to honor Russia's commitment to return the collection to Chabad. On February 24, 2005, all one hundred members of the United States Senate again signed an appeal for your assistance in returning the collection. Copies of these letters are attached hereto. Since 1992, eight volumes of the collection have been returned to Chabad. We hereby respectfully request your assistance in seeing the return of the entire collection.

Thank you for your attention to this important matter.

Sincerely,

U.S. Senator Mitch McConnell     U.S. Senator Orrin G. Hatch     U.S. Senator Charles E. Schumer

U.S. Senator Thad Cochran

U.S. Senator Susan M. Collins

U.S. Senator Christopher A. Coons

U.S. Senator Bob Corker

U.S. Senator John Cornyn

U.S. Senator Catherine Cortez Masto

U.S. Senator Tom Cotton

U.S. Senator Mike Crapo

U.S. Senator Ted Cruz

U.S. Senator Steve Daines

U.S. Senator Joe Donnelly

U.S. Senator Tammy Duckworth

U.S. Senator Richard J. Durbin

U.S. Senator Michael B. Enzi

U.S. Senator Joni K. Ernst

U.S. Senator Dianne Feinstein

U.S. Senator Deb Fischer

U.S. Senator Jeff Flake

U.S. Senator Al Franken

U.S. Senator Cory Gardner

U.S. Senator Kirsten Gillibrand

U.S. Senator Lindsey O. Graham

U.S. Senator Chuck Grassley

U.S. Senator Kamala D. Harris

U.S. Senator Margaret Wood Hassan

U.S. Senator Martin Heinrich

U.S. Senator Heidi Heitkamp

U.S. Senator Dean Heller

U.S. Senator Mazie K. Hirono

U.S. Senator John Hoeven

U.S. Senator James M. Inhofe

U.S. Senator Johnny Isakson

U.S. Senator Ron Johnson

U.S. Senator Tim Kaine

U.S. Senator John Kennedy

U.S. Senator Angus S. King, Jr.

U.S. Senator Amy Klobuchar

U.S. Senator James Lankford

U.S. Senator Patrick Leahy

U.S. Senator Michael S. Lee

U.S. Senator Joe Manchin, III

U.S. Senator Edward J. Markey

U.S. Senator John McCain

U.S. Senator Claire McCaskill

U.S. Senator Robert Menendez

U.S. Senator Jeffrey A. Merkley

U.S. Senator Jerry Moran

U.S. Senator Lisa Murkowski

U.S. Senator Chris Murphy

U.S. Senator Patty Murray

U.S. Senator Bill Nelson

U.S. Senator Rand Paul

U.S. Senator David A. Perdue

U.S. Senator Gary C. Peters

U.S. Senator Rob Portman

U.S. Senator Jack Reed

U.S. Senator James Risch

U.S. Senator Pat Roberts

U.S. Senator M. Michael Rounds

U.S. Senator Marco Rubio

U.S. Senator Bernard Sanders

U.S. Senator Ben Sasse

U.S. Senator Brian Schatz

U.S. Senator Tim Scott

U.S. Senator Jeanne Shaheen

U.S. Senator Richard Shelby

U.S. Senator Debbie Stabenow

U.S. Senator Luther Strange

U.S. Senator Dan Sullivan

U.S. Senator Jon Tester

U.S. Senator John Thune

U.S. Senator Thom Tillis

U.S. Senator Pat Toomey

U.S. Senator Tom Udall

U.S. Senator Chris Van Hollen

U.S. Senator Mark R. Warner

U.S. Senator Elizabeth Warren

U.S. Senator Sheldon Whitehouse

U.S. Senator Roger F. Wicker

U.S. Senator Ron Wyden

U.S. Senator Todd Young

# ENCLOSURE C

ORRIN G. HATCH

PRESIDENT PRO TEMPORE

COMMITTEES

# United States Senate

WASHINGTON, DC 20510-4402

February 27, 2017

The Honorable Rex Tillerson
Secretary of State
U.S. Department of State
2201 C Street, NW
Washington, D.C. 20520

Dear Secretary Tillerson:

Agudas Chasidei Chabad of United States is the largest Hasidic Jewish organization in the world. The leaders of this movement, established in 18th century Russia, developed a collection of religious texts that was central to Chabad's religious life. Russia confiscated one part of this collection at the time of the Bolshevik Revolution and took the other part from the Nazis in 1945. Chabad has been trying to recover this sacred collection ever since.

The State Department issued a statement in 1992 expressing the United States' "continued strong support for the return" of the collection. One month later, all 100 Senators signed a letter to President Boris Yeltsin urging its "quick release." In 2005, all 100 Senators again signed a letter to President Vladimir Putin urging him to "return these sacred religious texts, archives, and manuscripts to Chabad."

Please find enclosed a third letter, again signed by all 100 Senators, renewing our request for the return of this collection to Chabad. I write to ask your help in conveying this letter, and the two previous letters to which it refers, to President Putin, and in securing the return of this collection of religious works to Chabad, its rightful owners. This would be a significant example of both governments' commitment to justice, human rights, and religious freedom.

Sincerely,

Orrin Hatch
United States Senator

# ENCLOSURE D



AMBASSADOR
OF THE RUSSIAN FEDERATION
TO THE USA

April 4, 2017

Dear Senator Schumer,

I have the honor to inform You that the U.S. Senators' letter addressed to the President of the Russian Federation Vladimir Putin with a request to return the so-called Schneerson collection to Chabad religious community has been considered.

In this connection I would like to draw Your attention to the groundlessness of Chabad claims. It is established that the Schneerson library was created and replenished in our country and has never left its territory. The collection is part of the cultural heritage of the multinational and multiconfessional people of Russia, including those who practice Judaism.

The Schneerson library belongs to the Russian State Library funds, which form an inalienable state property. Taking into consideration the interest of citizens who practice Judaism, the "religious library" for several years has been located at the Center of Tolerance in the Moscow Jewish museum where they are now accessible for scientific purposes as well as for religious practices.

THE HONORABLE CHARLES ELLIS SCHUMER
UNITED STATES SENATOR FOR NEW YORK

Washington, DC

On their side, Chabad representatives have never owned the Schneerson collection and have had no property rights over it. Nevertheless, they can work freely in Moscow with the religious books they are interested in.

Regrettably, instead of showing a constructive approach, Chabad religious community for more than 20 years has been pursuing a senseless dispute with Russia in order to alienate Russian state property. At the same time, Chabad unlawfully retains several books from the collection, which the Russian State Library loaned to the Library of Congress in 1994 under international inter-library exchange.


Sincerely,

Sergey Kislyak