# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|   |   |   |
|---|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:05-cv-01548-RCL |
| | ) | |
| RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION; RUSSIAN STATE LIBRARY; and RUSSIAN STATE MILITARY ARCHIVE, | ) | |
| | ) | |
| *Defendants.* | ) | |

_____

## PLAINTIFF'S NOTICE OF RELATED FILING

Plaintiff Agudas Chasidei Chabad of United States ("Chabad") respectfully submits this Notice of Related Filing.  Specifically, on April 11, 2018, Chabad filed a Motion (1) to Lift the Stay of Discovery and (2) To Transfer the Subpoena Dispute to the District Court for the District of Columbia, or In the Alternative to Compel Compliance, in the United States District Court for the Southern District of New York.  The Motion and the supporting papers are attached for the Court's reference.

Respectfully submitted,

Dated:  April 19, 2018        By:    */s/ Steven Lieberman*
                                     Steven Lieberman (D.C. Bar No. 439783)
                                     Robert Parker (D.C. Bar No. 404066)
                                     Daniel McCallum (D.C. Bar No. 1006938)
                                     Rothwell, Figg, Ernst & Manbeck, P.C.
                                     607 14th St., N.W., Suite 800
                                     Washington, DC 20005
                                     Phone:  202-783-6040
                                     Facsimile:  202-783-6031

1

E-mails:  slieberman@rfem.com
          rparker@rfem.com
          dmccallum@rfem.com


Nathan Lewin (D.C. Bar No. 38299)
Alyza Lewin (D.C. Bar No. 445506)
LEWIN & LEWIN, LLP
888 17th St., N.W., 4th Floor
Washington, DC 20006
Phone:  202-828-1000
Facsimile:  202-828-0909
E-mails:  nat@lewinlewin.com
          alyza@lewinlewin.com

*Counsel for Agudas Chasidei Chabad of United States*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

AGUDAS CHASIDEI CHABAD OF UNITED
STATES,

                      Plaintiff,

    v.

RUSSIAN FEDERATION, et al.,

                      Defendants.

Misc. Case No. 16-040 Part 1

ECF Case

(Case No. 1:05-cv-01548-RCL
Pending in the District of Columbia)

---

**PLAINTIFF'S NOTICE OF MOTION TO (1) TO LIFT THE STAY OF DISCOVERY**
**AND (2) TO TRANSFER THE SUBPOENA DISPUTE TO THE DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA,**
**OR IN THE ALTERNATIVE, TO COMPEL COMPLIANCE**

PLEASE TAKE NOTICE that upon the accompanying memorandum of law, the

Declaration of Daniel R. McCallum, dated April 11, 2018, and the exhibits attached thereto,

Plaintiff Agudas Chasidei Chabad of United States ("Chabad"), by its attorneys, Rothwell, Figg,

Ernst & Manbeck, P.C., will move this Court, before the judge assigned to Part One, located at

500 Pearl Street, New York, NY 10007, on a date and time to be scheduled by the Court, for (i)

an order transferring JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Citigroup Inc., and

Citibank, N.A.' ("the Banks'") discovery motion (Dkt. 2) to the District Court for the District of

Columbia, the Court that issued the subpoenas in Case No. 05-cv-1548 (RCL), pursuant to Rule

45, or (ii) in the alternative, an order compelling the Banks' compliance with Chabad's

subpoenas.

1

Dated:  April 11, 2018                           Respectfully submitted,

                                        By:   /s/*Steven Lieberman*
                                              Steven Lieberman (SL 8687)
                                              Daniel McCallum (*pro hac vice*)
                                              Rothwell, Figg, Ernst & Manbeck, P.C.
                                              607 14th St., N.W., Suite 800
                                              Washington, DC 20005
                                              Phone:  202-783-6040
                                              Facsimile:  202-783-6031
                                              E-Mail:  slieberman@rfem.com


                                              *Counsel for Agudas Chasidei Chabad of United
                                              States*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2018, a true and correct copy of the foregoing

**PLAINTIFF'S NOTICE OF MOTION (1) TO LIFT THE STAY OF DISCOVERY AND**

**(2) TO TRANSFER THE SUBPOENA DISPUTE TO THE DISTRICT COURT FOR THE**

**DISTRICT OF COLUMBIA, OR IN THE ALTERNATIVE, TO COMPEL**

**COMPLIANCE** was filed through the Court's Electronic Filing System (ECF), and was served

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


*/s/ Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Manager
Rothwell, Figg, Ernst & Manbeck, P.C.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

AGUDAS CHASIDEI CHABAD OF UNITED
STATES,

                            Plaintiff,

     v.

RUSSIAN FEDERATION, et al.,

                            Defendants.

Misc. Case No. 16-040 Part 1

ECF Case

(Case No. 1:05-cv-01548-RCL
Pending in the District of Columbia)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION (1) TO LIFT THE STAY OF DISCOVERY AND (2) TO TRANSFER THE SUBPOENA DISPUTE TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, OR IN THE ALTERNATIVE, TO COMPEL COMPLIANCE

Agudas Chasidei Chabad of United States ("Chabad") respectfully requests that the Court lift the pending stay of discovery with respect to Chabad's subpoenas directed to third-parties JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Citigroup Inc., and Citibank, N.A.'s (collectively "the Banks", or individually "JPMorgan" and "Citi") back, and to transfer the subpoena dispute to the U.S. District Court for the District of Columbia (the "D.C. Court"). Alternatively, Chabad asks the Court to lift the stay and compel compliance with the subpoenas.

Given the extraordinary (and complex) circumstances of this lawsuit – including the fact that this case has been pending before the D.C. Court for 13 years, the D.C. Court has issued two judgments against defendants, the D.C. Court has held defendants in contempt, and the D.C. Court will decide the merits of the issues on which the Bank's motion is based – Chabad requests that this Court lift the stay and transfer the motion to the D.C. Court pursuant to Federal Rule of Civil Procedure 45(f), as it did in another discovery dispute that arose in 2015.  Transfer Order

(Dkt. 18), Case No. 15-mc-184-P1 (S.D.N.Y. Aug. 18, 2015).  In the alternative, Chabad

respectfully requests that the Court deny the Banks' motion to stay and compel compliance.

## BACKGROUND

Chabad brought suit against the Russian Federation, the Russian Ministry of Culture and

Mass Communication, the Russian State Library, and the Russian State Military Archive

(together, "Russia" or "Defendants") in 2004 to recover its stolen property, including Chabad's

historic library and archives (the "Collection").  The district court's jurisdiction was upheld by

the D.C. Circuit, which noted, "[t]he religious and historical importance of the Collection to

Chabad . . . can hardly be overstated."  *Chabad of United States v. Russian Fed'n*, 528 F.3d 934,

938 (D.C. Cir. 2008).

To summarize insofar as necessary for purposes of the Banks' motion, the D.C. Court has

entered two judgments against defendants.[1]  Following the proceedings that established the D.C.

Circuit's jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), Russia withdrew

from the lawsuit.  Chabad completed the procedure required by the FSIA in these circumstances,

and the D.C. Court entered judgment ordering Russia to return the Collection to Chabad.  Russia

ignored the judgment, and the D.C. Court held Russia in contempt and imposed sanctions in the

amount of $50,000 a day.  On September 10, 2015, the D.C. Court entered an Order reducing the

then-accrued sanctions to a monetary judgment in the amount of $43,700,000.  That judgment

has been registered in this Court.  At each stage of the proceeding, the D.C. Court has considered

---

[1] Judge Royce Lamberth has presided over the lawsuit for nearly 13 years, and he has summarized the course of the lawsuit in several of his decisions in the case.  *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 466 F. Supp. 2d 6 (D.D.C. 2006); *see also* Memorandum Opinion, *Agudas Chasidei Chabad of United States v. Russian Fed'n* , No. 05-cv-01548-RCL (D.D.C. Sept. 10, 2015) ("Opinion") (Dkt. 17-1) (*Chabad v. Russian Fed'n*, 128 F. Supp. 3d 242 (D.D.C. 2015)).

(and, to the extent appropriate, accommodated) the views of the United States, represented by Department of Justice attorneys pursuant to 28 U.S.C. § 517.

In its September 10, 2015 Opinion, the D.C. Court addressed and rejected the U.S. Government's objections to Chabad's initiation of discovery directed to the identification of potentially attachable Russian assets. *Chabad v. Russian Fed'n*, 128 F. Supp. 3d 242, 247 (D.D.C. 2015) ("The time has come to give plaintiff some of the tools to which it is entitled under law"). Pursuant to that mandate, Chabad has sought to determine "where, if anywhere, there are assets in this country that can be seized to satisfy [the D.C. Court's] default judgment." Hearing Transcript at 32 (Dkt. 22), Case No. 15-mc-184-P1 (S.D.N.Y. Aug. 18, 2015). Thus, Chabad served subpoenas on JPMorgan, Citi, and other financial institutions calling for production of materials and information regarding assets that could be attached to enforce and satisfy the D.C. Court's judgments.[2]

Counsel for the Banks and Chabad engaged in discussions regarding the Banks' responses to the subpoenas, and Chabad agreed to extend the subpoenas' response dates. Dkt. 17-2, ¶¶5, 7, 13. Counsel for the Banks indicated that productions would be forthcoming, and even indicated that their responses would include information regarding active accounts, and not only accounts that had been frozen pursuant to the U.S. Government's sanctions against Russia. Dkt. 17-2, ¶¶6, 7. Then, shortly before JPMorgan's response was due, JPMorgan's counsel informed Chabad that it had received word that the U.S. Government was contemplating filing a

---

[2] The subpoenas directed to the banks were not the first subpoenas issued in this litigation, nor is this the first time that a subpoena recipient has filed a motion with this Court. As described in more detail below, in Case No. 15-mc-184-P1 (S.D.N.Y.), this Court exercised its right under Rule 45(f) and transferred to the D.C. Court a motion challenging a subpoena directed to another financial institution. Activity relating to that subpoena has been stayed.

Statement of Interest opposing Chabad's subpoenas. Dkt. 17-2, ¶8.[3]  Shortly thereafter, the Government, which is not a party to this lawsuit, filed a Statement of Interest in the D.C. Court. The Government asked the D.C. Court, in effect, for an order precluding Chabad from pursuing discovery in this matter.

On February 9, 2016, the Banks filed a motion to stay activity relating to the subpoenas pending resolution of the Government's Statement of Interest.  (Dkt. 12).  Chabad responded on March 9, 2016, requesting (as it does again now) to transfer the dispute to the District of Columbia.  (Dkt. 16).  During the briefing process, the parties continued to engage in negotiations so as to limit judicial involvement in the dispute.  On March 24, 2016, the parties reached a compromise, whereby they jointly agreed to hold the Banks' compliance with the subpoenas in abeyance pending the D.C. Court's handling of the Government's Statement of Interest.  (Dkt. 22).  This Court issued a stay of proceedings pursuant to the parties' agreement. (Dkt. 22).

* * *

In the meantime, Chabad has continued its efforts to enforce its judgments and ultimately secure the return of its texts.  These efforts have included additional court filings, culminating in an October 24, 2017 hearing before Judge Lamberth at which the Court addressed the Government's pending Statement of Interest.  Specifically, the Court stated that it did not view Chabad's pending motion to strike as the appropriate "vehicle" for addressing on the Statement of Interest.   Hearing Tr., October 24, 2017, at 15 (Case No. 05-cv-1548 (D.D.C.)), McCallum Dec., Exhibit A.  Rather, referring to Chabad's out-of-court efforts to secure the return of its texts, the Court stated that it would "like [the Government] to update their statement of interest

_____

[3] Chabad does not know the full history of the conversations between the Department of Justice and the subpoena recipients.  What is clear is that the Department of Justice was communicating with these entities unbeknownst to Chabad.

in any event now in light of the action of the unanimous Senate and the Russian ambassador's response," and that "the United States needs to reassess" its position.  Hearing Tr., October 24, 2017, at 15.

Chabad has now filed new motions in the D.C. Court, giving the Government the opportunity to respond to Judge Lamberth's request.  Those motions are attached as exhibits. McCallum Dec., Exs. B and C.  To summarize, Chabad argues:  (1) that it is permitted under the FSIA to enforce its money judgment against the Russian Defendants; and (2) separately and independently, Chabad is permitted to seek discovery of the Russian Defendants' assets based on the Court's order for specific performance.  Importantly, the Government's Statement of Interest does not implicate the latter argument.

In view of these developments, Chabad has asked the Banks to withdraw the stipulated stay and to comply with the subpoenas voluntarily.  They have declined to do so.  McCallum Dec., ¶¶7-10.  Accordingly, and because compliance with the subpoenas is inextricably intertwined with the briefing pending before Judge Lamberth, Chabad respectfully requests that this Court lift the stay and transfer the Banks's motion to stay compliance with the subpoena to the D.C. Court.

## <u>ARGUMENT</u>

## I.      **This Court Should Transfer the Motion to the D.C. Court**

When a motion regarding a subpoena is filed in a court that did not issue the subpoena, the motion may be transferred to the issuing court if "exceptional circumstances" are present. Fed. R. Civ. P. 45(f).  The Advisory Committee Notes to Rule 45 explain that a transfer may be appropriate "to avoid disrupting the issuing court's management of the underlying litigation, as

when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."

This Court should transfer the present motion for two separate and independent reasons. *First,* this Court has already determined that, given the long and complex history of this lawsuit, the circumstances warrant transfer to the D.C. Court so that Judge Lamberth can address the matter as part of his ongoing management of the proceeding. Transfer Order (Dkt. 18), Case No. 15-mc-184-P1 (S.D.N.Y. Aug. 18, 2015) (Failla, J.) (transferring the movant's motion for a protective order to Judge Lamberth). The circumstances now weigh even more strongly in favor of a transfer.

The 2015 dispute that was transferred to Judge Lamberth concerned a motion for a protective order with respect to a subpoena for the deposition of a corporate representative. The underlying dispute concerned the permissible breadth of the deposition, and specifically the extent to which a subpoena recipient is obligated to respond regarding information in the possession of the recipient's overseas affiliate. In that case, Judge Failla explained that she had consulted with Judge Lamberth, and concluded that this case was "special" in light of Russia's repeated "flouting" of the D.C. Court's orders. Hearing Transcript at 32 (Dkt. 22), Case No. 15-mc-184-P1 (S.D.N.Y. Sept. 3, 2015). Further, Judge Failla noted that, in its present phase, the issue before the D.C. Court was "where, if anywhere, there are assets in this country that can be seized to satisfy that default judgment," and that Judge Lamberth was properly "concerned" and "involved" with that issue. *Id.* Judge Failla concluded that Judge Lamberth had "the right to make sure that this phase of the case is administered in a way that minimizes the risk of inconsistencies and does justice." *Id*. at 33.

If, as this Court previously held, an issue regarding the scope of a subpoena is a sufficiently exceptional circumstance to warrant transfer of a motion, then the present motion presents even more compelling circumstances. That is, the Banks are not raising a question regarding the permissible scope of a subpoena under nationally applicable federal rules; they are questioning whether the D.C. Court in this particular case had authority to issue the subpoenas at all. In a case that will be entering its 13th year, with respect to subpoenas issued pursuant to a two judgments of another court, that question should be answered by the court most familiar with the proceedings and whose authority is at issue.

*Second,* and relatedly, the questions raised by the Government's Statement and by the present motion are identical. Indeed, the Banks have incorporated the Government's Statement as the basis for their motion to stay. Because the Government's arguments will be addressed and resolved by the D.C. Court pursuant to Chabad's recent filings, the D.C. Court will also be addressing the issues the Banks have raised. Rather than decide those issues in a procedural motion, this Court should allow the D.C. Court to resolve the procedural matters along with the merits of the underlying substantive arguments.

