IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AGUDAS CHASIDEI CHABAD )
OF UNITED STATES, )
)
     *Plaintiff*, )
)
     v. )     Civil Case No. 1:05-cv-01548-RCL
)
RUSSIAN FEDERATION; RUSSIAN )
MINISTRY OF CULTURE AND )
MASS COMMUNICATION; )
RUSSIAN STATE LIBRARY; and )
RUSSIAN STATE MILITARY )
ARCHIVE, )
)
)
     *Defendants*. )

**MEMORANDUM OF POINTS AND AUTHORITIES OF NON-PARTY TENEX-USA
INCORPORATED IN SUPPORT OF ITS MOTION TO QUASH PLAINTIFF'S
<u>SUBPOENA DUCES TECUM AND AD TESTIFICANDUM</u>**

**WHITE & CASE**LLP
Carolyn B. Lamm
Francis A. Vasquez, Jr.
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:  (202) 626-3600

*Attorneys for Non-Party Tenex-USA
Incorporated*

April 11, 2019

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

BACKGROUND ...........................................................................................................1

I.    PROCEDURAL HISTORY...................................................................................1

II.   TENAM AND THE INSTANT SUBPOENA........................................................4

ARGUMENT ................................................................................................................5

I.    THE COURT SHOULD QUASH PLAINTIFF'S SUBPOENA BECAUSE IT
      SEEKS IRRELEVANT INFORMATION, IS OVERBROAD AND UNDULY
      BURDENSOME, AND PRESENTS SERIOUS CONCERNS FOR U.S. FOREIGN
      POLICY ...............................................................................................................6

      A.    The Subpoena Does Not Meet The Requirements Under Rules 26 And 69
            Of The Federal Rules Of Civil Procedure Because It Requests Information
            Irrelevant To Satisfaction Of The Interim Judgment ....................................6

            1.    Tenam's U.S. Assets Cannot Satisfy The Interim Judgment......................7

            2.    Plaintiff's Discovery Requests Are Also Irrelevant Because
                  Plaintiff Cannot Attach Any Other Assets For Which It Seeks
                  Discovery In Order To Enforce The Interim Judgment...........................12

      B.    Plaintiff's Discovery Requests Are Overly Broad, Oppressive, And
            Unduly Burdensome ...................................................................................15

      C.    Plaintiff's Efforts To Enforce The Interim Judgment In This Way Could
            Seriously Affect Foreign Policy Interests ...................................................17

II.   THIS COURT SHOULD STAY ANY COMPLIANCE WITH THE SUBPOENA
      PENDING RESOLUTION OF THE OBJECTIONS OF THE UNITED STATES.........18

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*,
929 F. Supp. 2d 502 (D. Md. 2013) ................................................................. 9-10

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
915 F. Supp. 2d 148 (D.D.C. 2013) ..................................................................14

*Agudas Chasidei Chabad v. Russian Fed'n*,
128 F. Supp. 3d 242 (D.D.C. 2015) ..................................................................15

*Af-Cap, Inc. v. Republic of Congo*,
462 F.3d 417 (5th Cir. 2006) ............................................................................14

*Allen v. Russian Federation*,
522 F. Supp. 2d 167 (D.D.C. 2007) ...................................................................8

*Arg. Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 42835 (1989) .....................................................................................13

*Avelar v. J. Cotoia Const., Inc.*,
No. 11-cv-2172, 2011 U.S. Dist. LEXIS 126487 (E.D.N.Y. Nov. 2, 2011) ..........................12

*Bayer & Willis Inc. v. Republic of the Gambia*,
283 F. Supp. 2d 1 (D.D.C. 2003) .................................................................9, 12

*Brown v. Brockett*,
No. 17-mc-2931-MKB-SJB, 2018 U.S. Dist. LEXIS 113749
(E.D.N.Y. July 6, 2018) ................................................................................ 6-7

*Buie v. District of Columbia*,
327 F.R.D. 1 (D.D.C. 2018) .............................................................................17

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ...........................................................................................8

*Elise Trust v. United States SEC*,
No. 10-mc-724-RMC, 2011 U.S. Dist. LEXIS 157867 (D.D.C. January 10,
2011) ..............................................................................................................6, 7

*Estate of Heiser v. Islamic Republic of Iran*,
807 F. Supp. 2d 9 (D.D.C. 2011) .......................................................................8

*Falicia v. Advanced Tenant Servs.*,
235 F.R.D. 5 (D.D.C. 2006)........................................................................10, 11

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
    637 F.3d 373 (D.C. Cir. 2011) ...............................................14

*\*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*,
    462 U.S. 611 (1983)...............................................................8

*Flatow v. Islamic Republic of Iran*,
    308 F.3d 1065 (9th Cir. 2002) ...............................................9

*Herbert v. Lando*,
    441 U.S. 153 (1979)...............................................................6

*In re Grand Jury Subpoena*,
    749 F. App'x 1 (D.C. Cir. 2018)............................................14

*Johnson v. Flowers Indus., Inc.*,
    814 F.2d 978 (4th Cir. 1987) .................................................10

*Johnson-Tanner v. First Cash Fin. Servs.*,
    239 F. Supp. 2d 34 (D.D.C. 2003) ........................................10

