## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, )<br><br>*Plaintiff*, )<br><br>v. )<br><br>RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION; RUSSIAN STATE LIBRARY; and RUSSIAN STATE MILITARY ARCHIVE, )<br><br>*Defendants*. ) | Case No. 1:05-cv-01548-RCL |

## STATEMENT OF POINTS AND AUTHORITIES BY NON-PARTY TENEX-USA IN SUPPORT OF ITS MOTION UNDER RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR PARTIAL VACATUR OF THE DEFAULT JUDGMENT AND INTERIM JUDGMENT

January 22, 2020

**WHITE & CASE**LLP

Carolyn B. Lamm
Nicolle Kownacki
David Riesenberg
Ena Cefo
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

*Counsel for Non-Party Tenex-USA Incorporated*

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................3

    A.    Initial Decision on Jurisdiction and Appeal (2005-2008)...................................... 4

    B.    Default Judgment Ordering Specific Performance (2009-2014) ........................... 6

    C.    Contempt Sanctions and Post-Judgment Discovery (2015-2020) ........................ 8

ARGUMENT ...................................................................................10

    A.    Tenam Has Standing to Seek Partial Vacatur Under Rule 60(b) Because Plaintiff Is Attempting to Pierce Tenam's Corporate Veil Through Invasive and Burdensome Discovery................................... 11

    B.    The Judgments Should Be Partially Vacated Under Rule 60(b)(4) Because They Are Void as to Defendant Russian Federation Itself Under 28 U.S.C. § 1605(a)(3) ................................... 13

    C.    The Judgments Should Be Partially Vacated Under Rules 60(b)(4), (5), and (6) Because the Order of Specific Performance Is Contrary to Both the FSIA and U.S. Public Policy on Foreign Relations ............................ 16

CONCLUSION....................................................................................21

## TABLE OF AUTHORITIES

**CASES**                                                                 **Pages(s)**

*Agudas Chasidei Chabad v. Russian Fed'n,*
  528 F.3d 934 (D.C. Cir. 2008) .................................................................................. 6

*Am. Council of the Blind v. Mnuchin,*
  878 F.3d 360 (D.C. Cir. 2017) .......................................................................... 11, 19

*Autotech Techs. LP v. Integral Research & Dev. Corp.,*
  499 F.3d 737 (7th Cir. 2007) ................................................................................. 18

\* *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran,*
  734 F.3d 1175 (D.C. Cir. 2013) ....................................................................... 10, 15

*Binker v. Pennsylvania,*
  977 F.2d 738 (3d Cir. 1992) .................................................................................. 12

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.,*
  137 S. Ct. 1312 (2017) .......................................................................................... 18

*Combs v. Nick Garin Trucking,*
  825 F.2d 437 (D.C. Cir. 1987) ........................................................................ 10, 17

*Commodity Futures Trading Comm'n v. Nahas,*
  738 F.2d 487 (D.C. Cir. 1984) .............................................................................. 15

*David v. District of Columbia,*
  252 F.R.D. 56 (D.D.C. 2008) ................................................................................ 17

\* *De Csepel v. Republic of Hung.,*
  859 F.3d 1094 (D.C. Cir. 2017) ................................................................... 5, 15, 16

*Dunlop v. PAN AM,*
  672 F.2d 1044 (2d Cir. 1982) ................................................................................ 12

*Elliott v. Peirsol's Lessee,*
  26 U.S. 328 (1828) ................................................................................................ 10

*Eyak Native Village v. Exxon Corp.,*
  25 F.3d 773 (9th Cir. 1994) .................................................................................. 12

\* *Grace v. Bank Leumi Tr. Co.,*
  443 F.3d 180 (2d Cir. 2006) ............................................................................. 1, 12

ii

\* *Hardy Expl. & Prod. (India) v. Gov't of India,*
  314 F. Supp. 3d 95 (D.D.C. 2018) .......................................................................... 2, 17, 19-20

*Horne v. Flores,*
  557 U.S. 433 (2009) .................................................................................................. 11, 19

*Karsner v. Lothian,*
  532 F.3d 876 (D.C. Cir. 2008) ................................................................................. 17, 19

*Liljeberg v. Health Services Acquisition Corp.,*
  486 U.S. 847 (1988) ........................................................................................................ 11

*McKesson Corp. v. Islamic Republic of Iran,*
  672 F.3d 1066 (D.C. Cir. 2012) ..................................................................................... 17

*Mohammadi v. Islamic Republic of Iran,*
  947 F. Supp. 2d 48 (D.D.C. 2013) ............................................................................. 10-11

*Ohntrup v. Makina ve Kimya Endustrisi Kurumu,*
  760 F.3d 290 (3d Cir. 2014) .......................................................................................... 13

*Owens v. Republic of Sudan,*
  864 F.3d 751 (D.C. Cir. 2017) ................................................................................... 11, 20

*Philipp v. Fed. Republic of Ger.,*
  894 F.3d 406 (D.C. Cir. 2018) ................................................................................... 14-15

*Practical Concepts, Inc. v. Republic of Bolivia,*
  811 F.2d 1543 (D.C. Cir. 1987) ..................................................................................... 10

\* *Republic of Arg. v. NML Capital, Ltd.,*
  573 U.S. 134 (2014) .................................................................................................... 3, 13

*Republic of Austria v. Altmann,*
  541 U.S. 677 (2004) ................................................................................................... 17, 18

*Republic of Philippines v. Pimentel,*
  553 U.S. 851 (2008) .............................................................................................. 19, 20, 21

\* *S&S Mach. Co. v. Masinexportimport,*
  706 F.2d 411 (2d Cir. 1983) ...................................................................................... 2, 17-18

\* *Schubarth v. Fed. Republic of Ger.,*
  891 F.3d 392 (D.C. Cir. 2018) ............................................................................. 2, 5, 14, 15

iii

*Southerland v. Irons,*
   628 F.2d 978 (6th Cir. 1980) ................................................................................ 12

