**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, <br><br> *Plaintiff*, <br><br> v. <br><br> RUSSIAN FEDERATION; RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION; RUSSIAN STATE LIBRARY; and RUSSIAN STATE MILITARY ARCHIVE, <br><br> *Defendants.* | Case No. 1:05-cv-01548-RCL <br><br> Oral Argument Requested |

**REPLY OF NON-PARTY TENEX-USA IN SUPPORT OF ITS MOTION UNDER
RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR
PARTIAL VACATUR OF THE DEFAULT JUDGMENT AND INTERIM JUDGMENT**

**WHITE & CASE** LLP

Carolyn B. Lamm
Nicolle Kownacki
David Riesenberg
Hannelore Sklar
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600

*Counsel for Non-Party Tenex-USA
Incorporated*

April 24, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .................................................................................................................... 1

A.    Tenam Has Standing to Seek Partial Vacatur Under Rule 60(b) Because Plaintiff
Is Attempting to Pierce Tenam's Corporate Veil Through Invasive and
Burdensome Discovery ................................................................................................ 1

B.    The Judgments Should Be Partially Vacated Under Rule 60(b)(4) Because They
Are Void as to Defendant Russian Federation Itself Under 28 U.S.C. § 1605(a)(3) ........... 5

    1.    Tenam's Challenge to Subject-Matter Jurisdiction Is Not Barred by
"Jurisdictional Finality" ................................................................................. 6

    2.    No Basis Exists for Subject-Matter Jurisdiction Over Plaintiff's Claims
Against Defendant Russian Federation ......................................................... 11

C.    The Judgments Should Be Partially Vacated Under Rules 60(b)(4), (5), and (6)
Because the Order of Specific Performance Is Contrary to Both the FSIA and U.S.
Public Policy on Foreign Relations ............................................................................ 13

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**CASES**                                                                                                    **Pages(s)**

*Agudas Chasidei Chabad v. Russian Fed'n*,
   528 F.3d 934 (D.C. Cir. 2008) ..................................................................... 8, 9, 11

*Alvarez v. Smith*,
   558 U.S. 87 (2009) ......................................................................................... 12

\* *Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ...................................................................................... 4, 5

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
   734 F.3d 1175 (D.C. Cir. 2013) ............................................................ 5, 6, 15-16

*Buck v. Davis*,
   137 S. Ct. 759 (2017) ...................................................................................... 6

*Combs v. Nick Garin Trucking*,
   825 F.2d 437 (D.C. Cir. 1987) ........................................................................ 5

*Council on American-Islamic Rels. Action Network, Inc. v. Gaubatz*,
   793 F. Supp. 2d 311 (D.D.C. 2011) ............................................................... 12

*Dayton v. Czechoslovak Socialist Republic*,
   672 F. Supp. 7 (D.D.C. 1986) .................................................................... 16-17

\* *De Csepel v. Republic of Hung.*,
   859 F.3d 1094 (D.C. Cir. 2017) .................................................................. 8, 11

*Durfee v. Duke*,
   375 U.S. 106 (1963) ........................................................................................ 6

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
   462 U.S. 611 (1983) ...................................................................................... 10

*Gonzalez v. Crosby*,
   545 U.S. 524 (2005) ........................................................................................ 6

\* *Grace v. Bank Leumi Tr. Co.*,
   443 F.3d 180 (2d Cir. 2006) ............................................................................ 2

*Hardy Exploration & Products (India) v. Government of India*,
   14 F. Supp. 3d 95 (D.D.C. 2018) .................................................................. 17

*Jakks Pac., Inc. v. Accasvek, LLC*,
   270 F. Supp. 3d 191 (D.D.C. 2017) .............................................................. 3, 4

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008)................................................................... 14

*Nationwide Life Ins. Co. v. Keene*,
No. 11-12422, 2013 U.S. Dist. LEXIS 51311 (E.D. Mich. Apr. 10, 2013) ............................... 3

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017)................................................................... 14

*Practical Concepts, Inc. v. Rep. of Bolivia*,
811 F.2d 1543 (D.C. Cir. 1987)................................................................ 4, 7

*Schubarth v. Fed. Republic of Germany*,
891 F.3d 392 (D.C. Cir. 2018).................................................................... 5

*Sheafen Kuo v. Gov't of Taiwan*,
No. 19-587-cv, 2020 U.S. App. LEXIS 3091 (2d Cir. Jan. 30, 2020)........................................ 4

* *S & S Mach. Co. v. Masinexportimport*,
706 F.2d 411 (2d Cir. 1983) .................................................................... 15

*Stoll v. Gottlieb*,
305 U.S. 165 (1938).............................................................................6-7

*In re Terrorist Attacks on Sept. 11, 2001*,
741 F.3d 353 (2d Cir. 2013) .................................................................... 11

*Vera v. Republic of Cuba*,
867 F.3d 310 (2d Cir. 2017) ..................................................................... 3

*Youming Jin v. Ministry of State Sec.*,
475 F. Supp. 2d 54 (D.D.C. 2007)............................................................... 4

## STATUTES AND RULES

Fed. R. Civ. P. 12(h)(3)......................................................................... 4

Fed. R. Civ. P. 26(b)(1)......................................................................... 1

Fed. R. Civ. P. 60(b) ...................................................................... *passim*

Fed. R. Civ. P. 69(a)(2)......................................................................... 1

