# EXHIBIT B

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

- - - - - - - - - - - - - - - X
                              :
AGUDAS CHASIDEI CHABAD OF      :
UNITED STATES, A non-profit    :
religious corporation,         :
                              :
      Appellees,          :
                              :
  v.                         :    No. 20-7080
                              :
RUSSIAN FEDERATION, A foreign :
State, et al.; TENEX-USA       :
INCORPORATED,                  :
                              :
      Appellant.          :
                              :
- - - - - - - - - - - - - - - X

Tuesday, October 12, 2021

Washington, D.C.

    The above-entitled matter came on for oral argument pursuant to notice.

    BEFORE:

        CHIEF JUDGE SRINIVASAN, CIRCUIT JUDGE ROGERS, AND
        SENIOR CIRCUIT JUDGE SENTELLE

    APPEARANCES:

        ON BEHALF OF THE APPELLANT:

        NICOLLE KOWNACKI, ESQ.
        DAVID RIESENBERG, ESQ.

        ON BEHALF OF THE APPELLEES:

        STEVEN M. LIEBERMAN, ESQ.

**Deposition Services, Inc.**
P.O. Box 1040
Burtonsville, MD 20886
Tel: (301) 881-3344 Fax: (301) 881-3338
info@DepositionServices.com   www.DepositionServices.com

C O N T E N T S

ORAL ARGUMENT OF:                                    PAGE

     NICOLLE KOWNACKI, Esq.
     On Behalf of the Appellant
     Standing and Jurisdictional Finality         3; 38

     DAVID RIESENBERG, Esq.
     On Behalf of the Appellant
     Injunction, Sanctions, and Interpretation
     Of 1605(a)(3)                                  17

     STEVEN M. LIEBERMAN, Esq.
     On Behalf of the Appellees                     25

WC

1                    P R O C E E D I N G S

2          THE CLERK:  Case No. 20-7080, Agudas Chasidei

3   Chabad of United States, a non-profit religious corporation,

4   versus Russian Federation, a foreign state, et al.;

5   Tenex-USA Incorporated, appellant.  Ms. Kownacki for the

6   appellant, standing and jurisdictional finality.

7   Mr. Riesenberg for the appellant, injunction, sanctions, and

8   interpretation of 1605(a)(3).  Mr. Lieberman for the

9   appellees.

10          JUDGE SRINIVASAN:  Good morning, counsel.

11   Ms. Kownacki, please proceed when you're ready.

12             ORAL ARGUMENT OF NICOLLE KOWNACKI, ESQ.

13               ON BEHALF OF THE APPELLANT

14          MS. KOWNACKI:  Good morning, Your Honors, and may

15   it please the Court.  I'm here on behalf of Tenex-USA, or

16   Tenam, a third-party recipient of a post-judgment subpoena

17   and the Rule 60(b) movant below.

18             In 2010 the district court entered a default

19   judgment against the Russian defendants that found

20   jurisdiction under the FSIA, Section 1605(a)(3), for

21   Chabad's claims.  This decision was wrong, at a minimum,

22   with respect to the claims against the Russian Federation

23   because the property at issue and the dispute is located

24   outside the United States, there was no basis for

25   subject-matter jurisdiction over Chabad's claims as to the

WC

1   Russian Federation, and the default judgment as to the

2   Russian Federation was therefore void.  Because that

3   decision was void, the injunction was void, the sanctions

4   were void, and thus the subpoena served on my client, Tenam,

5   to begin execution of the sanctions, is also void.

6           Chabad's subpoena is premised on the allegation

7   that Tenam, a Maryland company in the nuclear energy sector,

8   possesses assets, quote, of the Russian Federation.  Chabad

9   specifically even seeks information about Tenam's own assets

10  on the purported premise that Tenam is the alter ego of the

11  Russian Federation.  Now, Tenam strongly denies this, but

12  that is the asserted basis for the relevance of the

13  subpoena.

14          JUDGE ROGERS:  I thought it had alternative

15  theories in its subpoena, one of which was alter ego.  So it

16  wanted to know what assets Tenam had and then what its

17  relationship was as well.

18          MS. KOWNACKI:  Right, on the purported basis that

19  Tenam is connected as the alter ego of the Russian

20  Federation.  The subpoena doesn't just -- it's not like an

21  information subpoena of, say, a bank asking about

22  information about Russia.  The information the subpoena is

23  seeking is about Tenam and Tenam's assets, Tenam's

24  commercial activities, Tenam's communications with its

25  parent companies all the way up to the Russian Federation.

WC

1        JUDGE SENTELLE:  And what you're arguing about in

2   this part of the case, if the judgment in Chabad I is upheld

3   by us, doesn't everything you're arguing go away, then,

4   because the steps you took each depend upon doing away with

5   that final judgment --

6        MS. KOWNACKI:  Well --

7        JUDGE SENTELLE:  -- or did I misunderstand?

8        MS. KOWNACKI:  -- with all due respect, Your

9   Honor, just to clarify, the 2006 district court opinion and

10  then the 2008 decision of this Court that affirmed in part

11  and reversed in part was not -- neither were a final

12  judgment.  It was a granting in part and denying in part a

13  motion to dismiss, and then the Court of Appeals reversed on

14  some grounds.  That decision -- neither of those decisions

15  established, with any sort of finality, jurisdiction over

16  the Russian Federation, and we know this for several

17  reasons.  First, this Court held in the de Csepel case that

18  the 2008 decision --

19        JUDGE SENTELLE:  Well, leave out the other cases.

20  Just dealing with that case at the moment --

21        MS. KOWNACKI:  Okay.  Sure.  The --

22        JUDGE SENTELLE:  -- what was unfinal about the

23  decision with respect to the immunity of the Federation?

24        MS. KOWNACKI:  A number of aspects, Your Honor,

25  and we know this by looking at the 2010 default judgment

WC

1  entered by the district court.  In that decision the court

2  addressed all of the jurisdictional elements -- again, in

3  part because in 2006 it had only applied the nonfrivolous

4  test and then, also, it addressed new jurisdictional

5  elements that hadn't been addressed at all in 2006, for

6  example, whether the alleged agency and instrumentalities

7  were in fact agencies or instrumentalities.  That was a

8  critical jurisdictional element that was completely

9  unaddressed in 2006, and the district court found that it

10 needed to still get to that question.