## II. Alternatively, This Court Should Deny The Banks' Motion On The Merits

The pending motion rises or falls on the merits and applicability of the Government's Statement of Interest. Chabad has filed a motion requesting that the D.C. Court effectively re-open Chabad's post-judgment discovery efforts. *See* McCallum Dec., Ex. C. Chabad respectfully incorporates those arguments into this motion. To summarize Chabad's position:

The legal and policy arguments in the Government's Statement have already been considered and rejected by the D.C. Court, and run counter to decisions of the Supreme Court and the District of Columbia Circuit. The D.C. Court's September 10, 2015 Opinion is unequivocal on these points. The D.C. Court rejected the Government's argument that Chabad

should not be entitled to discovery no fewer than three times, primarily on the ground that this is

not yet an enforcement proceeding so questions as to enforcement are not ripe. *Chabad v.

Russian Fed'n*, 128 F. Supp. 3d 242, 244 (D.D.C. 2015) ("The Court agrees with [Chabad's]

analysis that this is not an enforcement action, and questions related to enforcement are not ripe

for adjudication"); *id.* at 245 ("Therefore, the Court notes that . . . concerns related to such

enforcement are premature until such time as plaintiff has identified property to attach and

execute . . . "); *id.* at 248 ("The United States again asks the court to consider a question not yet

ripe"). As to the Government's policy arguments, the Court considered and rejected each one.

*Id.* at 245-49.

 In addition, the Supreme Court's decision in *Republic of Argentina v. NML Capital,

Ltd.*, 134 S. Ct. 2250 (2014), speaks to the issues raised by the Government's Statement and,

therefore, the present motion. In that case, the Supreme Court rejected legal and policy

arguments virtually identical to those raised in the Government's Statement, holding that a

judgment creditor is entitled to discovery into the assets of a judgment debtor, even if the debtor

is a foreign sovereign—the FSIA does not create a bar to discovery. Notably, the Supreme Court

referred to Fed. R. Civ. P. Rule 69(a)(2) for the proposition that "[t]he rules governing discovery

in postjudgment execution proceedings are quite permissive." *Id.* at 2254. The Supreme Court

acknowledged that a sovereign and judgment creditor might ultimately disagree regarding

whether assets were immune from execution under the FSIA, but it opened the door for

discovery to locate such assets first and instructed that disputes regarding immunity should be

heard by the district court *after* potentially executable assets are located. *See id.* at 2257-58.

 Finally, as Chabad notes in its latest submission to the D.C. Court, the Government's

Statement is inapplicable to Chabad's judgment for specific performance. On July 30, 2010, the

D.C. Court concluded that it had jurisdiction "over the Defendants under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(3)."  (Dkt. 80, Case No. 05-cv-1548).  Accordingly, it entered judgment against the Russian Defendants ordering them to return the Library and the Archive to Chabad.  *Id.*

Chabad's actions are consistent with Federal Rule of Civil Procedure 70(c), which provides that "on application by a party entitled to performance of an act, the clerk must issue a writ of attachment or sequestration against the disobedient party's property to compel obedience."  Chabad's goal is to secure the return of its property.  Moreover, Chabad's discovery is authorized by the FSIA.  Chabad is permitted to enforce its judgment if the execution "relates to a judgment establishing rights in property which has been taken in violation of international law."  Chabad is attempting to identify Russian property that "relates to" Chabad's judgment with respect to property taken in violation of international law.

## CONCLUSION

For the foregoing reasons, in these "exceptional circumstances," this Court should transfer this case to the D.C. Court, and allow Judge Lamberth to address the Government's arguments and the consequent implications of his decision (if any) on the outstanding subpoenas. In the alternative, this Court should deny the motion to stay on the grounds that the merits of the Banks' position have been addressed by the D.C. Court and by the Supreme Court, and found wanting.

Dated: April 11, 2018                         Respectfully submitted,

                              By:   /s/ *Steven Lieberman*
                                    Steven Lieberman (SL 8687)
                                    Daniel McCallum (*pro hac vice*)
                                    Rothwell, Figg, Ernst & Manbeck, P.C.
                                    607 14th St., N.W., Suite 800

Washington, DC 20005
Phone:  202-783-6040
Facsimile:  202-783-6031
E-Mail:  slieberman@rfem.com

*Counsel for Agudas Chasidei Chabad of United States*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2018, a true and correct copy of the foregoing

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION (1) TO LIFT**

**THE STAY OF DISCOVERY AND (2) TO TRANSFER THE SUBPOENA DISPUTE TO**

**THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, OR IN THE**

**ALTERNATIVE, TO COMPEL COMPLIANCE** was filed through the Court's Electronic

Filing System (ECF), and was served electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF).


*/s/  Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Manager
Rothwell, Figg, Ernst & Manbeck, P.C.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, | Misc. Case No. 16-040 Part 1 |
| Plaintiff, | ECF Case |
| v. | (Case No. 1:05-cv-01548-RCL Pending in the District of Columbia) |
| RUSSIAN FEDERATION, et al., | |
| Defendants. | |

## DECLARATION OF DANIEL MCCALLUM IN SUPPORT OF PLAINTIFF'S MOTION (1) TO LIFT THE STAY OF DISCOVERY AND (2) TO TRANSFER THE SUBPOENA DISPUTE TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, OR IN THE ALTERNATIVE, TO COMPEL COMPLIANCE

I, Daniel R. McCallum, declare as follows:

1.      I am over the age of 18 and fully competent to make this declaration.  I have personal knowledge of the facts stated herein, and they are true and correct.

2.      I am an attorney at Rothwell, Figg, Ernst & Manbeck, P.C., 607 14th Street, N.W., Suite 800, Washington, DC 20005, counsel for Plaintiff Agudas Chasidei Chabad of United States ("Plaintiff" or "Chabad") in the above-captioned case.  I am a member in good standing of the bars for the District of Columbia and New York.

3.      I submit this declaration in support of Plaintiff's Motion to (1) Life the Stay of Discovery and (2) To Transfer the Subpoena Dispute to the District Court for the District of Columbia, or in the Alternative, to Compel Compliance.

4.      Attached hereto as Exhibit A is a true and correct copy of the transcript of the October 24, 2017 hearing before Judge Lamberth in Case No. 05-cv-1548 (Dkt. 164).

1

5.      Attached hereto as Exhibit B is a true and correct copy of Chabad's Motion for Additional Interim Judgment of Accrued Sanctions.

6.      Attached hereto as Exhibit C is Chabad's Motion for Increased Sanctions and for Entry of a Protective Order Regarding Post-Judgment Discovery.

7.       On March 20, 2018, I contacted counsel for JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. ("JPMorgan") and Citibank, N.A. and Citigroup Inc. ("Citi"), forwarding Chabad's recently filed papers, Exhibits B and C above.

8.      In my March 20, 2018 email, I requested that Citi and JPMorgan agree to comply with our subpoenas in view of the developments in the case.  Further, I requested that in the event that JPMorgan and Citi declined to comply, that they agree to transfer the discovery dispute to the District Court for the District of Columbia, before Judge Lamberth.

9.      On March 28, 2018, counsel for JPMorgan declined both requests.

10.      On April 6, 2018, counsel for Citi likewise declined both requests.


I declare under penalty of perjury that the foregoing is true and correct.



Executed On:  April 11, 2018

By: _____
Daniel McCallum

2

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2018, a true and correct copy of the foregoing

DECLARATION OF DANIEL MCCALLUM IN SUPPORT OF PLAINTIFF'S MOTION (1)

TO LIFT THE STAY OF DISCOVERY AND (2) TO TRANSFER THE SUBPOENA

DISPUTE TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, OR IN THE

ALTERNATIVE, TO COMPEL COMPLIANCE was filed through the Court's Electronic Filing

System (ECF), and was served electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF).

/s/ Erik van Leeuwen
Erik van Leeuwen
Litigation Operations Manager
Rothwell, Figg, Ernst & Manbeck, P.C.

# EXHIBIT A

**(Declaration of Daniel McCallum In Support of Plaintiff's Motion (1) to Lift the Stay of Discovery and (2) to Transfer the Subpoena Dispute to the District Court for the District of Columbia, or in the Alternative, to Compel Compliance)**

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3

 4

 5    AGUDAS CHASIDEI CHABAD OF
      UNITED STATES,
 6
          Plaintiff,
 7
          vs.                         1:05-CV-1548
 8
      RUSSIAN FEDERATION, et al.,
 9
          Defendants.
10

11

12

13

14                 TRANSCRIPT OF MOTIONS HEARING

15         BEFORE THE HONORABLE ROYCE C. LAMBERTH

16              UNITED STATES DISTRICT JUDGE

17                    OCTOBER 24, 2017

18

19    Court Reporter:

20    Richard D. Ehrlich, RMR, CRR
      Official Court Reporter
21    United States District Court
      333 Constitution Avenue, NW
22    Washington, D.C. 20001
      (202) 354-3269
23

24    Proceedings reported by stenotype.

25    Transcript produced by computer-aided transcription.
```

```
 1                     A P P E A R A N C E S

 2

 3      FOR THE PLAINTIFF:

 4              STEVEN LIEBERMAN
                DANIEL McCALLUM
 5              ROTHWELL FIGG
                607 14th Street, NW
 6              Suite 800
                Washington, D.C. 20005
 7              (202)783-6040
                slieberman@rfem.com
 8              dmccalum@rfem.com

 9              NATHAN LEWIN, via telephone
                ALYZA DOBA LEWIN, via telephone
10              LEWIN & LEWIN, LLP
                888 17th Street, NW
11              4th Floor
                Washington, D.C. 20006
12              (202) 828-1000
                nat@lewinlewin.com
13              alyza@lewinlewin.com

14      FOR THE UNITED STATES OF AMERICA:

15
                NATHAN MICHAEL SWINTON
16              U.S. DEPARTMENT OF JUSTICE
                Civil Division
17              20 Massachusetts Avenue, NW
                Room 7218
18              Washington, D.C. 20530
                (202) 305-7667
19              nathan.m.swinton@usdoj.gov

20

21

22

23

24

25
```

1          THE CLERK:  Good morning.  We have Civil Matter

2     05-CV-1548.  *Agudas Chasidei Chabad of United States vs. The*

3     *Russian Federation, et al.*

4          There are two counsel who are appearing

5     telephonically.  If you can identify yourselves, please, for

6     the record?

7          MR. LEWIN:  Yes.  This is Nathan Lewin, L-E-W-I-N,

8     representing Agudas Chasidei Chabad, and I am currently in

9     Jerusalem, Israel.

10          MS. LEWIN:  This is Alyza Lewin, A-L-Y-Z-A

11     L-E-W-I-N, also representing the Agudas Chasidei Chabad, and

12     I am currently in San Francisco, California.

13          THE CLERK:  And if I could have counsel please

14     approach the lecturn and identify yourselves for the record.

15          I also have Nathan Swinton here from the

16     Government, Your Honor.

17          MR. LIEBERMAN:  Good morning, Your Honor.  Steve

18     Lieberman of Rothwell Figg Ernst & Manbeck representing

19     Chabad.

20          With me today at counsel table is my colleague Dan

21     McCallum.  Also present in court are two individuals who you

22     know well from past appearances, Rabbi Yossi Cunin and Rabbi

23     Chaim Cunin.  The Cunin family, as you know, was tasked by

24     the Rabbi with the handling of this very long and

25     complicated effort to recover the holy books of Chabad.

```
 1              Good morning.

 2              THE COURT:  Okay.  And who is here for the United

 3    States?

 4              MR. SWINTON:  Good morning, Your Honor.  Nathan

 5    Swinton.

 6              THE COURT:  Okay.  Thank you for appearing,

 7    Mr. Swinton.

 8              Okay.  Who wants to start for Chabad?

 9              MR. LIEBERMAN:  Steve Lieberman.  I'll start, Your

10    Honor.

11              THE COURT:  Okay.

12              What time is it over there, Mr. Lewin?

13              MR. LEWIN:  Right now it is 5:12 p.m.

14              THE COURT:  Okay.  Not too bad.

15              MR. LEWIN:  That's pretty good.  Sometimes when

16    I'm here, I get calls, and it's after midnight, and people

17    don't realize there's a seven-hour difference.