*Linder v. NSA*,
    94 F.3d 693 (D.C. Cir. 1996).................................................6

*Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*,
    No. 11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751 (E.D. Ky. Nov. 20,
    2012) ...................................................................................11

*Owens v. Republic of Sudan*,
    141 F. Supp. 3d 1 (D.D.C. 2015) ..........................................12

*\*Republic of Arg. v. NML Capital, Ltd.*,
    573 U.S. 134 (2014)..........................................................7, 12

*PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*,
    569 F. Supp. 2d 67 (D.D.C. 2008) ........................................18

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
    9 F. Supp. 2d 3007 (S.D.N.Y. 1998)......................................9

*SerVaas Inc. v. Republic of Iraq*,
    09-cv-1862-RMD-RLE, 2013 U.S. Dist. LEXIS 86879 (S.D.N.Y. June 19,
    2013) ...................................................................................17

*Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane*
  *Crane Serv., Inc.*,
  148 F.R.D. 662 (M.D. Fla. 1993)..........................................................................10

*United States v. Kellogg Brown & Root Servs.*,
  284 F.R.D. 22 (D.D.C. 2012)..........................................................................12, 15

*Verlinden B.V. v. Cent. Bank of Nig.*,
  461 U.S. 480 (1983)..........................................................................17

*Walters v. Indus. & Commercial Bank of China, Ltd.*,
  651 F.3d 280 (2d Cir. 2011)..........................................................................13

*Wyoming v. United States Dep't of Agric.*,
  208 F.R.D. 449 (D.D.C. 2002)..........................................................................15-16

## STATUTES AND RULES

28 U.S.C. § 1609..........................................................................13

28 U.S.C. § 1610..........................................................................10

28 U.S.C. § 1610(a)..........................................................................14-15

28 U.S.C. § 1610(b)..........................................................................8

28 U.S.C. § 1610(c)..........................................................................12, 13

28 U.S.C. § 1611..........................................................................13

Fed. R. Civ. P. 26(b)(1)..........................................................................6

Fed. R. Civ. P. 26(b)(2)(C)..........................................................................16

Fed. R. Civ. P. 45(d)(3)(A)(iv)..........................................................................6, 15

Fed. R. Civ. P. 69..........................................................................6, 10, 11

Non-party Tenex-USA Incorporated ("Tenam") submits this memorandum of law in support of its motion to quash Plaintiff's subpoena *duces tecum* and *ad testificandum* (the "Subpoena") dated March 26, 2019, and served by Plaintiff, Agudas Chasidei Chabad of United States, on March 27, 2019.  *See* Declaration of Fletcher Newton dated April 9, 2019 ("Newton Decl."), Ex. A (Pl.'s Subpoena).  This is not Plaintiff's first attempt at post-judgment discovery in connection with the several years old interim judgment of accrued sanctions (the "Interim Judgment") that this Court entered against the Defendants (the Russian Federation and several Russian state agencies—not Tenam) back in September 2015.  In seeking to obtain discovery from Tenam, Plaintiff has embarked on a classic fishing expedition, and Plaintiff would have this Court draw unsupported inferences from Plaintiff's baseless conclusions about the purported relationship between Tenam and Defendants.  As discussed below, however, Plaintiff's document requests and deposition topics identified in the Subpoena are irrelevant because they will not lead Plaintiff to any assets that might satisfy the Interim Judgment.  Plaintiff's Subpoena only serves to impose an undue burden on Tenam, a stranger to these proceedings.  To be clear, Tenam reserves all rights and defenses, and Tenam does not waive any immunities by defending against this ill-founded subpoena.  Tenam also does not, and indeed cannot, waive any sovereign immunities or speak on behalf of the Russian Federation or other sovereign agencies.

## BACKGROUND

### I.   PROCEDURAL HISTORY

Plaintiff initiated this case in 2005, seeking the return of various religious books, manuscripts and artifacts (the "Collection") from several foreign sovereign defendants, the Russian Federation, the Russian Ministry of Culture and Mass Communication, the Russian State Library, and the Russian State Military Archive (collectively, "Russia").  Russia initially appeared to contest this Court's jurisdiction, and later withdrew from the litigation in 2009.  *See*

Mot. to Withdraw Appearance as Counsel of Record, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al.*, No. 05-cv-01548-RCL (D.D.C. July 28, 2009), ECF No. 72.

Subsequently, on July 30, 2010, this Court entered a default judgment against Russia and directed Defendants to transfer the Collection to Plaintiff.  *See* Order Grant. Pl.'s Mot. for Entry of Default J. Against All Ds., ECF No. 80.  To compel Russia's compliance, Plaintiff asked the Court to find Russia in contempt and impose monetary contempt sanctions against Russia in the form of a "fine payable to the Plaintiff" until the Collection was transferred to Plaintiff.  Pl.'s Mot. for Civil Contempt Sanctions, Proposed Order at 2, ECF No. 92-2.  In August 2012, at the Court's invitation, the United States submitted a Statement of Interest opposing the entry of a sanctions order against Russia, explaining that the Foreign Sovereign Immunities Act ("FSIA") does not authorize the Court to compel Russia's compliance with an order directing the transfer of property that it holds within its own sovereign territory.  *See* Statement of Interest of the United States at 4, ECF No. 111.  The United States also stated that, in its view, the civil contempt sanctions would both "risk damage to significant foreign policy interests" and undermine any possible amicable diplomatic resolution to this dispute.  *Id.* at 10.  On January 16, 2013, this Court granted Plaintiff's motion for civil contempt sanctions, imposing on Russia a fine of $50,000 per day, payable to Plaintiff, until Russia complied with the Court's order to transfer the Collection.  Order Granting Mot. for Sanctions, ECF No. 115.