*Simon v. Republic of Hung.,*
   812 F.3d 127 (D.C. Cir. 2016) .......................................................................... 5, 15

*Technologists, Inc. v. Mir's Ltd.,*
   725 F. Supp. 2d 120 (D.D.C. 2010) ...................................................................... 17

\* *Vera v. Republic of Cuba,*
   867 F.3d 310 (2d Cir. 2017) ............................................................................... 3, 13

## STATUTES AND RULES

28 U.S.C. § 1603 ............................................................................................................ 5

28 U.S.C. § 1605(a)(3) ........................................................................................... *passim*

28 U.S.C. § 1608(e) ....................................................................................................... 7

28 U.S.C. § 1610(a) ...................................................................................................... 18

28 U.S.C. § 1610(a)(3) ............................................................................................... 8, 9

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 3, 13

Fed. R. Civ. P. 60(b) .......................................................................................... 1, 12, 13

Fed. R. Civ. P. 60(b)(4) ......................................................................................... *passim*

Fed. R. Civ. P. 60(b)(5) ......................................................................................... *passim*

Fed. R. Civ. P. 60(b)(6) ......................................................................................... *passim*

Fed. R. Civ. P. 69(a)(2) ............................................................................................ 3, 13

\* indicates authorities on which counsel chiefly relies

Non-Party TENEX-USA ("Tenam") respectfully moves this Court for an order partially vacating the Default Judgment (ECF No. 80, July 30, 2010) and Interim Judgment (ECF No. 144, Sept. 10, 2015) (together, the "Judgments") under Rules 60(b)(4), (5), and (6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

Under Rule 60(b)(4) of the Federal Rules of Civil Procedure, this Court should partially vacate the Judgments issued in this case as "void" for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). Under Rules 60(b)(5) and (6), this Court should also partially vacate the Judgments in accordance with the FSIA and the U.S. public policy on foreign relations, as articulated consistently by the United States since 2011.

As described below, non-Party Tenam has standing to request partial vacatur of the Judgments under Rule 60(b) as a "third party [which] is strongly affected by the judgment[s]" at issue. *E.g.*, *Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 188 (2d Cir. 2006) (permitting third-party movants to seek Rule 60(b) relief from a final judgment where plaintiff sought "to collect money from [the] movants" in addition to the original defendant).

Two specific aspects of the Judgments are subject to partial vacatur under Rule 60(b), as detailed below.[1]

***First***, the Default Judgment (and therefore the subsequent Interim Judgment) is partially void for lack of subject-matter jurisdiction under the FSIA as to *Defendant Russian Federation itself*—which is the *only* Defendant for which Plaintiff alleges even an attenuated connection to Tenam as a purported basis for its subpoena. Tenam's Suppl. Br. (Dec. 13, 2019) at 12-13, ECF

---

[1] These two grounds for vacatur directly correspond to two of the controlling questions of law set forth in Tenam's Motion to Certify the Court's Memorandum Order of December 20, 2019 for Interlocutory Appeal under 28 U.S.C. § 1292(b) and to Stay Discovery Pending Appeal, which was filed on the same day as the present Motion.

No. 196.  Under 28 U.S.C. § 1605(a)(3), "a foreign state itself does not lose immunity . . . *unless the allegedly expropriated property is located in the United States*."  *Schubarth v. Fed. Republic of Ger.*, 891 F.3d 392, 401 (D.C. Cir. 2018) (emphasis added).  The property at issue in this case is not located in the United States, and, accordingly, no exception to sovereign immunity is satisfied as to Defendant Russian Federation.

**Second**, the Judgments are also subject to partial vacatur because, as the United States has argued consistently, this Court's order of specific performance (as well as the contempt sanctions imposed to enforce that order) is contrary to the FSIA and U.S. public policy on foreign relations. *See, e.g.*, U.S. Statements of Interest, ECF No. 97 (June 15, 2011), ECF No. 111 (Aug. 29, 2012), ECF No. 134 (Feb. 21, 2014), ECF No. 149 (Oct. 23, 2015), ECF No. 151 (Feb. 2, 2016), ECF No. 155 (Mar. 28, 2016), ECF No. 190 (Nov. 26, 2019); *Hardy Expl. & Prod. (India) v. Gov't of India*, 314 F. Supp. 3d 95, 114 (D.D.C. 2018); *S&S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983).

Though neither of these Judgments were entered against Tenam—and, as Tenam maintains and as the Court has acknowledged, Plaintiff has shown no basis to pierce the corporate veils between Tenam, Tenam's parent companies, and the Russian Federation—Tenam nevertheless is adversely affected by these judgments.  Through its subpoena on Tenam, Plaintiff is explicitly trying "to obtain documents or other information regarding Russian Federation assets that may be available to satisfy" the Interim Judgment.  Pl.'s Opp'n to Tenam's Mot. to Quash (May 2, 2019) at 1, ECF No. 180.  As part of Plaintiff's attempts to pierce Tenam's corporate veil and attach "Russian Federation assets," Plaintiff's subpoena (ECF No. 176-3, Apr. 11, 2019) seeks invasive and burdensome discovery from Tenam.

Because the Judgments are subject to partial vacatur, Plaintiff's subpoena is improper under Rules 26(b)(1) and 69(a)(2) of the Federal Rules of Civil Procedure. The subpoena does not seek information relevant to the execution of attachable assets, as a matter of law. "[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place" under Rule 26(b)(1). *Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014). Moreover, a subpoena to enforce the "void" aspects of a judgment is also itself void. *See Vera v. Republic of Cuba*, 867 F.3d 310, 312, 321 (2d Cir. 2017) ("One [third-party] bank . . . refused to comply with the subpoena's request for information regarding Cuban assets located outside the United States. . . . Because the District Court lacked subject matter jurisdiction over Vera's action against Cuba, the subpoena served on [the third-party bank] to enforce the judgment entered in that action is void.").