28 U.S.C. § 1605(a)(3).......................................................................... 16

28 U.S.C. § 1605(a)(3).................................................................. 5, 10, 11, 13

28 U.S.C. § 1606.................................................................................................................. 16

28 U.S.C. § 1609.................................................................................................................. 14

28 U.S.C. § 1610.............................................................................................................. 14, 15

**OTHER AUTHORITIES**

H.R. Rep. No. 94–1487 (1976).............................................................................................. 14, 15

\* indicates authorities on which counsel chiefly relies

Non-Party Tenex-USA ("Tenam") made a timely and warranted motion that this Court vacate the Default Judgment and Interim Judgment (together, "Judgments"), including for lack of subject-matter jurisdiction, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *See* Statement of Points and Authorities by Non-Party TENEX-USA in Supp. of its Mot. Under Rule 60(b), ECF No. 203-1 ("Rule 60(b) Mot."). In its Opposition to Tenam's motion, ECF No. 207 ("Rule 60(b) Opp'n"), Plaintiff Agudas Chasidei Chabad of United States ("Chabad") has rewritten the history of this case, introduced new irrelevant facts, and misinterpreted the applicable law. Plaintiff's arguments are meritless. As discussed below and in Tenam's motion, this Court should partially vacate the Judgments pursuant to Rules 60(b)(4), (5), and/or (6), because the Court lacked jurisdiction to enter judgment against the Russian Federation and further lacked the authority under the Foreign Sovereign Immunities Act ("FSIA") to enter an order of specific performance in this case. Consequently, Plaintiff's subpoena of Tenam, arising from Plaintiff's attempt to enforce the sanctions judgment against the Russian Federation, is improper under Rules 26(b)(1) and 69(a)(2) of the Federal Rules of Civil Procedure.

## ARGUMENT

### A. Tenam Has Standing to Seek Partial Vacatur Under Rule 60(b) Because Plaintiff Is Attempting to Pierce Tenam's Corporate Veil Through Invasive and Burdensome Discovery

Contrary to Plaintiff's contention (Rule 60(b) Opp'n 5), Tenam need not "disavow" its position that it is legally separate from the Russian Federation in order to bring this Rule 60(b) motion. As a threshold matter, Plaintiff does not dispute that a third party with a "concrete interest in the outcome of the proceeding" has standing to bring a Rule 60(b) motion. Rule 60(b) Opp'n 6. Plaintiff insists, however, that to have such an interest here, "Tenam would have to adjust its

litigation posture . . . and concede that its assets are also assets of the defendants in this case." *Id.* at 7. This is not correct.

Tenam's interest in the judgment—as a legally separate entity targeted by Plaintiff's invasive and burdensome asset discovery as part of its judgment-enforcement efforts—is sufficiently concrete for Tenam to have standing here. Significantly, Plaintiff is not seeking discovery of Tenam as a random disassociated third party, such as a bank or internet service provider holding a relevant account. Rather, as Plaintiff admits, Plaintiff is targeting Tenam either to obtain assets Tenam purportedly "holds" for the Russian Federation or to "pierce the corporate veil" and directly obtain Tenam's assets. Rule 60(b) Opp'n 6-7. Plaintiff does not even suggest— as it cannot—that Tenam possesses any assets that under any theory might belong to the RSL or RSMA. As a result, unless the Court determines it has jurisdiction over the Russian Federation, there is no basis to even consider, much less enforce, the subpoena against Tenam. Thus, unless Plaintiff is willing to concede that its discovery is nothing more than a fishing expedition, Plaintiff's position must be that Tenam has *some* connection to the judgments against the Russian Federation—indeed, a strong enough connection to warrant asset discovery. Accordingly, as Tenam argued in its motion (Rule 60(b) Mot. 12), Plaintiff's targeting of Tenam because of assets in Tenam's possession reflects a "strategy . . . to collect money from the [movant]," and this squarely satisfies the standard for Rule 60(b) standing under the Second Circuit's *Bank Leumi* decision. *Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 188 (2d Cir. 2006).

Tenam also has a "concrete interest" in the litigation arising directly from this Court's order requiring Tenam to produce invasive, burdensome discovery about its assets and operations in response to Plaintiff's subpoena. Plaintiff provides no support for its suggestion that "standing requires more than an interest in quashing a third-party subpoena." Rule 60(b) Opp'n 5. And, in

2

fact, at least one court has held, to the contrary, that an order to comply with a subpoena is sufficient to confer third-party standing for a Rule 60(b) motion. *See, e.g.*, *Nationwide Life Ins. Co. v. Keene*, No. 11-12422, 2013 U.S. Dist. LEXIS 51311, at *6-7 (E.D. Mich. Apr. 10, 2013) (third party subject to subpoena and production order had standing to bring Rule 60(b) motion); *see also Jakks Pac., Inc. v. Accasvek, LLC,* 270 F. Supp. 3d 191, 192, 196 & n.4 (D.D.C. 2017) (rejecting plaintiff's argument that non-party resisting "discovery in aid of enforcing" a default judgment "lack[ed] 'standing' to challenge the default judgment" and vacating default judgment for lack of subject-matter jurisdiction). Thus, Plaintiff misses the mark in contending Tenam lacks standing to bring its Rule 60(b) motion.