11         So there was nothing about jurisdiction in 2006 or

12 in 2008 that was final and established.  That decision was

13 only made with respect to any notion of finality in 2010 in

14 the default context, and because that decision was a

15 default, the Russian defendants were not participating,

16 Chabad had clearly sought a motion for entry of a default

17 judgment, and that is what the court granted.  This case,

18 then, falls squarely into the Bell Helicopter and Practical

19 Concepts and Sudan v. Owens line of jurisdictional review.

20         JUDGE SRINIVASAN:  So the question in this -- the

21 question before us right now concerns whether 60(b) is the

22 right way to bring this up --

23         JUDGE SENTELLE:  Yes.

24         JUDGE SRINIVASAN:  -- because even if you're right

25 -- let's just -- just for purposes of this, let's just

1   assume that you're right that there's a jurisdictional

2   objection that could be made, that there was an opportunity

3   to do that, as you point out in your briefing --

4           JUDGE SENTELLE:  Yes.

5           JUDGE SRINIVASAN:  -- in your own briefing, by

6   filing a motion to quash.  That didn't happen.  And so then

7   there was a 60(b) motion, and the question is, are you

8   situated to bring the 60(b) motion, because if you're not --

9           JUDGE SENTELLE:  Right.

10          JUDGE SRINIVASAN:  -- then I think you would agree

11  that you don't have a route now; you have to be --

12          JUDGE SENTELLE:  Right.

13          JUDGE SRINIVASAN:  -- a party that can actually

14  raise the 60(b), and under 60(b) just everything about the

15  terms of the rule seems to contemplate that it's a party to

16  the underlying judgment.

17          I'm not, I'm not disputing that the underlying

18  judgment has some effect on you, because I get that, that

19  it's a consequence of the underlying judgment that you're,

20  then, within the range of a subpoena, but you're not

21  actually the party, and it's difficult to see you as a legal

22  representative, at least in the normal way we think about

23  legal representatives, which is a trustee or somebody who's

24  actually standing in the shoes of the party --

25          JUDGE SENTELLE:  Right.

WC

1          JUDGE SRINIVASAN:  -- and then if I thought that

2    that's all 60(b) covered, then I'm not sure I see how you

3    have authority to bring this before the district court and

4    before us.

5          And in service of the proposition that I do --

6    that that may be all that the rule covers, when I look at

7    the rule, it talks about the parties in a number of

8    situations -- for example, 60(b)(3) talks about whether

9    there's fraud, misrepresentation, or misconduct by an

10   opposing party, which talks about whether the party who

11   supposedly considered the fraud is opposed to the party; it

12   talks about newly discovered evidence, which, which by

13   nature refers to actions of the party to the underlying

14   judgment; and then the text which you've engaged on may

15   relieve a party or its legal representative -- seems to make

16   it an uphill battle to say that a nonparty, such as

17   yourself, can rely on 60(b).

18          JUDGE SENTELLE:  Yes.

19          MS. KOWNACKI:  At least three points on that, Your

20   Honor.

21          JUDGE SRINIVASAN:  Yes.

22          MS. KOWNACKI:  So first, as to whether that was

23   raised in our motion to quash, the district court recognized

24   that jurisdictional issues were raised in our motion to

25   quash -- that's at JA798 -- and said that Tenam had been

1 raising jurisdictional issues.  And so when Tenam sought

2 certification of the denial of its motion to quash under

3 1292(b), that court did engage on the exact jurisdictional

4 arguments that we sought to certify for appeal, specifically

5 this issue of whether Russia satisfied 1605(a)(3), the

6 (b)(1) prong, if you will.

7          Second, that motion to quash was denied, and -- it

8 was referred to earlier today -- the alternative is to wait

9 for sanctions, which is -- which was something that we could

10 not do, and those sanctions provide further reason why Tenam

11 is strongly affected by the judgment, the threat of such

12 sanctions.

13          And then, three, turning to the rule -- the text

14 of Rule 60(b) --

15          JUDGE SRINIVASAN:  On the motion to quash, if

16 there's a jurisdictional objection to the motion to quash on

17 the basis that there's not subject-matter jurisdiction in

18 the underlying suit and that's rejected, then that's

19 something that can be an appeal.  That's presumably

20 something that can be appealed.

21          MS. KOWNACKI:  Right, and we sought certification

22 of the --

23          JUDGE SRINIVASAN:  No, not certification.  I mean,

24 are you talking about 1292(b) certification?

25          MS. KOWNACKI:  Yes.

1          JUDGE SENTELLE:  Yes.

2          JUDGE SRINIVASAN:  Right, but --

3          MS. KOWNACKI:  When the motion to quash was

4    denied, our understanding was that if that decision was not

5    certified for appeal, then we needed to wait until there was

6    a decision compelling --

7          JUDGE ROGERS:  And your understanding was based on

8    what?

9          MS. KOWNACKI:  Well, Your Honor, I would have to

10   get back to you on that.

11         JUDGE SRINIVASAN:  Right.  I mean, that's the

12   issue in the other case, and if we thought that collateral

13   order review was available when a jurisdictional objection

14   to a motion to quash is denied, then that's a route to take.

15   Here that didn't happen.  I don't even know that it was

16   raised in the motion to quash, but in any event, right now

17   all we have before us is the 60(b) route --

18         JUDGE SENTELLE:  Yes.

19         JUDGE SRINIVASAN:  -- and the 60(b) route, putting

20   aside the motion to quash, requires that the party who

21   brings it be either a party or a legal representative.

22         MS. KOWNACKI:  Right.  So on the -- we were not

23   trying to seek a collateral order appeal the way that VEB

24   was, in that we were not asserting Tenam's own immunity, and

25   so that was why we didn't think that Tenam had a direct

1  appeal of the, of the denial of the motion to quash.

2          But I do want to move on to the text of Rule

3  60(b), to get to that part of your question.  Tenam -- the

4  rule itself is silent on who is the proper movant, and the

5  courts, however, have held that a legal representative

6  includes any party alleged to be in privity with the

7  judgment debtor, who would be relieved.

8          Chabad's allegations with respect to Tenam is

9  exactly that, that there is some sort of a privity

10  relationship.  That's the fundamental basis of relevance of

11  its subpoena, and while Tenam strongly denies that, we've

12  pointed to cases that show that you, when evaluating

13  standing, including in the context of an issue and claim

14  preclusion and in the context of a nonparty third-party

15  intervenor defendant --

16          JUDGE SRINIVASAN:  Who would be relieved under

17  your theory?  The text of the rule says the court may

18  relieve a party or its legal representative from a final

19  judgment order.  Who would be relieved?