18              MR. LIEBERMAN:  Good morning, Your Honor.

19              THE COURT:  Good morning.

20              MR. LIEBERMAN:  Chabad recently learned that a

21    company in Israel, the Kedem Auction House, is offering for

22    auction, at the end of this month, on the 30$^{th}$ of the

23    month, a volume as to which we believe there is no doubt is

24    part of the collection that this Court has ruled belongs to

25    Chabad as part of the library.
```

1    We have submitted two declarations from Rabbi

2    Levin.  The name is spelled Levin, but's it's pronounced

3    "Levin."  One supplemental declaration this morning.  I

4    don't know if Your Honor needs an extra copy of that or if

5    you've already seen that?

6         THE COURT:  I saw it.

7         MR. LIEBERMAN:  We believe that those declarations

8    established with a high degree of certainty that the volume

9    that is up for auction is part of the library and somehow

10   got from the Russian State Library to the Kedem Auction

11   House.

12        Now, we don't know how it got there, and that's

13   part of the purpose of the request for letters rogatory.

14   The evidence that we have suggests that either, one, the

15   volume was stolen from the Russian State Library without

16   their knowledge and consent and somehow spirited to the

17   Kedem Auction House.  Or, two -- and this is a more sinister

18   inference, but we believe that some of the supporting

19   evidence strongly supports this inference -- that Russia, or

20   agents acting on its behalf, have either sold off or are in

21   the process of selling off the Chabad collection either to

22   show their disregard for this Court and its orders, to show

23   spite towards Chabad, or to show disrespect and antipathy to

24   the United States of America.

25        We won't know until we get the discovery of Kedem

1    regarding how the book came into their possession and what

2    facts they know.

3            Now, last week on Thursday, we approached Kedem in

4    a friendly fashion.  Mr. Lewin, who was in Israel, actually

5    went over to Kedem with a representative of Chabad;

6    explained the issue, provided copies of the Court's prior

7    orders, and asked Kedem to stop the auction and to keep the

8    books in safekeeping.

9            Kedem was uncooperative.  And immediately after

10   that visit, we filed the emergency motion for issuance of

11   letters rogatory.

12           There have been subsequent communications with

13   Kedem, and Mr. Lewin will talk about later because there's

14   another issue with regard to Kedem, with the Court's

15   permission we want to bring up, and Mr. Lewin will present

16   that.  But they sent an email on Sunday night to Mr. Lewin

17   on behalf of Chabad, and their email said, "We intend to

18   continue the sale process unless we receive Court order to

19   stop the sales process."

20           So they've been plainly uncooperative.  The State

21   of Israel is a signatory to the Hague Convention as Your

22   Honor knows.

23           THE COURT:  Is the book displayable?  Has it been

24   seen?

25           MR. LIEBERMAN:  Physically seen at Kedem?  I

1    believe it has, Your Honor.  I believe it has.

2              THE COURT:  So it is there?

3              MR. LIEBERMAN:  We believe that, Your Honor.

4              THE COURT:  Okay.

5              MR. LIEBERMAN:  The U.S. and Israel are both

6    signatories to the Hague Convention.  The Hague Convention

7    provides for, and district courts in this country routinely

8    grant letters rogatory requests for judicial assistance.

9    That's something that is regularly done in the State of

10   Israel; in fact, there's a recent Northern District of

11   California case which actually outlines the whole process in

12   Israel and how the Israeli authorities go about executing a

13   request for assistance.  That's a case called *Radware vs.*

14   *A-10 Networks*.  And I have a copy of that for the Court, if

15   the Court wishes.

16             THE COURT:  I've done many myself.

17             MR. LIEBERMAN:  Okay.  So the letter of request

18   seeks documents and testimony that are directly related to

19   the property at the heart of this case.  They're narrowly

20   tailored requests.  We're asking for the Israeli authorities

21   to direct the production of these six categories of

22   documents and to direct, consistent with Israeli law, a

23   deposition of a representative of Kedem who can provide

24   testimony regarding, among other things, how the books came

25   into their possession, who provided them, what else they may

1    have said about what other books belonging to Chabad or

2    relating to Chabad might be in their possession, and we ask

3    the Court to issue the letters rogatory.

4         We've spoken with counsel for the Government,

5    Mr. Swinton, and Mr. Swinton has advised us -- and I'm sure

6    Your Honor will ask him directly -- that the Government

7    takes no position with respect to the letters rogatory

8    request.

9         We have served our emergency motion on the Russian

10   defendants in the matter provided for in prior court orders,

11   and we've received no communications from the Russian

12   defendants and do not see them in court here today.  So I

13   assume that they have no opposition to this request either.

14        THE COURT:  Okay.  All right.  Mr. Swinton.

15        MR. LEWIN:  Your Honor, I'm not sure -- since I'm

16   not there, I'm not sure exactly whether Mr. Lieberman has

17   concluded making the original presentation?

18        THE COURT:  He did.  Did you want to add to that

19   before I hear from the Government?

20        MR. LEWIN:  Yes, Your Honor.  I would like to add

21   because, as Mr. Lieberman indicated, I am in Jerusalem and

22   learned of this development last week.  Having learned of

23   it, I proceeded with copies of the Court's orders to the

24   Kedem Auction House.  I emailed them asking for an

25   appointment and did have an appointment; had a meeting with

1   Abishai Galer of the Kedem Auction House.

2          Our view that this volume, which is one of a

3   complete set of the time, and apparently -- I examined it

4   after we concluded our meeting because it is there in the

5   exhibition for the auction, and they allowed me and Rabbi

6   Aharonov to examine it, and it is clear from the volume

7   itself and from some handwritten -- a few handwritten notes

8   by Aharonov, who is familiar with the handwriting of what's

9   been identified as being handwriting of the rabbi and from

10  seals on several pages of the documents, that this is one

11  volume of the entire set of volumes that they themselves

12  used.  Quite frankly, there's almost no way that anybody

13  could legitimately have gotten this book and put it up for

14  sale.  I communicated that to the Kedem Auction House.  They

15  said they would be in touch with the consignor, who they

16  said they could not, under Israeli law, could not disclose

17  his identity to me and would get back to me.

18          I received a Hebrew email on Sunday evening in

19  which they advised me that the consignor says, "No.  We've

20  gotten this legally.  He wants to go ahead with the sale."

21          And as Mr. Lieberman indicated, the Kedem Auction

22  House said they would -- unless there was a court order, and

23  I think what they were anticipating was the possibility of

24  an Israeli court order, although I presented them with Your

25  Honor's order -- unless there was a court order, they would

1      proceed with the sale on October 30th.

2           My concern, quite frankly, is that this volume is

3      going to be gone if they proceed with the sale.  Or even if

4      they are served with letters rogatory, they may simply

5      return the volume to the consignor, and we will never see it

6      again.

7           So I am, quite frankly, in the process of drafting

8      an affidavit to support an application for a temporary

9      restraining order without notice because I think notice was

10     given to Kedem from what I have seen of the meeting or the

11     volume will be gone.  It would either be returned or it

12     would be otherwise disposed of.  And at least -- I believe

13     there is precedent and authority for issuing under these

14     circumstances a temporary restraining order to preserve the

15     status quo and preserve the Court's jurisdiction over this

16     one volume, which we think there is substantial ground to

17     believe was removed from the entire library, that is the

18     subject of the Court's order.

19          And if, in fact, we were to make that application,

20     and the Court were to grant it, then I would be prepared to

21     come to the auction house before the sale, either on Monday

22     or at some time as they are available, to present them with

23     the temporary restraining order and advise them that they

24     could not dispose of that volume without suffering

25     consequences from a Court of the United States.  And I think

1    they would, quite frankly, could be joined as party

2    defendants under Rule 20A.2A because they clearly are

3    holding an item which is the subject of the Court's order,

4    and they are, from my own experience with them, in frequent

5    and constant business activity in the United States and in

6    the District of Columbia.

7            I mean, my affidavit -- or an affidavit that I am

8    in the process of drafting -- would recite that, in fact, I

9    have purchased from the District of Columbia and from -- my

10   wife is from the District of Columbia -- items which have

11   been auctioned by the Kedem Auction House.  And they have

12   not only accepted my bids and accepted -- and told me that I

13   had purchased the items but accepted my payments and sent by

14   Federal Express items which are purchased to my office in

15   the District of Columbia.  Although I don't have any

16   personal knowledge regarding others in the United States, I

17   suspect from what I had seen generally, and I think from

18   what my daughter, who is on the phone, saw in an auction

19   that she was in personally at the Kedem Auction House, there

20   are a substantial number of American bidders and customers

21   who deal with the Kedem Auction House so that there appears

22   to be more than an adequate basis to assume a personal

23   jurisdiction; however, I'm enjoining them as a defendant.

24   Issuing a temporary restraining order, that would preserve

25   the status quo and keep the volume from disappearing, which

1  I think it would do if they were simply letters rogatory.

2          THE COURT:  Well, be that as it may, the only

3  thing I have before me today is letters rogatory.  We'll see

4  what happens when you try to carry that order out.

5          Let me hear from Mr. Swinton next.

6          MR. SWINTON:  Good morning, Your Honor.

7          THE COURT:  Thank you very much for appearing,

8  Mr. Swinton.  I always appreciate having the views of the

9  United States.  I don't necessarily agree with them always,

10  but I always appreciate hearing them.  But these are very

11  delicate matters, I understand, and it's an area with which

12  the Court needs to tread carefully.  I understand that.

13          MR. SWINTON:  Certainly.

14          The only comment I would have today is to affirm

15  what Mr. Lieberman said, that the Government has no position

16  on the request for letters rogatory.

17          THE COURT:  Okay.  Well, I'll grant the request

18  for letters rogatory, and I'll sign the proposed order for

19  the letters rogatory, and then we'll see what develops from

20  that.

21          I think the order, as I looked over it, is

22  appropriate, and I hope that the authorities in Israel will

23  cooperate with this Court's request and that the plaintiffs

24  are able to obtain prompt information that will lead us to

25  further development this week.

1          Is there anything else?

2          MR. LIEBERMAN:  There is, Your Honor.  There are

3   two other items, if I may I approach?

4          THE COURT:  Yes.

5          MR. LIEBERMAN:  First, Your Honor, we think this

6   is a relatively uncontroversial matter.  When we were last

7   in front of the Court, and the Court issued a judgment of

8   sanctions in the amount of $43,700,000, the Court also

9   imposed continuing sanctions of $50,000 a day.  That amount

10  has now, at $50,000 a day, accrued to a total of

11  $83,500,000.  So there would be an additional $39,800,000 in

12  sanctions that have accrued since the Court's judgment of

13  2015.

14          Our intention, with the Court's permission, is to

15  file a very brief motion right at the end of this proceeding

16  asking for entry of an additional interim judgment in that

17  amount for all the same reasons that have been previously

18  discussed with the Court.

19          THE COURT:  All right.

20          MR. LIEBERMAN:  I've also been asked by my

21  client -- and I fully endorse this request -- that the Court

22  consider whether or not $50,000 a day is really the

23  appropriate amount on a going forward basis; that the

24  Russian Federation's flagrant disregard for this Court's

25  rulings as exemplified most recently in the letter from

Ambassador Sergey Kislyak that was attached to the letter
that we sent to the Court in which he was responding to a
letter signed by 100 senators, which is a miracle getting
100 senators to agree to anything.

THE COURT: I saw it.

MR. LIEBERMAN: Essentially he said -- well, not
essentially he said. He said that the collection belongs to
the Russian Federation. It does not belong to Chabad. That
Chabad's arguments and case is frivolous, and that they
intend to proceed as if the collection belongs to the
Russian Federation.

We think that's sort of flagrant disregard at the
highest possible level. The ambassador doesn't make these
written statements to the United States Senate without
getting approval at the highest possible level with support.
If this Court wished, to increase on a going forward basis,
the daily sanction of $50,000 to $100,000 a day.

In the past, it has only been this Court's actions
which have sent a message to the Russian Federation that has
been heard. They have responded to everything that this
Court has done in some way, and this Court is the only
entity affiliated with the United States Government that has
had any effect on Russian Federation behavior.

We would therefore respectfully ask that in
addition to entering the additional judgment of $39,800,000,

1   that the Court increase the daily sanctions on a going

2   forward basis from $50,000 a day to $100,000 a day.  We're

3   prepared to file a motion to that effect.  We didn't know if

4   the Court would like a separate motion with respect to the

5   increase in sanctions or whether that was something that the

6   Court thought could be handled on the basis of request in

7   open court.

8          THE COURT:  Well, I think a motion would be

9   appropriate because I think the United States will want to

10  file a response in light of their prior statement of

11  interest, and I would like them to update their statement of

12  interest in any event now in light of the action of the

13  unanimous Senate and the Russian ambassador's response.  I

14  think the United States needs to reassess.  There have been

15  a lot of developments.  I've been waiting to see those

16  developments, but there have been a lot of developments

17  since the United States' initial expression of interest to

18  me, and I think it would be well to have the United States