In January 2014, Plaintiff moved for an interim judgment against Russia for the accrued sanctions.  Pl.'s Mot. for Interim J. of Accrued Sanctions, ECF No. 127.  The United States filed another Statement of Interest on February 21, 2014, which opposed the entry of an interim judgment on the same bases as the prior sanctions order.  *See* Statement of Interest of the United States, ECF No. 134.  On September 10, 2015, the Court granted Plaintiff's motion for an

interim judgment of accrued sanctions and ordered that Plaintiff recover $43.7 million from Russia. *See* Order Granting Mot. for Order for Interim J. of Accrued Sanctions, ECF No. 144.

In an effort to enforce the Interim Judgment, Plaintiff served a subpoena *duces tecum* and *ad testificandum* on Sberbank CIB, USA in April 2015. *See* Notice of Service of Subpoena, ECF No. 140. Plaintiff then served subpoenas on several U.S. financial institutions in December 2015, calling for the production of documents regarding, among other things, accounts maintained in or outside the United States, by or on behalf of the "Russian Federation," as well as "any and all of its Agencies and Instrumentalities, representatives, affiliates, subsidiaries, predecessors, successors, alter-egos, assigns, and political subdivisions . . . and all other Persons acting or purporting to act for or on behalf of the Russian Federation"—including numerous Russian officials, among them President Vladimir Putin. Mem. of Law of Non-Parties JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. in Opp'n to Pl.'s Am. Mot. to Lift the Stay of Disc. and Transfer at 7, No. 16-mc-00040-Pl (S.D.N.Y. May 7, 2018), ECF No. 34. On January 27, 2016, Plaintiff registered the Interim Judgment in the District Court for the Southern District of New York. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al.*, No. 16-mc-00040-Pl (S.D.N.Y. Jan. 27, 2016), ECF No. 1. Pursuant to Plaintiff and the non-party banks' stipulation, and subsequent orders from the New York court, compliance with Plaintiff's subpoenas on the non-party banks has been stayed pending resolution of certain issues before this Court. *See* Conference Tr. at 5:18-21, 11:5-8, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al.*, No. 16-mc-00040-Pl (S.D.N.Y. May 18, 2018), ECF No. 39.

On February 3, 2016, the United States filed another Statement of Interest in this Court, discussing multiple bases as to why Plaintiff's subpoenas served on the financial institutions were improper, including that Plaintiff's inability "to attach any Russian assets held in the United

States or abroad to satisfy that judgment" meant that discovery of "information about those assets [was] irrelevant to post-judgment proceedings." Statement of Interest of the United States at 6, ECF No. 151. Plaintiff then filed a motion requesting the Court to enter an additional judgment for increased sanctions on Russia. *See* Pl.'s Application for Additional J., ECF No. 153. The United States subsequently filed a Supplemental Statement of Interest, which again reiterated that "it is clear that the sanctions judgment itself is unenforceable against any assets," and "thus no discovery is proper." Supplemental Statement of Interest of the United States at 7, ECF No. 155. Almost two years later, on March 13, 2018, Plaintiff moved for increased sanctions. *See* Pl.'s Mot. for Increased Sanctions, ECF No. 168.

Although the Court has not yet ruled on the March 2018 motion for increased sanctions, Plaintiff again requested that the Court grant that motion on June 6, 2018. *See* Pl.'s Req. for Relief on Pl.'s Mot. for Increased Sanctions, ECF No. 171. Most recently, on March 25, 2019, Plaintiff moved for an Order to Show Cause directed at the United States, in response to the Court's instruction that the United States "reassess its position with respect to this litigation, and notify this Court of its updated position in a timely manner." Pl.'s Mot. for Order to Show Cause at 2, ECF No. 175; *see also* Motions Hearing Tr. at 15:13-14, ECF No. 164.

## II.     TENAM AND THE INSTANT SUBPOENA

Tenam is a Maryland corporation that has its principal place of business in Washington, DC. *See* Newton Decl. ¶¶ 2-3. Tenam's business activities consist of the sale, marketing, and distribution of uranium products to utility companies in the United States. *Id.* ¶¶ 7-8. Since its establishment in October 2010, Tenam is and has been a private corporation that is not subject to the direction, control, or management of Russia or any state-owned corporation. *Id.* ¶¶ 5-7.

Tenam is a wholly owned U.S. subsidiary of the private Russian company, Joint Stock Company "TENEX" ("Tenex"), which is a global supplier of nuclear fuel cycle products. *Id*. ¶ 5.  Tenex's shares are one hundred percent owned by another private corporation, Joint Stock Company "Atomic Energy Power Corporation" ("Atomenergoprom").   *Id*. ¶ 6. Atomenergoprom's shares are one hundred percent owned by State Atomic Energy Corporation "ROSATOM" ("Rosatom").  *Id*.