As this Court held, post-judgment discovery should be foreclosed in the "absurd case where a plaintiff explicitly 'sought only information that could *not* lead to executable assets.'" Mem. Order (Dec. 20, 2019) at 4, ECF No. 198. This case is indeed such an "absurd case." *Id.* In this case, Plaintiff seeks discovery of Tenam *only* in aid of execution of the Judgments against assets belonging to Defendant Russian Federation—but the Judgments are *void* as to Defendant Russian Federation, as explained here. The absence of subject-matter jurisdiction and other defects underlying the Judgments warrant not only the partial vacatur of the Judgments, but also render Plaintiff's subpoena against Tenam invalid and unenforceable.

## BACKGROUND

As this Court is well aware, this case arises from Plaintiff's claims of ownership as to certain religious books, manuscripts, and artifacts (the "Collection"). In 2005, Plaintiff brought these claims against four distinct entities: Defendant Russian Federation, Defendant Russian

Ministry of Culture and Mass Communication ("RMCMC"), the Defendant Russian State Library ("RSL"), and the Defendant Russian State Military Archive ("RSMA"). *E.g.*, Pl.'s Compl. ¶¶ 2-5 (July 29, 2005), ECF No. 1-2, at 120-121.

In 2010, after the four Defendants defaulted, this Court issued a Default Judgment (ECF No. 80, July 30, 2010) directing the four Defendants to return the Collection to Plaintiff. In 2015, when the Collection was not returned, this Court then issued an Interim Judgment (ECF No. 144, Sept. 10, 2015) directing the four Defendants to pay contempt sanctions. Plaintiff has now commenced discovery in an attempt to enforce the Interim Judgment, including by serving a subpoena (ECF No. 176-3, Apr. 11, 2019) on Tenam. The Court denied Tenam's Motion to Quash this subpoena in its Memorandum Order (ECF No. 198, Dec. 20, 2019).

Significantly, Plaintiff's subpoena seeks information pertaining to an alleged connection between Tenam and *Defendant Russian Federation*. *See, e.g.*, Pl.'s Opp'n to Tenam's Mot. to Quash (May 2, 2019) at 1, ECF No. 180 ("The purpose of the subpoenas is to obtain documents or other information regarding *Russian Federation assets* that may be available to satisfy the judgments . . . ." (emphasis added)). Plaintiff has never alleged any connection whatsoever between Tenam and the other three Defendants.

To understand the context surrounding Tenam's grounds for partial vacatur of the Judgments, it is helpful to review briefly the record of this litigation.

A. **Initial Decision on Jurisdiction and Appeal (2005-2008)**

In its 2005 Complaint, Plaintiff invoked this Court's subject-matter jurisdiction specifically under the FSIA's so-called "expropriation exception," codified at 28 U.S.C. § 1605(a)(3). Pl.'s Compl. ¶ 37 (July 29, 2005), ECF No. 1-2, at 133. This subsection provides as follows:

> "A foreign state [including its agencies and instrumentalities] shall
> not be immune from the jurisdiction of courts of the United States .

4

. . in any case . . . in which rights in property taken in violation of international law are in issue and

that property . . . is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or

that property . . . is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . ."

28 U.S.C. § 1605(a)(3).

As the D.C. Circuit has explained, this provision grants subject-matter jurisdiction with respect to a particular defendant only where "one of two commercial-activity nexuses with the United States" is satisfied. *Simon v. Republic of Hung.*, 812 F.3d 127, 140 (D.C. Cir. 2016). Specifically, the applicability of either the "first clause" or "second clause" of "the commercial-activity nexus requirement" under § 1605(a)(3) depends on whether the defendant is either "the foreign state itself" or "an agency or instrumentality" under § 1603. *De Csepel v. Republic of Hung.*, 859 F.3d 1094, 1104-08 (D.C. Cir. 2017). Accordingly, "*[a] foreign state* loses its immunity if the claim against it satisfies the exception by way of *the first clause* of the commercial-activity nexus requirement; by contrast, *an agency or instrumentality* loses its immunity if the claim against it satisfies the exception by way of *the second clause*." *Schubarth*, 891 F.3d at 401 (quoting *De Csepel*, 859 F.3d at 1107 (emphasis added)).

Here, although Plaintiff named Defendant Russian Federation among the Defendants, Plaintiff has invoked exclusively the *second clause* of § 1605(a)(3) since the beginning of this litigation. Plaintiff's Complaint stated as follows: "This Court has jurisdiction over the subject matter of this action . . . because this is an action in which rights in property taken in violation of international law are in issue and that property is operated . . . by an agency or instrumentality of

the foreign state and that agency or instrumentality is engaged in commercial activity in the United States." Pl.'s Compl. ¶ 37 (July 29, 2005), ECF No. 1-2, at 133; *see also* Pl.'s Suppl. Br. in Opp'n to Mot. to Dismiss (Jan. 23, 2006) at 26-37, ECF No. 15-1 (invoking exclusively "[t]he second clause of Section 1605(a)(3) of the FSIA" as its basis for subject-matter jurisdiction).

Accordingly, in its 2006 Memorandum Opinion on subject-matter jurisdiction, the Court likewise focused narrowly upon whether subject-matter jurisdiction existed as to RSL and RSMA, the agencies and instrumentalities subject to the second clause of § 1605(a)(3). Mem. Op. on Juris. (Dec. 4, 2006) at 24-28, ECF No. 21. The Court made no finding as to subject-matter jurisdiction over Defendant Russian Federation, acknowledging expressly that "[t]he first clause of the expropriation exception" was "not at issue in this case." *Id.* at 24. On appeal, just as this Court had done in its 2006 decision, the D.C. Circuit also examined only the issue of subject-matter jurisdiction as to RSL and RSMA under the second clause of § 1605(a)(3) and did not address the first clause of § 1605(a)(3) as to Defendant Russian Federation. *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 946-48 (D.C. Cir. 2008).