Notably, Plaintiff made the same objections to Tenam's standing to raise the arguments subject of its Rule 60(b) motion in Plaintiff's supplemental briefing on Tenam's motion to quash the subpoena. *See* Pl.'s Submission in Resp. to Tenex-USA's Suppl. Br. 7, ECF No. 197 ("Assuming for present purposes that Tenam has standing to mount a collateral attack on the Court's final judgment . . . ."). The Court did not address standing or those arguments in its decision on the subpoena. But, by Plaintiff continuing to object no matter how Tenam raises the defenses, Plaintiff is essentially suggesting that Tenam should have to wait until its assets are under an order of execution before Tenam has an interest concrete enough to raise jurisdictional defenses. This cannot be the case. The Court *must* have subject-matter jurisdiction to have the power to enforce the subpoena. *See Vera v. Republic of Cuba*, 867 F.3d 310, 321 (2d Cir. 2017) ("Because the District Court lacked subject matter jurisdiction over [the plaintiff's] action against Cuba, the subpoena served on [the third-party movant bank] to enforce the judgment entered in that action is void.").

If the Court lacks jurisdiction to enter and enforce the Judgments (and enforce subsequent

3

discovery), it must vacate those Judgments and dismiss. *See Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987) (explaining that court will vacate default judgment where "the court lacks jurisdiction," even if jurisdictional objection is raised in a collateral attack); *Accasvek, LLC*, 270 F. Supp. 3d at 195-96, 199-200 (treating so-called "notice of lack of jurisdiction" filed by non-party target of post-judgment discovery as a Rule 60(b) motion and vacating judgment as void for lack of subject-matter jurisdiction). And, indeed, regardless of the third-party status of the movant, the Court *must* assess its jurisdiction—even *sua sponte*, if necessary. *See Accasvek*, 270 F. Supp. 3d at 195 ("A court has an independent obligation to assure itself of its subject-matter jurisdiction, and '[t]he objection that a federal court lacks subject-matter jurisdiction, may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.'" (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006))); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). This is particularly the case in the context of a judgment against a foreign sovereign. *See Youming Jin v. Ministry of State Sec.*, 475 F. Supp. 2d 54, 58, 65-67 (D.D.C. 2007) (dismissing "*sua sponte*" claims against foreign sovereign defendants for lack of subject-matter jurisdiction under the FSIA); *see also Sheafen Kuo v. Gov't of Taiwan*, No. 19-587-cv, 2020 U.S. App. LEXIS 3091, at *1-2 (2d Cir. Jan. 30, 2020) (affirming dismissal of government of Taiwan "*sua sponte* for lack of subject matter jurisdiction" where the plaintiff "did not show that there was property in question that was present in the United States in connection with commercial activity," thus failing to "satisfy the [FSIA] expropriation exception").

Here, as further discussed below, the D.C. Circuit's *De Csepel* ruling so plainly makes clear that the Court lacks jurisdiction to enter and enforce Plaintiff's Judgments against the Russian

4

Federation that the Court need not rely on Tenam's "standing" to decide the issue.  The Court must vacate the judgment as to the Russian Federation, and all related enforcement decisions, for lack of its subject-matter jurisdiction *regardless* of Tenam's standing.

**B.     The Judgments Should Be Partially Vacated Under Rule 60(b)(4) Because They Are Void as to Defendant Russian Federation Itself Under 28 U.S.C. § 1605(a)(3)**

As explained above, it is black-letter law that U.S. district courts have "an independent obligation to determine whether subject-matter jurisdiction exists," "even after trial and the entry of judgment."  *Arbaugh*, 546 U.S. at 506, 514.  Accordingly, if a default judgment is rendered against a foreign state in a case where the FSIA provides no subject-matter jurisdiction, the default judgment is "void" and must be vacated under Rule 60(b)(4) of the Federal Rules of Civil Procedure.  *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1179 (D.C. Cir. 2013) ("'[T]here is no question of discretion . . . . [I]f the judgment is void, relief is mandatory.'" (quoting *Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C. Cir. 1987))).

In its Rule 60(b) Motion, Tenam explained that the Judgments are void as to Defendant Russian Federation itself.  Unlike a foreign state's agencies and instrumentalities, "a foreign state itself does not lose immunity . . . unless the allegedly expropriated property is located *in the United States* . . . 'in connection with a commercial activity carried on in the United States *by the foreign state*.'"  *Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 401 (D.C. Cir. 2018) (quoting 28 U.S.C. § 1605(a)(3)) (emphasis added).  In this case, however, none of the "allegedly expropriated property" is located in the United States.  All of the relevant property is located *in Moscow*.  *See* Rule 60(b) Mot. 15.  Moreover, none of the property at issue is held or used "by the foreign state" itself "in connection with a commercial activity."  All of the property is held *by RSL and/or RSMA*, two entities which, as this Court has held expressly, are merely "agencies or instrumentalities."  Mem. Op. 9, July 30, 2010, ECF No. 81 ("RSMA and RSL are agencies or instrumentalities . . . .

[T]here is not any real dispute that the Archive is possessed by the RSMA or that the Library has long been possessed by the RSL.").

The Judgments therefore must be vacated under Federal Rule of Civil Procedure 60(b)(4) to the extent that this Court "reach[ed] beyond its statutory grant of subject-matter jurisdiction" under the FSIA. *Bell Helicopter*, 734 F.3d at 1180.