20          MS. KOWNACKI:  On Chabad's allegation?  Certainly,

21  Tenam would be relieved because Tenam is alleged to be the

22  alter ego, and so therefore it would --

23          JUDGE SRINIVASAN:  No, not on the allegations,

24  because I think the allegations -- I understand your point

25  about the allegations -- the allegations just could cut both

1    -- could equally cut in the other direction; two, if you

2    flip it, it's a little bit difficult to attach, at least in

3    my mind, too much significance to that because either side

4    could make use of it.

5              MS. KOWNACKI:  Well, Tenam is the party that has

6    been dragged in and is attempting to assert defenses to be

7    relieved of compliance with the subpoena.  So the opponent's

8    allegations, just as in the case of a third-party intervenor

9    defendant/movant, would -- you rely on the record that there

10   is and the allegations from the opposing party.  Obviously,

11   also, the Russian Federation would be relieved from the

12   judgment, but because Russia would be relieved from the

13   judgment and Tenam's only connection -- the only relevance

14   to the, to the case at all is Tenam's alleged relationship

15   to Russia.  There's no alleged relationship to the other

16   parties.  So if --

17             JUDGE SRINIVASAN:  But if Russia -- if Russia

18   needs to be relieved from the judgment, Russia can seek

19   60(b) relief, but it hasn't, and so --

20             JUDGE SENTELLE:  Yes.

21             JUDGE SRINIVASAN:  -- it's -- you have to support

22   a notion that you can bring the 60(b) relief.

23             MS. KOWNACKI:  Beyond the privity, I'd just like

24   to talk briefly about the --

25             JUDGE SENTELLE:  Privity, privity is something

WC

1   more than simply being related in some fashion.  Wouldn't

2   privity require something close to being able to step into

3   the shoes, like the legal representative normally means?

4           MS. KOWNACKI:  Right, and that includes an alter

5   ego.  The only reason why Tenam's assets could possibly be

6   relevant in this suit is because Chabad is pursuing

7   information about those assets in an attempt to -- with a

8   purpose of executing the judgment against Tenam, not against

9   Russian assets that Tenam holds in its possession, but

10  Tenam's own assets.

11          JUDGE SENTELLE:  Well, they're not attempting to

12  execute against them at this point, are they?  They're

13  simply trying to find out what's there with the possibility

14  that they may turn out to be traceable to Russia.  What --

15          MS. KOWNACKI:  Well, that's, with all due respect,

16  that's not what the subpoena is seeking.  The subpoena is

17  seeking information about what Tenam possesses as to Tenam's

18  own assets, Tenam's commercial activities, Tenam's

19  relationship with its own board of directors, its own

20  commercial activities, its own --

21          JUDGE SENTELLE:  Right.

22          MS. KOWNACKI:  -- activities in the United States,

23  but --

24          JUDGE SENTELLE:  Well, you're not -- you're not

25  bringing anything concerning the breadth of the subpoena.

 1  That would be a matter of a motion to quash, I suppose,

 2  but --

 3           MS. KOWNACKI:  Well, that --

 4           JUDGE SENTELLE:  -- you're not talking about the

 5  breadth of the subpoena.  You're trying to set aside a

 6  judgment here.

 7           MS. KOWNACKI:  Right, and we say, when you look at

 8  the record as a whole, the only way that there is relevance,

 9  which the district court has already held when it denied our

10  motion to quash, the only basis for relevance of this broad

11  subpoena is that, is that Tenam is alleged -- it's on the

12  allegation that Tenam is the alter ego.  If Tenam is not

13  alleged to be the alter ego --

14           JUDGE SENTELLE:  You understand, we start with a

15  presumption of finality on jurisdiction from a judgment, and

16  you're moving to set one aside.  That's a heck of a burden,

17  isn't it, you have?

18           MS. KOWNACKI:  Well, with respect to 60(b)(4), the

19  issue is not discretionary.  If the judgment is void, then

20  this Court is without subject-matter jurisdiction, and we

21  would say that -- we would submit that this Court is without

22  subject-matter jurisdiction to even reach the 60(b) standing

23  because the Court must assure itself of subject-matter

24  jurisdiction.  In this case there is no subject-matter

25  jurisdiction with respect to --

1          JUDGE SRINIVASAN:  I don't understand that point,

2  that we're without jurisdiction even to decide whether a

3  party can bring a 60(b) motion.  That means that -- wouldn't

4  that mean that any party in the world --

5          JUDGE SENTELLE:  Yes.

6          JUDGE SRINIVASAN:  -- could bring a 60(b) motion,

7  having -- even if they have no relation whatsoever to the

8  underlying suit, but then a court would have to decide the

9  merits of the 60(b) motion without deciding whether the

10  party could bring it?

11          MS. KOWNACKI:  Here, Tenam has, no doubt, Article

12  III standing.  We were subpoenaed into the case.  There is

13  an allegation that Tenam has to -- so the process has been

14  served.  Tenam has the -- can satisfy the Article III

15  standing, and in fact, post-judgment subpoena recipients,

16  there's no doubt, can raise subject-matter jurisdiction.  So

17  the notion that this Court has to address subject-matter

18  jurisdiction should not be controversial.  When a subpoena

19  recipient raises subject-matter jurisdiction, the Court must

20  address it.

21          JUDGE SENTELLE:  Well, the notion that a third

22  party can come in years later and attack the validity under

23  the motion to set aside is -- the 60(b) motion -- is at

24  least controversial.

25          MS. KOWNACKI:  We, you know, we understand it's

1   not a frequent occurrence, but there's no doubt in this case

2   that Tenam can raise the argument that there is no

3   subject-matter jurisdiction.  That is the Vera case and --

4           JUDGE SENTELLE:  If you can bring the case at all,

5   perhaps you could, but the question we're raising is whether

6   you can bring a 60(b) motion on the basis that you have

7   here --

8           MS. KOWNACKI:  Right, and we think that Vera --

9           JUDGE SENTELLE:  -- a third party.

10          MS. KOWNACKI:  -- satisfied the standing for the

11  privity argument.  And then the other point which I wanted

12  to add is that Tenam is strongly affected by the judgment,

13  I'd point out, in a very unique circumstance here.  The

14  subpoena is targeting Tenam's assets, but Tenam -- there's

15  no allegation that Tenam could ever satisfy the injunction.