19  express their current views.  So I think your new motion

20  would give the opportunity for the United States to express

21  their views.

22          The courts have to tread carefully in this kind of

23  an area.  I don't think a motion to strike the United

24  States' statement of interest is really the appropriate

25  vehicle, but the Court has got to consider the United

States' statement of interest, but the Court does not blindly defer to the United States' statement of interest, and I certainly want to take it carefully into consideration. I think an updated consideration by the new administration of their position of how best to get the Court's order satisfied -- they have a lot of experience and are gaining a lot of experience today in dealing with Russia, and they may have some ideas that could be useful in seeing if there's a way to come to a negotiated settlement of this dispute which needs to be settled.

So far the Court has issued a lot of orders and not had a lot of success in getting the matter resolved to your client's satisfaction or to my satisfaction. I'm certainly hopeful that the new administration might have some new approach that might be successful. I certainly want to give them the opportunity to try their hand at being successful, if they can.

MR. LIEBERMAN: Thank you, Your Honor. Since we're in front of the Court now, and because we know the Court has a busy docket, if I might raise one procedural issue.

THE COURT: Sure.

MR. LIEBERMAN: I imagine there are a number of alternatives that -- alternative events that could occur with the Government's response to Your Honor's request. On

1 one end of the spectrum, the Government could withdraw the

2 statement of interest; on the other end of the spectrum, the

3 Government could reaffirm the statement of interest.  And,

4 of course, there's a wide range of options in the middle.

5    THE COURT:  Right.

6    MR. LIEBERMAN:  Given the Court's concern about

7 the appropriateness of the procedural vehicle that we have

8 used to deal with the statement of interest, and given that

9 the presence of that statement of interest is, as a

10 practical and legal matter given the stay ruling in the

11 Southern District of New York preventing Chabad from

12 pursuing further discovery efforts, we would very much

13 appreciate any suggestions the Court might have as to the

14 most appropriate way to cause the statement of interest

15 should it be reaffirmed, or reaffirmed in a modified

16 fashion, to disappear such that we, if the Court agrees that

17 that's the appropriate thing to happen so that they we may

18 proceed with our discovery efforts.

19    THE COURT:  I think the way to do it will be when

20 you file your motion, I'll set a time frame for when I think

21 the Government should respond, and then they can move to

22 extend that time if they need additional time, and that will

23 have some control over the time frame.

24    MR. LIEBERMAN:  Okay.  So the issue of the

25 statement of interest will likely be resolved in the context

1     of our motion to increase the daily sanctions?

2                THE COURT:  I think so.

3                MR. LIEBERMAN:  Okay.  Thank you, Your Honor.

4           If I could consult with my client to see if there

5     are any other issues that we wish to raise with the Court?

6                THE COURT:  Sure.

7        (Off the record.)

8                MR. LIEBERMAN:  Your Honor, with respect to the

9     point that Mr. Lewin made about a possible motion for an ex

10    parte temporary restraining order in which we would, of

11    course -- also we'll file a motion for leave to amend to add

12    Kedem as a party, we're exploring the issues relating to

13    that, and it's possible that we may file such an application

14    with the Court.  That's something we're considering now.  If

15    we do, it will likely be on a fairly expedited basis.

16               THE COURT:  I'm not in trial this week.  I'll be

17    here all week.

18               MR. LIEBERMAN:  Thank you very much, Your Honor.

19    Those are all the points that we had.

20               THE COURT:  And if such an application comes, I

21    hope, Mr. Swinton, you'll be around this week as well?

22               MR. SWINTON:  Yes, Your Honor.  And I'll let the

23    relevant officials of the State Department know the events

24    in the hearing today.

25               THE COURT:  Because they'll want to tell the

1    Israeli desk, I'm sure.

2              MR. SWINTON:  Yes, I think so.

3              THE COURT:  As well as the Russian desk.

4              Thanks very much, Counsel.

5              (Hearing concluded.)

CERTIFICATE OF REPORTER


        I, Richard D. Ehrlich, a Registered Merit Reporter

and Certified Realtime Reporter, certify that the foregoing

is a true, complete, and accurate transcript of the

proceedings ordered to be transcribed in the above-entitled

case before the Honorable Royce C. Lamberth, in Washington,

D.C., on October 24, 2017.


s/Richard D. Ehrlich  October 25, 2017
_____
Richard D. Ehrlich, Official Court Reporter

MR. LEWIN:
**[5]**  3/6 4/12
4/14 8/14
8/19
MR.
LIEBERMAN:
**[20]**  3/16
4/8 4/17 4/19
5/6 6/24 7/2
7/4 7/16 13/1
13/4 13/19
14/5 16/17
16/22 17/5
17/23 18/2
18/7 18/11
MR. SWINTON:
**[5]**  4/3 12/5
12/12 18/21
19/1
MS. LEWIN:
**[1]**  3/9
THE CLERK:
**[2]**  2/19
3/12
THE COURT:
**[28]**

**$**

$100,000 **[2]**
14/17 15/2
$39,800,000
**[2]**  13/11
14/25
$43,700,000
**[1]**  13/8
$50,000 **[5]**
13/9 13/10
13/22 14/17
15/2
$83,500,000
**[1]**  13/11

**0**

05-CV-1548 **[1]**
3/2

**1**

10 **[1]**  7/14
100 **[2]**  14/3
14/4
1000 **[1]**  2/12
14th **[1]**  2/5
1548 **[2]**  1/7
3/2

1:05-CV-1548
**[1]**  1/7

**2**

20 **[1]**  2/17
20001 **[1]**
1/22
20005 **[1]**  2/6
20006 **[1]**
2/11
2015 **[1]**
13/13
2017 **[3]**  1/17
20/8 20/10
202 **[4]**  1/22
2/7 2/12 2/18
20530 **[1]**
2/18
20A.2A **[1]**
11/2
24 **[2]**  1/17
20/8
25 **[1]**  20/10

**3**

305-7667 **[1]**
2/18
30th **[2]**  4/22
10/1
3269 **[1]**  1/22
333 **[1]**  1/21
354-3269 **[1]**
1/22

**4**

4th **[1]**  2/11

**5**

5:12 p.m **[1]**
4/13

**6**

6040 **[1]**  2/7
607 **[1]**  2/5

**7**

7218 **[1]**  2/17
7667 **[1]**  2/18
783-6040 **[1]**
2/7

**8**

800 **[1]**  2/6
828-1000 **[1]**
2/12

12/14
after **[3]**
4/16 6/9 9/4
again **[1]**
10/6
agents **[1]**
5/20
agree **[2]**
12/9 14/4
agrees **[1]**
17/16
AGUDAS **[4]**
1/5 3/2 3/8
3/11
Aharonov **[2]**
9/6 9/8
ahead **[1]**
9/20
aided **[1]**
1/25
al **[2]**  1/8
3/3
all **[5]**  8/14
13/17 13/19
18/17 18/19
allowed **[1]**
9/5
almost **[1]**
9/12
already **[1]**
5/5
also **[6]**  3/11
3/15 3/21
13/8 13/20
18/11
alternative
**[1]**  16/24
alternatives
**[1]**  16/24
although **[2]**
9/24 11/15
always **[3]**
12/8 12/9
12/10
alyza **[3]**  2/9
2/13 3/10
am **[5]**  3/8
3/12 8/21
10/7 11/7
ambassador **[2]**
14/1 14/13
ambassador's
**[1]**  15/13
amend **[1]**

**A**

A-10 **[1]**  7/14
A-L-Y-Z-A **[1]**
3/10
Abishai **[1]**
9/1
able **[1]**
12/24
about **[5]**
6/13 7/12 8/1
17/6 18/9
above **[1]**
20/6
above-entitled
**[1]**  20/6
accepted **[3]**
11/12 11/12
11/13
accrued **[2]**
13/10 13/12
accurate **[1]**
20/5
acting **[1]**
5/20
action **[1]**
15/12
actions **[1]**
14/18
activity **[1]**
11/5
actually **[2]**
6/4 7/11
add **[3]**  8/18
8/20 18/11
addition **[1]**
14/25
additional **[4]**
13/11 13/16
14/25 17/22
adequate **[1]**
11/22
administration
**[2]**  16/5
16/14
advise **[1]**
10/23
advised **[2]**
8/5 9/19
affidavit **[3]**
10/8 11/7
11/7
affiliated **[1]**
14/22

AMERICA **[2]**
2/14 5/24
American **[1]**
11/20
among **[1]**
7/24
amount **[4]**
13/8 13/9
13/17 13/23
another **[1]**
6/14
anticipating
**[1]**  9/23
antipathy **[1]**
5/23
any **[5]**  11/15
14/23 15/12
17/13 18/5
anybody **[1]**
9/12
anything **[2]**
13/1 14/4
apparently **[1]**
9/3
appearances
**[1]**  3/22
appearing **[3]**
3/4 4/6 12/7
appears **[1]**
11/21
application
**[4]**  10/8
10/19 18/13
18/20
appointment
**[2]**  8/25
8/25
appreciate **[3]**
12/8 12/10
17/13
approach **[3]**
3/14 13/3
16/15
approached **[1]**
6/3
appropriate
**[6]**  12/22
13/23 15/9
15/24 17/14
17/17
appropriatenes
s **[1]**  17/7
approval **[1]**
14/15

**A**

are [19]    3/4
3/4 3/21 5/20
7/5 7/18 10/4
10/22 11/2
11/4 11/14
11/20 12/10
12/24 13/2
16/7 16/23
18/5 18/19
area [2]
12/11 15/23
arguments [1]
14/9
around [1]
18/21
as [20]    3/23
4/23 4/25
6/21 8/21 9/9
9/21 10/22
11/1 11/23
12/2 12/21
13/25 14/10
17/9 17/13
18/12 18/21
19/3 19/3
ask [3]    8/2
8/6 14/24
asked [2]    6/7
13/20
asking [3]
7/20 8/24
13/16
assistance [2]
7/8 7/13
assume [2]
8/13 11/22
attached [1]
14/1
auction [16]
4/21 4/22 5/9
5/10 5/17 6/7
8/24 9/1 9/5
9/14 9/21
10/21 11/11
11/18 11/19
11/21
auctioned [1]
11/11
authorities
[3]    7/12
7/20 12/22
authority [1]
10/13

10/22
Avenue [2]
1/21 2/17

**B**

back [1]    9/17
bad [1]    4/14
basis [6]
11/22 13/23
14/16 15/2
15/6 18/15
be [24]
because [8]
6/13 8/21 9/4
10/9 11/2
15/9 16/19
18/25
been [12]
6/12 6/20
6/23 9/9
11/11 13/17
13/20 14/18
14/20 15/14
15/15 15/16
before [5]
1/15 8/19
10/21 12/3
20/7
behalf [2]
5/20 6/17
behavior [1]
14/23
being [2]    9/9
16/16
believe [8]
4/23 5/7 5/18
7/1 7/1 7/3
10/12 10/17
belong [1]
14/8
belonging [1]
8/1
belongs [3]
4/24 14/7
14/10
best [1]    16/5
bidders [1]
11/20
bids [1]
11/12
blindly [1]
16/2
book [3]    6/1
6/23 9/13

3/25 6/8 7/24
8/1
both [1]    7/5
brief [1]
13/15
bring [1]
6/15
business [1]
11/5
busy [1]
16/20
but's [1]    5/2

**C**

California [2]
3/12 7/11
called [1]
7/13
calls [1]
4/16
came [2]    6/1
7/24
can [4]    3/5
7/23 16/17
17/21
carefully [3]
12/12 15/22
16/3
carry [1]
12/4
case [5]    7/11
7/13 7/19
14/9 20/7
categories [1]
7/21
cause [1]
17/14
certainly [4]
12/13 16/3
16/14 16/15
certainty [1]
5/8
CERTIFICATE
[1]    20/1
Certified [1]
20/4
certify [1]
20/4
CHABAD [17]
1/5 3/2 3/8
3/11 3/19
3/25 4/8 4/20
4/25 5/21
5/23 6/5 6/17

17/11
Chabad's [1]
14/9
Chaim [1]
3/23
CHASIDEI [4]
1/5 3/2 3/8
3/11
circumstances
[1]    10/14
Civil [2]
2/16 3/1
clear [1]    9/6
clearly [1]
11/2
client [2]
13/21 18/4
client's [1]
16/13
colleague [1]
3/20
collection [4]
4/24 5/21
14/7 14/10
COLUMBIA [5]
1/1 11/6 11/9
11/10 11/15
come [2]
10/21 16/9
comes [1]
18/20
comment [1]
12/14
communicated
[1]    9/14
communications
[2]    6/12
8/11
company [1]
4/21
complete [2]
9/3 20/5
complicated
[1]    3/25
computer [1]
1/25
computer-aided
[1]    1/25
concern [2]
10/2 17/6
concluded [3]
8/17 9/4 19/5
consent [1]
5/16

[1]    10/25
consider [2]
13/22 15/25
consideration
[2]    16/4
16/4
considering
[1]    18/14
consignor [3]
9/15 9/19
10/5
consistent [1]
7/22
constant [1]
11/5
Constitution
[1]    1/21
consult [1]
18/4
context [1]
17/25
continue [1]
6/18
continuing [1]
13/9
control [1]
17/23
Convention [3]
6/21 7/6 7/6
cooperate [1]
12/23
copies [2]
6/6 8/23
copy [2]    5/4
7/14
could [12]
3/13 9/13
9/16 9/16
10/24 11/1
15/6 16/8
16/24 17/1
17/3 18/4
counsel [5]
3/4 3/13 3/20
8/4 19/4
country [1]
7/7
course [2]
17/4 18/11
court [42]
Court's [13]
6/6 6/14 8/23
10/15 10/18
11/3 12/23

**C**

Court's... [6]
13/12 13/14
13/24 14/18
16/6 17/6
courts [2]
7/7 15/22
CRR [1]    1/20
Cunin [3]
3/22 3/23
3/23
current [1]
15/19
currently [2]
3/8 3/12
customers [1]
11/20
CV [2]    1/7
3/2

**D**

D.C [5]    1/22
2/6 2/11 2/18
20/8
daily [3]
14/17 15/1
18/1
Dan [1]    3/20
DANIEL [1]
2/4
daughter [1]
11/18
day [6]    13/9
13/10 13/22
14/17 15/2
15/2
deal [2]
11/21 17/8
dealing [1]
16/7
declaration
[1]    5/3
declarations
[2]    5/1 5/7
defendant [1]
11/23
defendants [4]
1/9 8/10
8/12 11/2
defer [1]
16/2
degree [1]
5/8
delicate [1]

DEPARTMENT [2]
2/16 18/23
deposition [1]
7/23
desk [2]    19/1
19/3
development
[2]    8/22
12/25
developments
[3]    15/15
15/16 15/16
develops [1]
12/19
did [3]    8/18
8/18 8/25
didn't [1]
15/3
difference [1]
4/17
direct [2]
7/21 7/22
directly [2]
7/18 8/6
disappear [1]
17/16
disappearing
[1]    11/25
disclose [1]
9/16
discovery [3]
5/25 17/12
17/18
discussed [1]
13/18
displayable
[1]    6/23
dispose [1]
10/24
disposed [1]
10/12
dispute [1]
16/10
disregard [3]
5/22 13/24
14/12
disrespect [1]
5/23
district [11]
1/1 1/1 1/16
1/21 7/7 7/10
11/6 11/9
11/10 11/15
17/11

2/16
dmccalum [1]
2/8
do [4]    8/12
12/1 17/19
18/15
DOBA [1]    2/9
docket [1]
16/20
documents [3]
7/18 7/22
9/10
does [2]    14/8
16/1
doesn't [1]
14/13
don't [6]
4/17 5/4 5/12
11/15 12/9
15/23
done [3]    7/9
7/16 14/21
doubt [1]
4/23
drafting [2]
10/7 11/8

**E**

effect [2]
14/23 15/3
effort [1]
3/25
efforts [2]
17/12 17/18
Ehrlich [4]
1/20 20/3
20/10 20/11
either [6]
5/14 5/20
5/21 8/13
10/11 10/21
else [2]    7/25
13/1
email [3]
6/16 6/17
9/18
emailed [1]
8/24
emergency [2]
6/10 8/9
end [4]    4/22
13/15 17/1
17/2
endorse [1]

enjoining [1]
11/23
entering [1]
14/25
entire [2]
9/11 10/17
entitled [1]
20/6
entity [1]
14/22
entry [1]
13/16
Ernst [1]
3/18
essentially
[2]    14/6
14/7
established
[1]    5/8
et [2]    1/8
3/3
even [1]    10/3
evening [1]
9/18
event [1]
15/12
events [2]
16/24 18/23
everything [1]
14/20
evidence [2]
5/14 5/19
ex [1]    18/9
exactly [1]
8/16
examine [1]
9/6
examined [1]
9/3
executing [1]
7/12
exemplified
[1]    13/25
exhibition [1]
9/5
expedited [1]
18/15
experience [3]
11/4 16/6
16/7
explained [1]
6/6
exploring [1]
18/12

11/14 15/19
15/20
expression [1]
15/17
extend [1]
17/22
extra [1]    5/4

**F**

fact [3]    7/10
10/19 11/8
facts [1]    6/2
fairly [1]
18/15
familiar [1]
9/8
family [1]
3/23
far [1]    16/11
fashion [2]
6/4 17/16
Federal [1]
11/14
FEDERATION [6]
1/8 3/3 14/8
14/11 14/19
14/23
Federation's
[1]    13/24
few [1]    9/7
FIGG [2]    2/5
3/18
file [6]
13/15 15/3
15/10 17/20
18/11 18/13
filed [1]
6/10
First [1]
13/5
flagrant [2]
13/24 14/12
Floor [1]
2/11
foregoing [1]
20/4
forward [3]
13/23 14/16
15/2
frame [2]
17/20 17/23
Francisco [1]
3/12
frankly [4]

**F**

**frankly... [4]**
9/12 10/2
10/7 11/1
**frequent [1]**
11/4
**friendly [1]**
6/4
**frivolous [1]**
14/9
**front [2]**
13/7 16/19
**fully [1]**
13/21
**further [2]**
12/25 17/12

**G**

**gaining [1]**
16/7
**Galer [1]**   9/1
**generally [1]**
11/17
**get [4]**   4/16
5/25 9/17
16/5
**getting [3]**
14/3 14/15
16/12
**give [2]**
15/20 16/16
**given [4]**
10/10 17/6
17/8 17/10
**go [2]**   7/12
9/20
**going [4]**
10/3 13/23
14/16 15/1
**gone [2]**   10/3
10/11
**good [8]**   3/1
3/17 4/1 4/4
4/15 4/18
4/19 12/6
**got [3]**   5/10
5/12 15/25
**gotten [2]**
9/13 9/20
**Government [9]**
3/16 8/4 8/6
8/19 12/15
14/22 17/1
17/3 17/21

18/17
**[1]**   16/25
**grant [3]**   7/8
10/20 12/17
**ground [1]**
10/16

**H**

**had [6]**   8/25
11/13 11/17
14/23 16/12
18/19
**Hague [3]**
6/21 7/6 7/6
**hand [1]**
16/16
**handled [1]**
15/6
**handling [1]**
3/24
**handwriting**
**[2]**   9/8 9/9
**handwritten**
**[2]**   9/7 9/7
**happen [1]**
17/17
**happens [1]**
12/4
**has [15]**   4/24
6/23 7/1 7/1
8/5 8/16
12/15 13/10
14/18 14/19
14/21 14/22
15/25 16/11
16/20
**have [34]**
**having [2]**
8/22 12/8
**he [6]**   8/18
9/20 14/2
14/6 14/7
14/7
**hear [2]**   8/19
12/5
**heard [1]**
14/20
**hearing [4]**
1/14 12/10
18/24 19/5
**heart [1]**
7/19
**Hebrew [1]**
9/18
**here [5]**   3/15

18/17
**high [1]**   5/8
**highest [2]**
14/13 14/15
**him [1]**   8/6
**his [1]**   9/17
**holding [1]**
11/3
**holy [1]**   3/25
**Honor [20]**
3/16 3/17 4/4
4/10 4/18 5/4
6/22 7/1 7/3
8/6 8/15 8/20
12/6 13/2
13/5 16/18
18/3 18/8
18/18 18/22
**Honor's [2]**
9/25 16/25
**HONORABLE [2]**
1/15 20/7
**hope [1]**
12/22 18/21
**hopeful [1]**
16/14
**hour [1]**   4/17
**house [11]**
4/21 5/11
5/17 8/24 9/1
9/14 9/22
10/21 11/11
11/19 11/21
**how [5]**   5/12
6/1 7/12 7/24
16/5
**however [1]**
11/23

**I**

**I'll [6]**   4/9
12/17 12/18
17/20 18/16
18/22
**I'm [9]**   4/16
8/5 8/15 8/15
8/16 11/23
16/13 18/16
19/1
**I've [3]**   7/16
13/20 15/15
**ideas [1]**
16/8
**identified [1]**
9/9

3/5 3/14
**identity [1]**
9/17
**imagine [1]**
16/23
**immediately**
**[1]**   6/9
**imposed [1]**
13/9
**increase [4]**
14/16 15/1
15/5 18/1
**indicated [2]**
8/21 9/21
**individuals**
**[1]**   3/21
**inference [2]**
5/18 5/19