Plaintiff's Subpoena, dated March 26, 2019, was issued to Tenam on March 27, 2019 in an effort by Plaintiff to obtain information concerning Tenam's business and assets in the United States.  *See* Newton Decl. Ex. A.  Tenam has never been a party to these proceedings, and had no involvement in this case until this Subpoena.  Specifically, the Subpoena calls for Tenam to produce certain documents by April 12, 2019 and for a representative of Tenam to appear for a deposition on May 1, 2019.  *Id.*  For the reasons stated herein and as explained in Tenam's Objections to Plaintiff's Subpoena, Tenam objects to Plaintiff's Subpoena as a matter of law, and, accordingly, Plaintiff's Subpoena must be quashed.  *See id*. Ex. B. (Objections of Non-Party Tenam to Plaintiff's Subpoena Duces Tecum and Ad Testificandum).

## <u>ARGUMENT</u>

The discovery Plaintiff seeks through this Subpoena is improper because it would not lead to the identification of any executable assets, and thus is irrelevant as a matter of law. Further, Plaintiff's requests are overbroad, oppressive, and would place an undue burden on Tenam, which is not a party in this dispute.  And, as the United States has repeatedly indicated throughout this case, such requests implicate U.S. foreign policy interests and could pose significant risks to the U.S.-Russia relations.

I.     **THE COURT SHOULD QUASH PLAINTIFF'S SUBPOENA BECAUSE IT SEEKS IRRELEVANT INFORMATION, IS OVERBROAD AND UNDULY BURDENSOME, AND PRESENTS SERIOUS CONCERNS FOR U.S. FOREIGN POLICY**

This Court "should not neglect [its] power to restrict discovery . . . . [and] exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citation omitted).   In evaluating a motion to quash, the court has "broad discretion in determining whether a subpoena" satisfies the basic standards for discovery articulated in the Federal Rules.  *Linder v. NSA*, 94 F.3d 693, 695 (D.C. Cir. 1996).  As such, discovery should be limited where "the burden or expense . . . outweighs its likely benefit," where the information sought is not relevant to a party's claims, or where the requested discovery "subjects a person to undue burden."  *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv).

A.     **The Subpoena Does Not Meet The Requirements Under Rules 26 And 69 Of The Federal Rules Of Civil Procedure Because It Requests Information Irrelevant To Satisfaction Of The Interim Judgment**

Post-judgment discovery related to Tenam's U.S. assets, in order to enforce the Interim Judgment, is irrelevant and misplaced.  Tenam is not the judgment debtor here; nor is Tenam owned or controlled by Russia, and thus its assets cannot be used to satisfy a judgment entered against Russia.  For the purposes of post-judgment discovery under Federal Rule of Civil Procedure 69, the "information relevant to [a party's attempt to collect] would be (1) the location of the judgment debtor's assets which would satisfy the judgment and (2) the source of those assets." *Elise Trust v. United States SEC*, No. 10-mc-724, 2011 U.S. Dist. LEXIS 157867, at *6 (D.D.C. January 10, 2011) (alteration in original); *see also Brown v. Brockett*, No. 17-mc-2931-MKB-SJB, 2018 U.S. Dist. LEXIS 113749, at *20 (E.D.N.Y. July 6, 2018) ("[L]ike with all discovery under the Federal Rules 'the inquiry must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of

the debtor or third persons.'"").  The discovery Plaintiff seeks from Tenam, particularly concerning Tenam's own assets and operations, will not identify the location and source of *Russia's* assets that "would satisfy the judgment."  *Elise Trust*, 2011 U.S. Dist. LEXIS 157867, at *6.  Further, to the extent the discovery requests concern any assets that may be attributable to Russia, Plaintiff's requests remain irrelevant to post-judgment proceedings, given that Plaintiff still could not attach any Russian assets held in the United States or abroad to satisfy this judgment.  *See Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014) (explaining that "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place" under Federal Rule of Civil Procedure 26).

### 1. Tenam's U.S. Assets Cannot Satisfy The Interim Judgment

As described above, and in the Newton Declaration, Tenam is a privately-held company incorporated in Maryland, with its principal place of business in the District of Columbia.  Tenam maintains its own board of directors and employees, and conducts its own business with U.S. customers, supplying nuclear fuel for commercial use.  *See* Newton Decl. ¶¶ 8-10.  Tenam is 100% owned by Tenex, a Russian company, which in turn is indirectly held by the State Atomic Energy Corporation "ROSATOM."  *See id*. ¶¶ 6-7.  Nonetheless, in the Subpoena, Plaintiff appears to conflate these various agencies, instrumentalities, and privately-held entities with Russia itself.  *See, e.g.*, Document Request No. 1 (requesting "[d]ocuments [s]ufficient [t]o identify any and all Tenam financial accounts maintained in the United States by or on behalf of TENEX, Rosatom, or the Russian Federation").  Plaintiff's discovery requests on Tenam thus are irrelevant because the requested information could never lead to executable assets of the judgment debtor.  Tenam's assets cannot possibly satisfy the Interim Judgment, as Plaintiff cannot pierce the corporate veil, through multiple layers of corporate separateness, between Tenam, a private, separate juridical entity, and the sovereign judgment debtors.