After the D.C. Circuit upheld subject-matter jurisdiction as to RSL and RSMA, Defendants submitted a Diplomatic Note in protest. Diplomatic Note (June 26, 2009), ECF No. 71-1. Defendants also collectively reasserted their jurisdictional immunities under the FSIA and international law by filing an Amended Answer (ECF No. 63, Mar. 13, 2009), before finally withdrawing from any further participation in the litigation. Defs.' Statement as to Further Participation (June 26, 2009), ECF No. 71.

## B.    Default Judgment Ordering Specific Performance (2009-2014)

Now unopposed by any adversary in this litigation, Plaintiff's filings began to create confusion concerning the history of the case. On July 28, 2009, Plaintiff filed a Motion for Entry

of Default Against "*All Named Defendants*" (ECF No. 73) (emphasis added).  After all the Defendants were found to be in default, Plaintiff then also moved for entry of a default *judgment* "against *all Defendants*," even though Plaintiff necessarily could articulate a basis for subject-matter jurisdiction *only* over RSL and RSMA (and not Defendant Russian Federation).  *See* Pl.'s Mem. in Supp. of Mot. for Entry of Default Judgment Against All Defs. (May 5, 2010) at 50-51, 53, ECF No. 79-2 (emphasis added).

In July 2010, this Court entered the Default Judgment (ECF No. 80, July 30, 2010) ordering specific performance against the Defendants, *i.e.*, directing Defendants to return the Collection to Plaintiff.  Responding to the arguments before it (*i.e.*, Plaintiff's arguments), this Court referenced "All Defendants" in the Default Judgment.  *See* Default Judgment (July 30, 2010), ECF No. 80.  The Court also issued a Memorandum Opinion (ECF No. 81, July 30, 2010) setting forth the evidence and reasoning to demonstrate that Plaintiff had purportedly fulfilled the heightened standard for issuing default judgments against foreign sovereign entities under 28 U.S.C. § 1608(e).  As this provision sets forth, "[n]o judgment by default shall be entered . . . against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).  As with previous rulings in this case, the Memorandum Opinion devoted three paragraphs to this Court's subject-matter jurisdiction over RSL and RSMA—but, once again, did not identify *any* basis for subject-matter jurisdiction over *Defendant Russian Federation itself*. Mem. Op. (July 30, 2010) at 10, ECF No. 81.  This Court made no suggestion that the first clause of 28 U.S.C. § 1605(a)(3)—or any other exception to sovereign immunity—applied in this case to Defendant Russian Federation itself.

Shortly thereafter, in June 2011, the United States made its first appearance in this litigation, filing its first of seven Statements of Interest in this case. *See* U.S. Statements of Interest, ECF No. 97 (June 15, 2011), ECF No. 111 (Aug. 29, 2012), ECF No. 134 (Feb. 21, 2014), ECF No. 149 (Oct. 23, 2015), ECF No. 151 (Feb. 3, 2016), ECF No. 155 (Mar. 28, 2016), ECF No. 190 (Nov. 26, 2019).

### C.    Contempt Sanctions and Post-Judgment Discovery (2015-2020)

In 2015, upon a motion by Plaintiff, after the Defendants failed to return the Collection, this Court entered the Interim Judgment of Accrued Sanctions (ECF No. 144, Sept. 10, 2015). The Interim Judgment specifically "found . . . the Russian Federation . . . to be in civil contempt for failure to comply" with the Default Judgment, even though the Court's accompanying Memorandum Opinion (ECF No. 143, Sept. 10, 2015) did not identify any basis for this Court's subject matter jurisdiction over Defendant Russian Federation. Interim Judgment (Sept. 10, 2015) at 1, ECF No. 144 (ordering that "plaintiff recover from defendants, jointly and severally").

Subsequently, Plaintiff began to seek "information regarding *Russian Federation assets* . . . to satisfy the judgments of this Court" through execution under 28 U.S.C. § 1610(a)(3). Pl.'s Opp'n to Tenam's Mot. to Quash (May 2, 2019) at 1, ECF No. 180. This included Plaintiff serving a subpoena against Tenam in March 2019, although Plaintiff admittedly has never made any claim against Tenam or its parent companies (Tenex, Atomenergoprom, and Rosatom).

Plaintiff's subpoena on Tenam seeks information and possible depositions, including with regard to "any and all Tenam financial accounts maintained in the United States by or on behalf of . . . *the Russian Federation.*" Exhibit A to Newton Decl. (Apr. 11, 2019) at 10, ECF No. 176-3 (emphasis added). Plaintiff has never suggested—and indeed cannot—that it is seeking

information from Tenam regarding assets of the agency and instrumentality defendants, RSL and

RSMA, which lack even an attenuated connection to Tenam.

Tenam opposed the subpoena by filing a Motion to Quash (ECF No. 176, Apr. 11, 2019),

on the basis that Tenam was not the alter ego or agent of Defendants and that no assets existed as

a matter of law that may be attached or seized pursuant to 28 U.S.C. § 1610(a)(3). As a third party

with no relationship to the underlying dispute, Tenam explicitly "reserve[d] all rights and

defenses," including "any sovereign immunities" that might apply to "the Russian Federation or

other sovereign agencies." Tenam's Mem. in Supp. of Mot. to Quash (Apr. 11, 2019) at 1, ECF

No. 176-1. Once again, the United States filed a Statement of Interest, which opposed Plaintiff's

request for relief on the same grounds asserted by Tenam. *See* U.S. Statement of Interest (Nov.