In its Rule 60(b) Opposition, Plaintiff contends that Tenam cannot challenge subject-matter jurisdiction, because that issue, Plaintiff asserts, supposedly was already litigated. *See* Rule 60(b) Opp'n 4. Plaintiff also argues that, if the Court does re-examine subject-matter jurisdiction, several books in the United States, which are currently in the possession *of Chabad*, can satisfy the necessary U.S.-nexus. *See id.* at 12-14. Neither of these arguments have merit.

### 1. Tenam's Challenge to Subject-Matter Jurisdiction Is Not Barred by "Jurisdictional Finality"

First, Plaintiff invokes the "doctrine of jurisdictional finality" recognized in *Durfee v. Duke*, 375 U.S. 106 (1963), suggesting Tenam cannot now challenge subject-matter jurisdiction underlying the Default Judgment. Rule 60(b) Opp'n 4-5. But Tenam is seeking relief specifically under Rule 60(b)—and "the 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'" *Buck v. Davis*, 137 S. Ct. 759, 779 (2017) (citation omitted); *Gonzalez v. Crosby*, 545 U.S. 524, 528-29 (2005) ("Rule 60(b) allows a party to seek relief from a final judgment. . . . [W]e give little weight to respondent's appeal to the virtues of finality. That policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality."). Moreover, *Durfee* itself acknowledged an exception to jurisdictional finality based upon the "overriding consideration[]" of "sovereign immunity." *Durfee*, 375 U.S. at 114.

Further, the basic justification underlying *Durfee* is that "[t]here is no reason to expect that the second decision will be more satisfactory than the first." *Id.* (quoting *Stoll v. Gottlieb*, 305

6

U.S. 165, 172 (1938)).  As discussed below, a ruling from this Court on Tenam's Rule 60(b) motion would *not* be the "second decision" on subject-matter jurisdiction over the claim as to Defendant Russian Federation itself.  In any event, the outcome of the judgment *would* be different, because, after assessing jurisdiction as to Defendant Russian Federation itself under D.C. Circuit law, this Court could not sustain its Default Judgment against Defendant Russian Federation itself or its subsequent contempt sanctions award.

Plaintiff further relies on *Practical Concepts*, 811 F.2d at 1547, suggesting that case establishes a "rule that, once challenged, the matter of jurisdiction is closed."  Rule 60(b) Opp'n 4.  *Practical Concepts*, however, creates no such "rule."  As Plaintiff openly acknowledges (*see id.*), *Practical Concepts* merely addressed the idea of a "*renew[al]*" of "the jurisdictional objection" (811 F.2d at 1547 (emphasis added)) in *"obiter dicta"*—and did not purport to alter or expand the rule or reasoning of *Durfee*.

Regardless of the doctrine of "jurisdictional finality," Plaintiff's argument misapprehends the lengthy history of this case.  Plaintiff repeatedly suggests that Tenam is asking this Court to "re-open" a previous decision.  Rule 60(b) Opp'n 2, 3, 8, 10, 11.  Plaintiff further asserts that this would be impermissible, supposedly because "this Court (and the Court of Appeals) reached the decisions they did because . . . Russia chose to argue that the commercial activities of the RSL and RSMA were dispositive as to *all of the defendants*, including the Federation itself."  Rule 60(b) Opp'n 9-10 (emphasis added).  All of this is wrong.

To the contrary, as detailed further below, Defendant Russian Federation did *not* argue that commercial activities of its agencies and instrumentalities could sustain jurisdiction for claims against the State itself.  Nor is there any decision to "re-open" with respect to subject matter jurisdiction over claims against Defendant Russian Federation specifically.  Indeed, *neither* this

7

Court's 2006 opinion *nor* the D.C. Circuit's 2008 opinion reached any "decisions" on this issue, because "[t]he issue of the Russian state's immunity was *completely unaddressed* by the district court and neither raised nor briefed on appeal[.]" *De Csepel v. Republic of Hung.*, 859 F.3d 1094, 1105 (D.C. Cir. 2017) (emphasis added) (analyzing *Agudas Chasidei Chabad v. Russian Fed'n*, 528 F.3d 934, 946, 955 (D.C. Cir. 2008)).

In other words, Plaintiff is again rewriting history—this time by taking *a single, isolated quote* from *a single pleading* out of context. The entire context, however, is critical. Specifically, Plaintiff cites the final sentence of Part II-B of Defendants' Supplemental Brief of December 24, 2005. Rule 60(b) Opp'n 9 (citing Def.'s Suppl. Br. in Supp. of Mot. to Dismiss 30, ECF No. 14). Defendants wrote:

> Since the evidence does not demonstrate that either RSL or RSMA "is engaged in commercial activity in the United States," the second prong of the expropriation exception to sovereign immunity does not apply and under FSIA § 1604, the RSL and RSMA (and hence all of the Russian Government Defendants) are immune from this Court's jurisdiction.

Def.'s Suppl. Br. in Supp. of Mot. to Dismiss 30, ECF No. 14. Quoting this sentence in isolation (and offering no other evidence at all), Plaintiff mistakenly asserts that Defendants "chose to argue" that subject-matter jurisdiction over "all of the defendants" could be established based upon "the commercial activities of the RSL and RSMA." Rule 60(b) Opp'n 8-10.