16  This is a very unique circumstance.  So that -- those

17  sanctions, those $50,000-a-day sanctions will just continue

18  to add up, add up, add up, targeting Tenam's assets, but

19  Tenam has no way to satisfy the injunction.  That is a

20  unique one-off circumstance in which Tenam is strongly

21  affected --

22          JUDGE SRINIVASAN:  I don't doubt, I don't -- for

23  my purposes, I don't doubt that Tenam is affected.  There's

24  -- you're -- of course you're affected because the subpoena

25  is directed against you as a consequence of the previous

1  judgment.  The question is whether your jurisdictional

2  objection is properly asserted by Rule 60(b) as opposed to

3  by a motion to quash, which you yourself in your briefing

4  point out is a route, and I think that's the, that's the

5  question that's before us under Rule 60(b).

6         Let me -- let me make sure that my colleagues

7  don't have additional questions --

8         JUDGE SENTELLE:  No.

9         JUDGE SRINIVASAN:  -- for you on these questions

10 that you have, because I know your colleague on your same

11 side still has an argument to make on some other issues.

12        Okay.  Then why don't we hear from Mr. Riesenberg

13 for now, and we'll give whichever one of you is going to

14 take it a little bit of time for rebuttal.

15        MS. KOWNACKI:  Thank you, Your Honor.

16        JUDGE SRINIVASAN:  Mr. Riesenberg.

17         ORAL ARGUMENT OF DAVID RIESENBERG, ESQ.

18              ON BEHALF OF THE APPELLANT

19        MR. RIESENBERG:  May it please the Court.  We now

20 turn to the injunction and the contempt sanctions pursuant

21 to which Tenam has been subpoenaed in relation to, quote,

22 Tenam's own assets, end quote, and then -- again, that's

23 from the transcript.  That's a statement by opposing

24 counsel.

25        So the U.S. Government has repeatedly described

1    the remedies in this case -- the injunction and the contempt

2    sanctions -- as, quote, entirely without precedent

3    internationally, end quote, including at page 141 of the

4    joint appendix.  Neither Chabad nor the district court have

5    ever identified any prior case by any court anywhere in the

6    world, including in the United States, but nowhere else in

7    the world where any court has imposed an extraterritorial

8    turnover order against a foreign sovereign state.  It is

9    entirely anomalous.  This unprecedented exercise of judicial

10   power is literally, quote, an extraordinary circumstance,

11   end quote, which would justify Tenam's request for relief

12   under 60(b).

13          The district court's order should be vacated

14   therefore, including because they are contrary to the

15   Foreign Sovereign Immunities Act, including the

16   comprehensive scheme for addressing the property of foreign

17   sovereign states and the public interest, which is a

18   requirement of any injunctive order, whether it's a

19   permanent injunction or a preliminary injunction.  The

20   district court, in its 2010 order, entirely skipped

21   consideration of the public interest in violation of its

22   statutory duty under 28 U.S.C. 1608(e) to evaluate Chabad's,

23   quote, right to relief.  For all these reasons, both the

24   injunctive order and the sanctions should be vacated, as

25   well as all the subpoenas attempting to seek information

WC

1  pursuant thereto.

2          So I'll first start by looking at the statutory

3  aspects, meaning the interpretation of 1609 and 1610.  Now,

4  the U.S. Government, at page 135 of the joint appendix,

5  draws our attention to the pre-enactment history of the

6  Foreign Sovereign Immunities Act.  Now, prior to the FSIA,

7  the property of a foreign state was immune from execution

8  everywhere in the world without geographical limitation.

9          JUDGE ROGERS:  Are you referencing the green

10  brief?

11          MR. RIESENBERG:  Meaning Mr. Feldman's amicus

12  brief --

13          JUDGE ROGERS:  Yes.

14          MR. RIESENBERG:  -- Judge Rogers, just to clarify?

15          JUDGE ROGERS:  Yes, as opposed to comments that

16  were submitted by the United States in the district court at

17  some point, and it's not clear to me what remains.

18          MR. RIESENBERG:  I'm referring to the statements

19  of interest filed at page 135 --

20          JUDGE ROGERS:  Right, but it hasn't filed an

21  amicus brief, correct, and at some point circumstances

22  changed?

23          MR. RIESENBERG:  Well, this, this position that

24  the United States Government has taken in this case has been

25  consistent across presidential administrations.  It --

1          JUDGE ROGERS:  No, I wasn't suggesting an

2    administration change made a difference.  I think

3    circumstances have changed given what the district court has

4    done.

5          MR. RIESENBERG:  Well, most recently, the U.S.

6    Government maintained its consistent position in December of

7    2019.  We're not aware of any change in position.  It is

8    certainly not too late for this Court to ask the U.S.

9    Government's views.  That's something that this Court has

10   discretion to do, and Tenam would have no objection

11   whatsoever.  In addition --

12         JUDGE ROGERS:  But you have not requested that we

13   do so.  That, I noted in your brief.  All right?  But in any

14   event, your position is, the United States thinks what?

15   Foreign policy would be better off if this case stopped?

16         JUDGE SENTELLE:  Yes.

17         MR. RIESENBERG:  Well, the U.S. Government would

18   not be subject to a $135 million contempt sanctions order by

19   a, by a foreign court, and the U.S. Government's arguments

20   in foreign court would not be undermined in any of the,

21   going by the numbers in the Helmerich decision by the

22   Supreme Court, in any of the --

23         JUDGE ROGERS:  So the answer to my question is

24   yes?

25         MR. RIESENBERG:  Very -- yes.  It's a strong yes,

1  Judge Rogers.  The U.S. Government needs to defend against

2  the orders of foreign courts in a thousand cases at any

3  given time, before a hundred courts in the world, and

4  undermining the U.S. Government's defenses with respect to

5  injunctive orders and contempt sanctions is strongly

6  contrary to foreign policy.  That is a public interest

7  issue, and the district court gave it short shrift when it

8  ordered injunctive relief in this case.

9            JUDGE ROGERS:  Of course, that's different from

10  not considering the matter.

11            MR. RIESENBERG:  It's improperly weighing the

12  factors, which is frequently the way this district court has

13  described -- the way this district court has described abuse

14  of discretion.

15            Also, I want to distinguish between the district

16  court's discussion of public interest in 2015, when the

17  contempt sanctions were issued, and the 2010 order, where

18  the district court did not discuss any issues of merits or

19  remedies or the public interest aspect of the injunction

20  whatsoever.  There is not one word in the 2010 order

21  addressing the --

22            JUDGE ROGERS:  Yes.

23            MR. RIESENBERG:  -- public interest as required

24  for injunctive relief, but this is, this is the issue of the

25  public interest, Judge Rogers, and that's only one of the

1   issues that we're raising today.