**information**
**[1]**   12/23
**initial [1]**
15/17
**intend [2]**
6/17 14/10
**intention [1]**
13/14
**interest [12]**
15/11 15/12
15/17 15/24
16/1 16/2
17/2 17/3
17/8 17/9
17/14 17/25
**interim [1]**
13/16
**is [44]**
**Israel [8]**
3/9 4/21 6/4
6/21 7/5 7/10
7/12 12/22
**Israeli [6]**
7/12 7/20
7/22 9/16
9/24 19/1
**issuance [1]**
6/10
**issue [5]**   6/6
6/14 8/3
16/21 17/24
**issued [2]**
13/7 16/11
**issues [2]**
18/5 18/12
**issuing [2]**

it [29]
**it's [4]**   4/16
5/2 12/11
18/13
**item [1]**   11/3
**items [4]**
11/10 11/13
11/14 13/3
**its [2]**   5/20
5/22
**itself [1]**
9/7

**J**

**Jerusalem [2]**
3/9 8/21
**joined [1]**
11/1
**JUDGE [1]**
1/16
**judgment [4]**
13/7 13/12
13/16 14/25
**judicial [1]**
7/8
**jurisdiction**
**[2]**   10/15
11/23
**JUSTICE [1]**
2/16

**K**

**Kedem [21]**
**keep [2]**   6/7
11/25
**kind [1]**
15/22
**Kislyak [1]**
14/1
**know [9]**   3/22
3/23 5/4 5/12
5/25 6/2 15/3
16/19 18/23
**knowledge [2]**
5/16 11/16
**knows [1]**
6/22

**L**

**L-E-W-I-N [2]**
3/7 3/11
**LAMBERTH [2]**
1/15 20/7
**last [3]**   6/3

**L**

last... [2]
8/22 13/6
later [1]
6/13
law [2]   7/22
9/16
lead [1]
12/24
learned [3]
4/20 8/22
8/22
least [1]
10/12
leave [1]
18/11
lecturn [1]
3/14
legal [1]
17/10
legally [1]
9/20
legitimately
[1]   9/13
let [2]   12/5
18/22
letter [4]
7/17 13/25
14/1 14/3
letters [11]
5/13 6/11 7/8
8/3 8/7 10/4
12/1 12/3
12/16 12/18
12/19
level [2]
14/13 14/15
Levin [3]   5/2
5/2 5/3
LEWIN [12]
2/9 2/9 2/10
2/10 3/7 3/10
4/12 6/4 6/13
6/15 6/16
18/9
lewinlewin.com
[2]   2/12
2/13
library [5]
4/25 5/9 5/10
5/15 10/17
LIEBERMAN [7]
2/4 3/18 4/9
8/16 8/21

light [2]
15/10 15/12
like [3]   8/20
15/4 15/11
likely [2]
17/25 18/15
LLP [1]   2/10
long [1]   3/24
looked [1]
12/21
lot [6]   15/15
15/16 16/6
16/7 16/11
16/12

**M**

made [1]   18/9
make [2]
10/19 14/13
making [1]
8/17
Manbeck [1]
3/18
many [1]   7/16
Massachusetts
[1]   2/17
matter [5]
3/1 8/10 13/6
16/12 17/10
matters [1]
12/11
may [7]   7/25
10/4 12/2
13/3 16/8
17/17 18/13
McCALLUM [2]
2/4 3/21
me [9]   3/20
9/5 9/17 9/17
9/19 11/12
12/3 12/5
15/18
mean [1]   11/7
meeting [3]
8/25 9/4
10/10
Merit [1]
20/3
message [1]
14/19
MICHAEL [1]
2/15
middle [1]
17/4

4/16
might [5]   8/2
16/14 16/15
16/20 17/13
miracle [1]
14/3
modified [1]
17/15
Monday [1]
10/21
month [2]
4/22 4/23
more [2]   5/17
11/22
morning [8]
3/1 3/17 4/1
4/4 4/18 4/19
5/3 12/6
most [2]
13/25 17/14
motion [12]
6/10 8/9
13/15 15/3
15/4 15/8
15/19 15/23
17/20 18/1
18/9 18/11
MOTIONS [1]
1/14
move [1]
17/21
Mr [8]   8/5
8/14 8/16
8/21 9/21
12/5 12/15
18/21
Mr. [9]   4/7
4/12 6/4 6/13
6/15 6/16 8/5
12/8 18/9
Mr. Lewin [6]
4/12 6/4 6/13
6/15 6/16
18/9
Mr. Swinton
[3]   4/7 8/5
12/8
much [4]   12/7
17/12 18/18
19/4
my [12]   3/20
10/2 11/4
11/7 11/9
11/12 11/13

13/20 16/13
18/4
myself [1]
7/16

**N**

name [1]   5/2
narrowly [1]
7/19
nat [1]   2/12
NATHAN [5]
2/9 2/15 3/7
3/15 4/4
nathan.m.swint
on [1]   2/19
necessarily
[1]   12/9
need [1]
17/22
needs [4]   5/4
12/12 15/14
16/10
negotiated [1]
16/9
Networks [1]
7/14
never [1]
10/5
new [5]   15/19
16/4 16/14
16/15 17/11
next [1]   12/5
night [1]
6/16
no [7]   4/23
8/7 8/11 8/13
9/12 9/19
12/15
Northern [1]
7/10
not [15]   4/14
8/12 8/15
8/16 8/16
9/16 9/16
10/24 11/12
13/22 14/6
14/8 16/1
16/12 18/16
notes [1]   9/7
notice [2]
10/9 10/9
now [7]   4/13
5/12 6/3
13/10 15/12

number [2]
11/20 16/23
NW [4]   1/21
2/5 2/10 2/17

**O**

obtain [1]
12/24
occur [1]
16/24
OCTOBER [4]
1/17 10/1
20/8 20/10
October 30th
[1]   10/1
off [3]   5/20
5/21 18/7
offering [1]
4/21
office [1]
11/14
Official [2]
1/20 20/11
officials [1]
18/23
Okay [11]   4/2
4/6 4/8 4/11
4/14 7/4 7/17
8/14 12/17
17/24 18/3
one [7]   5/3
5/14 9/2 9/10
10/16 16/20
17/1
only [5]
11/12 12/2
12/14 14/18
14/21
open [1]   15/7
opportunity
[2]   15/20
16/16
opposition [1]
8/13
options [1]
17/4
order [16]
6/18 9/22
9/24 9/25
9/25 10/9
10/14 10/18
10/23 11/3
11/24 12/4
12/18 12/21

**order... [2]**
16/6 18/10
**ordered [1]**
20/6
**orders [5]**
5/22 6/7 8/10
8/23 16/11
**original [1]**
8/17
**other [5]**
7/24 8/1 13/3
17/2 18/5
**others [1]**
11/16
**otherwise [1]**
10/12
**our [6]** 8/9
9/2 9/4 13/14
17/18 18/1
**out [1]** 12/4
**outlines [1]**
7/11
**over [5]** 4/12
6/5 10/15
12/21 17/23
**own [1]** 11/4

**P**

**p.m [1]** 4/13
**pages [1]**
9/10
**part [4]** 4/24
4/25 5/9 5/13
**parte [1]**
18/10
**party [2]**
11/1 18/12
**past [2]** 3/22
14/18
**payments [1]**
11/13
**people [1]**
4/16
**permission [2]**
6/15 13/14
**personal [2]**
11/16 11/22
**personally [1]**
11/19
**phone [1]**
11/18
**Physically [1]**
6/25

6/20
**Plaintiff [2]**
1/6 2/3
**plaintiffs [1]**
12/23
**please [2]**
3/5 3/13
**point [1]**
18/9
**points [1]**
18/19
**position [3]**
8/7 12/15
16/5
**possession [3]**
6/1 7/25 8/2
**possibility**
**[1]** 9/23
**possible [4]**
14/13 14/15
18/9 18/13
**practical [1]**
17/10
**precedent [1]**
10/13
**prepared [2]**
10/20 15/3
**presence [1]**
17/9
**present [3]**
3/21 6/15
10/22
**presentation**
**[1]** 8/17
**presented [1]**
9/24
**preserve [3]**
10/14 10/15
11/24
**pretty [1]**
4/15
**preventing [1]**
17/11
**previously [1]**
13/17
**prior [3]** 6/6
8/10 15/10
**procedural [2]**
16/20 17/7
**proceed [4]**
10/1 10/3
14/10 17/18
**proceeded [1]**
8/23

13/15
**proceedings**
**[2]** 1/24
20/6
**process [6]**
5/21 6/18
6/19 7/11
10/7 11/8
**produced [1]**
1/25
**production [1]**
7/21
**prompt [1]**
12/24
**pronounced [1]**
5/2
**property [1]**
7/19
**proposed [1]**
12/18
**provide [1]**
7/23
**provided [3]**
6/6 7/25 8/10
**provides [1]**
7/7
**purchased [3]**
11/9 11/13
11/14
**purpose [1]**
5/13
**pursuing [1]**
17/12
**put [1]** 9/13

**Q**

**quite [4]**
9/12 10/2
10/7 11/1
**quo [2]** 10/15
11/25

**R**

**rabbi [6]**
3/22 3/22
3/24 5/1 9/5
9/9
**Radware [1]**
7/13
**raise [2]**
16/20 18/5
**range [1]**
17/4
**reaffirm [1]**

**reaffirmed [2]**
17/15 17/15
**realize [1]**
4/17
**really [2]**
13/22 15/24
**Realtime [1]**
20/4
**reasons [1]**
13/17
**reassess [1]**
15/14
**receive [1]**
6/18
**received [2]**
8/11 9/18
**recent [1]**
7/10
**recently [2]**
4/20 13/25
**recite [1]**
11/8
**record [3]**
3/6 3/14 18/7
**recover [1]**
3/25
**regard [1]**
6/14
**regarding [3]**
6/1 7/24
11/16
**Registered [1]**
20/3
**regularly [1]**
7/9
**related [1]**
7/18
**relating [2]**
8/2 18/12
**relatively [1]**
13/6
**relevant [1]**
18/23
**removed [1]**
10/17
**reported [1]**
1/24
**Reporter [6]**
1/19 1/20
20/1 20/3
20/4 20/11
**representative**
**[2]** 6/5 7/23
**representing**
**[3]** 3/8 3/11

**request [11]**
5/13 7/13
7/17 8/8 8/13
12/16 12/17
12/23 13/21
15/6 16/25
**requests [2]**
7/8 7/20
**resolved [2]**
16/12 17/25
**respect [3]**
8/7 15/4 18/8
**respectfully**
**[1]** 14/24
**respond [1]**
17/21
**responded [1]**
14/20
**responding [1]**
14/2
**response [3]**
15/10 15/13
16/25
**restraining**
**[5]** 10/9
10/14 10/23
11/24 18/10
**return [1]**
10/5
**returned [1]**
10/11
**rfem.com [2]**
2/7 2/8
**Richard [4]**
1/20 20/3
20/10 20/11
**right [5]**
4/13 8/14
13/15 13/19
17/5
**RMR [1]** 1/20
**rogatory [11]**
5/13 6/11 7/8
8/3 8/7 10/4
12/1 12/3
12/16 12/18
12/19
**Room [1]** 2/17
**ROTHWELL [2]**
2/5 3/18
**routinely [1]**
7/7
**ROYCE [2]**
1/15 20/7

**R**

Rule [1]    11/2

ruled [1]
 4/24

ruling [1]
 17/10

rulings [1]
 13/25

Russia [2]
 5/19 16/8

RUSSIAN [13]
 1/8 3/3 5/10
 5/15 8/9 8/11
 13/24 14/8
 14/11 14/19
 14/23 15/13
 19/3

**S**

s/Richard [1]
 20/10

safekeeping
 [1]    6/8

said [9]    6/17
 8/1 9/15 9/16
 9/22 12/15
 14/6 14/7
 14/7

sale [6]    6/18
 9/14 9/20
 10/1 10/3
 10/21

sales [1]
 6/19

same [1]
 13/17

San [1]    3/12

sanction [1]
 14/17

sanctions [6]
 13/8 13/9
 13/12 15/1
 15/5 18/1

satisfaction
 [2]    16/13
 16/13

satisfied [1]
 16/6

saw [3]    5/6
 11/18 14/5

says [1]    9/19

seals [1]
 9/10

see [6]    8/12

12/19 15/15
18/4

seeing [1]
 16/9

seeks [1]
 7/18

seen [5]    5/5
 6/24 6/25
 10/10 11/17

selling [1]
 5/21

Senate [2]
 14/14 15/13

senators [2]
 14/3 14/4

sent [4]    6/16
 11/13 14/2
 14/19

separate [1]
 15/4

Sergey [1]
 14/1

served [2]
 8/9 10/4

set [3]    9/3
 9/11 17/20

settled [1]
 16/10

settlement [1]
 16/9

seven [1]
 4/17

seven-hour [1]
 4/17

several [1]
 9/10

she [1]    11/19

should [2]
 17/15 17/21

show [3]    5/22
 5/22 5/23

sign [1]
 12/18

signatories
 [1]    7/6

signatory [1]
 6/21

signed [1]
 14/3

simply [2]
 10/4 12/1

since [4]
 8/15 13/12
 15/17 16/18

5/17

six [1]    7/21

slieberman [1]
 2/7

so [13]    6/20
 7/2 7/17 8/12
 10/7 11/21
 13/11 15/19
 16/11 17/17
 17/24 18/2
 19/2

sold [1]    5/20

some [7]    5/18
 9/7 10/22
 14/21 16/8
 16/15 17/23

somehow [2]
 5/9 5/16

something [3]
 7/9 15/5
 18/14

Sometimes [1]
 4/15

sort [1]
 14/12

Southern [1]
 17/11

spectrum [2]
 17/1 17/2

spelled [1]
 5/2

spirited [1]
 5/16

spite [1]
 5/23

spoken [1]
 8/4

start [2]    4/8
 4/9

State [5]
 5/10 5/15
 6/20 7/9
 18/23

statement [11]
 15/10 15/11
 15/24 16/1
 16/2 17/2
 17/3 17/8
 17/9 17/14
 17/25

statements [1]
 14/14

STATES [18]
 1/1 1/5 1/16

4/3 5/24
 10/25 11/5
 11/16 12/9
 14/14 14/22
 15/9 15/14
 15/18 15/20

States' [4]
 15/15 15/24
 16/1 16/2

status [2]
 10/15 11/25

stay [1]
 17/10

stenotype [1]
 1/24

Steve [2]
 3/17 4/9

STEVEN [1]
 2/4

stolen [1]
 5/15

stop [2]    6/7
 6/19

Street [2]
 2/5 2/10

strike [1]
 15/23

strongly [1]
 5/19

subject [2]
 10/18 11/3

submitted [1]
 5/1

subsequent [1]
 6/12

substantial
 [2]    10/16
 11/20

success [1]
 16/12

successful [2]
 16/15 16/17

such [3]
 17/16 18/13
 18/20

suffering [1]
 10/24

suggestions
 [1]    17/13

suggests [1]
 5/14

Suite [1]    2/6

Sunday [2]
 6/16 9/18

supplemental
 [1]    5/3

support [2]
 10/8 14/15

supporting [1]
 5/18

supports [1]
 5/19

sure [6]    8/5
 8/15 8/16
 16/22 18/6
 19/1

suspect [1]
 11/17

SWINTON [10]
 2/15 3/15 4/5
 4/7 8/5 8/5
 8/14 12/5
 12/8 18/21

**T**

table [1]
 3/20

tailored [1]
 7/20

take [1]    16/3

takes [1]    8/7

talk [1]    6/13

tasked [1]
 3/23

telephone [2]
 2/9 2/9

telephonically
 [1]    3/5

tell [1]
 18/25

temporary [5]
 10/8 10/14
 10/23 11/24
 18/10

testimony [2]
 7/18 7/24

than [1]
 11/22

Thank [5]    4/6
 12/7 16/18
 18/3 18/18

Thanks [1]
 19/4

that [83]

that's [7]
 4/15 5/12 7/9
 7/13 14/12
 17/17 18/14

their [12]

**T**

their... [12]
  5/16 5/22 6/1
  6/17 7/25 8/2
  15/10 15/11
  15/19 15/21
  16/5 16/16
them [12]
  7/25 8/12
  8/24 9/24
  10/22 10/23
  11/4 11/23
  12/9 12/10
  15/11 16/16
themselves [1]
  9/11
then [3]
  10/20 12/19
  17/21
there [22]
there's [6]
  4/17 6/13
  7/10 9/12
  16/9 17/4
therefore [1]
  14/24
these [4]
  7/21 10/13
  12/10 14/13
they [32]
they'll [1]
  18/25
They're [1]
  7/19
they've [1]
  6/20
thing [2]
  12/3 17/17
things [1]
  7/24
think [20]
  9/23 10/9
  10/16 10/25
  11/17 12/1
  12/21 13/5
  14/12 15/8
  15/9 15/14
  15/18 15/19
  15/23 16/4
  17/19 17/20
  18/2 19/2
this [33]
those [3]   5/7
  15/15 18/19

15/6
Thursday [1]
  6/3
time [7]   4/12
  9/3 10/22
  17/20 17/22
  17/22 17/23
today [6]
  3/20 8/12
  12/3 12/14
  16/7 18/24
told [1]
  11/12
too [1]   4/14
total [1]
  13/10
touch [1]
  9/15
towards [1]
  5/23
transcribed
  [1]   20/6
transcript [3]
  1/14 1/25
  20/5
transcription
  [1]   1/25
tread [2]
  12/12 15/22
trial [1]
  18/16
true [1]   20/5
try [2]   12/4
  16/16
two [5]   3/4
  3/21 5/1 5/17
  13/3

**U**

U.S [2]   2/16
  7/5
unanimous [1]
  15/13
uncontroversia
l [1]   13/6
uncooperative
  [2]   6/9 6/20
under [3]
  9/16 10/13
  11/2
understand [2]
  12/11 12/12
UNITED [22]
unless [3]

9/25
until [1]
  5/25
up [3]   5/9
  6/15 9/13
update [1]
  15/11
updated [1]
  16/4
us [2]   8/5
  12/24
usdoj.gov [1]
  2/19
used [2]   9/12
  17/8
useful [1]
  16/8

**V**

vehicle [2]
  15/25 17/7
very [7]   3/24
  12/7 12/10
  13/15 17/12
  18/18 19/4
via [2]   2/9
  2/9
view [1]   9/2
views [3]
  12/8 15/19
  15/21
visit [1]
  6/10
volume [12]
  4/23 5/8 5/15
  9/2 9/6 9/11
  10/2 10/5
  10/11 10/16
  10/24 11/25
volumes [1]
  9/11

**W**

waiting [1]
  15/15
want [6]   6/15
  8/18 15/9
  16/3 16/16
  18/25
wants [2]   4/8
  9/20
was [13]   3/23
  5/15 6/4 6/9
  9/22 9/23

10/17 11/19
  14/1 14/2
  15/5
Washington [5]
  1/22 2/6
  2/11 2/18
  20/7
way [5]   9/12
  14/21 16/9
  17/14 17/19
we [37]
we'll [3]
  12/3 12/19
  18/11
we're [5]
  7/20 15/2
  16/19 18/12
  18/14
we've [3]   8/4
  8/11 9/19
week [6]   6/3
  8/22 12/25
  18/16 18/17
  18/21
well [8]   3/22
  12/2 12/17
  14/6 15/8
  15/18 18/21
  19/3
went [1]   6/5
were [5]   9/23
  10/19 10/20
  12/1 13/6
what [11]
  4/12 6/1 7/25
  8/1 9/23
  10/10 11/17
  11/18 12/4
  12/15 12/19
what's [1]
  9/8
when [5]   4/15
  12/4 13/6
  17/19 17/20
whether [3]
  8/16 13/22
  15/5
which [15]
  4/23 7/11 9/2
  9/19 10/16
  11/3 11/10
  11/14 11/25
  12/11 14/2
  14/3 14/19

who [11]   3/4
  3/21 4/2 4/8
  6/4 7/23 7/25
  9/8 9/15
  11/18 11/21
whole [1]
  7/11
wide [1]   17/4
wife [1]
  11/10
will [12]
  6/13 6/15 8/6
  10/5 10/11
  12/22 12/24
  15/9 17/19
  17/22 17/25
  18/15
wish [1]   18/5
wished [1]
  14/16
wishes [1]
  7/15
withdraw [1]
  17/1
without [4]
  5/15 10/9
  10/24 14/14
won't [1]
  5/25
would [22]
written [1]
  14/14

**Y**

Yes [5]   3/7
  8/20 13/4
  18/22 19/2
York [1]
  17/11
Yossi [1]
  3/22
you [11]   3/5
  3/21 3/23 4/6
  8/18 12/4
  12/7 16/18
  17/20 18/3
  18/18
you'll [1]
  18/21
you've [1]
  5/5
your [25]
yourselves [2]
  3/5 3/14

# EXHIBIT B

**(Declaration of Daniel McCallum In Support of Plaintiff's Motion (1) to Lift the Stay of Discovery and (2) to Transfer the Subpoena Dispute to the District Court for the District of Columbia, or in the Alternative, to Compel Compliance)**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

)
AGUDAS CHASIDEI CHABAD                    )
OF UNITED STATES,                         )
                                          )
                    *Plaintiff,*          )
                                          )
            v.                            )     Case No. 1:05-cv-01548-RCL
                                          )
RUSSIAN FEDERATION; RUSSIAN               )
MINISTRY OF CULTURE AND MASS              )
COMMUNICATION; RUSSIAN STATE              )
LIBRARY; and RUSSIAN STATE                )
MILITARY ARCHIVE,                         )
                                          )
                    *Defendants.*         )
                                          )
_____)

**PLAINTIFF'S MOTION FOR ADDITIONAL
INTERIM JUDGMENT OF ACCRUED SANCTIONS**

Plaintiff Agudas Chasidei Chabad of United States ("Chabad") respectfully submits this

Motion for an Additional Interim Judgment of Accrued Sanctions in the amount of $46,800,000,

which is the total amount sanctions that have accrued since the Court's entry of its interim

judgment on September 10, 2015 (Dkt. No. 144).

On September 10, 2015, this Court entered an Order awarding Chabad accrued sanctions

of $43,700,000. (Dkt. 144, at 1). The Court also specified that "until defendants comply with

this Court's July 30, 2010 Order, ECF No. 80, monetary sanctions will continue to accrue

pursuant to this Court's January 16, 2013 Order, ECF No. 115, which otherwise remains in full

force and effect." *Id.* at 2. Finally, the Court ordered that "until such time as defendants comply

with this Court's July 30, 2010 Order, ECF No. 80, the Clerk of this Court may, upon application

of plaintiff, enter an additional judgment pursuant [to] the following schedule reflecting additional sanctions:"[1]

| SCHEDULE OF ADDITIONAL JUDGMENTS | |
|---|---|
| **Date of Judgment** | **Amount of Additional Judgment** |
| November 18, 2015 | $4,500,000 |
| February 16, 2016 | $4,500,000 |
| May 16, 2016 | $4,500,000 |
| August 14, 2016 | $4,500,000 |
| November 12, 2016 | $4,500,000 |
| February 10, 2017 | $4,500,000 |
| May 11, 2017 | $4,500,000 |
| August 9, 2017 | $4,500,000 |

*Id.* This Court has not entered an order for additional judgment since the September 10, 2015 Order. Accordingly, Chabad now submits this motion for entry of judgment in the amount of all sanctions accrued since the Court's September 10, 2015 interim judgment.