An "indispensable aspect of the public corporation" is the existence of its "[s]eparate legal personality." *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 625 (1983). The "individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). Consequently, a "corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary." *Id.*

That the ultimate shareholder in a chain of corporate ownership "is a foreign state does not change the analysis." *See Dole Food*, 538 U.S. at 475; *see also Estate of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 19 (D.D.C. 2011) (reiterating that "the presumption of independent status" between foreign sovereigns and their state-owned enterprises has "the practical effect of" ensuring those enterprises "could not automatically be liable for the debts of its associated foreign state," and that "mere ownership of a foreign entities' stock does not render assets held by that entity subject to execution under" the FSIA, 28 U.S.C. § 1610(b)). Indeed, this Court has reached that very same conclusion with respect to other entities indirectly held by Russia and its agencies and instrumentalities. In *Allen v. Russian Federation*, the court rejected the plaintiff's attempts to disregard the separate legal personality of Rosneft, a company incorporated in Russia and was majority-owned by Rosneftegaz, which in turn is a wholly-owned subsidiary of the Russian Federation. 522 F. Supp. 2d 167, 184-85 (D.D.C. 2007). The court reiterated that under these circumstances, without "show[ing] something more," indirect ownership and control by the foreign sovereign is insufficient "to pierce the corporate veil separating Rosneftegaz and the Russian Federation and to treat them as a single entity." *Id.*

Likewise, Tenam's corporate structure, and that of its parent company, Tenex, does not permit Plaintiff to disregard Tenam's independent legal status.  Here the affiliation is even more remote than the one this Court determined was insufficient to pierce the corporate veil in *Allen*.

Even if Tenam were considered an "agency or instrumentality" of Russia, which it is not, Tenam's assets still could not possibly satisfy a judgment against the state, and thus any discovery concerning Tenam's assets and operations is irrelevant.  As discussed above, the agencies and instrumentalities of foreign sovereigns are also presumed to be separate juridical entities from the foreign state.  Consequently, a plaintiff cannot use the assets of such agencies and instrumentalities to satisfy a judgment against a foreign state.  *See Bayer & Willis Inc. v. Republic of the Gambia*, 283 F. Supp. 2d 1, 4 (D.D.C. 2003) ("[A]n entity's status as an agency or instrumentality of a foreign sovereign is insufficient, without more, to establish that the entity is liable for the debts of the foreign state."); *see also Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1069-73 (9th Cir. 2002) (finding that the plaintiff could not overcome presumption of state-owned Iranian bank's separate juridical status, and thus could not execute on the bank's assets to satisfy judgment against Iran); *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 9 F. Supp. 2d 300, 307 (S.D.N.Y. 1998) (holding that Peruvian-owned corporation's property "cannot [be] attached by [the plaintiff] to collect on a debt owed by Peru" where the plaintiff failed to overcome the presumption that the corporation was separate juridical entity).

Plaintiff has offered no evidence that would permit piercing (multiple layers of) the corporate veil, such that the discovery requested from Tenam would be relevant to Plaintiff's satisfaction of the Interim Judgment.  As Tenam is incorporated in Maryland, *see* Newton Decl. ¶ 2, Maryland's rules on veil piercing are relevant here.  A court's "power to pierce the corporate veil" between parent and subsidiary companies "[must] be exercised with extreme

circumspection." *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 516 (D. Md. 2013) (alterations in original). "Substantial ownership of a corporation" alone does not permit piercing of the corporate veil; rather, "[w]ith respect to a parent corporation and its subsidiary, a court will pierce the corporate veil to reach a parent corporation when the parent 'dominates [its] subsidiary to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *Id.* (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)); *see also Johnson-Tanner v. First Cash Fin. Servs.*, 239 F. Supp. 2d 34, 38-39 (D.D.C. 2003) (considering "whether the parent corporation 'so dominated the [subsidiary] corporation as to negate its separate personality'" and thus "blur[red] any distinction between the two companies' respective personalities"). Nothing here suggests that Tenam lacks "separate corporate interests" or its own legal personality from that of its parent company Tenex, much less from any foreign sovereign indirect shareholders. And Plaintiff's speculation alone is insufficient to conclude otherwise.

The necessity for such a showing is particularly great in the context of post-judgment discovery. Ordinarily, "judgment creditors cannot typically compel disclosure of assets of non-parties" under Rule 69 of the Federal Rules of Civil Procedure. *See Falicia v. Advanced Tenant Servs.*, 235 F.R.D. 5, 7 (D.D.C. 2006). In order to pursue post-judgment discovery concerning the financial affairs of a non-party, "there must be facts before the Court to show" the alleged relationship the non-party has with the judgment debtor. *See Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993) (considering non-party's objections to the plaintiff's subpoena predicated on an "alleged alter ego relationship with the judgment debtor"); *see also Falicia*, 235 F.R.D. at 7-8 (finding that

"discovery is permissible when the parties are closely related and 'reasonable doubts' have been raised concerning 'the good faith of the transfer' of assets between" the judgment debtor and the non-party).