26, 2019) at 3, ECF No. 190 ("Plaintiff's subpoenas were legally improper because monetary

contempt sanctions cannot be enforced against foreign states under U.S. or international

law . . . .").

After Plaintiff unexpectedly changed tactics during the oral hearing and began to argue that

§ 1610(a)(3) is satisfied in this case by the Default Judgment (rather than just the Interim

Judgment), Tenam requested permission to submit a Supplemental Brief, which this Court

permitted. *See, e.g.*, Mem. Order (Dec. 20, 2019) at 6, ECF No. 198 ("The Court authorized

supplemental briefing on new issues raised during the December 3, 2019 motions hearing."). As

authorized by this Court, Tenam reasserted its objections based upon 28 U.S.C. § 1610(a)(3).

Tenam's Suppl. Br. (Dec. 13, 2019) at 13-19, ECF No. 196. Tenam also set forth its objections to

this Court's improper exercise of subject-matter jurisdiction as to Defendant Russian Federation

under 28 U.S.C. § 1605(a)(3) and improper order of specific performance in contravention of the

FSIA and the United States' foreign policy interests. *Id.* at 11-13. Despite Tenam's objections—

and the consistent urging of the United States—this Court declined to quash Plaintiff's subpoena against non-Party Tenam.  Mem. Order (Dec. 20, 2019), ECF No. 198.

## ARGUMENT

As detailed below, the Judgments underlying Plaintiff's subpoena order should be partially vacated under Rules 60(b)(4), (5), and (6) of the Federal Rules of Civil Procedure.

Under Rule 60(b)(4), the Court must grant relief from default judgment in cases where the judgment is "void."  Fed. R. Civ. P. 60(b)(4).  Where a motion under Rule 60(b)(4) is well founded, the void judgment *must* be vacated as a matter of law.  "[T]here is no question of discretion on the part of the court when a motion is under Rule 60(b)(4)."  *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987) (citations omitted); *see also Elliott v. Peirsol's Lessee*, 26 U.S. 328, 340 (1828) (instructing that judgments in excess of subject-matter jurisdiction "are not voidable, but simply void").

In addition, motions under Rule 60(b)(4) "are not governed by a reasonable time restriction," and must be granted (even after default) regardless of when the Motion is filed.  *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1179-80 (D.C. Cir. 2013) (rejecting argument that a Rule 60(b)(4) motion was barred when filed by a foreign sovereign a year after a default); *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987) (rejecting argument that a Rule 60(b)(4) challenge to the court's subject-matter jurisdiction under the FSIA was barred when filed years after a final default judgment was entered).  A judgment is void "even after final judgment if the issuing court lacked subject-matter jurisdiction, regardless of whether there existed an 'arguable basis' for jurisdiction."  *Bell Helicopter*, 734 F.3d at 1181.  The party claiming subject-matter jurisdiction has the "burden of proving that jurisdiction exists."  *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 61

10

(D.D.C. 2013).

Rule 60(b)(5) provides that a court "may relieve a party" from an injunction if "applying [the injunction] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). For example, "a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017) (reversing the District Court's denial of plaintiff's Rule 60(b)(5) motion and instructing the District Court to consider, with adequate evidentiary support and reasoning, the equitableness of the injunction) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). The "party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.*

Finally, Rule 60(b)(6) permits a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988); *Owens v. Republic of Sudan*, 864 F.3d 751, 813 (D.C. Cir. 2017) (finding that the factors for Rule 60(b)(6) review were satisfied where a "novel question" of law implicated substantial damages award against foreign sovereign defendant).

### A.    Tenam Has Standing to Seek Partial Vacatur Under Rule 60(b) Because Plaintiff Is Attempting to Pierce Tenam's Corporate Veil Through Invasive and Burdensome Discovery

In its Response to Tenam's Supplemental Brief, Plaintiff suggested (without support) that Tenam lacks "standing to mount a collateral attack on the Court's final judgment" because Tenam is not a Defendant in this litigation. Pl.'s Suppl. Mem. (Dec. 18, 2019) at 7, ECF No. 197.

11

Plaintiff's argument must be rejected, however, because it is contrary to well-established case law regarding third parties' entitlement to seek vacatur under Rule 60(b) of the Federal Rules of Civil Procedure, as set forth below.

Under Rule 60(b), any "third party [which] is strongly affected by the judgment[s]" at issue may pursue vacatur. *Bank Leumi Tr. Co.*, 443 F.3d at 188. In the *Bank Leumi* case, for example, the Second Circuit permitted certain third-party movants to seek relief from a final judgment under Rule 60(b) based upon the plaintiff's "strategy . . . to collect money from [the] movants" in addition to collecting from the original defendant. *Id.* The same rule has been applied in a number of decisions by the U.S. Courts of Appeals. *E.g.*, *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994) ("[A] nonparty may seek relief from a judgment . . . if the nonparty's interests are directly affected."); *Dunlop v. PAN AM*, 672 F.2d 1044, 1052 (2d Cir. 1982) ("Although Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments, . . . [the movants] were sufficiently connected and identified with the . . . [litigation] to entitle them to standing to invoke Rule 60(b)(6)."); *Binker v. Pennsylvania*, 977 F.2d 738, 745 (3d Cir. 1992) ("[N]onparties are permitted to appeal [under Rule 60(b)] where the equities favor hearing the appeal, where the nonparties participated in the settlement agreement, and where the nonparties had a stake in its proceeds discernable from the record"); *Southerland v. Irons*, 628 F.2d 978, 980 (6th Cir. 1980) ("Rule 60(b) by its own terms does not limit the court's power to set aside a judgment induced by fraud. Furthermore, a claim of fraud on the court may be raised by a non-party.").