This is wrong. In context, the quoted sentence was merely summarizing Defendants' process of elimination. At the point in the Supplemental Brief where the sentence quoted by Plaintiff appears, Defendants had finished the process of rebutting *each* of Plaintiff's arguments (with respect to *each* of "the Russian Government Defendants"). Def.'s Suppl. Br. in Supp. of Mot. to Dismiss 30, ECF No. 14. Defendants then with that sentence *summarized* that, having covered their various arguments, "all of the Russian Government Defendants" were immune. *See id.* Contrary to Plaintiff's insinuation (at Rule 60(b) Opp'n 9-10), Defendants were not proposing

8

a novel jurisdictional theory whereby the commercial activities of the RSL and RSMA were "dispositive as to *all of the defendants*, including the Federation itself." Indeed, this formulation never appears in Defendants' pleadings. It is merely Plaintiff's *post hoc* invention.

Furthermore, a thorough consideration of the record shows that this Court, the D.C. Circuit, and the litigants each fully understood that subject-matter jurisdiction must be analyzed with respect to each Defendant *individually*. This Court, for example, carefully distinguished the claims against Defendant RSL from the claims against Defendant RSMA for purposes of subject-matter jurisdiction. *See, e.g.*, Mem. Op. 26 & n.22, Dec. 4, 2006, ECF No. 21 ("Because this Court found that the Library was not taken in violation of international law," the Court also analyzed Defendant RSMA's commercial activities but expressly declined to "address the issue of the [Defendant] RSL's commercial activities in the United States"). The D.C. Circuit, similarly, analyzed its subject-matter jurisdiction over Defendant RSL and Defendant RSMA *separately*. *Chabad*, 528 F.3d at 948.

The litigants consistently followed the same approach. For example, Defendants' Supplemental Brief argued that Defendant RMCMC was "removed from the FSIA jurisdictional analysis" by virtue of its lack of relevant connections to Defendant RSL and Defendant RSMA. Def.'s Suppl. Br. in Supp. of Mot. to Dismiss 20, ECF No. 14. Plaintiff fully understood Defendants' argument, summarizing it as follows: "Defendants acknowledge that the RSL and RSMA 'own or operate' the Chabad Collection for FSIA purposes, but argue that the RMCMC does not and *is therefore entitled to immunity.*" Pl.'s Suppl. Br. in Opp'n to Mot. to Dismiss 15 n.2, ECF No. 15 (emphasis added).

Plaintiff never disputed Defendants' legal theory (*i.e.*, that a single Defendant could be individually "entitled to immunity" under the FSIA regardless of the other Defendants'

commercial activities).  *See id.*  Instead, Plaintiff disputed Defendants' factual contentions regarding the Defendant RMCMC's "'operational responsibility' for the RSL and the RSMA." *Id.* Contrary to Plaintiff's contentions now, therefore, it is evident that *none* of the participants in the 2006 litigation understood § 1605(a)(3) to permit subject-matter jurisdiction over one Defendant based upon another Defendant's commercial activities.

Plaintiff's reference to the *Bancec* case is also unavailing and turns that case on its head. *See* Rule 60(b) Opp'n 10 (citing *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983)).  If, because of some alleged lack of corporate separateness, the commercial activities of RSL and RSMA are "those of the Russian Government" itself (Rule 60(b) Opp'n 10), that does not qualify the Russian Federation as an agency and instrumentality and subject to the *second clause* of § 1605(a)(3); rather, it means that RSL and RSMA would be the alter egos of the state itself and *they too*, along with Defendant Russian Federation, would be subject to the first clause of § 1605(a)(3).  In other words, if the thrust of Plaintiff's argument is that RSL and RSMA are alter egos of the Russian state, then the Court would, in fact, have subject-matter jurisdiction over *none* of the Russian Defendants, because only the first clause of § 1605(a)(3) would apply.

Finally, in its efforts to confuse and distract, Plaintiff simply fails to address the most critical parts of the record—the numerous references in the prior pleadings affirming that Plaintiff does not rely upon the first clause of § 1605(a)(3) to establish subject-matter jurisdiction.  In their first substantive pleading before this Court, Defendants said as follows: "[P]lainly the first clause of § 1605(a)(3) cannot furnish a basis for FSIA jurisdiction as to Chabad's claims."  Def.'s Suppl. Br. in Supp. of Mot. to Dismiss 19, ECF No. 14.  Plaintiff in its pleadings never disputed this. Instead, Plaintiff invoked exclusively "[t]he second clause of Section 1605(a)(3) of the FSIA" as

its basis for subject-matter jurisdiction.  Pl.'s Suppl. Br. in Opp'n to Mot. to Dismiss 26-36, ECF No. 15-1.  Accordingly, as this Court's 2006 Memorandum Opinion accurately summarized, "[t]he first clause of the expropriation exception" was "not at issue in this case."  Mem. Op. 24-28, Dec. 4, 2006, ECF No. 21.

Viewing the record in its entirety, therefore, it is evident that Plaintiff failed to establish any basis for subject-matter jurisdiction over Defendant Russian Federation itself.  This accords entirely with the *De Csepel* court's accurate (and binding) conclusion that "[t]he issue of the Russian state's immunity was *completely unaddressed* by the district court and neither raised nor briefed on appeal" during the *Chabad* litigation.  *De Csepel*, 859 F.3d at 1105 (emphasis added) (analyzing *Chabad*, 528 F.3d at 946, 955).