2          We're, of course, also pointing out the violations

3   of the, of the Foreign Sovereign Immunities Act,

4   particularly the comprehensive statutory scheme, which,

5   under 1609-10 and 1610, abrogates foreign sovereigns'

6   execution immunity only with respect to property in the

7   United States.  There is no abrogation of the, of the

8   immunity to which property is entitled outside the United

9   States, and that's not just a diplomatic nicety but a

10  judicially enforceable norm, as the case law from before the

11  FSIA shows very clearly.  I -- for example, I would point

12  out the Dexter case at 43 F.2d 705.

13         And then one final point before I reserve the

14  remainder of our time for rebuttal or await any of your

15  other questions -- 1606, 28 U.S.C. 1606, is the pillar of

16  the district court's conclusions, the pillar of Chabad's

17  arguments.  That's where they say the power to order

18  extraterritorial injunctions comes from.  1606 doesn't refer

19  to remedies at all.  It says that a foreign state shall be,

20  quote, liable to the same extent as a private party.  That

21  is not a clear textual discussion of remedies whatsoever,

22  and to apply that to justify extraterritorial injunctions,

23  which have never occurred in the history of this country or

24  any other, would be a violation of the canon against the

25  extraterritorial application of law, which the Supreme Court

1    emphasized in <u>Kiobel</u>, <u>Morrison</u>, <u>RJR Nabisco</u>, and --

2              JUDGE SENTELLE:  You may -- you may well be

3    correct as to the merits of your cause, but doesn't it go

4    back still to the issue that your colleague argued, as to

5    whether 60(b) appeal -- 60(b) is available to you and

6    therefore this appeal is available?

7              MR. RIESENBERG:  It -- yes.  For these arguments

8    there is no question we would need standing, but --

9              JUDGE SENTELLE:  Well, it's not exactly the same

10   as traditional Article III standing.  It's a finality of

11   judgment issue, isn't it?

12             MR. RIESENBERG:  Well, Judge Sentelle, I would

13   draw your attention to the Second Circuit's decision in

14   <u>Grace</u>, which was also a case involving a final judgment.  So

15   all of the presumptions that you've described would also be

16   applicable to the Second Circuit's decision in <u>Grace</u>.  The

17   reason why the movant in that case had standing was because

18   the opposing party's strategy was, quote, to collect money

19   from the movant, end quote.  On that basis the Second

20   Circuit said general principles of standing make this motion

21   under Rule 60(b) appropriate.

22             In this case Chabad is trying to collect money

23   from Tenam.  We're not --

24             JUDGE ROGERS:  Well, let me just be clear about

25   one thing.  I mean, I know you say the case isn't relevant

WC

1  at all, but at least -- there is a distinction here between

2  trying to find out what assets VEB has and whether there is

3  any authority to attach those assets, and the latter has not

4  happened yet.

5         MR. RIESENBERG:  It hasn't happened, Judge Rogers,

6  but standing is almost always evaluated based on the

7  allegations at the outset of a lawsuit.

8         JUDGE ROGERS:  Well, there's where you're hurting

9  yourself, because the district court said, you know, it

10  couldn't order the type of relief you want, all right,

11  because it would have no authority to do so under Rule

12  60(b), and to that extent, applying sort of a statutory

13  standing analysis, the third prong of standing would drop

14  out.

15        MR. RIESENBERG:  I just want to quote the district

16  court, Judge Rogers.  The district court --

17        JUDGE ROGERS:  I'm quoting the district court.

18        MR. RIESENBERG:  No, no, understood.  Just to --

19        JUDGE SENTELLE:  Yes.

20        MR. RIESENBERG:  -- to supplement that quote, the

21  district court said that there was no serious argument that

22  Chabad stands in the -- sorry, apologies, there is no

23  serious argument that Tenam stands in the shoes of the

24  Russian Federation.  We found that quote remarkable because

25  that is precisely Chabad's argument.

1        Whether it's serious or not, Chabad says that we

2   do stand in the shoes of the Russian Federation.  That's why

3   they're trying to pierce our veil.  That's what they said on

4   the transcript during oral argument to the district judges

5   -- to the district judge, and that is their argument, and

6   that should be sufficient to give us standing to provide any

7   legal arguments that correspond to their theory of the case,

8   including under Rule 60(b).

9        And we'll reserve the remainder of our time for

10  rebuttal unless there are further questions.

11       JUDGE SRINIVASAN:  Hearing no further questions,

12  thank you, Mr. Riesenberg.  We'll give you a little bit of

13  time for rebuttal.  Mr. Lieberman, we'll hear from you now.

14            ORAL ARGUMENT OF STEVEN M. LIEBERMAN, ESQ.

15                 ON BEHALF OF THE APPELLEES

16       MR. LIEBERMAN:  May it please the Court.  Good

17  morning again.  I'm going to try to address the issues

18  raised by Tenam in the following fashion subject, of course,

19  to the order in which the Court wishes to go into these

20  issues.  First, I'd like to discuss the 60(b) issue; then

21  I'd like to go into the jurisdictional finality issue, which

22  has been raised by several members of the panel; and then

23  I'd like to turn to some of the merits issues.

24            But first, I do want to correct one point that was

25  made by Mr. Riesenberg or his colleague in response to Judge

WC

1  Rogers' question.  There are two theories that underlay the

2  subpoena to Tenam.  One was the question of whether or not

3  Tenam was an alter ego of the Russian Federation, and the

4  second was whether Tenam holds assets of the Russian

5  Federation which could potentially be subject to execution.

6  That is Russian-owned property.

7          Now, starting with Rule 60(b), there are -- we

8  start, obviously, with the language of the statute:  a party

9  or its legal representative.  I don't think there's a -- I

10  don't think there's a serious question that Tenam is not a

11  legal representative of Russia, even though in this lawsuit

12  it seems to be that what it's trying to do is to get a

13  vacatur of the actual ruling against Russia, so -- but

14  they're not a legal representative of Russia.

15          Under Rule 60(b), the language of Rule 60(b), as

16  Judge Lamberth pointed out, they do not have the right to

17  challenge the underlying judgment.  They haven't been able

18  to cite any cases in which an entity that was not a third

19  party that was a recipient of discovery, they challenged the

20  validity of an underlying judgment.