As of March 13, 2018, the total accrued judgment pursuant to this Court's Sanctions Order (Dkt. No. 115) is $90,500,000. The total amount of additional accrued sanctions since the Court's September 10, 2015 interim judgment for accrued sanctions is therefore $46,800,000. Accordingly, pursuant to this Court's Sanctions Order (Dkt. No. 115) and Monetary Judgment Order (Dkt. No. 144), Chabad respectfully requests that the Court enter an additional judgment in the amount of $46,800,000. A proposed order is attached with this motion.

---

[1] Chabad understands that a new motion is necessary before the Court will issue a judgment reflecting the additional accrued sanctions.

Respectfully submitted,

Dated: March 13, 2018      By:  */s/ Steven Lieberman*

      Steven Lieberman (D.C. Bar No. 439783)
      Robert Parker (D.C. Bar No. 404066)
      Daniel McCallum (D.C. Bar No. 1006938)
      Rothwell, Figg, Ernst & Manbeck, P.C.
      607 14th St., N.W., Suite 800
      Washington, DC 20005
      Phone: 202-783-6040
      Facsimile: 202-783-6031
      E-mails: slieberman@rfem.com
              rparker@rfem.com
              dmccallum@rfem.com

      Nathan Lewin (D.C. Bar No. 38299)
      Alyza Lewin (D.C. Bar No. 445506)
      LEWIN & LEWIN, LLP
      888 17th St., N.W., 4th Floor
      Washington, DC 20006
      Phone: 202-828-1000
      Facsimile: 202-828-0909
      E-mails: nat@lewinlewin.com
              alyza@lewinlewin.com

      *Counsel for Agudas Chasidei Chabad of United States*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2018, a true and correct copy of the

foregoing **PLAINTIFF'S MOTION FOR ADDITIONAL INTERIM JUDGMENT OF**

**ACCRUED SANCTIONS** was served by electronic mail on the following counsel of record for

the United States:

Nathan Michael Swinton
U.S. Department Of Justice
Civil Division
20 Massachusetts Avenue, N.W.
Room 7218
Washington, DC 20530
Email: nathan.m.swinton@usdoj.gov

I further certify that on this 13th day of March, 2018, a true and correct copy of the

foregoing **PLAINTIFF'S MOTION FOR ADDITIONAL INTERIM JUDGMENT OF**

**ACCRUED SANCTIONS** was served by First-Class International Mail, through the U.S. Postal

Service, on the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Alexander Konovalov, Minister
14 Zhitnaya
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Vladimir Medinsky, Minister
7/6 Bldg. 1/2, Maly Gnezdnikovsky Perelok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Victor V. Federov, General Director
3/5, Vozdivhenka Street
Moscow, Russia 119019

*/s/ Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Coordinator
Rothwell, Figg, Ernst & Manbeck, P.C.

# EXHIBIT C

**(Declaration of Daniel McCallum In Support of Plaintiff's Motion (1) to Lift the Stay of Discovery and (2) to Transfer the Subpoena Dispute to the District Court for the District of Columbia, or in the Alternative, to Compel Compliance)**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 1:05-cv-01548-RCL |
| RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION; RUSSIAN STATE LIBRARY; and RUSSIAN STATE MILITARY ARCHIVE, | ) ) ) ) ) ) | |
| *Defendants.* | ) ) | |

_____

**PLAINTIFF'S MOTION FOR INCREASED SANCTIONS AND FOR ENTRY OF A PROTECTIVE ORDER REGARDING POST-JUDGMENT DISCOVERY**

# TABLE OF CONTENTS

I.     BACKGROUND ...................................................................................................1

     A.     The Court Has Twice Considered the Government's Position Regarding Sanctions, and Has Twice Concluded that It Has Authority to Impose Sanctions on Russia ...................................................................................2

     B.     The Government's Statement of Interest Has Prevented Post-Judgment Discovery Pursuant to the Court's Sanctions Decisions.........................3

     C.     The Legislative Branch's Explicit Support for Chabad .........................5

     D.     This Court Issues Letters Rogatory...........................................................6

II.     ARGUMENT ......................................................................................................7

     A.     Increased Sanctions are Necessary to Press Russia's Compliance with this Court's Order ...................................................................................7

     B.     Chabad's Post Judgment Discovery is Proper under the FSIA and This Court's Orders..........................................................................................8

          1.     The FSIA Does Not Preclude Post-Judgment Discovery into a Foreign Sovereign's Potentially Attachable Assets ................................. 8

          2.     Discovery is Permitted for the Purposes of Enforcing a Judgment Concerning Property Taken in Violation of International Law ................. 9

          3.     The Government's Policy Concerns Are Unfounded .............................. 12

          4.     Discovery is Permitted Under the Judgment for Specific Performance ... 13

     C.     In View of the Foregoing, the Court Should Enter a Protective Order Relating to Post-Judgment Discovery.....................................................14

III.     CONCLUSION..................................................................................................15

Plaintiff Agudas Chasidei Chabad of United States ("Chabad") respectfully submits this Motion for Increased Sanctions and for Entry of a Protective Order Regarding Post-Judgment Discovery.  Specifically, Chabad asks the Court (i) to increase the sanctions amount going forward from $50,000.00 per day to $100,000.00 per day, and (ii) enter the Protective Order pending at Docket Number 150.  As we explain below, these steps are consistent with the Court's previous rulings and are necessary to secure compliance with the Court's judgment and orders regarding the defendants' return of Chabad's stolen property.

In a Statement of Interest (the "Statement") filed February 3, 2016 (Dkt. 151), the Government under the previous Administration opposed Chabad's efforts to enforce the Court's previously-entered contempt order and sanctions judgment.  At the most recent hearing in this case, the Court stated that it would "like [the Government] to update their statement of interest in any event now in light of the action of the unanimous Senate and the Russian ambassador's response," and that "the United States needs to reassess" its position.  Hearing Tr., October 24, 2017, at 15 (Dkt. 164).  Chabad anticipates that the Government will present the new Administration's views in its response to this motion.  Accordingly, the previously-filed Statement is now moot.  In anticipation of the Government's submission of a new Statement of Interest, we address why Chabad's efforts are consistent with the plain language of the Foreign Sovereign Immunities Act ("FSIA") and recent precedent.

For these reasons, as explained more fully below, Chabad requests that this Court re-open Chabad's path to post-judgment discovery and ultimately compliance with the Court's judgment and order regarding the return of Chabad's library and archive.

## I.    BACKGROUND

The Court is familiar with the history of this lawsuit.  Nonetheless, a brief recap of relevant points will inform the discussion that follows.

**A.    The Court Has Twice Considered the Government's Position Regarding Sanctions, and Has Twice Concluded that It Has Authority to Impose Sanctions on Russia**

Chabad filed this lawsuit in 2004 to recover the library and archive stolen from Chabad during the Soviet and Nazi regimes.  After battling with Chabad for years in Court, the Russian Defendants announced their withdrawal from the case following a decision in Chabad's favor by the D.C. Circuit.  In due course, this Court entered a default judgment ordering Defendants to return the library and archive to Chabad.  Russia refused to comply with the Court's judgment.

Eventually, Chabad moved to have Russia held in contempt.  The Government interposed objections.  The Court concluded that it had the authority to impose sanctions, granted Chabad's motion, and set sanctions in the amount of $50,000.00 per day.  *Chabad v. Russian Federation*, 915 F. Supp. 2d 148 (D.D.C. 2013) (Dkt. 116); Dkt. 115 (the "Sanctions Order").  On January 28, 2014, Chabad filed a motion asking the Court to reduce the accrued contempt sanctions to a monetary judgment. (Dkt. 127).  The Government opposed, both in a written submission (Dkt. 134) and at oral argument.  After considering and addressing the Government's views, the Court again granted Chabad's motion and entered judgment against Russia in the amount of $43,700,000.  *Chabad v. Russian Federation*, 128 F. Supp. 3d 242 (D.D.C. 2015) (hereinafter, the "Monetary Judgment Order").

At each stage of these proceedings, including the contempt phase, the Court took account of the Government's objections, and assured proper compliance with the relevant statutory provisions including the Foreign Sovereign Immunities Act ("FSIA").  In this respect, the Court's Monetary Judgment Order emphasized three points.  *First*, as a procedural matter, the Court held that any concerns on the Government's part regarding Chabad's prospective seizure or attachment of Russian property "are premature until such time as plaintiff has identified property to attach and execute."  *Id.* at 245.  *Second*, on the merits, the Court considered and

rejected the Government's position that the Court has no authority to enforce the Court's judgments, and/or that further proceedings would interfere with the foreign policy interests of the United States. *See, e.g., id.* at 247-48 ("As discussed below, the Court is not persuaded that retaliatory or 'tit-for-tat' litigation against the United States should be the basis for shirking its responsibility to make rulings consistent with law. It would be a troubling precedent, indeed, to disregard the law and rule as the Department prays."). *Third*, the Court held that "[t]he time has come to give plaintiff some of the tools to which it is entitled under law." *Id.* at 247. In consideration of the Government's position, however, the Court ordered Chabad to give prior notice to the Government of any discovery Chabad initiated to identify potentially attachable Russian assets.

In light of this Court's Monetary Judgment Order, Chabad initiated discovery regarding Russian assets that might be subject to attachment under the FSIA. Discovery was ongoing, but as discussed in the next section, the Government's submission of its Statement brought all activity directed to the enforcement of the Court's judgment and orders to a halt.

### B. The Government's Statement of Interest Has Prevented Post-Judgment Discovery Pursuant to the Court's Sanctions Decisions

Following this Court's September 2015 Opinion, Chabad served subpoenas on five financial institutions (Citibank, Computershare, Deutsche Bank, Goldman Sachs, and JPMorgan). Each of these entities holds Russian assets that are currently subject to the U.S. Government's sanctions imposed following Russia's incursion into Ukraine. McCallum Dec. ¶5 (Dkt. 152-1). One of the entities indicated to Chabad in preliminary discussions that it had additional Russian assets, not subject to a seizure order, in active accounts. *Id.* The Government's identification of these assets provides a firm ground for believing that the assets are owned or controlled by the Russian government. *See, e.g., Funnekotter v. Agric. Bank of*

*Zimbabwe,* No. 13 Civ. 1917, 2015 WL 3526661, at *16-17 (S.D.N.Y. June 3, 2015) (the fact that the U.S. Government ordered seizure of assets pursuant to a sanctions regime directed to a foreign government was sufficient to overcome defendant's motion for summary judgment that the assets are not owned or controlled by that government).

During December 2015 and January 2016, counsel for Chabad continued to have productive conversations with the subpoena recipients. Dkt. 152-1, ¶6. Chabad granted extensions of time to respond to the subpoenas as discussion regarding the recipients' responses and subsequent document productions continued. Dkt. 152-1, ¶¶8, 15. Then, counsel for one of the subpoena recipients (the same party that had indicated it would be producing information on active accounts) informed Chabad that it had learned the Government had concerns regarding Chabad's subpoenas, and that it would not take any additional steps regarding the subpoenas until the Government's concerns were addressed. Dkt. 152-1,¶¶10, 14.

The Government filed its Statement on February 3, 2016. (Dkt. 151). Soon thereafter, two of the subpoena recipients filed motions in the U.S. District Court for the Southern District of New York asking that Court to stay compliance with the outstanding subpoenas pending resolution of the issues raised in the Statement. A third recipient filed a letter objecting to Chabad's subpoena on the same basis. Dkt. 152-1, ¶¶14-16. Because the Government's Statement of Interest was pending before this Court, and because the Statement acted as a *de facto* protective order preventing further discovery, Chabad entered into a stipulation with the subpoena recipients to stay further action on the subpoenas pending resolution of the issues the Government raised in this Court.

Since the Government filed its Statement, Chabad has been unable to pursue its discovery, effectively thwarting any progress towards a resolution of this lawsuit and denying Chabad the relief that this Court ordered.

**C.  The Legislative Branch's Explicit Support for Chabad**

Although the Statement stymied Chabad's litigation efforts, Congress (as it had previously) took note of Chabad's fight to secure its sacred texts.  On February 27, 2017, all 100 United States Senators signed a letter to Russian President Vladimir Putin renewing the Senate's longstanding, bipartisan demand for the return of the Chabad property at issue in this case. Specifically, the Senators "reaffirm[ed] [their] support and request for the return of the Schneerson collection of sacred texts from the Russian State Library and the Russian State Military Archive to its rightful owners, Agudas Chasidei Chabad of the United States." McCallum Dec., Ex. 2.  They also requested President Putin's "assistance in seeing the return of the entire collection."  The letter reflected the Senators' unanimous concern regarding the unlawful detention of the Chabad property "confiscated" at the time of the Bolshevik Revolution (*i.e.,* the library) and documents taken "from the Nazis" in 1945 (*i.e.*, the "archive").  McCallum Dec., Ex. 1.  Senator Orrin Hatch, as president *pro tem* of the Senate, forwarded the letter to Secretary of State Rex Tillerson and asked for his assistance "in securing the return of this collection of religious works to Chabad, its rightful owners."  McCallum Dec., Ex. 1.

On April 4, 2017, Russian Ambassador Sergey Kislyak responded to the United States Senate in a letter to Senator Schumer.  Asserting that Chabad's claims are "groundless" and that the "Chabad representatives have never owned the Schneerson collection and have had no property rights over it," Ambassador Kislyak stated that the "Chabad religious community for more than 20 years has been pursuing a senseless dispute with Russia in order to alienate Russian state Property."  McCallum Dec., Ex. 3.  Pointedly, the letter ignored Russia's active

participation in this litigation before this Court and the Court of Appeals, and the fact that Russia did not abandon this case until after its position had been rejected on the merits.