Moreover, Rule 69 does not allow Plaintiff "to engage in a fishing expedition under the guise of post-judgment discovery to determine if a basis exists to pierce the corporate veil, even though no facts currently suggest that piercing is appropriate." *See Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, No. 11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751, at *4-5, 9-11 (E.D. Ky. Nov. 20, 2012) (rejecting plaintiff's efforts to discover information from an alleged subsidiary, "without any factual support" regarding the existence of an alter ego relationship or "suggesting that veil piercing is appropriate").  Through this Subpoena, however, Plaintiff has set out on exactly that type of "fishing expedition."  Several of the Document Requests and Deposition Topics identified in the Subpoena amount to nothing more than a vain attempt to contrive some basis by which to disregard Tenam's separate legal personality.  *See, e.g.*, Document Request No. 5 (requesting "[d]ocuments [s]ufficient [t]o describe Tenam's relationship with Rosatom, including, but not limited to, the corporate relationship between Tenam and Rosatom; Rosatom's percent ownership of Tenam; Rosatom's direction and control of Tenam's corporate activities; any overlapping members of Tenam's board of directors and Rosatom's board of directors; any employees of Tenam who are also employees of Rosatom; evidence that Tenam and Rosatom maintain separate corporate funds for tax purposes or otherwise");   Document Request No. 6 (requesting the same with respect to "Tenam's relationship with TENEX").

Plaintiff's attempt to discover Tenam's U.S. assets, and efforts to use Tenam to solicit information about other entities in its corporate structure are thus irrelevant and improper.  This

Court should "not allow [Plaintiff] to go on a 'fishing expedition' with the mere 'hope' that it will obtain relevant information" that would allow Plaintiff to pierce the corporate veil between Tenam and its direct and indirect shareholders.  *See United States v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 37 (D.D.C. 2012).  Plaintiff offers no evidence to suggest they can meet the predicates for veil piercing under the applicable Maryland law.

> **2.      Plaintiff's Discovery Requests Are Also Irrelevant Because Plaintiff Cannot Attach Any Other Assets For Which It Seeks Discovery In Order To Enforce The Interim Judgment**

To the extent any of Plaintiff's requested discovery seeks information concerning U.S. assets actually attributable to Russia, Plaintiff's Subpoena is premature in that it has not first obtained an order pursuant to 28 U.S.C. § 1610(c).  In addition, discovery regarding any such Russian assets remains irrelevant because none of the exceptions to execution immunity set forth in § 1610 of the FSIA authorize execution against Russian assets for purposes of satisfying the Interim Judgment.  *See NML Capital, Ltd.*, 573 U.S. at 144.

As a threshold matter, Plaintiff should not be permitted to solicit discovery absent a § 1610(c) order.  *See Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 11 (D.D.C. 2015) (finding that a § 1610(c) order only "entitle[s plaintiffs] to begin enforcing their presumptively valid judgments" and does not "authorize the attachment or execution upon any particular property"); *Bayer & Willis Inc.*, 283 F. Supp. 2d at 3, 8 (D.D.C. 2003) (dismissing writs of attachment and interrogatories against third-party garnishees that were improperly served because the court had not yet issued a § 1610(c) order); *see also* Telephone Conference Tr. 4:5-7, *Micula v. Gov't of Romania*, No. 15-mc-0107 (S.D.N.Y. Sept. 3, 2015), ECF No. 83 (determining whether a "reasonable amount of time" had passed in order to issue a § 1610(c) order to allow petitioners to begin discovery of Romanian assets); *Avelar v. J. Cotoia Const., Inc.*, No. 11-cv-2172, 2011 U.S. Dist. LEXIS 126487, at *21 n.8 (E.D.N.Y. Nov. 2, 2011) ("[T]he FSIA requires that *any steps*

taken by a judgment creditor to enforce the judgment must be pursuant to a court order authorizing the enforcement . . . .") (emphasis added).

In addition, to obtain the requisite pre-execution court order under § 1610(c), Plaintiff must identify the specific property to be executed against and must demonstrate that it falls within one of the FSIA's exceptions to immunity from execution. *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011) (affirming order quashing subpoenas *duces tecum* issued to non-parties). Thus, attachment of Russia's assets or other property would be improper without prior judicial determination that Plaintiff has met its burden of demonstrating that such assets are not immune from attachment and execution. *See id.* (noting that the "explicit cross-reference to § 1610(a) and (b) [in] § 1610(c) clearly signals that execution depends on a judicial determination that the property at issue falls within one of the exceptions to immunity set forth in those subsections").

More importantly, and as the United States has discussed at length in its multiple Statements of Interest previously submitted in this case, the FSIA does not permit attachment of Russian assets in the United States to satisfy the Interim Judgment, thus rendering discovery concerning any such assets irrelevant and impermissible. *See* Statement of Interest of the United States at 7-11, ECF No. 151; Supplemental Statement of Interest of the United States at 6-8, ECF No. 155. Only pursuant to the FSIA may a judgment creditor obtain and enforce judgments against a foreign sovereign in U.S. courts. *See* 28 U.S.C. § 1609 ("[T]he property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in" §§ 1610 and 1611); *see also Arg. Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-435 (1989) (discussing the FSIA as "the sole basis" for obtaining jurisdiction over foreign sovereigns in U.S. courts). In addition, and as the D.C. Circuit has concluded, the FSIA