Much like in *Bank Leumi*, Tenam's standing under Rule 60(b) arises here due to Plaintiffs' "strategy . . . to collect money from [the] movant[]," which is Tenam itself. *See Bank Leumi*, 443 F.3d at 188. As the Court is aware, Plaintiff is presently seeking to obtain invasive and burdensome

discovery from Tenam as part of Plaintiff's attempts to pierce Tenam's corporate veil and attach "Russian Federation assets."  Pl.'s Opp'n to Tenam's Mot. to Quash (May 2, 2019) at 1, ECF No 180.

Tenam thus has a direct interest in the partial vacatur of the Judgments in this case.  If Plaintiff "cannot attach the targeted property" referenced in the subpoena based on either of the grounds for partial vacatur referenced below in Parts B and C, then the requested "discovery would be irrelevant." *Ohntrup v. Makina ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 297 (3d Cir. 2014); *see also NML Capital*, 573 U.S. at 144 (explaining that "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place" under Rule 26(b)(1)). Indeed, such information is neither "relevant to" nor "proportional to the needs of" any valid post-judgment execution.  *See* Fed. R. Civ. P. 26(b)(1), 69(a)(2).  And, as the Second Circuit explained in the analogous *Vera* case, any post-judgment subpoena seeking information to aid the execution of one of the invalid aspects of the Judgment is necessarily invalid as well.  *Vera*, 867 F.3d at 312, 321 (finding that "the subpoena issued to enforce the invalid judgment was void").

Accordingly, because Plaintiff's efforts at discovery and veil-piercing are presently targeting Tenam's direct interests, Tenam is entitled to move under Rule 60(b) for partial vacatur on the grounds set forth below.

**B.    The Judgments Should Be Partially Vacated Under Rule 60(b)(4) Because They Are Void as to Defendant Russian Federation Itself Under 28 U.S.C. § 1605(a)(3)**

The Judgments should be partially vacated under Rule 60(b)(4) as void due to this Court's lack of subject-matter jurisdiction over Defendant Russian Federation under the FSIA.[2]  Tenam's

___
[2] As to the other three Defendants (RMCMC, RSL, and RSMA), Tenam takes no position at this time on any arguments with respect to those Defendants' sovereign immunities, lack of subject-matter jurisdiction, lack of personal

Suppl. Br. (Dec. 13, 2019) at 12-13, ECF No. 196.  During the fifteen years of this litigation, Plaintiff has never identified any basis for this Court's subject-matter jurisdiction under *the first clause* of 28 U.S.C. § 1605(a)(3)'s commercial-nexus requirement.  *E.g.*, Pl.'s Compl. ¶ 37 (July 29, 2005), ECF No. 1-2, at 133; *see also* Pl.'s Suppl. Br. in Opp'n to Mot. to Dismiss (Jan. 23, 2006) at 26-37, ECF No. 15-1 (invoking exclusively "[t]he second clause of Section 1605(a)(3) of the FSIA" as its basis for subject-matter jurisdiction).  Plaintiff therefore has never identified any basis for subject-matter jurisdiction over *Defendant Russian Federation itself*.  And yet, the Court has allowed Plaintiff's discovery of Tenam based solely on Plaintiff's allegations regarding Tenam's supposed connection to Defendant Russian Federation itself—not any other Defendant. *See* Pl.'s Opp'n to Tenam's Mot. to Quash (May 2, 2019) at 1, ECF No. 180 (seeking expressly "to obtain documents or other information regarding Russian Federation assets that may be available to satisfy" the Interim Judgment).

As the D.C. Circuit has held in four successive decisions interpreting § 1605(a)(3), "a foreign state itself does not lose immunity . . . unless the allegedly expropriated property *is located in the United States*."  *Schubarth*, 891 F.3d at 401 (emphasis added); *see also Philipp v. Fed. Republic of Ger.*, 894 F.3d 406, 414-18 (D.C. Cir. 2018); ("[B]ecause the [disputed property] is in Berlin, not the United States, . . . the district court must grant the motion to dismiss with respect to the Federal Republic of Germany—but not the [German administrative entity], an instrumentality for which the commercial-nexus requirement can be satisfied without the presence

---

jurisdiction, or any other defenses.  Because those three Defendants are not implicated by any of the arguments raised by Plaintiff in support of the subpoena's relevance, those Defendants' defenses are not material to the current stage of this litigation.  Tenam reserves the right to raise such arguments in future stages of the litigation if Plaintiff puts them in issue, although Tenam has no relationship or connection to these entities and lacks access to any non-public information about them.

of the [disputed property] in the United States."); *De Csepel*, 859 F.3d at 1104 (dismissing expropriation claims against Hungary itself); *Simon*, 812 F.3d at 146 (same).

In the present case, it is undisputed that the Collection has never been "located in the United States," such that this Court therefore lacks subject-matter jurisdiction as to the "foreign state itself." *Schubarth*, 891 F.3d at 401. Accordingly, to the extent that this Court has "reach[ed] beyond its statutory grant of subject-matter jurisdiction" under the FSIA, "its judgment is void" with respect to Defendant Russian Federation specifically. *See Bell Helicopter*, 734 F.3d at 1180 (quoting *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 (D.C. Cir. 1984)).

In its most recent submission, Plaintiff contended that "the Court of Appeals decision in this case . . . concluded that . . . this Court has jurisdiction over that claim in all respects." Pl.'s Suppl. Mem. (Dec. 18, 2019) at 7-8, ECF No. 197. This statement is manifestly wrong with respect to any claims against Defendant Russian Federation itself. As this Court's 2006 Memorandum Opinion stated expressly "[t]he first clause of the expropriation exception" was "not at issue in this case." Mem. Op. on Juris. (Dec. 4, 2006) at 24-28, ECF No. 21.