Furthermore, even if the issue of subject-matter jurisdiction *was* previously litigated as to the Russian Federation in some respect (which it was not), the Court has considerable discretion to re-open judgments under Rule 60(b) if the "interests of justice" so require and doing so would compel a different result.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 358 (2d Cir. 2013) (invoking Rule 60(b) as "a grand reservoir of equitable power to do justice in a particular case" and vacating final judgment to re-address jurisdictional basis for decision).  Here, the sensitive political and foreign relations implications of the judgment against Defendant Russian Federation itself, magnified by a contempt sanctions award over $120 million and growing, undoubtedly warrant exercise of such discretion.

        **2.**    **No Basis Exists for Subject-Matter Jurisdiction Over Plaintiff's Claims Against Defendant Russian Federation**

In a nod of acceptance to the notion that the first clause of the expropriation exception is the only possible basis for obtaining subject-matter jurisdiction over Defendant Russian Federation under § 1605(a)(3), Plaintiff refers to seven books that may be part of the "collection," but have

11

been, as Plaintiff admits, "in the custody of Chabad's Librarian" in Brooklyn since the mid-1990s. Rule 60(b) Opp'n 12-13.

These seven books, however, are not the subject of Plaintiff's claims for relief or the Court's order to turn over the collection. Obviously, Defendants cannot be in "wrongful possession" and seeking "return[]" of books that are presently *in Plaintiff's possession*. *See* Compl. 22, ECF No. 1-2 at 139 (requesting "a declaration that Defendants are in the wrongful possession of the Collection which should immediately be returned to CHABAD"); *see also, e.g.*, *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (noting that "there was no longer any dispute about ownership or possession of the relevant property," which the defendant "had returned" to the plaintiff); *Council on American-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 340, (D.D.C. 2011) (rejecting conversion claims where complaint was "devoid of factual allegations indicating that Defendants exercised the requisite ownership, dominion, or control over" the plaintiff's property, which the plaintiff had "retain[ed]"). In fifteen years of pleadings, every discussion of the books *at issue* in this case has made clear that the relevant parts of the collection are located "in Russia." *See, e.g.*, Mem. Op. 2, July 30, 2010, ECF No. 81 (describing the "Collection held by defendants" that is "still held in Russia"); Mem. Op. 17, July 26, 2011, ECF No. 100 ("It is clear that the Library and Archive remain in Russian possession."); Pl. Mot. for Interim J. of Accrued Sanctions 2, ECF No. 127 (describing "Chabad's effort to recover priceless religious books, manuscripts and other materials illegally taken from it . . . and currently in Russian hands"); Pl. Mot. to Strike Statement of Interest of the United States 2, ECF No. 152 (the Library and Archive "are currently in the hands of the Russian government").

Moreover, for the past fifteen years, Plaintiff has conceded that *Defendant RSL* (and thus *not* Defendant Russian Federation) loaned these seven books to Plaintiff through the Library of

12

Congress.  Pl.'s Opp'n to Defs.' Mot. to Dismiss 24, ECF No. 1-2 at 73.  As noted above, however, RSL is an *agency or instrumentality* (and thus legally distinct from Defendant Russian Federation itself).   Mem. Op. 8-9, July 30, 2010, ECF No. 81 ("RSMA and RSL are agencies or instrumentalities . . . . [T]here is not any real dispute that . . . the Library has long been possessed by the RSL.").   The seven books in Brooklyn, therefore, cannot satisfy the first clause of § 1605(a)(3), which requires the claimed property's presence "in the United States in connection with a commercial activity carried on in the United States *by the foreign state*."

Under the first clause of § 1605(a)(3), therefore, the books "in the custody *of Chabad's Librarian*" (Rule 60(b) Opp'n 12-13) and the alleged commercial activities *of Defendant RSL* (Pl.'s Opp'n to Defs.' Mot. to Dismiss 24, ECF No. 1-2 at 73) cannot possibly establish subject matter jurisdiction over Defendant Russian Federation itself.   Accordingly, because Plaintiff cannot identify any actual basis for this Court's subject-matter jurisdiction over Defendant Russian Federation individually, the Court must partially vacate the judgment with respect to Defendant Russian Federation under Rule 60(b)(4).

**C.**     **The Judgments Should Be Partially Vacated Under Rules 60(b)(4), (5), and (6) Because the Order of Specific Performance Is Contrary to Both the FSIA and U.S. Public Policy on Foreign Relations**

Under Rules 60(b)(4), (5), and (6) of the Federal Rules of Civil Procedure, this Court may vacate its order of specific performance against a foreign State and its instrumentalities with respect to property located outside the territory of the United States.  Plaintiff has offered no cogent argument to the contrary.

As an initial matter, Plaintiff does not refute the availability of vacatur under Rules 60(b)(4), (5), or (6) on this ground.  Indeed, Plaintiff does not discuss Rules 60(b)(4) and (5) at all, and merely remarks on the "very high bar to obtain relief under Rule 60(b)(6)."   Rule 60(b) Opp'n 2-3.  At any rate, the order of specific performance is "void" because the FSIA does

13

not grant this Court jurisdiction to issue orders of specific performance against a foreign State. *See Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (stating that under Rule 60(b)(4), a judgment is void if "the rendering court was powerless to enter it"); *see also* Rule 60(b) Mot. 17-19.  Further, the "extraordinary circumstances" necessary to meet Rule 60(b)(6)'s high bar are present here, as the Interim Judgment has already risen to more than US$ 120 million in contempt sanctions. *See Owens v. Republic of Sudan*, 864 F.3d 751, 813 (D.C. Cir. 2017) (taking "particular note" of the "size of the [default judgment] awards" in determining that "the 'extraordinary circumstances' needed for review under Rule 60(b)(6)" existed, and vacating substantial portion default judgment against foreign sovereign).  Rule 60(b) thus affords this Court multiple bases upon which to vacate the Judgments' order of specific performance and related contempt sanctions.