21          They cite two cases, Vera v. the Republic of Cuba.

22  That wasn't a Rule 60(b) case, but it was also a case where

23  there was a default judgment against Cuba.  Cuba never

24  appeared at all.  Cuba followed the Practical Concepts

25  Option 2 scenario that was sketched out by Justice Ginsburg

1   in her decision in <u>Practical Concepts</u>.

2            The other case that they cite, the only other case

3   is this <u>Housing Business Journal v. Office of the</u>

4   <u>Comptroller</u> case.  That was also not a Rule 60(b) decision.

5   It was a pending lawsuit, but it was a subpoena to a third

6   party which was permitted to challenge the district court's

7   subject-matter jurisdiction.  So they've cited no Rule 60(b)

8   cases where they should be considered a representative.

9            And as the Chief Judge's question about relying

10  on, you know, on pleadings and positions the parties take

11  with respect to the availability of 60(b) relief made clear,

12  that's a two-edge sword.  If Tenam is taken at its word that

13  it should be considered a representative or a privy of

14  Russia, then under principles of issue and judgment

15  preclusion, they are estopped under res judicata as well as

16  -- as well as the jurisdictional finality.  They would be

17  precluded under principles of res judicata from challenging

18  the underlying judgment.

19           Let's recall here, this is a case in which Russia

20  appeared, litigated for several years, lost in part and won

21  in part on sovereign immunity in the district court, took an

22  appeal, and on appeal the portion that it had lost below was

23  reversed.  That's with respect to the -- I'm sorry.  The

24  portion that it had lost below was affirmed.  That's with

25  respect to the Archive.  The portion that it had won below

1  with respect to the Library was reversed on sovereign

2  immunity issues.  It went back to the district court.  It

3  continued to participate in the litigation for a year.  When

4  faced with discovery to which it needed to respond, it then

5  withdrew.

6          So this is a _Practical Concepts_ Option 1 case.

7  Russia appeared.  It fought on jurisdiction.  It lost.  It's

8  a final judgment.  So just on res judicata, just on

9  res judicata, if they are a representative, you know, which

10  they would need to argue to get up under 60(b), then they

11  lose under res judicata.  If they're not a --

12          JUDGE SRINIVASAN:  Let's, let's just say for

13  argument purposes -- and I'm not saying that I necessarily

14  agree with this or disagree with this -- but let's just say

15  for argument purposes that we accept your position that

16  Tenam cannot bring the 60(b) motion because it's not a party

17  or legal representative --

18          MR. LIEBERMAN:  Right.

19          JUDGE SRINIVASAN:  -- but let's just also say --

20  and I know you resist this, but just bear with me -- let's

21  just also say that they're right about the appropriate

22  reading of the statute of 1605(a)(3) and therefore there

23  wasn't jurisdiction to issue the underlying default

24  judgment.  What are they supposed to do?

25          MR. LIEBERMAN:  Okay.  So I am so happy you asked

1  that question, Your Honor, because it leads right into the

2  question of jurisdictional finality.  I want to put aside

3  for a second -- I would like to discuss this if the Court is

4  interested in the issue, as to whether this Court, in its

5  Chabad decision in 2008, properly interpreted Section

6  1605(a)(3), but I don't want to deal with that right at the

7  moment.

8           Let's assume, pursuant to Your Honor's question --

9           JUDGE SRINIVASAN:  Yes.

10           MR. LIEBERMAN:  -- that this Court follows the

11  four subsequent decisions of the D.C. Circuit and says the

12  Chabad court got it wrong.  We dispute that and I'd like to

13  get to that point, but --

14           JUDGE SRINIVASAN:  Sure.

15           MR. LIEBERMAN:  -- I'm going to answer Your

16  Honor's question.

17           JUDGE SRINIVASAN:  Yes.

18           MR. LIEBERMAN:  So there are two -- there are two

19  separate questions.  One is, is the -- is this Court's

20  decision in Chabad one that was sufficiently articulated and

21  described --

22           JUDGE SRINIVASAN:  Well, let me -- can I just ask

23  you, just to get a quick answer at least on one part of it,

24  which is, is there anything they could do?

25           MR. LIEBERMAN:  No.

WC

1      JUDGE SRINIVASAN:  You think there's nothing they

2 can do.  So even if the de Csepel reading of 1605(a)(3) is

3 taken to be correct -- I know you don't think it was

4 correct, but for our purposes it's the precedent that's on

5 point at this juncture in time -- then the underlying

6 judgment was issued without subject-matter jurisdiction and

7 Tenam has never had an opportunity to make that argument

8 because it wasn't in the -- it wasn't ever in the initial

9 case.  That was Russia in the initial case.  So a party that

10 was never in the initial case and is now totally affected by

11 the judgment, your view is that there's nothing they can do

12 about it?

13      MR. LIEBERMAN:  Well, nothing they can do may be

14 too strong because, for example, there are lots of types of

15 property that are immune under the statute from, from

16 attachments.  There are all sorts of arguments that they can

17 make that they're not an alter ego of Russia.  If they win

18 on not being an alter ego of Russia --

19      JUDGE SRINIVASAN:  Yes.  There's nothing they can

20 do to take on the existence of jurisdiction to issue the

21 underlying judgment that then begets your efforts to obtain

22 relief against them?

23      MR. LIEBERMAN:  That's correct, and let me explain

24 exactly why.

25      JUDGE SRINIVASAN:  And what about the doctrine

1   that says that you can defend against a subpoena, you can

2   quash a subpoena based on a lack of subject-matter

3   jurisdiction to issue the underlying judgment?

4            MR. LIEBERMAN:  Right.  So the -- this Court in

5   Chabad -- and I don't think there's any doubt about this --

6   if you look at the de Csepel majority opinion, the majority

7   opinion does not dispute that the D.C. Circuit in Chabad

8   made a decision that the Russian Federation was not immune

9   with respect to either the Archive or the Library.

10           JUDGE SRINIVASAN:  Yes.

11           MR. LIEBERMAN:  The issue in de Csepel is whether

12  or not the decision was articulated with sufficient

13  expansiveness that it should be entitled to precedential

14  effect in the circuit.  But the decision was made.  It went

15  back down.  When it went back down, the district court made

16  the appropriate findings to enter a final judgment.  At that

17  point Russia had withdrawn, but they had decided to exercise

18  Practical Concepts Option 1.  They fought on the issue.

19  That judgment is final with respect to sovereign immunity

20  for purposes of this case.