### D. This Court Issues Letters Rogatory

Recently, Chabad learned that one of its stolen volumes (a volume of the Babylonian Talmud used by the 19th century Lubavitcher Rebbe, Rabbi Shmuel Schneerson) was to be sold on October 31, 2017 at an auction house in Israel, Kedem Auction House Ltd. ("Kedem" or "the auction house"). On Thursday, October 19, 2017, Chabad filed an Emergency Motion for Issuance of a Letter of Request for International Judicial Assistance directed to the auction house. (Dkt. 158). In response, this Court set a hearing for the morning of October 24, 2017 and granted Chabad's request. (Dkt. 161). As a result of the Court's order, Chabad was able to obtain possession of this volume—a milestone in this decades-long litigation.[1]

After informing the Court of the developments in this litigation in connection with the request for Letters Rogatory, Chabad raised the possibility of seeking increased sanctions as a result of the sales of Chabad's property. In response, this Court stated that it would "like [the United States] to update their statement of interest in any event now in light of the action of the unanimous Senate and the Russian ambassador's response," and that it thought "the United States need[ed] to reassess" its position. (Dkt. 164) at 15. Further, the Court explained that the Government would have the opportunity to submit an updated statement in response to Chabad's request for increased sanctions. (Dkt. 164) at 17-18.

---

[1] Shortly after this Court issued its October 24, 2017 Request for International Judicial Assistance (Letter Rogatory) concerning the proposed auction of the Chabad volume, Chabad transmitted this Court's Order to the auction house. Within hours of the Court's Order, the auction house stated its intention to remove the Chabad volume from the October 31, 2017 auction. Chabad also received a communication from the consignor that he would "accept the word of the Chabad Library's rabbis and American law" regarding the disposition of the volume. As a result of this Court's Order, Chabad has now been able to secure the return of that volume.

## II.   ARGUMENT

### A.   Increased Sanctions are Necessary to Press Russia's Compliance with this Court's Order

Chabad's single goal in this litigation is to secure the return of Chabad's sacred texts and archives from the Russian government.  Thus, as this Court has recognized, Chabad's requests for contempt sanctions are aimed at coercing Russia's compliance with this Court's judgment ordering Russia to return the texts and archive to Chabad.  *Chabad v. Russian Federation*, 915 F. Supp. 2d 148, 153-54 (D.D.C. 2013).  Russia's intransigence in the face of a $50,000 per day sanction demonstrates that increased "enforcement" is warranted.

The Russian government has attempted to flout this Court's authority for years.  Russia withdrew from this litigation following its loss in the D.C. Circuit (*see,* Notice of Withdrawal (Dkt. 71) (June 26, 2009)), and has ignored the Court's subsequent judgments.  Ambassador Kislyak's recent assertions that Chabad's claims are "groundless" and that the "Chabad representatives have never owned the Schneerson collection and have no property rights over it" indicates that Russia's attitudes towards the Court's orders has not changed.  Although this Court's orders have come to the attention of the highest levels of the Russian Government, increased sanctions are needed in order to incentivize compliance.

Increased sanctions are particularly warranted in light of Russia's apparent lack of desire to "maintain and preserve the documents for future generations."  *See* Dkt. 71, at 2-3. Ambassador Kislyak asserted that the Schneerson collection is a part of Russia "cultural heritage" which is "accessible for scientific purposes as well as for religious practices" at the Center of Tolerance in Moscow.  McCallum Dec., Ex. 3.  Yet the Russia government is not standing by its word.  As the recent episode involving the proposed auction of a volume from Chabad's library makes plain, the texts that Russia claims it is preserving are in danger of being

lost.  Whether the recent events were the result of Russian negligence, theft, or official policy is irrelevant; increased sanctions are needed now, to coerce Russia's compliance before more damage is done.

Chabad is therefore requesting that sanctions be increased to $100,000.00 per day.  The increased sanctions will send a powerful message to the Russian government that this Court's orders are to be followed and that they will be enforced.  Chabad is confident that the combination of increased sanctions *combined with a re-opening of post-judgment discovery* will send the proper signal to Russian officials.

> **B.      Chabad's Post Judgment Discovery is Proper under the FSIA and This Court's Orders**
>
> > **1.   The FSIA Does Not Preclude Post-Judgment Discovery into a Foreign Sovereign's Potentially Attachable Assets**

Just three years ago, the Supreme Court held that the FSIA does not impose a bar on discovery into a foreign sovereign's assets in the United States.  The question presented in *NML Capital* was whether the FSIA "imposes a limit on a United States court's authority to order blanket post-judgment execution discovery on the assets of a foreign state used for any activity anywhere in the world."  *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2255 (2014).  The Court answered that it did not.  Rather, the Court held that post-judgment discovery directed to the identification of a foreign government's assets is governed by the Federal Rules of Civil Procedure.  According to the Court, the statute contains no "provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2256 (2014).

Argentina contended that "if a judgment creditor *could not ultimately execute a judgment against certain property*, then it has no business pursuing discovery of information pertaining to that property."  *Id.* at 2257 (emphasis added).  The Supreme Court rejected that argument:

> [T]he reason for these subpoenas is that NML *does not yet know* what property
> Argentina has and where it is, let alone whether it is executable under the relevant
> jurisdiction's law. If, bizarrely, NML's subpoenas had sought only 'information
> that could not lead to executable assets in the United States or abroad,' then
> Argentina likely would be correct to say that the subpoenas were unenforceable[.]

*Id.* (emphasis in original).  In short, the point of the discovery is just that: discovery into whether

assets subject to attachment are or are not present in the United States.

Thus, the FSIA does not preclude Chabad from *attempting to identify* property that may

be subject to execution.  This Court came to the same conclusion in an analogous case decided

following *NML Capital*; the Court concluded that it would "not impose the perhaps impossible

burden on [Plaintiff] to demonstrate, as a threshold matter, what Nigerian assets are subject to

execution under the FSIA before permitting discovery concerning those assets to proceed."

*Continental Transfer Technique Limited v. Federal Government of Nigeria*, 308 F.R.D. 27, 35

(D.D.C. 2015).  Any other result "would present an insurmountable Catch–22 for judgment

creditors seeking to enforce a valid judgment."  *Id.* (internal citations omitted).

## 2.  Discovery is Permitted for the Purposes of Enforcing a Judgment Concerning Property Taken in Violation of International Law

Under *NML Capital*, the relevant question does not relate to sovereign immunity or the

FSIA; it is whether Chabad's proposed discovery is permitted under the Federal Rules of Civil

Procedure.  Rule 26(b)(1) provides for discovery into "any nonprivileged matter that is relevant

to the party's claim or defense and proportional to the needs of the case[.]"  That Chabad's

discovery falls within the scope of Rule 26(b)(1) – and not into a "bizarre" category of

foreclosed discovery discussed in *NML Capital* – is plain from the FSIA itself and from this

Court's previous orders in this case.

Chabad's discovery is directed to the identification of Russian assets for the purposes of

securing the return of Chabad's property.  The FSIA provides that a foreign state's property is

subject to execution where the "execution relates to a judgment establishing rights in property which has been taken in violation of international law." 28 U.S.C. § 1610(a)(3).[2]  This Court has entered a judgment ordering Russia to return Chabad's property.  Consistent with the FSIA, therefore, Russian assets are subject to execution for that purpose.  Chabad is seeking discovery that "relates" to the Court's judgment that Chabad's property was taken in violation of international law, and its order that Russia return the library and archive to Chabad.  (Dkt. 80); *see also Chabad v. Russian Federation*, 729  F. Supp. 2d 141 (D.D.C. 2010) (Dkt. 81).  Applying the plain language of the statute, this Court should permit Chabad to move forward with discovery of Defendants' assets.

---

[2]  The FSIA's exceptions to execution immunity (as opposed to jurisdictional immunity) are found within Section 1610.  Section 1610(a)(3) provides that:

> (a) The property in the United States of a foreign state, as defined in section 1603 (a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—
>  . . .
> (3) **the execution relates to a judgment establishing rights in property** which has been taken in violation of international law or which has been exchanged for property taken in violation of international law[.]

28 U.S.C. § 1610(a)(3) (emphasis added).  Likewise, Section 1610(b)(2) provides that:

> (b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if
> . . .
> (2) **the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605 (a)(2), (3)**, or (5) or 1605 (b) of this chapter, **regardless of whether the property is or was involved in the act upon which the claim is based**, …

28 U.S.C. § 1610(b)(2). (emphasis added).

The fact that this case involves a sanctions order is of no moment.  The FSIA does not say that the attachment is limited to the property taken in violation in international law; it says that the execution need only "relate to" a property judgment.  That is the case here.  This Court's contempt order found Russia "to be in civil contempt of this Court for failure to comply with this Court's July 30, 2010 Order, ECF No. 80" –that is, the judgment ordering the return of the Chabad property taken in violation of international law.  (Dkt. 115).  This Court's Sanctions Order and Money Judgment Order thus relate back to its judgment and order regarding the unlawful expropriation of Chabad's sacred texts.

The Court's previous orders in this case are consistent with this view.  In particular, the Sanctions Order and Monetary Judgment Order considered and rejected the Government's arguments that the imposition of sanctions, and the reduction of accrued sanctions to a money judgment, was an improper mechanism to enforce the Court's property judgment.  Those decisions were correct.  Having addressed the Government's arguments and concerns on the sanctions issue at each step of the process, and in light of the authorizations set out in the FSIA regarding the enforcement of judgments relating to unlawful expropriations of property, there is no need to revisit these issues yet again.

On the contrary, Congress' resolution of the competing private and sovereign interests as enacted in the FSIA has allowed the federal courts to "retire[] from the immunity-by-factor balancing business."  *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2258 (2014).  Specifically, in the *NML* case, the Supreme Court observed:

> … Argentina and the United States urge us to consider the worrisome international-relations consequences of siding with the lower court. Discovery orders as sweeping as this one, the Government warns, will cause "a substantial invasion of [foreign states'] sovereignty," . . . and will "[u]ndermin[e] international comity," . . . . Worse, such orders might provoke "reciprocal adverse treatment of the United States in foreign courts," . . . and will "threaten harm to

11

the United States' foreign relations more generally," . . .. These apprehensions are better directed to that branch of government with authority to amend the Act— which, as it happens, is the same branch that forced our retirement from the immunity-by-factor-balancing business nearly 40 years ago.

*Id.* (citations omitted); *see also FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373, 380 (D.C. Cir. 2011) (whether foreign states have placed restrictions on sanctions is "quite irrelevant because our Congress has not.").

In sum, Chabad's discovery request is governed by the broadly permissive Federal Rules of Civil Procedure. The discovery Chabad seeks is expressly permitted by the FSIA. The mechanism for pursuing Russian assets embodied in the Sanctions Order and Money Judgment Order, are consistent with the FSIA and were adopted after due consideration of the Government's arguments.

### 3. The Government's Policy Concerns Are Unfounded

The Government's Statement of Interest (Dkt. 151) was based, in large part, on the idea that permitting Chabad to pursue discovery with respect to the Monetary Judgment Order "could open the door to reciprocal orders being entered against the United States in foreign courts." (Dkt. 151, at 19). Of course, to be reciprocal, the United States' conduct would have to mirror that of the Russian Defendants' here.

Although this Court is familiar with the proceedings of this case, it is important to reiterate the "unique" litigation tactics Russia employed in this matter. The Russian Defendants appeared and litigated this case for years—it was ***only after*** the Russian Defendants lost their jurisdictional arguments in the D.C. Circuit that they determined to withdraw from the case. The Russian Defendants' "heads I win, tails you lose" tactics flouted the United States' justice system and the FSIA.

The United States, by contrast, does not (and should not) engage in such gamesmanship in foreign courts.  Chabad does not understand the Government to contend that, in the future, the U.S. may decide to imitate the conduct of the Russian Defendants' here, litigating in foreign forums and withdrawing at the appellate level if necessary.  Because the United States does not engage in the type of gamesmanship that resulted in sanctions in this case, there is simply no opportunity for a foreign court to enter a "reciprocal" judgment against the United States.  In these circumstances then, the Government's policy concerns regarding sanctions judgments are unfounded.

### 4. Discovery is Permitted Under the Judgment for Specific Performance

Independent of and in addition to the discovery to enforce the sanctions judgment, Chabad should be permitted to take discovery of Russian assets pursuant to this Court's judgment directing return of Chabad's property.  Nothing in the FSIA or the federal rules indicate otherwise.

On July 30, 2010, this Court concluded that it had jurisdiction "over the Defendants under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(3)."  (Dkt. 80).  Accordingly, the Court entered judgment against the Russian Defendants ordering them to return the Library and the Archive to Chabad.  *Id.*

As noted above, 28 U.S.C. § 1610(a)(3) provides that

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, **shall not be immune from attachment in aid of execution**, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if—
 . . .
(3) the execution relates to a judgment **establishing rights in property which has been taken in violation of international law** or which has been exchanged for property taken in violation of international law, or; …

13

28 U.S.C. § 1610(a)(3) (emphasis added). To be clear, Chabad's goal is to compel the Defendants' to return Chabad's property. Under the plain language of the statute, Chabad is permitted to enforce its judgment if the execution "*relates to* a judgment establishing rights in property which has been taken in violation of international law."