"explicitly contemplates that a court may . . . be unable to enforce its judgment [against a foreign sovereign] unless the foreign state holds certain kinds of property subject to execution." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377 (D.C. Cir. 2011); *see also In re Grand Jury Subpoena*, 749 F. App'x 1, 2, 4 (D.C. Cir. 2018) (acknowledging the district court's ability to order contempt sanctions against a foreign sovereign but noting that "[w]hether and how that sanction can be executed" remains "a separate question"). This Court has also recognized such a distinction when it granted Plaintiff's motion for contempt sanctions. *See Agudas Chasidei Chabad of United States v. Russian Fed'n*, 915 F. Supp. 2d 148, 152 (D.D.C. 2013) (differentiating between the "court's authority to *issue* sanctions" and its power to "*enforce* them," and acknowledging that "the latter is carefully restricted by the FSIA") (emphasis original).

As referenced above, the only exceptions to immunity from attachment and execution are enumerated in 28 U.S.C. § 1610. None of these exceptions apply here, thus prohibiting Plaintiff from executing the Interim Judgment against Russian assets. *See Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007) ("A review of the relevant sections, § 1610 and § 1611, shows that they do not present a situation in which the order could stand. Those sections describe the available methods of attachment and execution against property of foreign states. Monetary sanctions are not included."). Russia has not made a specific waiver of immunity. *See* 28 U.S.C. § 1610(a)(1). The Interim Judgment does not arise out of a claim based on commercial activity. *See id.* § 1610(a)(2). The Interim Judgment is not "based on an order confirming an arbitral award rendered against the foreign state" (§ 1610(a)(6)), nor does it implicate "any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or

its employees under a policy of automobile or other liability or casualty insurance" (§ 1610(a)(5)). And Plaintiff's underlying claim was not based on the FSIA's terrorism exception to jurisdictional immunity. *See* § 1610(a)(7).

Finally, the Interim Judgment does not "relate[] to a judgment establishing" the types of "rights in property" identified in §§ 1610(a)(3) and 1610(a)(4). The Interim Judgment for which Plaintiff seeks to enforce was the result of a default judgment ordering specific performance that Russia return the Collection to Plaintiff. *See* Order Grant. Pl.'s Mot. for Entry of Default J. Against All Ds. at 2, ECF No. 80. That Interim Judgment does not establish any property rights on the part of Plaintiff, but rather issues sanctions against Russia following noncompliance the Court's specific performance order. *See Agudas Chasidei Chabad v. Russian Fed'n*, 128 F. Supp. 3d 242, 245, 249 (D.D.C. 2015); *see also* Statement of Interest of the United States at 10, ECF No. 151. Consequently, because none of the § 1610 exceptions to execution immunity allow Plaintiff to attach Russian assets in satisfaction of the Interim Judgment, discovery into any such assets cannot possibly be relevant, and should not be permitted by this Court.

### B.    Plaintiff's Discovery Requests Are Overly Broad, Oppressive, And Unduly Burdensome

Aside from being completely irrelevant to satisfaction of the Interim Judgment, Plaintiff's discovery requests are also overbroad, oppressive, and place an undue burden on Tenam. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *Kellogg*, 284 F.R.D. at 37 (stating that the courts "should not endorse" the "discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests"). "An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." *Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 452-54 (D.D.C. 2002) (granting non-

parties' motions to quash the plaintiff's subpoena in part due to the scope of the discovery sought and the fact that it was obtainable from another source).   Courts consider the subpoena recipient's status as a "non-party" in assessing "the burden of imposing discovery."   *Id.* at 452. The irrelevance of Plaintiff's discovery requests has already been discussed above.   These requests, however, also impose an undue burden on Tenam, given their breadth, the lack of particularity with which the documents are described, and the burden imposed to Tenam as a non-party to this action.

As an initial matter, several of Plaintiff's requests concerning Tenam's corporate structure and that of parent company (*see* Document Request Nos. 2, 3, 5, 6 and Deposition Topic Nos. 4, 5, 7, 8) seek information that is publically available, which Plaintiff could obtain without the need for discovery on Tenam.   *See* Newton Decl. ¶ 5; *id.*, Ex. C at 30 (International Business Relations, *Russian Uranium Enrichment Industry State & Prospects of Development 2018*); *id.*, Ex. D (Rosatom Organizational Chart).   The same can be said for Document Request No. 8 regarding a description of "Tenam's commercial activities within the United States on behalf of" its parent company.   *See* Newton Decl. ¶ 9; *id.*, Ex. C at 124-25.   On that basis alone, "the court must limit the . . . extent of discovery" here.   *See* Fed. R. Civ. P. 26(b)(2)(C); *Wyoming*, 208 F.R.D. at 454.

In addition, Plaintiff's requests that Tenam produce information about any "related companies" is far too broad.   *See* Document Request No. 3 (calling for production of "documents sufficient to identify Tenam's corporate structure with respect to its Russian parent, subsidiaries and/or sister corporations, including, but not limited to, the identification of any corporate parent, subsidiary, predecessor, or successor company and the corporate structure of any such related companies").   Indeed, post-judgment discovery requests that "could be interpreted to implicate"

a multitude of state-owned enterprises and other entities are on their face overbroad, and thus place an undue burden on the subpoena recipient. *See SerVaas Inc. v. Republic of Iraq*, No. 09-cv-1862-RMB-RLE, 2013 U.S. Dist. LEXIS 86879, at \*11 (S.D.N.Y. June 19, 2013).