Indeed, the D.C. Circuit subsequently confirmed in the *De Csepel* case that ***both*** of the jurisdictional rulings in the *Chabad* litigation (*i.e.*, in this Court and on appeal) were narrowly focused on subject-matter jurisdiction over RSL and RSMA ***exclusively***. In the *De Csepel* case, after carefully reviewing the record in the *Chabad* litigation, the D.C. Circuit explained that "[t]he issue of ***the Russian state's immunity was completely unaddressed*** by the district court" in the *Chabad* case "and ***neither raised nor briefed on appeal*** . . ." *De Csepel*, 859 F.3d at 1105 (emphasis added). Significantly, the majority opinion in the *De Csepel* case was joined by *one of the same judges* who sat on the *Chabad* panel (Judge Karen L. Henderson). In other words,

Plaintiff's attempt to expand the narrow scope of the previous jurisdictional rulings is an untenable effort to re-write history.

Indeed, Plaintiff has evidently waived any argument that this Court has subject-matter jurisdiction over the Russian Federation itself under the first clause of § 1605(a)(3)'s commercial-nexus requirement. Paragraph 37 of Plaintiff's Complaint cites exclusively the second clause of the commercial-nexus requirement. Pl.'s Compl. ¶ 37 (July 29, 2005), ECF No. 1-2, at 133. None of Plaintiff's subsequent pleadings have ever sought to expand this narrow basis for subject-matter jurisdiction. *E.g.*, Pl.'s Suppl. Br. in Opp'n to Mot. to Dismiss (Jan. 23, 2006) at 26-37, ECF No. 15-1 (invoking exclusively "[t]he second clause of Section 1605(a)(3) of the FSIA" as its basis for subject-matter jurisdiction).

Accordingly, as reflected in the D.C. Circuit's case law analyzing the FSIA's expropriation exception generally, as well as in the D.C. Circuit's observations specifically about the *Chabad* litigation, this Court lacks subject matter jurisdiction with respect to "the Russian state[]" itself. *De Csepel*, 859 F.3d at 1105. To the extent that the Judgments seek to impose liability, specific performance, or contempt sanctions against Defendant Russia Federation itself, the Judgments must be partially vacated under Rule 60(b)(4) of the Federal Rules of Civil Procedure.

**C.    The Judgments Should Be Partially Vacated Under Rules 60(b)(4), (5), and (6) Because the Order of Specific Performance Is Contrary to Both the FSIA and U.S. Public Policy on Foreign Relations**

The Judgments should also be partially vacated under Rules 60(b)(4), (5), and (6) of the Federal Rules of Civil Procedure with respect to this Court's order of specific performance against a foreign sovereign State and its instrumentalities with respect to property located outside the territory of the United States.

16

*First*, under Rule 60(b)(4), the order of specific performance is "void" because the FSIA does not grant this Court jurisdiction to issue orders of specific performance against a foreign State. Under Rule 60(b)(4), a judgment is void if "the rendering court was powerless to enter it." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (quoting *Combs*, 825 F.2d at 442). In other words, as this Court has routinely explained, "[a] judgment or order maybe void for purposes of Rule 60(b)(4) if the court . . . proceeded beyond the powers granted to it by law." *Technologists, Inc. v. Mir's Ltd.*, 725 F. Supp. 2d 120, 127 (D.D.C. 2010) (granting Rule 60(b)(4) motion for lack of personal jurisdiction); *David v. District of Columbia*, 252 F.R.D. 56, 59 (D.D.C. 2008) (granting Rule 60(b)(4) motion for lack of subject matter jurisdiction).

This Court lacked jurisdiction to issue an order of specific performance in contravention of the "comprehensive jurisdictional scheme" created by the FSIA. *See Republic of Austria v. Altmann*, 541 U.S. 677, 699 (2004) (referring to the FSIA as a "comprehensive jurisdictional scheme"); *McKesson Corp. v. Islamic Republic of Iran,* 672 F.3d 1066, 1075 (D.C. Cir. 2012) ("The FSIA is purely jurisdictional in nature . . . .").

Under the FSIA, as explained by another judge of this Court, the FSIA does not extend the "U.S. courts' jurisdiction . . . to awards of specific performance to be completed outside the territorial jurisdiction of the United States, or indeed, even within the territorial jurisdiction of the United States." *Hardy*, 314 F. Supp. 3d at 111, 113 (refusing to enter an order of specific performance, which falls outside "the FSIA's contemplation of jurisdiction over foreign countries in suits seeking compensatory . . . damages").

Similarly, when evaluating the availability of specific performance under the FSIA, the Second Circuit affirmed the dissolution of an injunction on the basis that "courts in this context may not grant, by injunction, relief which they may not provide by attachment." *S&S Mach. Co.*,

17

706 F.2d at 418; *see also Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007) ("The FSIA did not purport to authorize execution against a foreign sovereign's property, or that of its instrumentality, wherever that property is located around the world. We would need some hint from Congress before we felt justified in adopting such a breathtaking assertion of extraterritorial jurisdiction.").

In its Statements of Interest, the United States has consistently emphasized the jurisdictional limitations established by the FSIA as to this Court's orders of specific performance. The United States' "views on sovereign immunity" are entitled to "special attention," because the Executive Branch is primarily responsible for conducting foreign relations and because "the State Department . . . helped to draft the FSIA's language." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320 (2017) (citing *Altmann*, 541 U.S. at 696). As the United States has explained, the FSIA "does not permit a court to compel compliance with a specific performance order regarding property held by a foreign sovereign within the sovereign's own territory," which "would be contrary to the foreign policy interests of the United States." U.S. Statement of Interest (Aug. 29, 2012) at 2, ECF No. 111. In support, the United States observed that the "FSIA's exceptions from execution immunity apply only to a foreign state's 'property in the United States,' and even that property is subject to execution only in carefully circumscribed and extremely limited circumstances." *Id.* at 6 (quoting 28 U.S.C. § 1610(a)).