Plaintiff also is mistaken in its suggestion that the FSIA's legislative history supports Plaintiff's contention that the FSIA permits orders of specific performance against a foreign sovereign.  Notably, Plaintiff conspicuously omits language from the same paragraph of the House Report that directly refutes Plaintiff's assertion.  In full, this paragraph states that:

> Consistent with this section, a court could, when circumstances were clearly appropriate, order an injunction or specific performance.  *But this is not determinative of the power of the court to enforce such an order.* For example, a foreign diplomat or official could not be imprisoned for contempt because of his government's violation of an injunction. See 22 U.S.C. 252.  Also *a fine for violation of an injunction may be unenforceable if immunity exists under sections 1609-1610.*

*See* H.R. Rep. No. 94–1487, at 22 (1976) (emphases added).

Nothing there suggests that the FSIA permits the specific performance contemplated in these circumstances and authorizes requiring a foreign State to turn over property presently located outside the United States.  Rather, any possible injunctive relief or specific performance remains limited by the boundaries of sovereign immunity set out in 28 U.S.C. §§ 1609 and 1610, as this

14

court cannot order by injunction something it could not otherwise do under the FSIA. Further, any monetary penalties to enforce the injunction clearly are permissible *only* if immunity does not "exist[] under sections 1609-1610" of the FSIA. *See* H.R. Rep. No. 94–1487, at 22 (1976). Section 1610(a) allows attachment of a foreign state's assets only if those assets are "used for a commercial activity in the United States." *See* 28 U.S.C. § 1610(a). Consequently, at most, this legislative history might suggest specific performance could be ordered as to commercial activity *in the United States*, but certainly not with respect to the turnover of specific property (non-commercial) located abroad.[1]

At least one other Circuit likewise has held that, under the FSIA, a court "may not grant, by injunction, relief which they may not provide by attachment." *See S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983). In *S & S Mach. Co.*, the Second Circuit affirmed the district court's ruling "that an injunction could not be used to immobilize [foreign sovereign] defendants' assets when an attachment of those assets would be improper" under the FSIA. *See id.* at 412, 418. Specifically, "[t]he FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property," and thus any injunctive relief in FSIA cases must be limited by the boundaries of immunity from attachment, as set out in the statute. *See id.* at 418.

As to Plaintiff's claim that the only decision "on point" here is *Bell Helicopter Textron*

---

[1] Notably, this legislative history is consistent with recognition of the legal impossibility of enforcing an order of specific performance abroad. Even if the Court ordered restitution, the Russian courts likely would not respect such an order under the applicable theory of comity, and there is not a bilateral or multilateral treaty between the United States and the Russian Federation providing for enforcement of injunctions issued by either system's courts. *See* Carolyn B. Lamm & Eckhard R. Hellbeck, *Enforcement of Judgments*, in *Business and Commercial Litigation in Federal Courts* 711, 759 (4th ed. 2016) ("[G]iven that the U.S. is not a party to any multilateral or bilateral agreements on the enforcement of judgments, a U.S. judgment is enforceable overseas only on the basis of comity.").

*Inc. v. Islamic Republic of Iran* (Rule 60(b) Opp'n 15), that case is readily distinguishable. There, the court found a clear U.S. nexus due in large part to the relevant exception to jurisdictional immunity, § 1605(a)(2), and the foreign state's alleged commercial activity. *See Bell Helicopter*, 764 F. Supp. 2d at 127 ("In the present case, the plaintiffs have demonstrated both that Iran engaged in commercial activity outside of the United States and that the commercial activity caused a direct effect in the United States."). By contrast, the specific performance ordered here is completely extraterritorial, as the materials which Russia was ordered to return to Plaintiff are located in Russia—again, a fact which Plaintiff has repeatedly acknowledged throughout the pendency of this case. *See, e.g.*, Pl. Mot. to Strike Statement of Interest of the United States 2, ECF No. 152 ("The materials are currently in the hands of the Russian government."); Pl.'s Mot. for Interim Judgment of Accrued Sanctions 5, ECF No. 127 (explaining that "the entire Archive remains at the [Russian State Military Archive]").

Further, Plaintiff overstates the *Bell Helicopter* court's purported "reli[ance]" on § 1606 to authorize injunctive relief. *See* Rule 60(b) Opp'n 15. There, § 1606 permitted the district court to hold Iran "liable in the same manner and to the same extent as a private individual under like circumstances" with respect to the substantive law that supplied the plaintiff's claim, and which expressly authorized injunctive relief by statute. *See Bell Helicopter*, 764 F. Supp. 2d at 127, 129. Plaintiff has not—and cannot—point to any such statutory authorization for specific performance or injunctive relief here. Indeed, the appropriate remedy in the expropriation context is not specific performance to return the disputed property, but rather is a monetary judgment based on valuation of the plaintiff's damages (which subsequently would allow a plaintiff to attach non-immune assets in satisfaction of the judgment). *See Dayton v. Czechoslovak Socialist Republic*, 672 F. Supp. 7, 12 (D.D.C. 1986) (explaining that "this Court lacks the power to return the plaintiffs'

16

[nationalized] property to them; therefore the only possible remedy the plaintiffs could be seeking is damages").