21           JUDGE SRINIVASAN:  So suppose that in de Csepel

22  the cert. petition was granted and the Supreme Court in

23  de Csepel agrees with the view espoused by the United States

24  in de Csepel in its brief, which is that the de Csepel view

25  -- our court's view of 1605(a)(3) in de Csepel was correct.

1          So now -- then we'd know that the Supreme Court

2    would have a precedent, just hypothetically, the Supreme

3    Court would have a precedent that says that the way Chabad I

4    looked at it turns out to have been incorrect.  You'd still

5    say that even though the Supreme Court precedent says that

6    the jurisdictional basis of Chabad I is incorrect, that this

7    party, Tenam, who's never had an opportunity to litigate

8    that, would be out of luck?

9          MR. LIEBERMAN:  That's absolutely correct, and

10   it's the Supreme Court's decision in Federated Department

11   Stores upon which I would be relying and, also, this Court's

12   decision in GSS Group v. Liberia, both of which are

13   discussed in our brief.

14         In GSS Group v. Liberia, this Court, a 2016

15   decision, said, once an issue is raised and determined, it

16   is the entire issue that is precluded, not just the

17   particular arguments raised in support of it in the first

18   case.  And in Federated Department Stores, the Supreme Court

19   said, on jurisdictional finality, this is true even if the

20   judgment, quote, may have been wrong or rested on a legal

21   principle subsequently overturned in another case.

22         So even if the law changes, you've got

23   jurisdictional finality in the Chabad case regarding

24   sovereign immunity with respect to the Russian Federation.

25   Now, there are lots of other issues that Tenam could

1   challenge on, for example, statutorily exempt property or

2   the alter ego or not, but if they are the alter ego, right,

3   and this decision has been determined against the Russian

4   Federation, they are bound by that, they are stuck, and it

5   makes good sense that that would be the case, because in

6   this case, Your Honor, we have five or six or seven

7   subpoenas out to different entities, including, you know,

8   U.S. banks that are holding Russian Federation assets.  If

9   every time we seek to enforce a subpoena a nonparty gets to

10  come in and relitigate the question that this Court decided

11  back in 2008, we would have chaos.  That's exactly why we

12  have the jurisdictional finality doctrine.

13          I hope that answer was clear and unambiguous

14  enough, but I don't think Tenam can challenge this issue.  I

15  don't think the Russian Federation can challenge this issue.

16  I don't think anybody else can challenge this issue.  In the

17  Chabad case, it has been decided for this case.

18          And going back to Rule 60(b), we've got to go by

19  the language of that rule.  The language is clear.  They're

20  not the party.  They're not a representative.  They make the

21  argument about strongly affected.  That strongly affected

22  rule has never been applied in this circuit.  There's one

23  decision by a district court on the strongly affected

24  doctrine in this circuit, and the district court rejected

25  strongly affected.

WC

 1          And strongly affected came from the <u>Grace</u> case,

 2 and as Judge Lamberth pointed out below and as many other

 3 courts have pointed out, including the <u>Grace</u> case itself,

 4 that was an exceedingly narrow exception to a

 5 well-established rule and it was there to prevent a fraud

 6 perpetrated on the court to saddle a third party with a

 7 judgment debt.  That's what happened in <u>Grace</u>, and that's

 8 why the Second Circuit was so careful to say this was a very

 9 narrow exception.

10          It cannot possibly be that Tenam is seriously

11 arguing that when Chabad brought this lawsuit to get back

12 books that were first taken in 1917, that it's been fighting

13 for a hundred years to get these books back, that the reason

14 it brought that lawsuit, the reason it brought the lawsuit

15 and went to the district court and the D.C. Circuit on the

16 sovereign immunity issue was to somehow stick Tenam, you

17 know, 12 years later.  That's just not a -- it's just not a

18 credible argument.  So they have no mechanism to challenge

19 this under 60(b).

20          On jurisdictional finality, again, I think the --

21 even if you were to decide in this case -- and now I'd like

22 to turn to the, to the merits of the 1605(a)(3) issue, if I

23 may, Your Honor -- but even if you were to decide that you

24 weren't going to revisit <u>de Csepel</u> or the <u>Simon</u> case,

25 jurisdictional finality doesn't allow for the judgment

1  against the Russian Federation to be challenged in this

2  case, and again, that's <u>Practical Concepts</u>.  The law -- the

3  law is, I would submit, very, very clear on that.

4          So let me turn to the question of whether or not

5  the <u>Chabad</u> decision is one that this Court needs to follow

6  or, alternatively, whether this is an issue as to which the

7  Court might want to refer this matter to an en banc panel.

8  I --

9          JUDGE SENTELLE:  Are you sure you want to get into

10 that?

11         MR. LIEBERMAN:  Well, let me start with this, Your

12 Honor:  First, Judge Lamberth wrote an extraordinarily clear

13 and elegant 54-page decision explaining precisely why he

14 believes that the D.C. Circuit is bound by the D.C.

15 Circuit's decision in <u>Chabad</u> and not --

16         JUDGE SRINIVASAN:  Right, and we issued a -- we

17 issued a decision in <u>de Csepel</u> that reached the decision --

18 conclusion that it did, and that's precedent in our court.

19         JUDGE SENTELLE:  Yes.

20         JUDGE SRINIVASAN:  Whether you agree with it or

21 not -- and I understand that there are arguments in both

22 directions --

23         MR. LIEBERMAN:  Right.

24         JUDGE SRINIVASAN:  -- that's the precedent in our

25 court on what happens with the <u>Chabad</u> result going forward.

1          MR. LIEBERMAN:  I understand that, unless this

2   Court issues a new decision with an Irons footnote or --

3          JUDGE SRINIVASAN:  We'd have to take -- we'd have

4   to go on -- we'd -- the full court would have to do

5   something with it, either by taking the issue en banc or by

6   issuing an Irons footnote --

7          MR. LIEBERMAN:  Right.  So --

8          JUDGE SRINIVASAN:  -- like, that -- there's a lot

9   of other issues in this case with respect to 60(b) and

10  everything that we'd have to get to before we'd ever get to

11  something like that.