By definition, Chabad's discovery into the Russian Defendants' assets "relates to" Chabad's judgment with respect to the property they took in violation of international law. Indeed, Chabad's actions are consistent with Federal Rule of Civil Procedure 70(c), which provides that "on application by a party entitled to performance of an act, the clerk must issue a writ of attachment or sequestration against the disobedient party's property to compel obedience." That is precisely Chabad's goal here.

Finally, and importantly, the Government's objections (wrong though they may be) are premised on the view that the FSIA "precludes attachment of Defendants' assets here in the United States as part of an effort to enforce a monetary sanctions judgment." (Dkt. 151 at 2). The Government's objections do not apply to Chabad's efforts to enforce this Court's initial judgment ordering specific performance. This Court should therefore permit Chabad to re-open post-judgment discovery on this basis.

    **C.    In View of the Foregoing, the Court Should Enter a Protective Order Relating to Post-Judgment Discovery**

Chabad respectfully requests that the Court enter the Protective Order pending at Docket Number 150. The entry of the Protective Order will allow Chabad to work with third parties who may have relevant yet confidential information. As with the increased sanctions and the re-opening of post judgment discovery generally, the entry of the Protective Order will ultimately allow Chabad to work towards its goal of securing the return of its books.

## III.    CONCLUSION

For the foregoing reasons, Chabad respectfully requests that this Court increase the daily

sanctions to $100,000.00 per day going forward.  In addition, Chabad requests that this Court

enter Chabad's Protective Order.  Finally, Chabad requests that this Court make clear that

Chabad is free to move forward with post-judgment discovery, free of the Government's

interference, because the FSIA does not limit the discovery of Russian assets that may be

suitable for attachment.


Respectfully submitted,

Dated: March 13, 2018                    By:   */s/ Steven Lieberman*

Steven Lieberman (D.C. Bar No. 439783)
Robert Parker (D.C. Bar No. 404066)
Daniel McCallum (D.C. Nar No. 1006938)
Rothwell, Figg, Ernst & Manbeck, P.C.
607 14th St., N.W., Suite 800
Washington, DC 20005
Phone:  202-783-6040
Facsimile:  202-783-6031
E-mails:  slieberman@rfem.com
        rparker@rfem.com
        dmccallum@rfem.com

Nathan Lewin (D.C. Bar No. 38299)
Alyza Lewin (D.C. Bar No. 445506)
LEWIN & LEWIN, LLP
888 17th Street NW, 4th Floor
Washington, D.C.  20006
Phone:  202-828-1000
Facsimile:  202-828-0909
E-mails:  nat@lewinlewin.com
        alyza@lewinlewin.com

*Counsel for Agudas Chasidei Chabad of United
States*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2018, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR INCREASED SANCTIONS AND FOR ENTRY OF A PROTECTIVE ORDER REGARDING POST-JUDGMENT DISCOVERY** was served by electronic mail on the following counsel of record for the United States:

Nathan Michael Swinton
U.S. Department Of Justice
Civil Division
20 Massachusetts Avenue, N.W.
Room 7218
Washington, DC 20530
Email: nathan.m.swinton@usdoj.gov

I further certify that on this 13th day of March, 2018, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR INCREASED SANCTIONS AND FOR ENTRY OF A PROTECTIVE ORDER REGARDING POST-JUDGMENT DISCOVERY** was served by First-Class International Mail, through the U.S. Postal Service, on the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Alexander Konovalov, Minister
14 Zhitnaya
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Vladimir Medinsky, Minister
7/6 Bldg. 1/2, Maly Gnezdnikovsky Perelok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Victor V. Federov, General Director
3/5, Vozdivhenka Street
Moscow, Russia 119019

*/s/ Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Coordinator
Rothwell, Figg, Ernst & Manbeck, P.C.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

AGUDAS CHASIDEI CHABAD )
OF UNITED STATES, )
       )
               *Chabad*, )
       )
              v. )           Case No. 1:05-cv-01548-RCL
       )
RUSSIAN FEDERATION; RUSSIAN )
MINISTRY OF CULTURE AND MASS )
COMMUNICATION; RUSSIAN STATE )
LIBRARY; and RUSSIAN STATE )
MILITARY ARCHIVE, )
       )
            *Defendants.* )
_____)

## DECLARATION OF DANIEL MCCALLUM IN SUPPORT OF PLAINTIFF'S MOTION FOR INCREASED SANCTIONS AND FOR ENTRY OF A PROTECTIVE ORDER REGARDING POST-JUDGMENT DISCOVERY

I, Daniel R. McCallum, declare as follows:

1.       I am over the age of 18 and fully competent to make this declaration.  I have personal knowledge of the facts stated herein, and they are true and correct.

2.       I am an attorney at Rothwell, Figg, Ernst & Manbeck, P.C., 607 14th Street N.W., Washington D.C., 20005, counsel for Plaintiff Agudas Chasidei Chabad of United States ("Plaintiff" or "Chabad") in the above-captioned case.  I am a member in good standing of the bars for the District of Columbia and New York.  I submit this declaration in support of Chabad's Motion for Increased Sanctions and for Entry of a Protective Order Regarding Post-Judgment Discovery.

3.       Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Senator Hatch to Secretary of State Tillerson, dated February 27, 2017.

1

4.      Attached hereto as **Exhibit 2** is a true and correct copy of a letter from all one hundred members of the United States Senators to President Putin of the Russian Federation, dated February 27, 2017.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of a letter from Sergey Kislyak, Ambassador of the Russian Federation to the United States, to Senator Schumer, dated April 4, 2017.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2018

Washington, DC



By:   _/s/ *Daniel McCallum*_____
         Daniel McCallum

# EXHIBIT 1

**(Declaration of Daniel McCallum In Support of Plaintiff's Motion for Increased Sanctions and for Entry of a Protective Order Regarding Post-Judgment Discovery)**

ORRIN G. HATCH
UTAH

MATT SANDGREN
CHIEF OF STAFF

104 Hart Senate Office Building

TELEPHONE: (202) 224-5251
TDD (202) 224-2849
FAX: (202) 224-6331

Website: hatch.senate.gov

## United States Senate

WASHINGTON, DC 20510–4402

PRESIDENT PRO TEMPORE

COMMITTEES:

FINANCE
CHAIRMAN

JUDICIARY

HEALTH, EDUCATION,
LABOR, AND PENSIONS

AGING

JOINT COMMITTEE
ON TAXATION

February 27, 2017

The Honorable Rex Tillerson
Secretary of State
U.S. Department of State
2201 C Street, NW
Washington, D.C. 20520

Dear Secretary Tillerson:

Agudas Chasidei Chabad of United States is the largest Hasidic Jewish organization in the world. The leaders of this movement, established in 18th century Russia, developed a collection of religious texts that was central to Chabad's religious life. Russia confiscated one part of this collection at the time of the Bolshevik Revolution and took the other part from the Nazis in 1945. Chabad has been trying to recover this sacred collection ever since.

The State Department issued a statement in 1992 expressing the United States' "continued strong support for the return" of the collection. One month later, all 100 Senators signed a letter to President Boris Yeltsin urging its "quick release." In 2005, all 100 Senators again signed a letter to President Vladimir Putin urging him to "return these sacred religious texts, archives, and manuscripts to Chabad."

Please find enclosed a third letter, again signed by all 100 Senators, renewing our request for the return of this collection to Chabad. I write to ask your help in conveying this letter, and the two previous letters to which it refers, to President Putin, and in securing the return of this collection of religious works to Chabad, its rightful owners. This would be a significant example of both governments' commitment to justice, human rights, and religious freedom.

Sincerely,

Orrin Hatch
United States Senator

Please do this!

# EXHIBIT 2

**(Declaration of Daniel McCallum In Support of Plaintiff's Motion for Increased Sanctions and for Entry of a Protective Order Regarding Post-Judgment Discovery)**

# United States Senate

WASHINGTON, DC 20510

February 27, 2017

President Vladimir Putin
Russian Federation
Moscow, Russia

Dear Mr. President:

We are writing respectfully to reaffirm our support and request for the return of the Schneerson collection of sacred texts from the Russian State Library and the Russian State Military Archive to its rightful owners, Agudas Chasidei Chabad of United States ("Chabad").

On May 31, 1992, all one hundred members of the United States Senate appealed to then-President Boris Yeltsin to honor Russia's commitment to return the collection to Chabad. On February 24, 2005, all one hundred members of the United States Senate again signed an appeal for your assistance in returning the collection. Copies of these letters are attached hereto. Since 1992, eight volumes of the collection have been returned to Chabad. We hereby respectfully request your assistance in seeing the return of the entire collection.

Thank you for your attention to this important matter.

Sincerely,

U.S. Senator Mitch McConnell          U.S. Senator Orrin G. Hatch          U.S. Senator Charles E. Schumer

U.S. Senator Lamar Alexander

U.S. Senator Tammy Baldwin

U.S. Senator John Barrasso

U.S. Senator Michael F. Bennet

U.S. Senator Richard Blumenthal

U.S. Senator Roy Blunt

U.S. Senator Cory A. Booker

U.S. Senator John Boozman

U.S. Senator Sherrod Brown

U.S. Senator Richard Burr

U.S. Senator Maria Cantwell

U.S. Senator Shelley Moore Capito

U.S. Senator Benjamin L. Cardin

U.S. Senator Thomas Carper

U.S. Senator Robert P. Casey, Jr.

U.S. Senator Bill Cassidy M.D.

U.S. Senator Thad Cochran

U.S. Senator Susan M. Collins

U.S. Senator Christopher A. Coons

U.S. Senator Bob Corker

U.S. Senator John Cornyn

U.S. Senator Catherine Cortez Masto

U.S. Senator Tom Cotton

U.S. Senator Mike Crapo

U.S. Senator Ted Cruz

U.S. Senator Steve Daines

U.S. Senator Joe Donnelly

U.S. Senator Tammy Duckworth

U.S. Senator Richard J. Durbin

U.S. Senator Michael B. Enzi

U.S. Senator Joni K. Ernst

U.S. Senator Dianne Feinstein

U.S. Senator Deb Fischer

U.S. Senator Jeff Flake

U.S. Senator Al Franken

U.S. Senator Cory Gardner

U.S. Senator Kirsten Gillibrand

U.S. Senator Lindsey O. Graham

U.S. Senator Chuck Grassley

U.S. Senator Kamala D. Harris

U.S. Senator Margaret Wood Hassan

U.S. Senator Martin Heinrich

U.S. Senator Heidi Heitkamp

U.S. Senator Dean Heller

U.S. Senator Mazie K. Hirono

U.S. Senator John Hoeven

U.S. Senator James M. Inhofe

U.S. Senator Johnny Isakson

U.S. Senator Ron Johnson

U.S. Senator Tim Kaine

U.S. Senator John Kennedy

U.S. Senator Angus S. King, Jr.

U.S. Senator Amy Klobuchar

U.S. Senator James Lankford

U.S. Senator Patrick Leahy

U.S. Senator Michael S. Lee

U.S. Senator Joe Manchin, III

U.S. Senator Edward J. Markey

U.S. Senator John McCain

U.S. Senator Claire McCaskill

U.S. Senator Robert Menendez

U.S. Senator Jeffrey A. Merkley

U.S. Senator Jerry Moran

U.S. Senator Lisa Murkowski

U.S. Senator Chris Murphy

U.S. Senator Patty Murray

U.S. Senator Bill Nelson

U.S. Senator Rand Paul

U.S. Senator David A. Perdue

U.S. Senator Gary C. Peters

U.S. Senator Rob Portman

U.S. Senator Jack Reed

U.S. Senator James Risch

U.S. Senator Pat Roberts

U.S. Senator M. Michael Rounds

U.S. Senator Marco Rubio

U.S. Senator Bernard Sanders

U.S. Senator Ben Sasse

U.S. Senator Brian Schatz

U.S. Senator Tim Scott

U.S. Senator Jeanne Shaheen

U.S. Senator Richard Shelby

U.S. Senator Debbie Stabenow

U.S. Senator Luther Strange

U.S. Senator Dan Sullivan

U.S. Senator Jon Tester

U.S. Senator John Thune

U.S. Senator Thom Tillis

U.S. Senator Pat Toomey

U.S. Senator Tom Udall

U.S. Senator Chris Van Hollen

U.S. Senator Mark R. Warner

U.S. Senator Elizabeth Warren

U.S. Senator Sheldon Whitehouse

U.S. Senator Roger F. Wicker

U.S. Senator Ron Wyden

U.S. Senator Todd Young

# EXHIBIT 3

**(Declaration of Daniel McCallum In Support of Plaintiff's Motion for Increased Sanctions and for Entry of a Protective Order Regarding Post-Judgment Discovery)**



AMBASSADOR
OF THE RUSSIAN FEDERATION
TO THE USA

April 4, 2017

Dear Senator Schumer,

I have the honor to inform You that the U.S. Senators' letter addressed to the President of the Russian Federation Vladimir Putin with a request to return the so-called Schneerson collection to Chabad religious community has been considered.

In this connection I would like to draw Your attention to the groundlessness of Chabad claims. It is established that the Schneerson library was created and replenished in our country and has never left its territory. The collection is part of the cultural heritage of the multinational and multiconfessional people of Russia, including those who practice Judaism.

The Schneerson library belongs to the Russian State Library funds, which form an inalienable state property. Taking into consideration the interest of citizens who practice Judaism, the "religious library" for several years has been located at the Center of Tolerance in the Moscow Jewish museum where they are now accessible for scientific purposes as well as for religious practices.

THE HONORABLE CHARLES ELLIS SCHUMER
UNITED STATES SENATOR FOR NEW YORK

Washington, DC

On their side, Chabad representatives have never owned the Schneerson collection and have had no property rights over it. Nevertheless, they can work freely in Moscow with the religious books they are interested in.

Regrettably, instead of showing a constructive approach, Chabad religious community for more than 20 years has been pursuing a senseless dispute with Russia in order to alienate Russian state property. At the same time, Chabad unlawfully retains several books from the collection, which the Russian State Library loaned to the Library of Congress in 1994 under international inter-library exchange.

Sincerely,

Sergey Kislyak

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

AGUDAS CHASIDEI CHABAD )
OF UNITED STATES, )
)
    *Plaintiff,* )
)
    v. )    Case No. 1:05-cv-01548-RCL
)
RUSSIAN FEDERATION; RUSSIAN )
MINISTRY OF CULTURE AND MASS )
COMMUNICATION; RUSSIAN STATE )
LIBRARY; and RUSSIAN STATE )
MILITARY ARCHIVE, )
)
    *Defendants.* )

---

## [PROPOSED] ORDER

Before the Court is Plaintiff's Motion for Increased Sanctions and For Entry of a

Protective Order Regarding Post-Judgment Discovery.

The Court hereby **GRANTS** Plaintiff's Motion.

The Court **ORDERS** that until defendants comply with this Court's July 30, 2010 Order,

ECF No. 80, a fine payable to the plaintiff in the amount of $100,000.00 per day shall be

imposed on the defendants, for which the defendants shall be jointly and severally liable; further

The Court **ENTERS** the Protective Order at ECF No. 150.

**SO ORDERED** this _____ day of _____, 2018.

_____
The Honorable Royce C. Lamberth
United States District Court

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of April, 2018, a true and correct copy of the

foregoing **NOTICE OF RELATED FILING** was served by electronic mail on the following

counsel of record for the United States:

Nathan Michael Swinton
U.S. Department Of Justice
Civil Division
20 Massachusetts Avenue, N.W.
Room 7218
Washington, DC 20530
Email: nathan.m.swinton@usdoj.gov

I further certify that on this 19th day of April, 2018, a true and correct copy of the

foregoing **NOTICE OF RELATED FILING** was served by First-Class International Mail,

through the U.S. Postal Service, on the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Alexander Konovalov, Minister
14 Zhitnaya
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Vladimir Medinsky, Minister
7/6 Bldg. 1/2, Maly Gnezdnikovsky Perelok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Victor V. Federov, General Director
3/5, Vozdivhenka Street
Moscow, Russia 119019

*/s/ Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Coordinator
Rothwell, Figg, Ernst & Manbeck, P.C.