Several of Plaintiff's requests are also overbroad on their face because they are vague and lack particularity. *See* Document Request No. 4 (requesting "documents sufficient to show *all services* Tenam has provided to or for the Russian Federation) (emphasis added); Deposition Topic No. 6 (same). Plaintiff cannot expect Tenam to respond to such generalized requests. *See Buie v. District of Columbia*, 327 F.R.D. 1, 10 (D.D.C. 2018) (rejecting document requests for records concerning all disciplinary actions and the supervision of the underlying tortfeasors as "overly broad").

### C.   Plaintiff's Efforts To Enforce The Interim Judgment In This Way Could Seriously Affect Foreign Policy Interests

Plaintiff's attempt to enforce the Interim Judgment by first seeking discovery on the U.S. subsidiary of foreign company, with an eye towards enforcing the Interim Judgment against Russian assets, could substantially impact U.S. foreign relations. Inevitably, "[a]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States." *Verlinden B.V. v. Cent. Bank of Nig.*, 461 U.S. 480, 493 (1983). As the United States explained in its February 2016 Statement of Interest, "restraint of the assets of a foreign state, its agencies or instrumentalities, or its officials, in and of itself, can reasonably be expected to cause disruption to the activities of the entities whose assets are at issue and result in immediate and significant interference in U.S. relations with that foreign state." Statement of Interest of the United States at 15, ECF No. 151. Furthermore, "a fishing expedition into a foreign state's assets as well as those of its . . . affiliated entities" likely could "damage the United States' foreign policy interests, and such concerns are further heightened where the

underlying judgment (here, for monetary contempt sanctions) is unenforceable." *See* Supplemental Statement of Interest of the United States at 7-8, ECF No. 155.  Indeed, allowing "sweeping discovery into Russian property" could pave the way for potential "reciprocal orders being entered against the United States," as well as U.S. companies, in foreign courts. *See* Statement of Interest of the United States at 19-20, ECF No. 151.

## II.     THIS COURT SHOULD STAY ANY COMPLIANCE WITH THE SUBPOENA PENDING RESOLUTION OF THE OBJECTIONS OF THE UNITED STATES

Compliance with Plaintiff's Subpoena should be stayed until this Court has resolved the issues raised by the United States in its Statements of Interests, particularly in light of the foreign policy and other concerns expressed in those statements.  *See generally* Statement of Interest of the United States, ECF No. 151; Supplemental Statement of Interest of the United States, ECF No. 155.  "[T]he decision on whether to stay discovery is within the sound discretion of the district court."  *PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67, 78 (D.D.C. 2008). This Court should exercise that discretion here, given that requiring Tenam to respond to Plaintiff's discovery requests, before the Court has definitively ruled on the issues identified in the Statements of Interest, is premature, imprudent and could potentially be harmful to the United States' interests.  Furthermore, as discussed above, the issues raised by the United States are determinative of Plaintiff's efforts to enforce the Interim Judgment here as well.

The non-party banks' compliance with Plaintiff's subpoena in the related proceedings before the District Court for the Southern District of New York was stayed "[p]ending the entry of an order by the D.C. Court" that resolved these "issues raised in the Statement of Interest." *See* Stipulation and Order Regarding Resp. to Non-Party Subpoenas at 3, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al.*, No. 16-mc-00040-Pl (S.D.N.Y. Mar. 24, 2016), ECF No. 22.  The New York court subsequently denied Plaintiff's request to lift the stay in that

proceeding, as that this Court's "disposition of the statement of interest," and the issues raised therein, was still pending.  *See* Conference Tr. at 9:11-18, No. 16-mc-00040-Pl, (S.D.N.Y. May 18, 2018), ECF No. 39.  In particular, it noted that "[i]n the event that the D.C. court agrees with the government, plaintiff will likely be precluded from moving forward with the discovery it seeks via the subpoenas at issue here."  *Id.* at 10:6-9.  Here too, even if discovery on Tenam would give Plaintiff information regarding assets attributable to Russia (which as explained above, it cannot), the Court's agreement with the United States' position "likely [would] preclude[]" Plaintiff for pursuing the discovery requests served on Tenam.

Plaintiff's recent motion for an Order to Show Cause, which would require that the United States further substantiate its opinion and interests in this case, also underscores the importance of a conclusive resolution of these issues, before any post-judgment discovery takes place.  *See* Pl.'s Mot. for Order to Show Cause, ECF No. 175.  Thus, Tenam respectfully requests that the Court grant a stay of the Subpoena immediately, before any compliance is required, and until the Court has decided these issues put forth by the United States and in Plaintiff's related briefing.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Tenam's Motion to Quash Plaintiff's Subpoena, and stay any compliance with Plaintiff's discovery requests pending resolution of the issues identified in the United States' Statements of Interest.

Dated: April 11, 2019
      Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Carolyn B. Lamm*
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:      + 1 202 626 3600
Facsimile:      + 1 202 639 9355
clamm@whitecase.com
fvasquez@whitecase.com

*Counsel for Non-Party Tenex-USA Incorporated*