Accordingly, as reflected in the case law and in the U.S. Statements of Interest, this Court lacked jurisdiction under the FSIA to issue the order of specific performance in the Default Judgment (and thus lacked jurisdiction to enforce that order by contempt sanctions in the Interim Judgment). Because this Court was "powerless to enter" this order of specific performance, this

18

aspect of the Judgments was void and must be vacated under Rule 60(b)(4).  *Karsner*, 532 F.3d at 886 (quoting *Combs*, 825 F.2d at 442).

> **Second**, the specific performance order (and related sanctions) are also subject to partial vacatur under Rule 60(b)(5) because it is "no longer equitable" to enforce such an order based upon changes in circumstances since the Default Judgment was entered in 2010.  *Am. Council of the Blind*, 878 F.3d at 366 ("[A] party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'") (quoting *Horne*, 557 U.S. at 447).

> At the time when this Court initially entered specific performance against the Defendants in the Default Judgment in 2010, the Executive Branch had not yet made its views known regarding this litigation.  Beginning in 2011, however, and continuing without interruption throughout the administrations of both President Barack Obama and President Donald Trump, the United States has firmly opposed this Court's orders to enforce the 2010 order of specific performance.  U.S. Statements of Interest, ECF No. 97 (June 15, 2011), ECF No. 111 (Aug. 29, 2012), ECF No. 134 (Feb. 21, 2014), ECF No. 149 (Oct. 23, 2015), ECF No. 151 (Feb. 3, 2016), ECF No. 155 (Mar. 28, 2016), ECF No. 190 (Nov. 26, 2019).  This Court's order, therefore, is necessarily contrary to the public interest, including the United States' foreign policy interests.

> This conclusion is consistent with previous courts' findings regarding the United States' "reciprocal self-interest."  *Republic of Phil. v. Pimentel*, 553 U.S. 851, 866 (2008) ("[F]oreign sovereign immunity derives from standards of public morality, fair dealing, reciprocal self-interest, and respect for the power and dignity of the foreign sovereign.").  As another judge of this Court explained in *Hardy*, entry of specific performance against a foreign sovereign state "raise[s] the specter of the opposite situation coming to pass; namely, a foreign court confirming (or the court

going further and granting injunctive relief directly) against the United States for acts it has taken within its own borders or respecting its own territory." *Hardy*, 314 F. Supp. 3d at 114 (citation omitted).  Indeed, as further explained in *Hardy*, "[g]iven that the United States has not waived its sovereign immunity ***in its own courts*** against specific performance in contract cases, it would defy comprehension that it would be in compliance with U.S. public policy to create a situation in which ***a foreign court*** could order the [United States] to specifically perform" its obligations by issuing an injunction.  *Id.* (emphasis added).

The enforcement of this Court's specific performance order, therefore, poses harm to the public interest and is contrary to the U.S. public policy governing foreign relations.  This Court's injunction therefore cannot be considered equitable and is subject to vacatur under Rule 60(b)(5).

***Third***, this aspect of the Judgments is also subject to partial vacatur under Rule 60(b)(6) based upon the extraordinary circumstances of this case.  The D.C. Circuit has found "extraordinary circumstances" warranting Rule 60(b)(6) vacatur based upon the entry of multimillion-dollar "default judgment[s] against a foreign government."  *Owens*, 864 F.3d at 813 (vacating substantial award of punitive damages awarded in default judgment against foreign sovereign).  This condition is satisfied in the present case, because the Interim Judgment has already accrued more than US$ 120 million in contempt sanctions.  Order of Accrued Sanctions (Dec. 20, 2019), ECF No. 201.

In addition, as noted above, extraordinary circumstances also arise in this case based upon the foreign-policy implications as to the United States' "reciprocal self-interest."  *Pimentel*, 553 U.S. at 866; *Hardy*, 314 F. Supp. 3d at 114 (D.D.C. 2018) (explaining that "it would defy comprehension that it would be in compliance with U.S. public policy to create a situation in which ***a foreign court*** could order the [United States] to specifically perform" its obligations by issuing

an injunction.) (emphasis added); U.S. Statements of Interest, ECF No. 97 (June 15, 2011), ECF No. 111 (Aug. 29, 2012), ECF No. 134 (Feb. 21, 2014), ECF No. 149 (Oct. 23, 2015), ECF No. 151 (Feb. 3, 2016), ECF No. 155 (Mar. 28, 2016), ECF No. 190 (Nov. 26, 2019).  The imposition of specific performance upon a foreign sovereign state is thus an improper and invalid "affront to its dignity and may affect [the United States'] relations with [such a foreign sovereign state]."  U.S. Statement of Interest (Aug. 29, 2012) at 6-7, ECF No. 111 (quoting *Pimentel*, 553 U.S. at, 866 (internal quotation and ellipses omitted)).

For these reasons, the Judgments' order of specific performance and related contempt sanctions should be vacated as to all four Defendants under Rules 60(b)(4), (5), and (6).

## CONCLUSION

For the foregoing reasons, Tenam respectfully requests that the Court grant its Motion to partially vacate the Default Judgment (ECF No. 80, July 30, 2010) and Interim Judgment (ECF No. 144, Sept. 10, 2015) under Rules 60(b)(4),(5), and (6) of the Federal Rules of Civil Procedure.

Dated: January 22, 2020                                  Respectfully submitted,
Washington, DC

                                                  **WHITE & CASE** LLP

                                                  /s/ *Carolyn B. Lamm*
                                                  Carolyn B. Lamm (D.C. Bar No. 221325)
                                                  Nicolle Kownacki (D.C. Bar No. 1005627)
                                                  David Riesenberg (D.C. Bar 1033269)
                                                  Ena Cefo (D.C. Bar No. 1044266)
                                                  701 Thirteenth Street, NW
                                                  Washington, DC 20005
                                                  Telephone: (202) 626-3600
                                                  Facsimile: (202) 639-9355

                                                  *Counsel for Non-Party TENEX-USA,*
                                                  *Incorporated*