Finally, Plaintiff's criticisms of *Hardy Exploration & Products (India) v. Government of India* (Rule 60(b) Opp'n 15-17) are misguided. The *Hardy* court expressly questioned the availability of specific performance in FSIA cases where the contemplated performance would occur outside the United States. *See* 314 F. Supp. 3d 95, 111 (D.D.C. 2018) (noting that none of the exceptions to immunity under the FSIA "specif[y] whether U.S. courts' jurisdiction extends to awards of specific performance to be completed outside the territorial jurisdiction of the United States"). The court ultimately concluded that "the enforcement of an arbitral award granting specific performance against a foreign sovereign, and extraterritorial specific performance at that" would in fact "be contrary to U.S. public policy," and declined to enforce the specific performance relief granted in the arbitral award. *Id.* at 110-111. In reaching that conclusion, the court pointed to "relevant" policy interests expressed in the Statements of Interest by the United States *in this case*, specifically the United States' views that "the FSIA 'does not permit a court to compel compliance with a specific performance order regarding property held by a foreign sovereign within the sovereign's own territory,' and also that 'the provision of such relief would be contrary to the foreign policy interests of the United States.'" *Id.* at 111 (quoting Statement of Interest of the United States 2, Aug. 29, 2012, ECF No. 111).

All told, this Court's order for specific performance falls well outside the scope of the FSIA, is plainly contrary to U.S. public policy and foreign policy interests, and Plaintiff has failed to establish otherwise.

## CONCLUSION

For the foregoing reasons, and those stated in Tenam's Motion under Rule 60(b) of the Federal Rules of Civil Procedure for Partial Vacatur of the Default Judgment and Interim Judgment

17

(ECF No. 203), the Court should grant Tenam's motion to partially vacate the Default Judgment

(ECF No. 80) and Interim Judgment (ECF No. 144) under Rules 60(b)(4),(5), and (6) of the Federal

Rules of Civil Procedure.  Tenam respectfully requests oral argument on this motion if it would

aid the Court.


Dated:  April 24, 2020
Washington, DC

Respectfully submitted,

**WHITE & CASE**LLP

/s/ *Carolyn B. Lamm*
Carolyn B. Lamm (D.C. Bar No. 221325)
Nicolle Kownacki (D.C. Bar No. 1005627)
David Riesenberg (D.C. Bar 1033269)
Hannelore Sklar (D.C. Bar No. 1045268)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Non-Party TENEX-USA,*
*Incorporated*

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2020, a true and correct copy of **REPLY OF NON-PARTY TENEX-USA IN SUPPORT OF ITS MOTION UNDER RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR PARTIAL VACATUR OF THE DEFAULT JUDGMENT AND INTERIM JUDGMENT** was served by electronic filing on the following counsel of record:

Daniel McCallum
Robert P. Parker
Steven Lieberman
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.
607 14th Street NW, Suite 800
Washington, DC 20005
Emails: dmccallum@rfem.com
rparker@rfem.com
slieberman@rfem.com

Nathan Lewin
Alyza Doba Lewin
LEWIN & LEWIN, LLP
888 17th Street, NW, 4th Floor
Washington, DC 20006
Emails: nat@lewinlewin.com
alyza@lewinlewin.com

Jonathan E. Stern
DREIER STEIN & KAHAN, LLP
1620 26th Street
Sixth Floor, North Tower
Santa Monica, CA 90404-4060
Email: jstern@dskllp.com

*Counsel for Agudas Chasidei Chabad of United States*

Nathan Michael Swinton
U.S. DEPARTMENT OF JUSTICE
Civil Division
20 Massachusetts Avenue NW, Room 7218
Washington, DC 20530
Email: nathan.m.swinton@usdoj.gov

Benjamin Thomas Takemoto
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883 Ben Franklin Station
Washington, DC 20044
Email: benjamin.takemoto@usdoj.gov

*Counsel for the United States of America*

Timothy P. Harkness
David Y. Livshiz
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Emails: timothy.harkness@freshfields.com
david.livshiz@freshfields.com

*Counsel for State Development Bank VEB.RF*

I further certify that on April 24, 2020, a true and correct copy of the foregoing **REPLY OF NON-PARTY TENEX-USA IN SUPPORT OF ITS MOTION UNDER RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR PARTIAL VACATUR OF THE DEFAULT JUDGMENT AND INTERIM JUDGMENT** was served by commercial mail service, on each of the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Alexander Konovalov, Minister
14 Zhitnaya Street
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Vladimir Medinsky, Minister
7/6, Bldg. 1,2 , Malyy Gnezdnikovskiy Pereulok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Vadim Valerievich Duda, General Director
3/5, Vozdvizhenka Street, 2nd Entrance
Moscow, Russia 119019

**WHITE & CASE**LLP

/s/ *Carolyn B. Lamm*
Carolyn B. Lamm (D.C. Bar No. 221325)
Nicolle Kownacki (D.C. Bar No. 1005627)
David Riesenberg (D.C. Bar 1033269)
Hannelore Sklar (D.C. Bar No. 1045268)
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Non-Party TENEX-USA, Incorporated*

2