12         MR. LIEBERMAN:  Right.  Now, my second point was,

13  I think -- explains precisely why the Court need not reach

14  that issue.  Under jurisdictional finality --

15         JUDGE SRINIVASAN:  Right.

16         MR. LIEBERMAN:  -- whether or not the decision was

17  clearly enough articulated to be a precedential decision, it

18  was a decision on the merits of a Foreign Sovereign Immunity

19  Act --

20         JUDGE SENTELLE:  Yes, but this, this is -- we're

21  not, we're not adjudicating today whether it should be

22  precedent for other cases.  What we're talking about

23  (indiscernible) it's binding here, and I'm just not sure you

24  want to get into the -- or drag us toward

25  the --

WC

1          MR. LIEBERMAN:  And then --

2          JUDGE SENTELLE:  -- the (indiscernible) on that.

3   That --

4          MR. LIEBERMAN:  Then, Your Honor, I will exercise

5   the wisdom to not make those arguments and simply refer the

6   Court to Judge Lamberth's decision on that point should the

7   Court think it needs to reach the issue, but again, if the

8   Court needs to reach the issue, you know, this is, this is a

9   case that I think would be very appropriate for en banc

10  review, but you need not get there.

11         JUDGE SRINIVASAN:  Okay.  Let me make sure my

12  colleagues don't have --

13         JUDGE ROGERS:  If you prevail on other grounds.

14         MR. LIEBERMAN:  That's correct, Your Honor.

15         JUDGE ROGERS:  Yes.  All right.  Well, you're not

16  waiving anything, is all I'm saying.

17         MR. LIEBERMAN:  No.  If we -- if we lose on the

18  other grounds and this Court gets to the issue, for the

19  reasons set forth in the brief, the reasons --

20         JUDGE ROGERS:  Right.

21         MR. LIEBERMAN:  -- set forth in Judge Randolph's

22  dissent in the de Csepel case, for the reasons set forth in

23  Judge Lamberth's ruling, our view is that the proper

24  interpretation of 1605(a)(3) is the conclusion that Judge

25  Lamberth has come to and the conclusion reflected in the

1  judgment of the D.C. Circuit <u>Chabad</u> case, and if any of the

2  panel would like, I'm happy to go into those substantive

3  issues, but Your Honor, Judge Rogers is exactly correct,

4  we're not waiving those issues at all.

5          JUDGE SRINIVASAN:  Okay.

6          JUDGE SENTELLE:  Okay.

7          JUDGE SRINIVASAN:  Let me make sure my colleagues

8  don't have additional questions for you --

9          JUDGE SENTELLE:  No.

10          JUDGE SRINIVASAN:  -- Mr. Lieberman.  Thank you.

11          MR. LIEBERMAN:  Thank you, Your Honor.

12          JUDGE SRINIVASAN:  For appellants, we'll give you

13  two minutes back for rebuttal, and I know you were going to

14  choose who's going to give the rebuttal.

15          ORAL REBUTTAL OF NICOLLE KOWNACKI, ESQ.

16              ON BEHALF OF THE APPELLANT

17          MS. KOWNACKI:  Yes.  Thank you, Your Honor.  Just

18  to start, Mr. Lieberman said that this case would be

19  analyzed as a <u>Practical Concepts</u> Option 1 case, but whether

20  it's Tenam challenging the finality of the judgment or

21  otherwise, this is a <u>Practical Concepts</u> Option 2 case

22  because the entry of the 2010 default decision is the

23  decision that took jurisdiction over the Russian Federation

24  with any alleged sense of finality.

25              Because that decision was a default, even though

WC

1   the Russian Federation did previously appear, that merely

2   puts this case squarely in the Sudan v. Owens and -- line of

3   cases -- and the Bell v. Helicopter line of cases.  The

4   issue must be looked at, because the Russian Federation was

5   a sovereign, with a de novo nondiscretionary level of

6   review.

7         Now, even if not that, Mr. Lieberman, in Chabad,

8   put in a case where a plaintiff, under Rule 60(b),

9   challenged jurisdiction in its own case, and the Court still

10  looked at that case -- I'm referring to the Lee Memorial

11  case -- and in that case it wasn't finality.  The

12  jurisdictional question was reviewed again under a different

13  standard and one which we don't believe applies here:  the

14  arguable basis test.  We believe it would be the Bell

15  Helicopter test, but the notion that no party can ever

16  challenge the 2010 decision on jurisdiction doesn't square

17  with Lee or Bell.

18        JUDGE ROGERS:  Actually, that's not the argument

19  being made.  It's whether or not Tenam --

20        JUDGE SENTELLE:  Yes.

21        JUDGE ROGERS:  -- can challenge it through Rule

22  50(b).

23        JUDGE SENTELLE:  Yes.

24        MS. KOWNACKI:  That is a -- that is a secondary

25  argument as far as --

WC

1            JUDGE ROGERS:  No.  I mean, you're citing the

2   statement very broadly, and that's not what we're discussing

3   here.  The Chief Judge's questions didn't imply that.

4            MS. KOWNACKI:  Whenever Tenam can challenge

5   jurisdiction in this case -- and I think it's clear from

6   Vera and other cases that it is entitled to challenge

7   subject-matter jurisdiction -- I just want to be clear that

8   there's -- that we disagree with Mr. Lieberman's argument

9   that there's no way to revisit the 2010 decision, taking --

10           JUDGE ROGERS:  Well, actually, he suggested, and

11  in his brief, appellee suggests ways that this can come up.

12           MS. KOWNACKI:  Right.

13           JUDGE SENTELLE:  Okay.

14           MS. KOWNACKI:  We think we do satisfy the standing

15  test because, again, of the allegations of privity.  There

16  are cases that hold that that kind of relationship -- I

17  would not call Tenam a legal representative -- but that a

18  privity relationship satisfies the legal representative

19  prong of 60(b), and so for that, for that reason Tenam

20  should be able to raise it in this context and, if not this

21  context, another --

22           JUDGE ROGERS:  So you're not claiming Tenam is a

23  legal representative?  You're not claiming Tenam is a party?

24           MS. KOWNACKI:  Tenam is an entity alleged to be in

25  privity.  There are cases that hold that a privity

1    relationship makes a party a legal representative.  I don't

2    want to necessarily use that, that word without noting that

3    the definition of it is quite broad.

4            JUDGE SRINIVASAN:  Okay.  Let me make sure my

5    colleagues don't have additional questions for you,

6    Ms. Kownacki.  Thank you, counsel.  Thank you to all

7    counsel.  We'll take this case under submission.

8            (Whereupon, the proceedings were concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WC

## DIGITALLY SIGNED CERTIFICATE

      I certify that the foregoing is a correct transcription of the electronic sound recording of the proceedings in the above-entitled matter.


_____          _December 21, 2021_

WENDY CAMPOS

DEPOSITION SERVICES, INC.